**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| INTERNATIONAL BUSINESS MACHINES CORPORATION, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | C.A. No. 16-122-LPS-CJB |
| GROUPON, INC., | ) ) | |
| Defendant. | ) | |

**MEMORANDUM OF LAW OF GROUPON, INC.
IN SUPPORT OF ITS MOTION FOR JUDGMENT ON
THE PLEADINGS THAT U.S. PATENT NO. 5,796,967 AND
U.S. PATENT NO. 7,072,849 ARE DIRECTED TO INELIGIBLE
<u>SUBJECT MATTER AND THUS INVALID UNDER 35 U.S.C. § 101</u>**

ASHBY & GEDDES
John G. Day (#2403)
Andrew C. Mayo (#5207)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE  19899
(302) 654-1888
jday@ashby-geddes.com
amayo@ashby-geddes.com

*Attorneys for Defendant Groupon, Inc.*

*Of Counsel:*

J. David Hadden
Saina S. Shamilov
Phillip J. Haack
Adam M. Lewin
FENWICK & WEST LLP
Silicon Valley Center
801 California Street, 12th Floor
Mountain View, CA  94041
(650) 988-8500

Dated: December 13, 2016

# TABLE OF CONTENTS

**Page**

I.   NATURE AND STAGE OF THE PROCEEDINGS ........................................................ 1

II.  SUMMARY OF THE ARGUMENT ............................................................... 1

III. STATEMENT OF THE FACTS .................................................................... 2

    A.   The Filepp Patents ..................................................................... 2

    B.   The Priceline Defendants' Motion to Dismiss the Filepp Patent
         Claims Under Section 101 and This Court's Order on That Motion ..................... 5

    C.   The Court's *Markman* Order and Its Constructions of Claim
         Terms in the Filepp Patents ......................................................... 6

IV. ARGUMENT ............................................................................. 6

    A.   *Alice* Step One:  This Court Already Correctly Determined
         That the Filepp Patents Are Directed to Abstract Ideas. ....................... 9

    B.   *Alice* Step Two:  The Court's *Markman* Order Confirms
         That the Claims Recite No Inventive Concept. .................................. 10

         1.   The Independent Claims of the Filepp Patents
              Recite No Inventive Concept. ................................................. 11

         2.   The Dependent Claims of the Filepp Patents
              Recite No Inventive Concept. ................................................. 16

    C.   The Filepp Patents Raise a Daunting Preemption Risk....................... 18

V.   CONCLUSION .......................................................................... 20

**Page(s):**

**C**ASES

*Affinity Labs of Tex. v. Amazon.com Inc.*,
   838 F.3d 1266 (Fed. Cir. 2016) ................................................................7, 15

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
   134 S. Ct. 2347 (2014) .............................................................................. *passim*

*Amdocs (Isr.) Ltd. v. Openet Telecom, Inc.*,
   No. 2015-1180, 2016 U.S. App. LEXIS 19593 (Fed. Cir. Nov. 1, 2016) .........................16

*Apple, Inc. v. Ameranth, Inc.*,
   No. 2015-1704, 2016 U.S. App. LEXIS 21277 (Fed. Cir. Nov. 29, 2016) .............. *passim*

*Bilski v. Kappos*,
   561 U.S. 593 (2010) ................................................................................7, 8, 18

*Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A.*,
   776 F.3d 1343 (Fed. Cir. 2014) ...........................................................................9

*Cyberfone Sys., LLC v. CNN Interactive Grp., Inc.*,
   558 F. App'x 988 (Fed. Cir. 2014) ...............................................................12, 15

*Datatrack Int'l, Inc. v. Medidata Solutions, Inc.*,
   No. 11 CV 458, 2015 U.S. Dist. LEXIS 151039 (N.D. Ohio Nov. 6, 2015)....................11

*Diamond v. Diehr*,
   450 U.S. 175 (1981) ..........................................................................................15

*eDekka LLC v. E Revolution Ventures, Inc.*,
   No. 15-CV-541 JRG, 2015 U.S. Dist. LEXIS 125990 (E.D. Tex. Sept. 21,
   2015) ................................................................................................................11

*Elec. Power Grp., LLC v. Alstom S.A.*,
   830 F.3d 1350 (Fed. Cir. 2016) ................................................................ *passim*

*Enfish, LLC v. Microsoft Corp.*,
   822 F.3d 1327 (Fed. Cir. 2016) ....................................................................9, 12

*Hewlett Packard Co. v. ServiceNow, Inc.*,
   No. 14-cv-570, 2015 US Dist. LEXIS 29384 (N.D. Cal. Mar. 10, 2015) .........................12

*In re TLI Commc'ns LLC Patent Litig.*,
   823 F.3d 607 (Fed. Cir. 2016)..............................................................................8

*Intellectual Ventures I LLC v. Symantec Corp.*,
   No. 2015-1769, 2016 U.S. App. LEXIS 17695 (Fed. Cir. Sept. 30, 2016) .....................13

*Int'l Bus. Machs. Corp. v. Priceline Grp. Inc.*,
   C.A. No. 15-137-LPS-CJB, 2016 U.S. Dist. LEXIS 18660 (D. Del. Feb.
   16, 2016) ...................................................................................................... *passim*

*Int'l Bus. Machs. Corp. v. Priceline Grp. Inc.*,
   C.A. No. 15-137-LPS-CJB, 2016 U.S. Dist. LEXIS 41828 (D. Del. Mar.
   30, 2016) ..............................................................................................................1

