# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| INTERNATIONAL BUSINESS MACHINES CORPORATION, | ) ) ) | |
| Plaintiff, | ) ) | C.A. No. 16-122-LPS-CJB |
| v. | ) ) | **JURY TRIAL DEMANDED** |
| GROUPON, INC. | ) ) | |
| Defendant. | ) | |

## IBM'S OPPOSITION TO GROUPON'S MOTION
## FOR JUDGMENT ON THE PLEADINGS

OF COUNSEL:

John M. Desmarais
Jon T. Hohenthaner
Karim Oussayef
Laurie N. Stempler
Robert C. Harrits
Elizabeth Kimmel
DESMARAIS LLP
230 Park Avenue
New York, NY 10169
Tel: (212) 351-3400

Dated: January 17, 2017
1242291 / 43155

David E. Moore (#3983)
Bindu A. Palapura (#5370)
Stephanie E. O'Byrne (#4446)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801
Tel: (302) 984-6000
dmoore@potteranderson.com
bpalapura@potteranderson.com
sobyrne@potteranderson.com

*Attorneys for Plaintiff International Business Machines Corporation*

# TABLE OF CONTENTS

**Page**

NATURE AND STAGE OF THE PROCEEDINGS .................................................... 1

SUMMARY OF THE ARGUMENT ........................................................................ 1

STATEMENT OF THE FACTS .............................................................................. 2

**I.** The Filepp Patents Improve Computer And Network Functionality By Distributing Processing To User Reception Systems To Solve Problems With Conventional Systems.................................................................... 2

**II.** This Court Has Already Denied A Motion To Dismiss The Patents-In-Suit On Patent-Eligibility Grounds. ............................................................... 3

**III.** The Patent Trial And Appeal Board Found That The Claims Of The '849 Patent Were Patent-Eligible Under Current Law Without The Benefit Of Claim Construction. ................................................................................. 3

ARGUMENT ........................................................................................................ 4

**I.** Applicable Legal Standard................................................................... 4

    **A.** Motion For Judgment On The Pleadings ................................. 4

    **B.** The Framework For A Section 101 Analysis ........................... 4

        **1.** Step One:  Is The Claim Directed To A Patent-Ineligible Concept? ........................................................ 4

        **2.** Step Two:  Does The Claim Include An Inventive Concept?......... 5

        **3.** Preemption ................................................................. 6

**II.** The Claims Of The Filepp Patents Are Not Invalid Under 35 U.S.C. § 101.......... 6

    **A.** *Alice* Step One: The Filepp Claims Are Not Directed To An Abstract Idea. ................................................................... 6

        **1.** The Filepp Claims Provide An Improvement In Computer Functionality. .................................................. 6

        **2.** Groupon's Reliance On The Priceline Court's Pre-*Enfish* Decision Is Misplaced. ............................................ 8

        **3.** The PTAB Correctly Found That The '849 Patent Does Not Claim An Abstract Idea Under Current Case Law. ....................... 9

**4.**     Groupon's Abstract Idea Cases Are Distinguishable.................... 10

**B.**     The Filepp Patents Claim Inventive Concepts (*Alice* Step Two). ........... 12

      **1.**     The Filepp Patents Solve Computer-Centric Problems With Computer-Centric Solutions. ....................................................... 12

      **2.**     The Court's Claim Construction Order Demonstrates That The Filepp Patents Claims Inventive Concepts. .......................... 13

      **3.**     Defendants Have Not Analyzed Key Limitations From The Dependent Claims. ...................................................................... 16

      **4.**     Groupon's *Alice* Step Two Cases Are Distinguishable. .............. 17

**C.**     Defendants Have Not Shown That The Filepp Patents Raise Preemption Issues. ................................................................................... 19

      **1.**     The Filepp Patents Allow For Myriad Alternative Ways To Display Information To A User. ................................................... 19

      **2.**     Groupon Has Not Shown That Any Alleged Preemption Issues Can Be Decided At This Stage Of The Case. .................... 20

CONCLUSION ........................................................................................................ 20

# TABLE OF AUTHORITIES

**Cases**                                                                                       **Page(s)**

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
    134 S. Ct. 2347 (2014) ............................................................................................ passim

*Apple, Inc., v. Ameranth, Inc.*
    No. 2015-1703, C.A. No. 16-122-LPS-CJB, 2016 U.S. App. LEXIS 21277 (Fed.
    Cir. Nov. 29, 2016) ........................................................................................... 17, 18

*Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*,
    827 F.3d 1341 (Fed. Cir. 2016) ................................................................. 6, 13, 15

*Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*,
    776 F.3d 1343 (Fed. Cir. 2014) ....................................................................... 10, 11

*Cuozzo Speed Techs. LLC v. Lee*,
    136 S. Ct. 2131 (2016) ........................................................................................ 10

*Cyberfone Sys., LLC v. CNN Interactive Grp., Inc.*,
    558 F. App'x 988 (Fed. Cir. 2014) ................................................................. 17, 18

*DDR Holdings, LLC v. Hotels.com, LP*,
    773 F.3d 1245 (Fed. Cir. 2014) ..................................................................... passim

*Elec. Power Grp., LLC v. Alstom S.A.*,
    830 F.3d 1350 (Fed. Cir. 2016) .......................................................................... 10

*Enfish LLC v. Microsoft Corp.*,
    822 F.3d 1327 (Fed. Cir. 2016) ....................................................................... passim

*Helios Software, LLC v. SpectorSoft Corp.*,
    C.A. No. 12-081-LPS, 2014 WL 4796111 (D. Del. Sept. 25, 2014) ............................ 18

*Intellectual Ventures I LLC v. Symantec Corp.*,
    C.A. No. 10-1067-LPS, 2015 WL 1843528 (D. Del. Apr. 22, 2015) ................................ 6

