# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| INTERNATIONAL BUSINESS MACHINES CORPORATION, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | C.A. No. 16-122-LPS-CJB |
| GROUPON, INC., | ) ) | |
| Defendant. | ) ) | |

## REPLY BRIEF OF DEFENDANT GROUPON, INC. IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS

*Of Counsel*:

J. David Hadden
Saina S. Shamilov
Phillip J. Haack
Adam M. Lewin
FENWICK & WEST LLP
801 California Street
Mountain View, CA 94041
(650) 988-8500

ASHBY & GEDDES
John G. Day (#2403)
Andrew C. Mayo (#5207)
500 Delaware Avenue, 8th Floor
P. O. Box 1150
Wilmington, DE 19899
(302) 654-1888
jday@ashby-geddes.com
amayo@ashby-geddes.com

*Attorneys for Defendant Groupon, Inc.*

Dated:  February 2, 2017

{01186431;v1 }

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ..................................................................................................................1

ARGUMENT .........................................................................................................................1

    I.    THE FILEPP PATENTS ARE DIRECTED TO ABSTRACT IDEAS ...................1

        A.    Local Storage Is an Ancient, Abstract Idea .................................................2

        B.    Neither *Enfish* nor *McRO* Holds that Claims Directed to Computer Functionality Are Always Patent-Eligible ..................................3

        C.    The Filepp Patent Claims Do Not Recite a Specific Technical Solution .......................................................................................................6

    II.    IBM DOES NOT IDENTIFY ANY INVENTIVE CONCEPT IN THE CLAIMS ...................................................................................................................8

    III.    IBM CONFIRMS THAT THE FILEPP PATENTS ARE UNDULY PREEMPTIVE ........................................................................................................9

CONCLUSION ....................................................................................................................10

## TABLE OF AUTHORITIES

PAGE(S)

**CASES**

*Affinity Labs of Tex., LLC v. Amazon.com, Inc.*,
    838 F.3d 1266 (Fed. Cir. 2016) ................................................................................................2

*Affinity Labs of Tex. v. DirecTV, LLC*,
    838 F.3d 1253 (Fed. Cir. 2016) ................................................................................................9

*Appistry, Inc. v. Amazon.com, Inc.*,
    No. C15-311 MJP, 2015 U.S. Dist. LEXIS 90004 (W.D. Wash. Jul. 19, 2016) ......................5

*Apple, Inc. v. Ameranth, Inc.*,
    842 F.3d 1229 (Fed. Cir. 2016) ................................................................................................9

*Ariosa Diagnostics, Inc. v. Sequenom, Inc.*,
    788 F.3d 1371 (Fed. Cir. 2015) ..............................................................................................10

*Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A.*,
    776 F.3d 1343 (Fed. Cir. 2014) ................................................................................................3

*DDR Holdings, LLC v. Hotels.com, L.P.*,
    773 F.3d 1245 (Fed. Cir. 2014) ................................................................................................9

*Device Enhancement LLC v. Amazon.com, Inc.*,
    189 F. Supp. 3d 392 (D. Del. 2016) .........................................................................................5

*Electric Power Group, LLC v. Alstom S.A.*,
    830 F.3d 1350 (Fed. Cir. 2015) ............................................................................................3, 7

*Enfish, LLC v. Microsoft Corp.*,
    822 F.3d 1327 (Fed. Cir. 2016) ...................................................................................1, 3, 4, 5

*Global Cash Access, Inc. v. NRT Tech. Corp.*,
    Case No. 2:15-cv-00822-MMD-GWF, 2016 U.S. Dist. LEXIS 39472 (D. Nev.
    Mar. 25, 2016) ..........................................................................................................................7

*IBM v. Priceline Grp. Inc.*,
    No. 15-137-LPS, 2016 U.S. Dist. LEXIS 150068 (D. Del. Oct. 28, 2016) ..........................7, 8

*IBM v. Priceline Grp. Inc.*,
    No. 15-137-LPS-CJB, 2016 U.S. Dist. LEXIS 18660 (D. Del. Feb. 16, 2016) ...................1, 2

*Intellectual Ventures I LLC v. Symantec Corp.*,
    838 F.3d 1307 (Fed. Cir. 2016) ..................................................................................2, 5, 6, 8

*Mayo Collaborative Servs. v. Prometheus Labs. Inc.*,
 566 U.S. 66 (2012)..................................................................................................................10