*Int'l Bus. Machs. Corp. v. Priceline Grp. Inc.*,
   C.A. No. 15-137-LPS-CJB, 2016 U.S. Dist. LEXIS 150068 (D. Del. Oct.
   28, 2016) ..................................................................................................... *passim*

*Internet Patents Corp. v. Active Network, Inc.*,
   790 F.3d 1343 (Fed. Cir. 2015)..................................................................10, 12

*Le Roy v. Tatham*,
   55 U.S. 156 (1852)........................................................................................2, 19

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*,
   132 S. Ct. 1289 (2012).................................................................................7, 19

*McRO, Inc. v. Bandai Namco Games Am. Inc.*,
   No. 2015-1080, 2016 U.S. App. LEXIS 16703 (Fed. Cir. Sept. 13, 2016) ......................10

*Mortgage Grader, Inc. v. First Choice Loan Servs. Inc.*,
   811 F.3d 1314 (Fed. Cir. 2016).........................................................................7

*O'Reilly v. Morse*,
   56 U.S. 62 (1854).............................................................................................19

*Synopsys, Inc. v. Mentor Graphics Corp.*,
   839 F.3d 1138 (Fed. Cir. 2016).........................................................................16

*Tranxition, Inc. v. Lenovo (U.S.) Inc.*,
   No. 12-cv-01065, 2015 U.S. Dist. LEXIS 89593 (D. Or. July 9, 2015)............................11

*Tranxition, Inc. v. Lenovo (U.S.), Inc.*,
   No. 2015-1907, 2016 U.S. App. LEXIS 20523 (Fed. Cir. Nov. 16, 2016) ..................6, 13

*Ultramercial, Inc. v. Hulu, LLC*,
   772 F.3d 709 (Fed. Cir. 2014), *cert. denied sub nom. Ultramercial, LLC v.
   WildTangent, Inc.*, 135 S. Ct. 2907 (2015) ....................................................8, 9

*Versata Software, Inc. v. NetBrain Techs., Inc.*,
   C.A. No. 13-676-LPS-CJB, 2015 U.S. Dist. LEXIS 132000 (D. Del. Sept.
   30, 2015) ...........................................................................................................12

*Visual Memory LLC v. NVIDIA Corp.*,
    C.A. No. 15-789-RGA, 2016 U.S. Dist. LEXIS 69543 (D. Del. May 27, 2016) ...........................................................................................................12, 13

**STATUTES**

35 U.S.C. § 101 ...................................................................................... *passim*

**OTHER AUTHORITIES**

Fed. R. Civ. P. 12(c) ................................................................................20

## I. NATURE AND STAGE OF THE PROCEEDINGS

This is a patent case. IBM asserts four patents. At least two of those patents, U.S. Patent No. 5,796,967 (the "'967 patent") and U.S. Patent No. 7,072,849 (the "'849 patent") (together, the "Filepp patents"), are directed to patent-ineligible subject matter under 35 U.S.C. § 101 and are the subject of this motion.

IBM asserts the Filepp patents in co-pending *International Business Machines Corp. v. Priceline Group Inc., et al*., C.A. No. 15-137-LPS-CJB (D. Del. filed Feb. 9, 2015) (the "*Priceline* Action"). On May 4, 2015, defendants in that action filed a motion to dismiss under Section 101. The Court held a hearing on that motion on August 10, 2015. On February 16, 2016, Magistrate Judge Burke recommended that the motion be denied without prejudice subject to the *Markman* process in that case. *Int'l Bus. Machs. Corp. v. Priceline Grp. Inc.*, 2016 U.S. Dist. LEXIS 18660, at *74 (D. Del. Feb. 16, 2016) ("*Priceline* Order"). On March 30, 2016, the Court adopted the recommendation. *Int'l Bus. Machs. Corp. v. Priceline Grp. Inc.*, 2016 U.S. Dist. LEXIS 41828 (D. Del. Mar. 30, 2016).

The Court issued its *Markman* Order in the *Priceline* Action on October 28, 2016. Based on that Order, Groupon requests that the Court find that the claims of the Filepp patents are not patent-eligible.

## II. SUMMARY OF THE ARGUMENT

This Court already determined in its Order on the motion to dismiss in the *Priceline* Action that the Filepp patents are "directed to the abstract ideas of 'local storage of information and resources at a user's computer' and for using such information and resources in 'presenting a partitioned display.'" *Priceline* Order at *74. The Court did not grant the motion, however, reasoning that the *Markman* process could clarify whether the patents claim an inventive concept

necessary to render them patent-eligible. *Id.* at *75-84.

The Court has since issued its *Markman* order. *See Int'l Bus. Mach v. Priceline Grp. Inc.*, 2016 U.S. Dist. LEXIS 150068 (D. Del. Oct. 28, 2016) ("*Markman* Order"). As construed, the claims do not recite an inventive concept limiting them to a specific technical solution as required under Federal Circuit law. Indeed, the Court rejected the very construction that IBM argued provided the claims with the necessary inventive concept. The construed claims merely recite abstract ideas and not a specific technical solution. The Federal Circuit has repeatedly found such claims to be patent-ineligible and impermissibly preemptive.