*Int'l Bus. Machines Corp. v. Priceline Grp. Inc.*,
    C.A. No. 15-137-LPS-CJB, 2016 WL 1253472 (D. Del. Mar. 30, 2016) ........................ 3

*Int'l Bus. Machines Corp. v. The Priceline Grp. Inc.*,
    C.A. No. 15-137-LPS-CJB, 2016 WL 626495 (D. Del. Feb. 16, 2016) ............................ 3

*Int'l Bus. Machines Corp. v. The Priceline Grp. Inc.*,
    C.A. No. 15-137-LPS-CJB, 2016 WL 6405824 (D. Del. Oct. 28, 2016) ........................ 15

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*,
    132 S. Ct. 1289 (2012) ........................................................................................ 11

*MAZ Encryption Techs. LLC v. Blackberry Corp.*,
  C.A. No. 13-304-LPS, 2016 WL 5661981 (D. Del. Sept. 29, 2016) ........................ 5, 6, 20

*McRO, Inc. v. Bandai Namco Games America, Inc.*,
  837 F.3d 1299 (Fed. Cir. 2016) ............................................................................. 1, 5, 8, 9

*Rosenau v. Unifund Corp.*,
  539 F.3d 218 (3d Cir. 2008) ............................................................................................ 4

*Ultramercial, Inc. v. Hulu, LLC*,
  772 F.3d 709 (Fed. Cir. 2014) ................................................................................. 10, 11

## Administrative Decisions

*Kayak Software Corp. v. Int'l Bus. Machs. Corp.*,
  Case CBM2016-00075, Paper 16 (PTAB Dec. 16, 2016) ................................................. 4

*Kayak Software Corp. v. Int'l Bus. Machs. Corp.*, Case CBM2016-00077, Paper 15
  (PTAB Dec. 15, 2016) ...................................................................................................... 3

## Statutes

35 U.S.C. § 101 ....................................................................................................... passim

## NATURE AND STAGE OF THE PROCEEDINGS

On March 2, 2016, Plaintiff International Business Machines ("IBM") filed its Complaint For Patent Infringement ("Complaint") against Groupon, Inc. ("Groupon") for infringement of United States Patent Nos. 5,796,967 ("the '967 patent"), 7,072,849 ("the '849 patent"), 5,961,601 ("the '601 patent"), and 7,631,346 ("the '346 patent") (collectively, the "patents-in-suit") (D.I. 1). On August 16, 2016, Groupon answered IBM's Complaint. (D.I. 13). On December 13, 2016, Groupon brought its Motion Of Groupon, Inc. For Judgment On The Pleadings That U.S. Patent No. 5,796,967 And U.S. Patent No. 7,072,849 Are Directed To Ineligible Subject Matter And Thus Invalid Under 35 U.S.C. § 101 ("Groupon's Motion") (D.I. 29) and filed an associated Memorandum Of Law (D.I. 30).

## SUMMARY OF THE ARGUMENT

Groupon's Motion attempts to relitigate challenges to the patent-eligibility of the '967 and '849 patent claims that have already been denied by this Court and the Patent Trial and Appeal Board ("PTAB"). Groupon hinges its argument on the flawed assumption that the Court's construction of the claim terms, and in particular the term "object," is sufficient to obtain a different result. But Groupon's position contradicts recent case law and the reasoning of both this Court and the PTAB. First, this Court already determined that the claims of the '967 and '849 patents are "an attempt to improve the functioning of computer networks." Under the recent cases of *Enfish* and *McRO*, that finding alone is sufficient to conclude that the claims are not directed to abstract concepts. Second, the PTAB determined that the claims of the '967 and '849 patents are patent-eligible without relying on any particular constructions for the claim terms. Third, Groupon does not address this Court's reasoning in construing the term "object(s)," which confirms that the "ordered combination" of elements comprise inventive concepts. Nor does Groupon address the Court's construction of several other key claim terms

that incorporate the patents' inventive aspects.  Fourth, Groupon has not met its burden to show

that it is entitled to judgment as a matter of law in light of unresolved factual issues concerning

Groupon's hotly contested allegations that the claims were not sufficiently innovative in the

1980s and that the claims preempt "all ways for displaying information on a user's computer

using locally stored information."  Groupon also fails to show that the claims it analyzes are

representative.  Accordingly, Groupon's motion, like the previous challenges to the '967 and

'849 patents, should be denied.

## STATEMENT OF THE FACTS

**I.     The Filepp Patents Improve Computer And Network Functionality By Distributing Processing To User Reception Systems To Solve Problems With Conventional Systems.**

The '967 and '849 patents ("the Filepp Patents") were conceived in the 1980s during the

development of the PRODIGY online service, a precursor to the world wide web.  D.I. 1 ¶ 15.

Before PRODIGY, conventional interactive applications used a "dumb terminal" approach,

which relied exclusively on the processing power of host systems that sequentially received user

data process requests, executed them, and supplied the entire application display back to the user.

Ex. A; Ex. D at 1-2; *see also* D.I. 1 ¶ 15.  The Filepp Patents, in contrast, rely on the processing

power of the user reception systems, such as personal computers, in addition to the host system.

Ex. D at 2-3; D.I. 1 ¶ 16.  Using the claimed inventions, user reception systems can retrieve from

the network only new parts of the applications or "objects," as they are needed, instead of

waiting for the host to process, modify, and send the entire application display back to the user.

Exs. B-C; Ex. D at 2-3; D.I. 1 ¶ 16.  This distributed approach disclosed and claimed by the

Filepp Patents enables network hosts to serve more users, more quickly than conventional

approaches, and allowed PRODIGY to become one of the most popular providers of interactive

applications at the time.  D.I. 1 at ¶ 17.