*McRO, Inc. v. Bandai Namco Games America Inc.*,
 837 F.3d 1299 (Fed. Cir. 2016).......................................................................................1, 3, 5

*O'Reilly v. Morse*,
 56 U.S. 62 (1854)....................................................................................................................10

*Parker v. Flook*,
 437 U.S. 584 (1978)..................................................................................................................9

*Tranxition, Inc. v. Lenovo (U.S.) Inc.*,
 No. 2015-1907, 2016 U.S. App. LEXIS 20523 (Fed. Cir. Nov. 16, 2016) ...........................5, 7

*Ultramercial, Inc. v. Hulu, LLC*,
 772 F.3d 707 (Fed. Cir. 2014)...................................................................................................3

*Vehicle Intelligence*, 2015 U.S. App. LEXIS 22681, *8 .................................................................10

*Versata Dev. Grp., Inc. v. SAP Am., Inc.*,
 793 F.3d 1306 (Fed. Cir. 2015).................................................................................................6

*Versata Software, Inc. v. Netbrain Techs., Inc.*,
 No. 13-676-LPS-CJB, 2015 U.S. Dist. LEXIS 132000 (D Del. Sept. 30, 2015)
 (Burke, J.).................................................................................................................................7

*Visual Memory LLC v. NVIDIA Corp.*,
 No. 15-789-RGA, 2016 U.S. Dist. LEXIS 69543 (D. Del. May 27, 2017)..................... *passim*

**OTHER AUTHORITIES**

Fed. R. Civ. P. 12(c) ........................................................................................................................10

INTRODUCTION

IBM does not dispute this Court's prior holding that the Filepp patents are directed to an abstract idea. Instead, IBM argues that the Federal Circuit's opinion in *Enfish* changed the law such that all claims directed in some way to computers or computer networks are immune from Section 101 scrutiny. IBM is wrong. Another judge in this district has already addressed and dismissed the identical assertion in *Visual Memory LLC v. NVIDIA Corp.*, No. 15-789-RGA, 2016 U.S. Dist. LEXIS 69543, at *11-12 (D. Del. May 27, 2016). What saved the claims in *Enfish*—and what the Filepp patents are fatally lacking—is a specific technical solution that improves computer technology. IBM points to no such solution, no improvement to actual computer technology, no new hardware, no new software, no new data structure, no new algorithm. The Filepp patents claim instead the basic concept of local storage, applied on computers, and are therefore invalid.

ARGUMENT

I. THE FILEPP PATENTS ARE DIRECTED TO ABSTRACT IDEAS.

IBM does not challenge the Court's prior determination that the Filepp patents are drawn to the idea of "locally storing information and resources at a user's computer and presenting a partitioned display." *IBM v. Priceline Grp. Inc.*, No. 15-137-LPS-CJB, 2016 U.S. Dist. LEXIS 18660, at *76 (D. Del. Feb. 16, 2016). Instead, IBM disputes the Court's finding that this idea is abstract because, according to IBM, (1) the Federal Circuit changed the *Alice* step one analysis in *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327 (Fed. Cir. 2016) and *McRO, Inc. v. Bandai Namco Games America Inc.*, 837 F.3d 1299 (Fed. Cir. 2016), rendering this Court's prior analysis obsolete, and (2) no "brick-and-mortar" analogy exists, making the idea an improvement in computer technology, rather than an abstraction. (Br. 7-8, 10-11, 17-18.) IBM is wrong on both counts. Because the Filepp patent claims do not recite a specific technical solution, this Court's

prior determination that they are drawn to "abstractions devoid of a concrete or tangible application" is unassailable. *See IBM v. Priceline Grp. Inc.*, 2016 U.S. Dist. LEXIS 18660, at *76-77. This Court was right in ruling that the Filepp patent claims are directed to an abstract idea.

### A. Local Storage Is an Ancient, Abstract Idea.

As an initial matter, while courts have found computer-centric ideas to be abstract by reference to analogues from the physical world, the law does not require such a comparison. *See Intellectual Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1319 (Fed. Cir. 2016) ("*IV/Symantec*") (finding patent directed to virus scanning drawn to an abstract idea even though the idea "originated in the computer era"). Even so, an apt analogue exists here.