And the preemption risk here is imminent and alarming. As construed, the Filepp patent claims attempt to cover *all* ways for displaying information on a user's computer using locally stored information. Indeed, IBM has asserted the Filepp patents against numerous disparate companies with nothing in common except their use of the World Wide Web—ubiquitous technology that IBM did not invent. IBM cannot commandeer the innovations of others by patenting a result divorced from a specific technical solution for achieving it. "A patent is not good for an effect, or the result of a certain process" because such a patent "would prohibit all other persons from making the same thing by any means whatsoever." *Le Roy v. Tatham*, 55 U.S. 156, 175 (1852). The Filepp patents are not patent-eligible.

## III. STATEMENT OF THE FACTS

### A. The Filepp Patents

The two Filepp patents are related and share similar specifications. The '967 patent is titled "Method for Presenting Applications in an Interactive Service." The '849 patent is titled "Method for Presenting Advertising in an Interactive Service." Both were filed the same day, November 26, 1993, and each claims priority to the same application filed on July 15, 1988. The

'967 patent issued on August 18, 1998 and expired last year. The '849 patent issued on July 4, 2006—13 years after it was filed.

The patents are directed to generating screen displays for interactive applications (such as for making travel reservations or shopping) with integrated advertisements and commands to navigate within and between the applications. ('967 patent at 2:41-3:8; *see also id.* at 9:41-44; '849 patent at 2:14-67; *see also id.* at 3:5-67.) As the Court recognized, the goal of the '967 patent "was to enable a user to navigate easily through multiple applications in an interactive service" and the goal of the '849 patent was "to provide a method for presenting relevant advertising to a user of an interactive service without distracting the user or disrupting the user's session." *Priceline* Order at *71-72. According to the patents, the interactive applications are broken into "objects." ('967 patent at 5:55-58, 6:16-31; '849 patent at 5:57-60, 6:18-32). The patents explain that, in addition to storing these "objects" at a host computer, the "objects" can be stored locally on the user's computer and used to reconstruct the interactive applications on that computer. *Priceline* Order at *70-71 (citing to '967 patent at 5:52-58, 11:10-16; '849 patent at 5:54-60, 11:15-20).

Claim 1 of the '967 patent is the only independent claim and the one IBM specifically asserts in its complaint. It recites:

> 1. A method for presenting interactive applications on a computer network, the network including a multiplicity of user reception systems at which respective users may request a multiplicity of available applications, the respective reception systems including a monitor at which the applications requested can be presented as one or more screens of display, the method comprising the steps of:
>
>> a. generating a screen display at a respective reception system for a requested application, the screen display being generated by the respective reception system from data objects having a prescribed data structure, at least some of which objects may be stored at the respective reception system, the screen display including a plurality of partitions,

the partitions being constructed from objects, the objects being retrieved from the objects stored at the respective reception system, or if unavailable from the objects stored at the respective reception system, then from the network, such that at least some of the objects may be used in more than one application;

b. generating at least a first partition for presenting applications; and

c. generating concurrently with the first partition at least a second partition for presenting a plurality of command functions, the command functions including at least a first group which are selectable to permit movement between applications.

The '849 patent includes five independent claims (claims 1, 8, 13, 14 and 21). These claims are similar to claim 1 of the '967 patent. Whereas representative claim 1 of the '967 patent is directed to a "method for presenting interactive *applications*," the '849 patent claims are directed to a "method for presenting *advertising*." And whereas claim 1 of the '967 patent recites "partitions," the '849 patent claims "portions." Indeed, in the *Priceline* action, IBM admitted that the claims in both Filepp patents "are doing . . . the same thing" and are directed to "the same concept." (*Priceline* Action, D.I. 54 at 141:21-142:1.)

As the Court recognized in the *Priceline* Order, the technology described in the Filepp patents was purportedly conceived when IBM was developing the PRODIGY online service ("Prodigy"), which it launched in the 1980s. *Priceline* Order at *68. The Prodigy service no longer exists. It and other pre-Web online services were replaced by the now ubiquitous World Wide Web invented by Tim Berners-Lee in 1989. (D.I. 1 at ¶¶ 15, 17 (describing Prodigy as a "forerunner to today's Internet" that preceded the "existence of the World Wide Web").) Yet, IBM has asserted the Filepp patents against a wide variety of companies, including The Priceline Group Inc., Kayak Software Corporation, OpenTable, Inc., Priceline.com LLC (collectively the "Priceline defendants"), Amazon.com, Inc., and Groupon here, alleging that their *websites*— which are unrelated and were independently developed—infringe the patents. (*See Priceline* Ac-

tion, D.I. 1; *Int'l Bus. Machs. Corp. v. Amazon.com, Inc.*, Case No. 9:06-cv-00242, D.I. 45 (E.D. Tex. filed Oct. 23, 2006).)  Indeed, IBM proclaims that the Filepp patents—although describing now defunct pre-Web technology—"are fundamental to the efficient communication of Internet content" on the World Wide Web.  (D.I. 1 at ¶ 17; *Priceline* Action, D.I. 1 at ¶¶ 25, 30, 35; *Amazon.com*, Case No. 9:06-cv-00242, D.I. 45 at ¶¶ 4-21, 24; *id.* at D.I. 104 at 2-3.)