## II.    This Court Has Already Denied A Motion To Dismiss The Patents-In-Suit On Patent-Eligibility Grounds.

IBM also asserts the patents-in-suit in the co-pending *Int'l Bus. Machines Corp. v. The Priceline Grp. Inc.*, C.A. No. 15-137-LPS-CJB (D. Del. filed Feb. 9, 2015) (the "*Priceline Action*").  On May 4, 2015, the *Priceline* Defendants filed a motion to dismiss pursuant to 35 U.S.C. § 101 against all four patents-in-suit.  On February 16, 2016, Magistrate Judge Burke recommended that motion be denied without prejudice with respect to each of the patents.  *See Int'l Bus. Machines Corp. v. The Priceline Grp. Inc.*, C.A. No. 15-137-LPS-CJB, 2016 WL 626495 (D. Del. Feb. 16, 2016) (the "Report And Recommendation").  In reaching its decision, this Court found that "[c]onsidered as a whole, the claims [of the Filepp Patents] can be seen to attempt to improve the functioning of computer networks by reducing the demand on the host for processing resources."  *Id.* at *23.  On March 30, 2016, the Court adopted the Report And Recommendation.  *Int'l Bus. Machines Corp. v. Priceline Grp. Inc.*, C.A. No. 15-137-LPS-CJB, 2016 WL 1253472 (D. Del. Mar. 30, 2016).

## III.    The Patent Trial And Appeal Board Found That The Claims Of The '849 Patent Were Patent-Eligible Under Current Law Without The Benefit Of Claim Construction.

On May 17, 2016, the *Priceline* Defendants filed petitions for covered business method ("CBM") review before the PTAB—again challenging the Filepp Patents under 35 U.S.C. § 101.[1]  With respect to the '967 patent, the PTAB found that the '967 patent was not a business method patent and thus not eligible for CBM review.  Ex. E at 15, *Kayak Software Corp. v. Int'l Bus. Machs. Corp.*, Case CBM2016-00077, Paper 15, at 15 (PTAB Dec. 15, 2016).  With respect to the '849 patent, the PTAB found that "Petitioner has not shown sufficiently that independent claims 1 and 21 are directed to an unpatentable 'abstract idea.'"  Ex. F at 18-20, Ex. E at 15,

---

[1] The *Priceline* Defendants also filed two CBM petitions against the Filepp Patents on other grounds.  Those petitions were also denied.  *See Priceline* Action, D.I. 285.

*Kayak Software Corp. v. Int'l Bus. Machs. Corp.*, Case CBM2016-00075, Paper 16, at 18-20

(PTAB Dec. 15, 2016).  In so holding, the PTAB stated, "we agree with Patent Owner [IBM

that] the disclosure of the '849 patent itself is almost exclusively directed to solving a problem

arising in computer technology (i.e., bandwidth) with a computerized solution (i.e., local

storage)."  *Id.* at 19.

## ARGUMENT

## I.     Applicable Legal Standard

### A.     Motion For Judgment On The Pleadings

When considering a motion for judgment on the pleadings, the Court must accept all

factual allegations in the complaint as true and view them in the light most favorable to the non-

moving party.  *See Rosenau v. Unifund Corp.*, 539 F.3d 218, 221 (3d Cir. 2008).  The burden is

on the movant to "clearly establish[] that no material issue of fact remains to be resolved and that

he is entitled to judgment as a matter of law."  *Id.*

### B.     The Framework For A Section 101 Analysis

Courts analyze validity under 35 U.S.C. § 101 pursuant to a two-step process ("*Alice* Step

One" and "*Alice* Step Two").  *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2355

(2014).

#### 1.     Step One:  Is The Claim Directed To A Patent-Ineligible Concept?

*Alice* Step One evaluates whether the claims as a whole are "directed to" a patent-

ineligible concept, such as an abstract idea.  *Alice*, 134 S. Ct. at 2355.  "That formulation plainly

contemplates that the first step of the inquiry is a meaningful one, i.e., that a substantial class of

claims ***are not*** directed to a patent-ineligible concept."  *Enfish LLC v. Microsoft Corp.*, 822 F.3d

1327, 1335 (Fed. Cir. 2016) (emphasis added).  In asking this threshold question, courts must

"tread carefully" to focus on the specific claimed solution rather than high-level simplifications

because "[a]t some level, all inventions . . . embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas." *Alice*, 134 S. Ct. at 2354. (internal quotes omitted). Courts should also "look to the claims as an ordered combination, without ignoring the requirements of the individual steps." *McRO, Inc. v. Bandai Namco Games America, Inc.,* 837 F.3d 1299, 1312 (Fed. Cir. 2016).

The recent *Enfish* decision clarified that at *Alice* Step One, Courts should look to whether the claims are "directed to ***an improvement to computer functionality*** versus being directed to an abstract idea." *MAZ Encryption Techs. LLC v. Blackberry Corp.*, C.A. No. 13-304-LPS, 2016 WL 5661981, at *3 (D. Del. Sept. 29, 2016) (*citing Enfish*, 822 F.3d at 1335) (emphasis in original)). "For that reason, the first step in the *Alice* inquiry in this case asks whether the focus of the claims is on the specific asserted improvement in computer capabilities . . . or, instead, on a process that qualifies as an 'abstract idea' for which computers are invoked merely as a tool." *Enfish*, 822 F.3d at 1335-36. Furthermore, "a patent specification's disparagement of prior art or 'conventional' implementations may bolster a conclusion that claims are directed to a non-abstract improvement of technology rather than an abstract idea." *MAZ Encryption*, 2016 WL 5661981 at *3 (*citing Enfish*, 822 F.3d at 1336).