IBM argues that the concept of the Filepp patent claims is not abstract because local storage is an improvement to computer technology without a non-digital analogue. (Br. 6-12; *see also* Br. 17-18.) But the concept of localized storage arose long before the introduction of computers—it is in no way unique to the computer environment. Local storage of resources dates back many centuries. For example, the Romans, as part of their army's logistics, routinely used supply lines that included operational and tactical storage bases.[1] Supplies from the operational bases were brought up to the location of the army and stored there in the tactical bases and replenished as-needed. The supply lines of the Roman Empire offered the very same benefits IBM claims its invention provides: speedy local delivery and a reduced burden on the central supply system. (Br. 13-14.) Applying the age-old idea of local storage to computers is not enough to satisfy *Alice* step one. *See Affinity Labs of Tex., LLC v. Amazon.com, Inc.*, 838 F.3d 1266, 1269 (Fed. Cir. 2016) ("*Affinity/Amazon*") (delivering media content to portable devices is longstanding and abstract even though claims would be implemented in a networked environment).

The Filepp patents do not claim a specific technological solution for implementing local

---

[1] Jonathan Roth, The Logistics of the Roman Army at War (264 B.C.–A.D. 235) at ch. 5 (1999).

storage in a computer network. They recite no new hardware, software, data structures, or algorithms. They claim only the idea of local storage and recite known computer functionality (such as "generating," "retrieving," and "storing") to generate computer displays. Thus, just like the patent-ineligible claims in *Electric Power Group, LLC v. Alstom S.A.*, 830 F.3d 1350 (Fed. Cir. 2015), *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 707 (Fed. Cir. 2014) and *Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A.*, 776 F.3d 1343 (Fed. Cir. 2014), the Filepp patent claims merely recite an age-old concept applied using a computer. That concept is abstract.

B.   **Neither *Enfish* nor *McRO* Holds that Claims Directed to Computer Functionality Are Always Patent-Eligible.**

IBM misconstrues *Enfish*. That case did not hold that a claim directed to something computer-related is necessarily directed to an "improvement in computer technology" and cannot be abstract. (*See* Br. 6-8.) Indeed, in *Visual Memory LLC v. Nvidia Corp.*, Judge Andrews rejected the very argument IBM makes here. The plaintiff in that case argued that *Enfish* rendered all "claims which improve the functioning of a computer itself [as] patent eligible." 2016 U.S. Dist. 69543, at *11 (D. Del. May 27, 2016) (internal quotations omitted). The Court disagreed, holding that in *Enfish*, the Federal Circuit "described the central question [in the Section 101 analysis] as 'whether the focus of the claims is on the specific asserted improvement in computer capabilities (i.e., the self-referential table for a computer database) or, instead, on a process that qualifies as an "abstract idea" for which computers are invoked merely as a tool.'" *Id.* As the *Visual Memory* Court explained, "*Enfish* is [] best understood as a case which cautions against oversimplification during step one of *Mayo/Alice*, rather than a case which exempts from § 101 scrutiny all patents which purport to improve the functioning of a computer." *Id.* at *12. Finding no "specific improvement," the Court held the claims patent-ineligible. *Id.* at *14, *16.

The Filepp patent claims are just like—if not more abstract than—those rejected in *Visual*

*Memory*. The *Visual Memory* claims were drawn to categorically storing data between centralized and localized locations within a computer system. *Id.* at *9-10. The patent described a "three-tiered memory hierarchy: (1) slow, low-cost memory for 'bulk storage of data,' (2) medium speed memory for the 'system's main memory,' and (3) expensive, high speed 'processor cache memory.'" *Id.* at *2. Similarly to IBM's description of its patent, in the *Visual Memory* patent, "data is 'transferred from system memory to the cache memory in order to have quick access to the variables of the currently executing program'" and "[a]s additional data, not in the cache, is required, such data is transferred from the main memory by replacing selected data in the cache." *Id.* The claims that the Court held ineligible in *Visual Memory* were more technically detailed and specific than the Filepp patent claims. They required a specific computer architecture including a "plurality of caches," "main memory," and "register" connected to the same "bus" as well as a "programmable operational characteristic" that determined whether "only code data" or both "non-code data and code data" is stored in a cache and whether "buffering of data" is performed solely from a bus master or the bus master and processor. *Id.* at *6-8. Despite this specificity, the *Visual Memory* court found that the claims lacked a specific technological improvement analogous "to the 'specific type of data structure' that was found sufficiently unabstract in *Enfish*." *Id.* at *14 ("[A]lthough the claims touch[] on what is asserted to be an improvement to . . . computer capabilities, they are not directed to a specific or concrete improvement in the way software operates, but instead are directed to . . . the mere idea of categorical data storage.") (citation and internal quotations omitted).