### B.   The Priceline Defendants' Motion to Dismiss the Filepp Patent Claims Under Section 101 and This Court's Order on That Motion

The *Priceline* defendants moved to dismiss IBM's Filepp patent claims under Section 101.  They asserted that claim 1 of the '967 patent and claim 1 of the '849 patent are directed to the abstract ideas of "'local storage of information and resources at a user's computer' and for using such information and resources in 'presenting a partitioned display.'"  *Priceline* Order at *74.  In its order on the motion to dismiss, the Court agreed, finding that "[d]efendants have accurately characterized the basic character of these claims."  *Id.*  Indeed, the Court stated:

> The heart of the [claimed] inventions are as Defendants have described them—generating partitioned screen displays for users from information stored at the user's computer . . . . The Court agrees with Defendants that the concepts of locally storing information and resources at a user's computer and presenting a partitioned display are abstractions "devoid of concrete or tangible applications." . . . These concepts are comparable to other similar concepts that have been deemed to be abstract in recent cases.

*Id.* at *75-76 (internal citation omitted).

The Court declined to grant the motion, reasoning that the *Markman* process could shed light on whether the claims recite a sufficiently inventive concept to transform their abstract ideas into a patent-eligible application.  The Court noted that "division of applications and advertising into discreet 'objects' that are stored locally and at the host computer appears to be a concrete application of the concept of 'local storage.'"  *Id.* at *78-79.  The Court thus found that the

construction of the term "objects" might determine whether the claims indeed recited this inventive concept. *Id.* at *78-83. IBM contended that the term "objects" as used in the claims means "separate data structures having a uniform, self-defining format that are known to the reception systems, including *e.g.*, data types, such as interpretable programs and presentation data for display at the monitor screen of the user's personal computer." *Id.* at *81. The Court held that such a construction, if adopted, "is meant to get to, *inter alia*, 'the underlying structure of the objects' as well as *how* the objects generate the display," thus potentially reciting the required inventive concept. *Id.* at *81 (emphasis in original).

### C. The Court's *Markman* Order and Its Constructions of Claim Terms in the Filepp Patents

On October 28, 2016, the Court issued its *Markman* order in the *Priceline* Action. In that order, the Court rejected IBM's proposed construction of the claim term "objects." Instead, the Court construed "objects" broadly as generic "data structures." The Court construed the term "application" as "information events composed of a sequence of one or more pages opened at a screen"—in other words, any information displayed on a screen. The Court construed the term "computer network" as "two or more interconnected computers"—a generic definition of a network. And the Court found that the term "partition" should have its plain and ordinary meaning, i.e., any division of a display. (*Priceline* Action, D.I. 235 at 3.) The *Markman* Order thus confirms that the claims of the Filepp patents are void of any inventive concept necessary to transform their recited abstract ideas into a patent-eligible application.

## IV. ARGUMENT

Patent eligibility under Section 101 is a question of law. *Tranxition, Inc. v. Lenovo (U.S.), Inc.*, No. 2015-1907, 2016 U.S. App. LEXIS 20523, at *3-4 (Fed. Cir. Nov. 16, 2016). The issue of patent eligibility may properly be decided on a motion for judgment on the plead-

ings. *Affinity Labs of Tex. v. Amazon.com Inc.*, 838 F.3d 1266, 1270 (Fed. Cir. 2016) ("*Affinity/Amazon*") (affirming grant of judgment on the pleadings); *Mortgage Grader, Inc. v. First Choice Loan Servs. Inc.*, 811 F.3d 1314, 1326 (Fed. Cir. 2016) (Stark, J., by designation) (finding patent claims ineligible on intrinsic record).

Under Section 101, "[w]hoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title." 35 U.S.C. § 101. As the Supreme Court has long recognized, "this provision contains an important implicit exception" for abstract ideas, laws of nature, and natural phenomena, which form the "basic tools of scientific and technological work." *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2354 (2014) (quoting *Ass'n for Molecular Pathology v. Myriad Genetics, Inc.*, 133 S. Ct. 2107, 2116 (2013)) (internal quotations omitted). The reason for the rule is important: "[M]onopolization of those tools through the grant of a patent might tend to impede innovation more than it would tend to promote it." *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1293 (2012). Accordingly, they belong to the "storehouse of knowledge . . . free to all . . . and reserved exclusively to none." *Bilski v. Kappos*, 561 U.S. 593, 602 (2010) (citation omitted).

The Supreme Court has adopted a two-step approach for determining patent eligibility under Section 101. *Alice*, 134 S. Ct. at 2355. First, a court must determine whether the claims are directed to one of the patent-ineligible concepts, such as an abstract idea. The Supreme Court has expressly declined to "delimit the precise contours of the 'abstract ideas' category," *id.* at 2357, and the Federal Circuit has found a wide range of claims directed to abstract ideas, including claims reciting processing and displaying of information. *See, e.g.*, *Elec. Power Grp.*,

*LLC v. Alstom S.A.*, 830 F.3d 1350, 1353 (Fed. Cir. 2016) (claims directed to collecting, processing, and displaying power grid data); *In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d 607 (Fed. Cir. 2016) (claims directed to collecting and storing information about a digital image and transmitting to a server where the information can be accessed by a user).

Second, if the claims are directed to an abstract idea, the court must decide whether the claims add an "inventive concept"—"an element or combination of elements that is 'sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself.'" *Alice*, 134 S. Ct. at 2355 (quoting *Mayo*, 132 S. Ct. at 1294). Unless these additional elements add something significant to the abstract idea, the claim is ineligible. *Id.* As the Supreme Court and Federal Circuit have repeatedly held, merely implementing an abstract idea using well-known computer components or functions, limiting the idea to a particular technological environment, or adding other token steps is insufficient. *Id.* at 2357-60; *see, e.g.*, *Bilski*, 561 U.S. at 610-11; *Ultramercial*, 772 F.3d at 714.