### 2. Step Two: Does The Claim Include An Inventive Concept?

Claims directed to abstract ideas under *Alice* Step One may still be valid under *Alice* Step Two if they include an "inventive concept," in other words, "an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself." *Alice*, 134 S. Ct. at 2355 (internal quotes omitted). For example, when a claim addresses a challenge "specifically arising in the realm of computer networks," and "the claimed solution is necessarily rooted in computer technology," the claim is patent-eligible under *Alice* Step Two. *DDR Holdings, LLC v. Hotels.com, LP*, 773 F.3d 1245,

1257 (Fed. Cir. 2014).  Likewise, claims that specify *how* interactions between computers may be manipulated in a way that overrides routine and conventional computer activity include an inventive concept.  *Id.* at 1258.  Just as with *Alice* Step One, *Alice* Step Two looks at the ordered combination of the claims rather that analyzing the individual elements to determine whether they were known in the art.  *Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1349-1350 (Fed. Cir. 2016).

### 3. Preemption

Both *Alice* Steps can involve the issue of preemption.  *MAZ Encryption*, 2016 WL 5661981, at *4 (*citing McRO*, 2016 WL 4896481, at *9).  The preemption issue concerns only whether the claims "***disproportionately*** tie up the use of the underlying ideas."  *Intellectual Ventures I LLC v. Symantec Corp.*, C.A. No. 10-1067-LPS, 2015 WL 1843528, at *17 (D. Del. Apr. 22, 2015) (internal quotes omitted) (emphasis in original).  Where claims are limited to a specific way of carrying out an abstract idea, they allow for other unclaimed mechanisms and do not raise preemption concerns.  *See, e.g., Bascom*, 827 F.3d at 1350.  Moreover, breadth is not preemption: "it is not the policy of patent law to permit only narrow claims when an inventor has made a new, broad invention.  When an invention is new and unobvious and described and enabled, commensurate patent rights are not barred on policy grounds."  *Id.* at 1353 (Newman, J., concurring).

## II. The Claims Of The Filepp Patents Are Not Invalid Under 35 U.S.C. § 101.

### A. *Alice* Step One: The Filepp Claims Are Not Directed To An Abstract Idea.

#### 1. The Filepp Claims Provide An Improvement In Computer Functionality.

The Federal Circuit found the *Enfish* claims to be directed to a patent-eligible improvement to computer functionality because those claims provided faster database search

times and smaller memory requirements than prior art databases. *Enfish*, 822 F.3d at 1337. Like the claims at issue in *Enfish*, the Filepp Patents are directed to achieving an improvement in computer capabilities—specifically, improving the capabilities of network hosts and computer networks.

In network-based interactive services before the Filepp Patents, network hosts had to perform all of the processing and store all of the applications a user might request through a "dumb terminal." '967 patent, at 1:37-55, 10:38-57; '849 patent, at 1:34-52, 10:42-61. That centralized arrangement resulted in slower response times and limits on the number of users a single host could serve. *Id.* In contrast to those conventional centralized networks, the Filepp Patents leverage the storage and processing capabilities of users' reception systems to reduce the demand on the host for processing resources by structuring applications and advertising as objects and selectively storing and retrieving those objects at the reception system. *See, e.g.,* '967 patent, at 7:3-12, 10:60-65, 24:37-42; '849 patent, at 7:4-13, 12:38-41, 33:63-65. The reduced demand on the host for processing resources also enables the host to respond more quickly to user requests and to serve more users, more quickly than hosts in prior art networks. '967 Patent, at 7:8-12, 10:54-65, 28:9-19; '849 patent, at 1:43-52, 7:9-13, 10:64-11:2, 28:22-32, 34:37-44. In other words, the Filepp Patents enable hosts to serve users that they could not have served in prior art approaches and improve the functionality of the host and the network.

The claims of the Filepp Patents incorporate the specification's improvement in computer technology. Among other limitations, claim 1 of the '967 patent recites: "the screen display being generated by the respective reception system from data objects having a prescribed data structure" and "the objects being retrieved from the objects stored at the respective reception system, or if unavailable from the objects stored at the respective reception system, then from the

network."  Claims 1, 13, and 14 of the '849 patent recite, "configuring the advertising as objects that include advertising data" and "selectively storing advertising objects at a store established at the reception system."  And claims 8 and 21 of the '849 patent recite, "structuring advertising so that it may be selectively supplied to and retrieved at the reception systems for presentation to the respective users in accordance with the characterizations established for the respective reception system users" and "storing a predetermined amount of the advertising data in a store established at the respective reception systems."

The above claims include the features for reducing demand on the host that are discussed in the specification: breaking down content into objects and selectively supplying, storing, or retrieving those objects from the reception system or host on an as-needed basis.  Because the claims reduce the demand on the host for processing resources, those claims enable the host to serve more users, more quickly.  Thus, the claims of the Filepp Patents are directed to an improvement in computer capabilities, not an abstract idea.  And, indeed, the reduced demand on the host for processing resources achieved by the claims of the Filepp Patents is just like the smaller memory requirements achieved by the claims held patent-eligible in *Enfish*.  822 F.3d at 1337.  The Filepp claims pass *Alice* Step One.