As with the *Visual Memory* claims, the Filepp patent claims are not like those at issue in *Enfish*. While the construed claim in *Enfish* included a "four-step algorithm" for storing data in an unconventional type of database—a "specific implementation of a solution to a problem in the

software arts"—the Filepp patents offer no such algorithm or "a specific improvement to the way computers operate."  *Enfish*, 822 F.3d at 1336-37, 1339; *see also Device Enhancement LLC v. Amazon.com, Inc.*, 189 F. Supp. 3d 392, 404 (D. Del. 2016) ("it is evident that there is a specificity requirement").  And like the claims in *Visual Memory*, they are abstract.

Nor did *McRO* hold that all claims directed to computer functionalities are non-abstract. (*See* Br. 9.)  Rather, the Federal Circuit again emphasized the need for a specific "technological improvement" to "achieve an improved technological result."  837 F.3d at 1316.  The claims there were eligible at step one because they "focused on a specific asserted improvement in computer animation, i.e., the automatic use of rules of a particular type."  *Id.* at 1314.  The Filepp patent claims recite no such specific improvement.

Federal Circuit decisions rejecting computer-centric claims as abstract since *Enfish* and *McRo* highlight IBM's flawed reading of the two cases.  *See, e.g.*, *IV/Symantec* at 1320 (claims drawn to a method for virus detection and scanning within a network found abstract because they did not contain a specific technical solution); *Tranxition, Inc. v. Lenovo (U.S.) Inc.*, No. 2015-1907, 2016 U.S. App. LEXIS 20523, at *6-8 (Fed. Cir. Nov. 16, 2016) (claims directed to migrating computer settings found abstract because they lacked a specific technical solution).  And district courts, following the Federal Circuit's precedent—including its guidance in *Enfish* and *McRO*—have also found computer-centric claims invalid for failing to recite specific technical solutions.  *See, e.g.*, *Device Enhancement*, 189 F. Supp. 3d at 403-405 (claims directed to client-side and server-side applications for data exchange found invalid as lacking required specificity); *Appistry, Inc. v. Amazon.com, Inc.*, No. C15-311 MJP, 2015 U.S. Dist. LEXIS 90004, at *5-7 (W.D. Wash. Jul. 19, 2016) (claims directed to multi-computer distributed processing found invalid).  Claims directed to computer technology are abstract if they fail to recite a specific tech-

nical solution. (*See* Opening Br. 2, 10-12.) That is the case here.

### C. The Filepp Patent Claims Do Not Recite a Specific Technical Solution.

IBM does not point to any specific technical solution in its claims. Instead, it cites to the specification, arguing that the Filepp patents improve upon the "dumb terminal" approach. (Br. 7.) But the specification's description of what might be achieved by a practitioner implementing the claims is irrelevant. Recent cases, even those involving computer-centric patents, have admonished against "relying on technological details set forth in the patent's specification and not set forth in the claims" to identify a specific technical solution. *IV/Symantec*, 838 F.3d at 1322; *Visual Memory*, 2016 U.S. Dist. LEXIS 69543, at *19-20.

Moreover, the claim limitations IBM cites are purely functional or inherent to the abstract idea of local storage, i.e., using what is in the local store and replenishing the local store when needed. For example, IBM relies on "the objects being retrieved from the objects stored at the respective reception system, or if unavailable from the objects stored at the respective reception system, then from the network." (Br. at 13-14.) This limitation recites no more than the basic notion inherent in the concept of local storage—use what is in the local store first before going back to the central store. IBM cites to "selectively storing advertising objects at a store established at the reception system," and "storing a predetermined amount of the advertising data in a store established at the respective reception systems." (Br. 7-8.) But selecting what and how much to store are inherent requirements of any local store. *Versata Dev. Grp., Inc. v. SAP Am., Inc.*, 793 F.3d 1306, 1334 (Fed. Cir. 2015) ("The limitations are [] inherent in the abstract idea . . . ."). IBM also identifies "the screen display being generated by the respective reception system from data objects having a prescribed data structure" and "structuring advertising so that it may be selectively supplied to and retrieved at the reception systems for presentation to the