The claims of the Filepp patents, as construed by this Court, are unpatentable because they are directed to the abstract ideas of local storage of information and resources at a user's computer and presenting a partitioned display, without reciting a specific technological solution for achieving the claimed result. *See Priceline* Order at *76. Indeed, as confirmed by the Court's *Markman* order, the breathtaking sweep of the claims invokes precisely the preemption concern underlying Section 101 about which the Supreme Court has frequently warned. *See Alice*, 134 S. Ct. at 2354 (citing *Bilski,* 561 U.S. at 611-12; *Myriad*, 133 S. Ct. at 2116; *Mayo*, 132 S. Ct. at 1301).

**A.** ***Alice* Step One:  This Court Already Correctly Determined That the Filepp Patents Are Directed to Abstract Ideas.**

In the *Priceline* Order, the Court determined that the Filepp patents are directed to the abstract ideas of "locally storing information and resources at a user's computer and presenting a partitioned display."  *Priceline* Order at *76.  The Court found that these ideas "are abstractions 'devoid of a concrete or tangible application' . . . comparable to other similar concepts that have been deemed to be abstract in recent cases."  *Id.* at *76-77 (internal citation omitted).

Since this Court's *Priceline* Order, the Federal Circuit has continued to find concepts involving the manipulation, storage, and display of data—concepts claimed by the Filepp patents—to be abstract and ineligible.  For example, in *Electric Power Group*, the Federal Circuit found that "a process of gathering and analyzing information of a specified content, then displaying the results" was a combination of abstract ideas.  830 F.3d at 1354; *see also Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A.*, 776 F.3d 1343, 1347 (Fed. Cir. 2014) (finding "data collection, recognition, and storage" abstract); *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 712, 715 (Fed. Cir. 2014), *cert. denied sub nom. Ultramercial, LLC v. WildTangent, Inc.*, 135 S. Ct. 2907 (2015) (finding claim that included step of "facilitating the display of a sponsor message to the consumer" directed to an abstract idea).

While the Federal Circuit did recently uphold claims under *Alice* step one in *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1330 (Fed. Cir. 2016), those claims are nothing like the claims here.  The patent in *Enfis*h claimed "a specific implementation of a solution to a problem in the software arts"—an "innovative" computer database model.  *Id.* at 1330, 1339.  Its claims provided the requisite details—a specific "four-step algorithm"—to carry out a "specific improvement to the way computers operate," i.e., to store data in a database that "functions differently than [a] conventional database."  *Id.* at 1336-37.  No such algorithm or specific solution is

claimed in the Filepp patents.

The Filepp patent claims are also unlike the claims recently upheld under *Alice* step one in *McRO, Inc. v. Bandai Namco Games Am. Inc*., No. 2015-1080, 2016 U.S. App. LEXIS 16703, at *28-33 (Fed. Cir. Sept. 13, 2016). The *McRo* claims were "focused on a specific asserted improvement in computer animation, i.e., the automatic use of rules of a particular type." *Id*. at *28; *see also id.* at *26 (describing rules in the patent "defin[ing] morph weight sets as a function of the timing of phoneme sub-sequences"). They claimed a specific "technological improvement" to "achieve an improved technological result" to solve a problem in a specific technological field. *Id*. at *33. The claims at issue here recite no such detailed technical solution. They instead claim a functional result with nothing more than a suggestion to use conventional computer concepts to achieve it. As construed, the Filepp patents are as the Court previously found—directed to the abstract ideas of locally storing information and resources at a user's computer and presenting a partitioned display.

**B.     *Alice* Step Two:  The Court's *Markman* Order Confirms That the Claims Recite No Inventive Concept.**

Under *Alice* step two, claims do not recite an inventive concept if they do not recite a specific technical solution for achieving the claimed result to meaningfully limit the abstract idea. *See Priceline* Order at *33, *35, *38 & n.10, *39 & n.11, *42, *66; *see also Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1348 (Fed. Cir. 2015) (finding claim invalid where it "contains no restriction on how the result is accomplished"). Just last week, in *Apple, Inc. v. Ameranth, Inc.*, the Federal Circuit confirmed this well-established rule when it emphasized that "a claim that merely describes an effect or result dissociated from any method by which it is accomplished is not directed to patent-eligible subject matter." No. 2015-1703, 2016

U.S. App. LEXIS 21277, *28-29 (Fed. Cir. Nov. 29, 2016) (citation and internal quotations omitted). In making this determination, courts focus on "whether the claims focus on a specific means or method that improves the relevant technology or are directed to a result or effect that itself is the abstract idea and merely invoke generic processes and machinery." *Id.* at *20 (citations and internal quotations omitted). As construed, the Filepp patents merely claim functional results with no specific solution for accomplishing them. They are not patent-eligible.

### 1. The Independent Claims of the Filepp Patents Recite No Inventive Concept.

Although the Court indicated in its *Priceline* Order that IBM's detailed proposed construction of "objects" might constitute "a concrete application of the concept of 'local storage'" that is the "division of applications and advertising into discreet 'objects' that are stored locally and at the host computer" (*Priceline* Order at *78), the Court has now *rejected* IBM's "object" construction. *Markman* Order at *7-8. And the construction that the Court did adopt for the term "object" does not provide this concrete application of local storage.