## 2. Groupon's Reliance On The Priceline Court's Pre-*Enfish* Decision Is Misplaced.

Groupon makes much of the fact that the Report And Recommendation suggested that the Filepp claims are directed to "generating partitioned screen displays for users from information stored at the user's computer" and that such a concept appeared abstract.  D.I. 30 at 9-10; Report And Recommendation at *22-23.  But the *Priceline* Report And Recommendation issued in February of 2016, without the benefit of the Federal Circuit's guidance in *Enfish* and *McRO*, which the Federal Circuit decided in May 2016 and September 2016, respectively.  In

*Enfish*, the Federal Circuit instructed courts to look at "whether the claims are directed to an improvement to computer functionality versus being directed to an abstract idea, even at the first step of the *Alice* analysis." *Enfish*, 822 F.3d at 1335. The Federal Circuit repeated that guidance in *McRO*, holding that a claim "designed to achieve an improved technological result" was not directed to an abstract idea. 837 F.3d at 1315. Therefore, even if the claims are directed to "generating partitioned screen displays for users from information stored at the user's computer," that concept is designed to achieve an improved technological result and, under *Enfish* and *McRO*, is not abstract. Indeed, the Report And Recommendation has already concluded that: "Considered as a whole, the claims can be seen to attempt to **improve the functioning of computer networks** by reducing the demand on the host for processing resources." Report And Recommendation, at *23 (internal quotes omitted). Under *Enfish* and *McRO*, this Court's prior analysis confirms that the claims are patent eligible under *Alice* Step One. *McRO*, 837 F.3d at 1315; *Enfish*, 822 F.3d at 1335.

> **3.     The PTAB Correctly Found That The '849 Patent Does Not Claim An Abstract Idea Under Current Case Law.**

The PTAB's recent decision to deny CBM review of the '849 patent on patent-eligibility grounds confirms that the Filepp Patents pass *Alice* Step One. Ex. F. In their PTAB petition, the *Priceline* Defendants argued that claim 1 of the '849 patent was directed to "generating portioned screen displays for users (with advertisements and applications displayed concurrently) from information stored at the user's computer"—as the Report And Recommendation found— and that claim 21 was directed to "presenting a user with targeted advertising that is stored at the user's computer." *Id.* at 15. The *Priceline* Defendants then argued that those concepts were abstract. *Id.* Based on the *Enfish* decision, the PTAB found that even if the *Priceline* Defendants were correct in identifying the concepts to which the claims were directed, those

concepts are not abstract. *Id.* at 15-16.

The PTAB found the claims of the '849 patent were directed to technological improvements because "if the computer related elements were removed, the characterizations in *Enfish* as to what the claim was 'directed to' would be nonsensical." *Id.* at 18. The PTAB also found that "the disclosure of the '849 patent itself is almost exclusively directed to solving a problem arising in computer technology (i.e., bandwidth) with a computerized solution (i.e., local storage)." *Id.* at 19. Thus, the PTAB concluded that the Petitioners had not shown that the claims were directed to an "abstract idea" under *Alice* Step One and there was no need to analyze the claims under *Alice* Step Two. *Id.* at 20. Groupon now advances the same arguments as the *Priceline* Defendants, and this Court should reach the same result as the PTAB.

Furthermore, the PTAB applies a "broadest reasonable interpretation" standard for claim construction, *Cuozzo Speed Techs. LLC v. Lee*, 136 S. Ct. 2131 (2016), and did not rely on any proposed constructions for the claim terms to reach its decision. Ex. F. Thus, contrary to Groupon's assertions, a particular construction of the term "object(s)" or any other claim language is not necessary to demonstrate that the claims are patent-eligible.

### 4. Groupon's Abstract Idea Cases Are Distinguishable.

Groupon focuses on three cases for its *Alice* Step One analysis: *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350 (Fed. Cir. 2016), *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709 (Fed. Cir. 2014), and *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*, 776 F.3d 1343 (Fed. Cir. 2014). Each of those cases is distinguishable because there was no evidence that the claims in those cases improved the functionality of a computer. In *Electric Power Group*, the claims were directed to the abstract idea of gathering and analyzing information about an "electric power grid" using a computer. 830 F.3d at 1351-2. Accordingly, the *Electric Power Group* Court found that "the focus of the claims is not on such an

10

improvement in computer as tools, but on certain independently abstract ideas that use computer as tools." *Id.* at 1354. The *Ultramercial* claims were drawn to the abstract economic idea of "using advertising as an exchange or currency" on the Internet. 772 F.3d at 715. The Court that "implementation of an abstract idea on the Internet in this case [was] not sufficient to provide any practical assurance that the process is more than a drafting effort designed to monopolize the abstract idea itself." *Id.* at 716 (internal quotes omitted). And the *Content Extraction* claims were directed to "processing information from a diversity of types of hard copy documents" using a computer. 776 F.3d at 1347. The *Content Extraction* Court found that the claims were using a computer to implement abstract ideas because "banks have, for some time, reviewed checks, recognized relevant data such as the amount, account number, and identity of account holder, and stored that information in their records." *Id.* Thus the claims in Groupon's cases were directed to taking an abstract concept outside of the computer realm (*i.e.* analyzing a power grid, using advertising as currency, processing hard copy documents) and using a computer as a tool to "apply it." *Enfish*, 822 F.3d at 1335-36 ("[T]he first step in the *Alice* inquiry . . . asks whether the focus of the claims is on the specific asserted improvement in computer capabilities . . . or, instead, on . . . an 'abstract idea' for which computers are invoked merely as a tool."); *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1294 (2012) ("one must do more than simply state the law of nature while adding the words 'apply it.'")

Rather than taking an abstract non-computer concept and bringing it into the computer realm, the Filepp Patents identify functionality in the computer realm, *see, e.g.,* '967 patent, at 1:37-55 (interactive computer networks existed in the prior art but encountered problems with latency and processing bottlenecks); '849 patent, at 1:34-52 (same), and improve it. *See, e.g.,* '967 patent, at 7:3-12 (offloading application objects allows for more users); '849 patent, at 6:57-

64 (selective storage reduces response time by reducing load on the network). The Filepp

Patents' consistent focus on improving computer capabilities confirms that they are patent-

eligible and distinguishes them from the patents in Groupon's cases. *See Enfish* 822 F.3d at

1337; Ex. F, at 19.