respective users," both of which are no more than results. *Elec. Power Grp.*, 830 F.3d at 1353, 1356 (claims directed to gathering and analyzing information and displaying the results held invalid; "the essentially result-focused, functional character of claim language has been a frequent feature of claims held ineligible under § 101"). And the claimed "data objects having a prescribed data structure" is generic and tautological. As construed by the Court, "objects" are generic "data structures"—any data structure has a prescribed data structure, which could be anything. *IBM v. Priceline Grp. Inc.*, No. 15-137-LPS, 2016 U.S. Dist. LEXIS 150068, at *7-9 (D. Del. Oct. 28, 2016); *Tranxition, Inc. v. Lenovo (U.S.) Inc.*, No. 12-cv-01065, 2015 U.S. Dist. LEXIS 89593, at *37 (D. Or. July 9, 2015), *aff'd* 2016 U.S. App. LEXIS 20523 (Fed. Cir. Nov. 16, 2016) ("[T]here is nothing unique or inventive about using a 'data structure' to organize a collection of information—that is what a computer does.").[2] Thus, "configuring the advertising" (Br. 8) into generic data structures also lacks the requisite specificity. The Filepp patent claims do not recite a specific technical solution.

Nor is this Court's prior determination that the Filepp patent claims are directed to an abstract idea affected by the PTAB's cursory Section 101 analysis in its decision denying institution of a post-grant review of the '849 patent, in which Groupon was not involved. (*See* Br. 1, 3-4, 9-10.) First, federal courts are under no obligation to adopt or defer to PTAB decisions (other than those canceling claims), and frequently decline to do so. *See, e.g., Global Cash Access, Inc. v. NRT Tech. Corp.*, Case No. 2:15-cv-00822-MMD-GWF, 2016 U.S. Dist. LEXIS 39472, at *21 n.6 (D. Nev. Mar. 25, 2016) (invalidating a patent under Section 101 despite the PTAB denying a CBM institution on the same ground); *Versata Software, Inc. v. Netbrain Techs., Inc.*, No. 13-

---

[2] Indeed, that the claimed "data structure" could be anything is confirmed by IBM's infringement contentions, which point to any arbitrary piece of data or program code as the accused "objects" and "data structures.": IBM maps "data objects" to "HTML files, JavaScript, JSON files, images, and other data."

{01186431;v1 } 7

676-LPS-CJB, 2015 U.S. Dist. LEXIS 132000, at *17 n.5, *77-78 (D Del. Sept. 30, 2015) (Burke, J.) (recommending that Section 101 motion be granted as to claims for which CBM review had been denied on the same ground). Second, the PTAB did not consider this Court's claim constructions, ignored the Court's finding that the concept of the Filepp patents is an abstraction and, contrary to well-established jurisprudence, failed to identify the specific technical solution of the claims. (IBM Ex. F.) The Court should disregard the PTAB's decision.

## II. IBM DOES NOT IDENTIFY ANY INVENTIVE CONCEPT IN THE CLAIMS.

As a preliminary matter, IBM again points to the specification to attempt to establish the requisite inventive concept. As explained above, concepts in the specification that are not in the claims are irrelevant and cannot provide the requisite inventive concept. (*See* Br. 12-13); *IV/Symantec*, 838 F.3d at 1322 (district court "erred in relying on technological details set forth in the patent's specification and not set forth in the claims").

And, contrary to IBM's assertions, no construction transforms the generic limitations of the Filepp patent claims into an inventive application of their abstract idea. The construed claim limitations merely refer to generic storage and retrieval of data or recite results without specifying how to achieve them. For example, the constructions of terms "objects being retrieved from the objects stored at the respective reception system, or if unavailable from the objects stored at the respective reception system, then from the network" and "selectively storing advertising objects at a store established at the reception system" merely recite generic storing and retrieval of data inherent in the idea of local storage. *See Priceline Grp.*, 2016 U.S. Dist. LEXIS 150068, at *12-14, *26-28. And constructions of terms "structuring advertising in a manner compatible to that of the applications so that it may be presented" (referring to generic formatting) and "storage control parameter" (referring to generic parameter identifying generic storage characteristic), re-

cite mere results. *See Apple, Inc. v. Ameranth, Inc.*, 842 F.3d 1229, 1244 (Fed. Cir. 2016) ("Generally, a claim that merely describes an effect or result dissociated from any method by which it is accomplished is not directed to patent-eligible subject matter." (citation and internal quotations omitted)).