The Court construed "object" as a "data structure." *Id.* A "data structure" is a "generic term." *eDekka LLC v. E Revolution Ventures, Inc.*, No. 15-CV-541 JRG, 2015 U.S. Dist. LEXIS 125990, at *21 (E.D. Tex. Sept. 21, 2015); *see also Datatrack Int'l, Inc. v. Medidata Solutions, Inc.*, No. 11 CV 458, 2015 U.S. Dist. LEXIS 151039, at *21 n.4 (N.D. Ohio Nov. 6, 2015) (finding that "data structure" is a "generic construction"). It is the ubiquitous building block for organizing and storing data common to all computer programs. "[T]here is nothing unique or inventive about using a 'data structure' to organize a collection of information—that is what a computer does." *Tranxition, Inc. v. Lenovo (U.S.) Inc.*, No. 12-cv-01065, 2015 U.S. Dist. LEXIS 89593, at *37 (D. Or. July 9, 2015), *aff'd* No. 2015-1907, 2016 U.S. App. LEXIS 20523 (Fed. Cir. Nov. 16, 2016). To specify a concrete technical solution, the claims must recite a specific

data structure and concrete steps for processing and combining those specific data structures. *Hewlett Packard Co. v. ServiceNow, Inc.*, No. 14-cv-570, 2015 US Dist. LEXIS 29384, at *21 (N.D. Cal. Mar. 10, 2015) ("[U]nspecified data structures are generic computing components unless defined by further details."); *compare Enfish*, 822 F.3d at 1339 (finding claims inventive because they did not recite "conventional data structures" but instead required "a specific type of data structure," the self-referential table). As construed, the Filepp patent claims do neither, but instead recite any use of any data structure organized in any manner and attempt to cover "any implementation of a data structure that achieves [the claimed] functionality." *Hewlett Packard*, 2015 US Dist. LEXIS 29384, at *22. The claims are thus directed to the result itself. "The claims here are 'recited too broadly and generically to be considered sufficiently specific and meaningful applications of their underlying abstract ideas.'" *Visual Memory LLC v. NVIDIA Corp.*, C.A. No. 15-789-RGA, 2016 U.S. Dist. LEXIS 69543, at *19 (D. Del. May 27, 2016) (quoting *DDR Holdings, LLC v. Hotels.com, L.P.,* 773 F.3d 1245, 1256 (Fed. Cir. 2014)); *see also Internet Patents*, 790 F.3d at 1348 (finding patent ineligible where claim "contain[ed] no restriction on how the result [was] accomplished"). The generic concept of data structures does not provide a concrete technical solution for breaking up an application or data (such as advertising) into re-usable components that can be recombined at the user's computer. *See Cyberfone Sys., LLC v. CNN Interactive Grp., Inc.*, 558 F. App'x 988, 992-93 (Fed. Cir. 2014) (claim directed to separating and distributing information is unpatentable). And storing generic data structures locally, rather than retrieving them again from a host computer (i.e., server), is likewise not an inventive concept. Courts in this district have routinely invalidated claims directed to such generic local caching. *See also Versata Software, Inc. v. NetBrain Techs., Inc.*, C.A. No. 13-676-LPS-CJB, 2015 U.S. Dist. LEXIS 132000, at *68-77 (D. Del. Sept. 30, 2015) (Burke,

M.J.) (invalidating claim directed to local storage in a web cache); *Visual Memory*, 2016 U.S. Dist. LEXIS 69543 (finding cache and memory limitations generic).

None of the other claim terms construed by the Court meaningfully limits the claims to any concrete technology or technique for using locally stored information to generate a display. The Court construed the term "application" as "information events composed of a sequence of one or more pages opened at a screen"—i.e., anything that can be displayed. *Markman* Order, 2016 U.S. Dist. LEXIS 150068, at *9-10. At oral argument on the motion to dismiss in the *Priceline* Action, IBM argued that the "applications" are constructed from objects "on-the-fly," but the claims do not recite this or describe how this is done. (*Priceline* Action, D.I. 54 at 137:6-10; 140:12-18.) It is well established that technical details recited in the *specification*, but not in the claims themselves, are irrelevant and cannot save the claims. *See Intellectual Ventures I LLC v. Symantec Corp.,* No. 2015-1769, 2016 U.S. App. LEXIS 17695, at *31 (Fed. Cir. Sept. 30, 2016) ("The district court erred in relying on technological details set forth in the patent's specification and not set forth in the claims to find an inventive concept."); *Apple*, 2016 U.S. App. LEXIS 21277, at *24-25; *Tranxition*, 2016 U.S. App. LEXIS 20523, at *7-8. The Court construed the term "partition" according to its plain and ordinary meaning, such that it includes any division of a display. (*Priceline* Action, D.I. 235 at 3.) And the Court construed a "computer network" as "two or more interconnected computers," with no particular architecture, protocol, or other requirement. *Markman* Order at *23, *29-30. As construed, the computer technologies recited in the claims are generic and non-inventive.