**B.     The Filepp Patents Claim Inventive Concepts (*Alice* Step Two).**

    **1.     The Filepp Patents Solve Computer-Centric Problems With
        Computer-Centric Solutions.**

In *DDR Holdings*, the claims at issue addressed "the problem of retaining website visitors

that, if adhering to the routine, conventional functioning of Internet hyperlink protocol, would be

instantly transported away from a host's website after 'clicking' on an advertisement and

activating a hyperlink." 773 F.3d at 1257. To address that problem, the claims created a "hybrid

webpage" that incorporated both visual elements of the host's website and visual elements of the

advertiser's website, and directed users to that hybrid webpage. *Id.* Thus, the claims provided

an Internet-based solution to a problem unique to the Internet. *Id.* at 1258. "In short, the claimed

solution amounts to an inventive concept for resolving this particular Internet-centric problem,

rendering the claims patent-eligible." *Id.* at 1259.

Like the claims the Federal Circuit declared subject-matter eligible in *DDR*, the claims of

the Filepp Patents address a challenge unique to computer networks and provide a claimed

solution that is necessarily rooted in computer technology. Specifically, the Filepp Patents

address the twin challenges of latency in host response time and limits on the number of possible

users that were a product of conventional centralized network architectures using prior art

approaches to providing interactive applications and advertising. '967 patent, at 1:46-55, 10:38-

57; '849 patent, at 1:43-52, 2:54-58, 3:38-42, 10:42-61. That challenge, like the challenge faced

by the *DDR* claims, uniquely arises in the realm of computer networks.

The '967 patent's claimed solutions to the network host bottleneck problems are necessarily rooted in computer networks: reducing demand on the host by storing and processing objects at the reception system and reusing those objects across applications. '967 patent, at 6:53-7:2 (storing objects at the reception system), 7:3-13 (processing objects at the reception system), 6:26-32 and 10:66-11:16 (reusability of objects stored at the reception system). Likewise, the '849 patent's claimed solutions accomplish a similar result by structuring advertising as objects for processing at the reception system, storing objects/data at the reception system, and selectively supplying advertising. '849 patent, at 6:53-7:3 (selectively storing objects at the reception system), 12:38-41, 32:44-61, 33:59-34:3 (structuring advertising as objects for processing at the reception system), 2:54-58, 3:38-42, 35:35-39 (selectively supplying advertising). Because the challenge addressed and the solution proposed are rooted in computer networks, they provide an inventive concept and render the claims patent-eligible. *DDR*, 773 F.3d at 1258. The Filepp claims pass *Alice* Step Two.

> ### 2. The Court's Claim Construction Order Demonstrates That The Filepp Patents Claims Inventive Concepts.

Groupon's arguments hinge on this Court's claim construction order in the *Priceline* Action. However, Groupon ignores the portions of the Court's opinion that do not support its position. Groupon's failure to address all of the Court's constructions justifies denying Groupon's Motion because *Alice* Step Two requires evaluating the "ordered combination" of the claim elements, not just a cherry-picked subset. *See Bascom*, 827 F.3d at 1349.

The Court construed "the objects being retrieved from the objects stored at the respective reception system, or if unavailable from the objects stored at the respective reception system, then from the network" from claim 1 of the '967 patent as "the objects being retrieved from the objects stored at the respective reception system, or, if the current versions of the objects are not

present from the objects stored at the respective reception system, then from the network." *Priceline* Action, D.I. 235 at 2.  That construction confirms one of the key mechanisms that the '967 patent uses to solve the computer-centric problem of processing bottlenecks at the host. '967 patent, at 1:50-55.  Once partitions for applications or command bars are broken up into objects, the above claim language specifies a mechanism whereby applications can be assembled on-the-fly from a combination of objects from the reception system and from the network.  That mechanism alleviates the burden on the host computers and solves computer-centric problems in prior art interactive applications because the reception systems only need to retrieve those objects that are not current in local storage.  '967 patent, at 6:56-7:12.

The Court construed "selectively storing advertising objects at a store established at the reception system" from claim 1 of the '849 patent as "pre-fetching advertising objects and storing at a store established at the reception system in anticipation of display concurrently with the applications." *Priceline* Action, D.I. 235 at 3.  That construction confirms that the '849 patent claims mechanisms for solving problems in prior art interactive applications.  The specification explains that "pre-fetching advertising objects" is a way to obtain advertising objects before those objects are used by the reception system and that this mechanism "eliminate[s] from the new page response time the time it takes to retrieve an advertising object from the host system."  '849 patent, at 34:37-44.  Groupon all but concedes that it has not considered the Court's construction of "selectively . . ." when it asserts that "[s]everal independent claims recite 'selectively' storing data . . . which is again a generic, functional result that the specification itself describes as 'conventional marketing analysis techniques.'"  D.I. 30 at