IBM also fails to identify an inventive concept in any dependent claim. For example, IBM points to "'storage control parameters' [as] one of the mechanisms underlying the as-needed retrieval elements." (Br. 17.) This limitation is no different than the idea of local storage and leaves open what those undefined parameters must be. *Visual Memory*, 2016 U.S. Dist. 69543, at *20-22 (rejecting the term "programmable operational characteristics" as a basis for an inventive concept where it provided no detail as to its technological implementation). Nor does pointing to "the structure of data objects in the dependent claims" help IBM. (Br. 17.) Given that "objects" has been construed as generic data structures, additional incidental and generic aspects of data structures in the dependent claim limitations (such as headers or user-identifying information) do not add anything inventive. *Affinity Labs of Tex. v. DirecTV, LLC*, 838 F.3d 1253, 1264 (Fed. Cir. 2016) ("[T]he dependent claims . . . all recite functions that are not inventive but simply constitute particular choices from within the range of existing content or hardware."). The Filepp patent claims are "recited too broadly and generically to be considered sufficiently specific and meaningful applications of their underlying abstract ideas." *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1256 (Fed. Cir. 2014).

### III. IBM CONFIRMS THAT THE FILEPP PATENTS ARE UNDULY PREEMPTIVE.

Finally, as the Supreme Court held long ago, a claim need not preempt all applications of an abstract idea to raise preemption concerns. *Parker v. Flook*, 437 U.S. 584, 589-90 (1978) (rejecting the argument that claims are eligible as long as they do not "wholly pre-empt" an abstract

idea); *see also Ariosa Diagnostics, Inc. v. Sequenom, Inc*., 788 F.3d 1371, 1379 (Fed. Cir. 2015) ("[T]he absence of complete preemption does not demonstrate patent eligibility.").

More important is that the claims here *do* preempt a disturbingly wide range of technologies. *See Mayo Collaborative Servs. v. Prometheus Labs. Inc.*, 566 U.S. 66, 88 (2012) ("[T]he underlying functional concern here is a relative one: how much future innovation is foreclosed relative to the contribution of the inventor."). The claims do not offer any specific solution, but attempt to capture all present and future ways of implementing their claimed result. Indeed, IBM's alternatives—retrieving content from a server every time a user interacts with an application and transferring the entire application at once—only confirm that IBM attempts to preempt all standard uses of the Web, which rely on local storage.[3] Even more concerning, IBM's offered alternatives would vitiate the revolutionary interactive nature of the Web. The fact that the Filepp patents may "predate" the Web (Br. 15) does not entitle them to preempt it any more than Samuel Morse could claim any way of communicating using electric current. *O'Reilly v. Morse*, 56 U.S. 62, 112-13 (1854). And it is irrelevant that blog sites and individual PDF files may be out of the Filepp patent claims' reach or that IBM may not accuse all Groupon web pages—the claims disproportionately tie up present and future uses of the claimed idea relative to their minimal—if any—inventive contribution.

## CONCLUSION

Groupon respectfully requests that the Court enter a judgment pursuant to Federal Rule of Civil Procedure 12(c) that the claims of the Filepp patents are invalid for failing to claim patent-eligible subject matter.

---

[3] IBM accuses the entire www.groupon.com website and specifically "any webpage for searching, … selecting content, submitting information"—the Web. And IBM's example of a Groupon PDF file that purportedly practices one of the alternatives (Br. 19) is not even a "www" page.

|  |  |
|---|---|
|  | ASHBY & GEDDES |
| *Of Counsel*: | /s/ *Andrew C. Mayo* |
|  | _____ |
| J. David Hadden | John G. Day (#2403) |
| Saina S. Shamilov | Andrew C. Mayo (#5207) |
| Phillip J. Haack | 500 Delaware Avenue, 8th Floor |
| Adam M. Lewin | P. O. Box 1150 |
| FENWICK & WEST LLP | Wilmington, DE 19899 |
| 801 California Street | (302) 654-1888 |
| Mountain View, CA 94041 | jday@ashby-geddes.com |
| (650) 988-8500 | amayo@ashby-geddes.com |
|  |  |
| Dated:  February 2, 2017 | *Attorneys for Defendant Groupon, Inc.* |