Indeed, the construed Filepp patent claims cover no more than collecting information from two (or more) conventional computers—one local, one not—and displaying the information in a conventional format in different parts of a conventional screen. As such, the claims are in-

distinguishable from those the Federal Circuit held ineligible in *Electric Power Group*, which similarly required "collecting data from multiple data sources, analyzing the data, and displaying the result." 830 F.3d at 1351. If anything, the claims held invalid in *Electric Power Group* were far more concrete and specific than those at issue here. Rather than reciting generic "data structures," the claims in *Electric Power Group* specified a detailed format for the information received from the different sources requiring "data streams comprising sub-second, time stamped synchronized phasor measurements." *Id.* Rather than reciting generic retrieval of data from any local or remote computer as in the Filepp patent claims (*e.g.*, claim 1 of the '967 patent ("the objects being retrieved")), the *Electric Power Group* claims required a specific process "wherein the measurements in each stream are collected in real time at geographically distinct points over the wide area of the interconnected electric power grid." *Id.* Unlike the Filepp patent claims, which do not specify at all how the collected information is to be processed to generate the display, the *Electric Power Group* claims required specific processing steps including "detecting and analyzing events in real-time from the plurality of data streams from the wide area based on at least one of limits, sensitivities and rates of change for one or more measurements from the data streams and dynamic stability metrics derived from analysis of the measurements from the data streams including at least one of frequency instability, voltages, power flows, phase angles, damping, and oscillation modes." *Id.* at 1352. And rather than the generic display of information with "partitions" as in the Filepp patent claims, the claims in *Electric Power Group* required specifically "displaying concurrent visualization of measurements from the data streams and the dynamic stability metrics directed to the wide area of the interconnected electric power grid." *Id.* The Filepp patent claims cannot survive the Federal Circuit's decision in *Electric Power Group*.

The Filepp patent claims are also indistinguishable from those Judge Robinson and the

Federal Circuit found ineligible in *Cyberfone*. *Cyberfone*, 558 F. App'x 988. Rather than combining information from different sources for display, the *Cyberfone* claims covered the reverse process of "obtaining data, 'exploding' the data, i.e., separating it into component parts, and sending those parts to different destinations." *Id.* at 990. In whichever direction the process is performed, it is equally abstract. As the Federal Circuit held in *Cyberfone*, "the well-known concept of categorical data storage, i.e., the idea of collecting information in classified form, then separating and transmitting that information according to its classification, is an abstract idea that is not patent eligible." *Id.* at 992.

And contrary to IBM's argument, it is irrelevant whether combining data at a local computer was novel at the time of the Filepp patents. (*See Priceline* Action, D.I. 54 at 137:6-10; 140:12-18 (IBM arguing the novelty of constructing display from locally stored objects).) "The 'novelty' of any element or steps in a process, or even of the process itself is of no relevance in determining whether the subject matter of a claim falls within the § 101 categories of possibly patentable subject matter." *Diamond v. Diehr*, 450 U.S. 175, 188-89 (1981); *Affinity/Amazon*, 838 F.3d at 1270 n.3 ("[T]he eligibility finding does not turn on the lack of novelty of the claim; it turns on the fact that the claim is drawn to any embodiment of an abstract idea.").

No other claim element provides the required concrete solution to render the claims of the Filepp patents patent-eligible. For example, claim 1 of the '849 patent recites "structuring applications so that they may be presented" and "configuring the advertising as objects [i.e., generic data structures] that include advertising data." The claim, however, provides no technical detail for how these functions are accomplished. It instead claims only a result—i.e., store and structure the advertising so that the system will work—without providing a specific solution to make it work. Claims 8 and 21 require "storing a predetermined amount of the advertising data in a

store established at the respective reception systems." The claims do not provide any detail regarding the claimed "predetermined amount" and effectively require nothing more than storing information at the user's computer—a conventional result. Several independent claims recite "selectively" storing data, such as targeted advertising customized to a user, which is again a generic, functional result that the specification itself describes as "conventional marketing analysis techniques." *Markman* Order at *26-28; ('967 patent at 10:22-25).

The claim limitations likewise do not provide an inventive concept when considered as an ordered combination. *See Priceline* Order at *77. The overall combination claimed in the patents is as high-level and generic as the individual claim elements "application," "partition," "computer network," and "object" themselves. Nor do the claims specify a precise or novel arrangement or configuration of components. Instead, the claims describe only the generic storage and generic display of generic data. *Synopsys, Inc. v. Mentor Graphics Corp.*, 839 F.3d 1138, 1149 (Fed. Cir. 2016) ("The § 101 inquiry must focus on the language of the Asserted Claims themselves."). The Filepp patent claims stand in sharp contrast to claims the Federal Circuit recently found as reciting the requisite inventive concepts. In *Amdocs*, the Federal Circuit relied on a detailed construction of the term "enhance" that required a specific organization of various networking components operating in an unconventional manner. *Amdocs (Isr.) Ltd. v. Openet Telecom, Inc.*, No. 2015-1180, 2016 U.S. App. LEXIS 19593, at *6, *27-28 (Fed. Cir. Nov. 1, 2016). No such specific arrangement of components is required by the Filepp patent claims.