16. Groupon never addresses the inventive concept of pre-fetching.[2]

According to Groupon, the Filepp Patents do not contain inventive concepts because of the Court's construction of the term "object(s)."  D.I. 30 at 11.  Groupon is correct that in construing "object(s)" as "data structure(s)," the Court declined to incorporate more specific language—"a uniform, self-defining format that are known to the reception systems"—into the term itself.  *Int'l Bus. Machines Corp. v. The Priceline Grp. Inc.*, C.A. No. 15-137-LPS-CJB, 2016 WL 6405824 at *3 (D. Del. Oct. 28, 2016).  But the Court's rational in declining to do so was that additional specificity would render certain claim language superfluous because "other language in claim 1 dictates that ***objects have predefined structure*** and that 'at least some of the objects may be used in more than one application'—implying that ***a 'uniform' format for objects designed for use with multiple applications is already in the claims*.*"  *Id.*  The surrounding claim language thus makes clear that objects have a uniform, predefined structure, which, according to the specification, allows objects to be used in multiple applications or advertisements to offload processing from the host computers to the user reception systems. '967 patent, at 5:52-63, 6:56-7:12; '849 patent, at 5:51-65, 6:65-73.  Thus, Groupon is incorrect in assuming that the Court rejected the inventive aspects of objects, and the cases that Groupon cites that disparage generic "data structures" are distinguishable.  D.I. 30 at 11-12.  Moreover, by focusing on the term "object(s)" in a vacuum, without considering the surrounding context, Groupon violates one of the key principles of the *Alice* analysis: claims must be evaluated as a whole, not piece by piece.  *Alice*, 134 S.Ct. at 2355; *Bascom*, 827 F.3d at 1349.

Groupon dismisses the inventive concepts discussed above as "no more than collecting

---

[2] The Court's construction for several other terms also confirm the inventive aspects in the Filepp Patents, including "structuring advertising in a manner compatible to that of the· applications so that it may be presented" and "storage control parameter."  Priceline Action, D.I. 235 at 3-4.  Groupon does not address those constructions either.

information." D.I. 30 at 13.  From its vantage point in the year 2017, Groupon may not consider the concepts of offloading processing from the host system to the reception systems by using objects that are selectively stored and retrieved to be inventive.  But Groupon does not dispute that these concepts were inventive back when the inventions were conceived in the 1980s when the dumb terminal approach was widespread.  D.I. 1 ¶ 15.  Nor could Groupon dispute those facts in this procedural posture.  In the *Priceline* Action, this Court found that "the record would also benefit from further development with respect to whether the claims are innovative enough to override the routine and conventional functions of a computer."  Report And Recommendation, at *24.  Groupon has not addressed those factual issues, much less shown that there are no set of facts under which the Filepp Patents were inventive at the time of the invention.  Indeed, Groupon even admits that the claimed inventions predate the introduction of world wide web, when certain elements of the claimed inventions, such as the concept of breaking content into objects became widespread.  D.I. 30 at 4.

> ### 3.       Defendants Have Not Analyzed Key Limitations From The Dependent Claims.

Groupon has not met their burden to analyze the dependent claims of the Filepp Patents.

For example, claim 14 of the '967 patent recites:

> 14. The method of claim 1 further including generating one or more window partitions that overlays at least a portion of the application partition, the one or more windows for presenting data associated with the application displayed and wherein ***the data structure of the objects includes a header and one or more data segments***, and wherein the objects are stored at the respective reception systems in accordance with ***a predetermined plan, which includes providing the objects with a storage control parameter at their respective headers***.

And claim 3 of the '849 patent recites:

> 3. The method of claim 2 wherein storing advertising objects at the reception system includes ***storing advertising object identifications at the reception system, and wherein the storing of advertising object identification is based on an establishing of a characterization for the respective reception system users***.

The entirety of Groupon's argument concerning claims 3-5, 10-12, 14, and 17 of the '967 patent is that "they recite conventional ways of storing objects at a local computer." D.I. 30 at 16-17. To the contrary, the claimed "storage control parameters" are one of the mechanisms underlying the as-needed retrieval elements of the patented inventions. '967 Patent, at 6:60-63, 27:35-43. Similarly, the entirety of Groupon's argument concerning claims 3-7 and 16-20 of the '849 patent is that they "refer to collecting data about users." D.I. 30 at 17. Groupon's failure to address the structure of data objects in the dependent claims, such headers with storage control parameters (in the '967 patent) or object identifications concerning the user (in the '849 patent) is surprising in light of Groupon's assertion that the lack of specificity in the definition of "object(s)" is fatal to the independent claims. *See* D.I. 30 at 11-13.

### 4. Groupon's *Alice* Step Two Cases Are Distinguishable.

Groupon focuses on two additional cases[3] in its *Alice* Step Two analysis: *Apple, Inc., v. Ameranth, Inc.* No. 2015-1703, C.A. No. 16-122-LPS-CJB, 2016 U.S. App. LEXIS 21277 (Fed. Cir. Nov. 29, 2016) and *Cyberfone Sys., LLC v. CNN Interactive Grp., Inc.*, 558 F. App'x 988 (Fed. Cir. 2014) (unpublished decision). D.I. 30 at 10-11, 14-15. Both cases are distinguishable because the claims at issue did not address computer-centric problems and did not specify how to implement the claimed solutions.

The patent at issue in *Apple* claimed a system comprising displaying types of menus—in the preferred embodiment, restaurant menus—in a graphical user interface. 2016 U.S. App. LEXIS 21277 at *4-6. The specification made clear that the patent sought to address problems in the "brick-and-mortar" realm, explaining that "ordering prepared foods has historically been done verbally, either directly to a waiter or over the phone." *Id.* at *6. And the Court found that the claims did not satisfy either *Alice* Step One or *Alice* Step Two because, among other things,

---

[3] *Elec. Power Grp.* is distinguishable on *Alice* Step One, as discussed in Section II. A. 4. *supra.*

the claims did not contain any "programming details for this functionality." *Id.* at *25-26. The patent at issue in *Cyberfone* claimed a method of "exploding" data, *i.e.* obtaining data, separating it into component parts, and sending those parts to different destinations. 558 F. App'x at 990. Again, the claims were directed to implementing an abstract concept, analyzing data, on a computer. *Id.* at 992. And again the claims did not specify a mechanism for implementing the claims. *Id.* at 993.[4]