### 2. The Dependent Claims of the Filepp Patents Recite No Inventive Concept.

The dependent claims add nothing inventive to the independent claims. These claims recite the routine steps of storing, transferring, and displaying information over a generic computer network, or conventional ways of switching between applications. For example, claims 3-5, 10-

16

14 and 17 of the '967 patent recite conventional ways of storing objects at a local computer. (*See, e.g.*, '967 patent at 5:35-39 (personal computers include "a hard-disk drive 420 for storing the application software and operating system software")).) Claims 2-11 also recite conventional commands for "navigating" between applications. The Court made clear in its *Markman* Order that "navigation" simply means "moving"; this and other similar claim limitations do not limit the claims in any material way or provide a specific solution for switching between applications. *See Markman* Order at *18-22. Claim 13 recites that the "objects are stored at the respective reception systems in accordance with a predetermined plan . . . providing the objects with a storage control parameter." Claims 4, 14, and 17 recite similar limitations. But the claims do not provide any detail about the "predetermined plan" or the "storage control parameter," or how such features would operate to facilitate local storage. Indeed, the Court's construction of "storage control parameter" as any "parameter that identifies the storage characteristic for the object, which may be for initial and/or continued storage" confirms that this element does not meaningfully limit the claims. *Markman* Order at *22-23. Claims 12-17 are directed to the concept of creating divisions in a display, a concept the patent concedes is routine and conventional. (*See* '967 patent at 9:41-44 ("Window page partitions 275 [are] well known in the art . . . .").)

Dependent claims 2, 9-12, 15, and 22-25 of the '849 patent relate to transferring advertising information when it is not available or when it falls below a "predetermined level" at the user's local computer. But the claims do not define this required "predetermined level" or specify how it is predetermined. (*See* '849 patent at 2:20-30 (discussing the "conventional manner" of supplying advertising "from a host to a user site")).) Finally, claims 3-7 and 16-20 refer to collecting data about users (*e.g.*, information about "applications requested," "demographic data," "geographical location," or a combination thereof). The generation of such data was well under-

stood at the time, even according to the patents themselves. (*See id.* at 10:23-27 (referencing "conventional marketing analysis techniques" for establishing "the user characterizations").)

The claims of the Filepp patents claim nothing "significantly more" than the abstract ideas that this Court has already found to be the focus of the claims. *Alice*, 134 S. Ct. at 2359-60. They cannot survive the second step of the *Alice* test.

### C.     The Filepp Patents Raise a Daunting Preemption Risk.

The Supreme Court has consistently identified preemption as the "concern that undergirds our § 101 jurisprudence." *Alice*, 134 S. Ct. at 2358; *see also Bilski*, 561 U.S. at 612 (allowing patent "would pre-empt use of this approach in all fields, and would effectively grant a monopoly over an abstract idea."). In the case of the Filepp patents, the Court previously deferred opining on the preemption risk because "the claim construction process will better inform whether the claims are specific enough to avoid disproportionately preempting all applications of the idea." *Priceline* Order at *82.

Now that the claims have been construed, the preemption threat of the Filepp patents can be fully assessed, and this risk—when weighed against the minimal contribution of the patents to the public store of knowledge—is unacceptably high. As construed, an "application" is any organized display of information; a "partition" is any division of any sort of display; a "computer network" is any generic set of computers connected using any existing or to-be-developed network technology; and an "object" is any data that can be displayed or used by any software in any manner to generate a display. As construed, the claims potentially cover any technology that generates a meaningful display of information to a user of a computer using some locally stored information. *See Elec. Power Grp.*, 830 F.3d at 1356 ("rather than claiming some specific way . . . they purport to monopolize every potential solution to the problem") (internal quotations

18

omitted).

IBM's complaint in this case, and others, against disparate companies and their independently developed technologies, confirms both the scope of preemption and IBM's intent to exploit the Filepp patents to tax the entire World Wide Web. (D.I. 1 at ¶ 17.) As the Supreme Court has held, "the underlying functional concern here is a relative one: how much future innovation is foreclosed relative to the contribution of the inventor." *Mayo*, 132 S. Ct. at 1302-03. In this case, IBM may have developed technology that is described in the specification and implemented in the Prodigy system. But its patent claims are not tethered to that specific technology and instead attempt to cover *all* other ways of implementing the result of locally storing information at a user's computer for presenting a partitioned display. Because the claims do not specify the technology used to practice them, anyone wishing to achieve that result—including by, allegedly, operating a modern website—cannot do so without risking suit from IBM. The Court should not permit IBM to circumvent a longstanding protection that the patent law has afforded to the public: "A patent is not good for an effect, or the result of a certain process" because such a patent "would prohibit all other persons from making the same thing by any means whatsoever." *Le Roy*, 55 U.S. at 175; *see Alice*, 134 S. Ct. at 2354; *O'Reilly v. Morse*, 56 U.S. 62, 113 (1854) (claims may not cover results where "it matters not by what process or machinery the result is accomplished"); *Apple*, 2016 U.S. App. LEXIS 21277, at *28-29 ("Generally, a claim that merely describes an effect or result dissociated from any method by which it is accomplished is not directed to patent eligible subject matter.") (citation and internal quotations omitted).

## V. CONCLUSION

For the foregoing reasons, Groupon requests that the Court enter a judgment pursuant to Federal Rule of Civil Procedure 12(c) that the claims of the Filepp patents are invalid for failing to claim patent-eligible subject matter.

ASHBY & GEDDES

*/s/ Andrew C. Mayo*

_____
John G. Day (#2403)
Andrew C. Mayo (#5207)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE  19899
(302) 654-1888
jday@ashby-geddes.com
amayo@ashby-geddes.com

*Of Counsel:*

J. David Hadden
Saina S. Shamilov
Phillip J. Haack
Adam M. Lewin
FENWICK & WEST LLP
Silicon Valley Center
801 California Street, 12th Floor
Mountain View, CA  94041
(650) 988-8500

*Attorneys for Defendant Groupon, Inc.*

Dated: December 13, 2016