Both cases are distinguishable under *DDR* because they "recite the performance of some business practice known from the pre-Internet world along with the requirement to perform it on the Internet" (restaurant menus or processing data) rather than addressing a problem "specifically arising in the realm of computer networks." *DDR*, 773 F.3d at 1257. In contrast, Groupon has been unable to identify a "brick-and-mortar" or "human" analogy that captures the heart of the claims of the Filepp Patents. Groupon's inability to find a non-computer-centric way of characterizing the claims bolsters the conclusion that the Filepp Patents are patent-eligible. *Id.* at 1258 (finding claims to be patent-eligible where they address "a problem that does not arise in the 'brick and mortar' context"); *Helios Software, LLC v. SpectorSoft Corp.*, C.A. No. 12-081-LPS, 2014 WL 4796111, at *17 (D. Del. Sept. 25, 2014) (finding claims to be patent-eligible where the parties agreed that they could not be performed by a human alone).

*Apple* and *Cyberfone* are also distinguishable under *DDR* because the patents claimed a result (presenting a menu or sending data to different destinations) without "specify[ing] how interactions with the Internet are manipulated to yield a desired result." *DDR*, 773 F.3d at 1258. As discussed in detail above, in Section II. B. 1., the Filepp Patents claim the mechanisms by which they solve the prior art problems of latency and limited network bandwidth by, among

---

[4] Moreover, because *Cyberfone* was an unpublished opinion, it has no precedential force.

other things, breaking down content into partitions or portions for applications, command bars, or advertising, formatting them as objects, and selectively storing and retrieving those objects from the reception system or host on an as-needed basis.

### C. Defendants Have Not Shown That The Filepp Patents Raise Preemption Issues.

#### 1. The Filepp Patents Allow For Myriad Alternative Ways To Display Information To A User.

Groupon suggests that the Filepp Patents are overbroad because IBM has accused the Priceline Defendants, Groupon, and Amazon of infringement. D.I. 30 at 4-5. According to Groupon, the Filepp Patents "cover any technology that generates a meaningful display of information to a user of a computer using some locally stored information." *Id.* at 18. But Groupon's preemption arguments ignore the alternatives specifically discussed in the specification. One alternative is to transfer the entire interactive application to user reception systems at once, instead of breaking it up into data objects. '967 Patent, at 1:37-55; '849 Patent, at 1:34-52. Another alternative is to require users to retrieve content from the server each time the user interacts with the application, instead of storing data objects at the user reception system. '967 Patent, at 1:37-45; 10:37-41; '849 Patent, at 1:36-42; 10:42-45. With the benefit of hindsight, Groupon may criticize those alternatives, but at the time of the invention, they were commonplace. *Id.* In fact, portions of Groupon's website use those prior art concepts today.[5]

Groupon also glosses over the limitations of the '967 patent, such as the requirements that objects can be retrieved either "from . . . the respective reception system, or . . . from the network," that one of the partitions contain "command functions," that the partitions are "generat[ed] concurrently," or that "objects may be used in more than one application." And

---

[5] For example, http://investor.groupon.com/ contains links to entire PDF files that are not "generated . . . from data objects" in the manner claimed by the Filepp Patents.

Groupon similarly glosses over the limitations of the '849 patent, such as "structuring advertising in a manner compatible to that of the applications," presenting advertising "concurrently," "selectively storing advertising objects" and storing "at the reception system." Each of those claim elements permits alternative mechanisms to implement a display at the user's device. In the co-pending *Priceline* Action, IBM has asserted the claims of the Filepp Patents against a subset of the *Priceline* Defendants' pages based on the above limitations. And IBM will also selectively assert its claims in its forthcoming infringement contentions against Groupon.[6]

> **2.      Groupon Has Not Shown That Any Alleged Preemption Issues Can Be Decided At This Stage Of The Case.**

Although Groupon implies that claim construction was the only issue that needed to be resolved before this Court could decide the *Priceline* Motion To Dismiss, this Court also noted that a "more robust factual record, as will inevitably be developed during the discovery process, should shed additional light on this inquiry." Report And Recommendation, at *24. Specifically, the Court noted that "it is not clear to the Court on the present record (1) how many of Defendants' webpages are at issue here; (2) whether the patents indeed cover almost all webpages in existence; or (3) whether other methods exist of locally storing information and advertising for use in presenting displays to users." *Id.* Fact discovery will demonstrate that Groupon's preemption concerns are unfounded. And, to the extent Groupon disagrees, those factual issues must be resolved in IBM's favor at this stage of the case. *MAZ Encryption*, 2016 WL 5661981, at *2.

## CONCLUSION

For the foregoing reasons, IBM respectfully requests that this Court deny Groupon's Motion.

---

[6] For example, IBM will not accuse https://www.groupon.com/blog because it does not contain the claimed "second partition for presenting a plurality of command functions."

Respectfully submitted,

POTTER ANDERSON & CORROON LLP

OF COUNSEL:                                    By:    */s/ David E. Moore*
                                                         David E. Moore (#3983)
John M. Desmarais                                        Bindu A. Palapura (#5370)
Jon T. Hohenthaner                                       Stephanie E. O'Byrne (#4446)
Karim Oussayef                                           Hercules Plaza, 6th Floor
Laurie N. Stempler                                       1313 N. Market Street
Robert C. Harrits                                        Wilmington, DE  19801
Elizabeth Kimmel                                         Tel:  (302) 984-6000
DESMARAIS LLP                                            dmoore@potteranderson.com
230 Park Avenue                                          bpalapura@potteranderson.com
New York, NY  10169                                      sobyrne@potteranderson.com
Tel:  (212) 351-3400

                                               *Attorneys for Plaintiff International Business*
Dated:  January 17, 2017                       *Machines Corporation*
1242291 / 43155