# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| INTERNATIONAL BUSINESS MACHINES CORPORATION, | ) ) ) | |
| Plaintiff, | ) ) | C.A. No. 16-122-LPS |
| v. | ) ) | **JURY TRIAL DEMANDED** |
| GROUPON, INC. | ) ) | |
| Defendant. | ) | |

## PLAINTIFF'S RESPONSIVE CLAIM CONSTRUCTION BRIEF

OF COUNSEL:

John M. Desmarais
Jon T. Hohenthaner
Karim Oussayef
Laurie N. Stempler
Robert C. Harrits
Michael J. X. Matulewicz-Crowley
Brian D. Matty
DESMARAIS LLP
230 Park Avenue
New York, NY 10169
Tel: (212) 351-3400

Dated: May 5, 2017

5154139 / 43155

David E. Moore (#3983)
Bindu A. Palapura (#5370)
Stephanie E. O'Byrne (#4446)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801
Tel: (302) 984-6000
dmoore@potteranderson.com
bpalapura@potteranderson.com
sobyrne@potteranderson.com

*Attorneys for Plaintiff International Business Machines Corporation*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................ 1

ARGUMENT ..................................................................................................... 3

I.     Groupon's Citations To The Intrinsic Record Of The Filepp Patents Do Not Support Its Proposed Constructions. ............................................. 3

    A.     The Specifications Of The Filepp Patents Do Not Support Groupon's Proposed Constructions. ........................................... 3

    B.     The Prosecution Histories Of The Filepp Patents Do Not Support Groupon's Proposed Constructions. ........................................... 6

        1.     The Prosecution History Of The '967 Patent Does Not Support Groupon's Proposed Constructions. ................................ 6

        2.     The Prosecution History Of The '849 Patent Does Not Support Groupon's Proposed Constructions. ................................ 7

II.     Disputed Terms For U.S. Patent Nos. 5,796,967 And 7,072,849 .......................... 9

    A.     "object(s)" ................................................................................. 9

    B.     "a first partition for presenting applications" ........................................... 10

    C.     "a second partition for presenting a plurality of command functions" ................................................................................. 12

    D.     "selectively storing advertising objects at a store established at the reception system" .......................................................... 14

    E.     "structuring applications so that they may be presented through the network at a first portion of one or more screens of display / structuring applications so that they may be presented at a first portion of one or more screens of display" ........................................... 15

    F.     "at a second portion of one or more screens of display concurrently with applications" .......................................................... 16

III.     Disputed Terms For U.S. Patent No. 5,961,601 ...................................... 17

    A.     "continuation(s)" .......................................................................... 17

    B.     "all continuations in an output from said service" ................................... 18

**Page(s)**

**Cases**

*Aventis Pharma S.A. v. Hospira, Inc.*,
    675 F.3d 1324 (Fed. Cir. 2012) ........................................................................ 3

*Avid Tech., Inc. v. Harmonic, Inc.*,
    812 F.3d 1040 (Fed. Cir. 2016) ............................................................... 6, 9, 11

*Ericsson, Inc. v. D-Link Sys., Inc.*,
    773 F.3d 1201 (Fed. Cir. 2014) ................................................................ 13, 19

*Gillespie v. Dywidag Sys. Int'l, USA*,
    501 F.3d 1285 (Fed. Cir. 2007) ........................................................................ 11

*IMS Tech., Inc. v. Haas Automation, Inc.*,
    206 F.3d 1422 (Fed. Cir. 2000) ................................................................. 6, 20

*Johnson Worldwide Assocs., Inc. v. Zebco Corp.*,
    175 F.3d 985 (Fed. Cir. 1999) ............................................................ 3, 12, 15

*Massachusetts Inst. of Tech. v. Shire Pharm., Inc.*,
    839 F.3d 1111 (Fed. Cir. 2016) ................................................................. 6, 20

*N. Telecom Ltd. v. Samsung Elecs. Co.*,
    215 F.3d 1281 (Fed. Cir. 2000) ........................................................................ 9

*Pall Corp. v. Micron Separations, Inc.*,
    66 F.3d 1211 (Fed. Cir. 1995) ........................................................... 8, 16, 20

*Purdue Pharma L.P. v. Endo Pharmaceuticals Inc.*,
    438 F.3d 1123 (Fed. Cir. 2006) ................................................................... 3, 7

*SRI Int'l v. Matsushita Elec. Corp. of Am.*,
    775 F.2d 1107 (Fed. Cir. 1985) .................................................. 12, 13, 17, 18

*Versa Corp. v. Ag-Bag Int'l Ltd.*,
    392 F.3d 1325 (Fed. Cir. 2004) ...................................................................... 10

## INTRODUCTION

Groupon does not identify any special definitions for "partitions," "portions," or "output" in the specifications or prosecution histories of the patents-in-suit, yet Groupon nevertheless seeks to artificially limit those terms to deny IBM the full scope of its inventions. Perhaps recognizing that the intrinsic evidence does not support special definitions for those terms in isolation, Groupon proposes construing the phrases in which they appear, such as "a first partition for presenting applications," "a second partition for presenting a plurality of command functions," and "all continuations in an output from said service." That strategy forces Groupon to take the untenable position that while the terms "partition," "portions," or "output" do not need to be construed and can be readily understood by a jury, plain-English words like "first," "second," "for presenting," and "from said service" should be construed in an artificial and overly limiting manner.

Matching up the disputed claim terms with Groupon's proposed constructions demonstrates the problems with Groupon's strategy. The examples below show the disputed claim terms (on the left) and Groupon's proposals (on the right), and correlates the related language using different colors:

| Claim Term | Groupon's Proposal |
|---|---|
| a first partition for presenting applications | a fixed portion of the screen that is dedicated for displaying applications |
| a second partition for presenting a plurality of command functions | a fixed portion of the screen that is dedicated to displaying command functions which does not overlap with the fixed portion of the screen that is dedicated for displaying applications |
| all continuations in an output from said service | all new requests which a client may send to a server, such as, for example a hyperlink in a web page or other output sent to the client |

Unsurprisingly, Groupon does not point to any evidence that the words "first" or "second" mean "fixed" (shown in yellow). Nor does Groupon point to any evidence that "for presenting" means

"that is dedicated for/to displaying" (shown in green). Nor does Groupon explain what claim language should be construed to mean "which does not overlap with the fixed portion of the screen that is dedicated for displaying applications" (shown in blue). Nor does Groupon point to any evidence that "from said service" means "sent to the client" (shown in purple).

Groupon largely ignores the association between the claim terms in dispute and the intrinsic evidence, preferring instead to argue generally about "partitions," "portions," and "outputs" as support for rewriting the phrases in which they appear. Where Groupon does cite to evidence for support, that evidence contradicts Groupon's general positions. The intrinsic evidence that Groupon cites either describes non-limiting preferred embodiments or is completely irrelevant to Groupon's proposed constructions. For example, Groupon repeatedly points to statements about partitions being displayed "concurrently" as supposed evidence that partitions must be fixed and non-overlapping.

The reason for Groupon's tortured constructions is clear: Groupon is attempting to manufacture non-infringement arguments that are not supported by the claim language. Groupon admits as much by explicitly citing IBM's infringement contentions and explaining how Groupon's proposed construction would support its non-infringement positions. In doing so, Groupon ignores black letter law that separates the claim construction process from the infringement analysis. In sum, Groupon's proposed constructions should be rejected because they rely on evidence that is unrelated to the terms Groupon seeks to construe, unconnected to the language in Groupon's proposed constructions, and irrelevant to the claim construction process.

# ARGUMENT

## I.    Groupon's Citations To The Intrinsic Record Of The Filepp Patents Do Not Support Its Proposed Constructions.

Groupon's opening claim construction brief begins by citing to passages from the specifications and the prosecution histories of the Filepp Patents without reference to the particular claim language that Groupon seeks to construe.  Groupon's efforts to discuss the intrinsic evidence out of context of the claim language it seeks to construe should be rejected because "there must be a textual reference in the actual language of the claim with which to associate a proffered claim construction."  *Johnson Worldwide Assocs., Inc. v. Zebco Corp.*, 175 F.3d 985, 990 (Fed. Cir. 1999); *see also Purdue Pharma L.P. v. Endo Pharmaceuticals Inc.*, 438 F.3d 1123, 1136 (Fed. Cir. 2006) (finding that it was impermissible to import a limitation into the claims "without any specific claim language to interpret").  Furthermore, as discussed in greater detail below, none of the passages that Groupon cites "clearly express an intent to redefine" the disputed claim terms, and therefore they cannot amount to a disclaimer of the full scope of the claim language.  *See Aventis Pharma S.A. v. Hospira, Inc.*, 675 F.3d 1324, 1330-31 (Fed. Cir. 2012) (internal quotation marks omitted).

### A.    The Specifications Of The Filepp Patents Do Not Support Groupon's Proposed Constructions.

None of Groupon's citations to the specifications demonstrates that partitions or portions must be "fixed," "dedicated," or "non-overlapping."  Of those proposed limitations, only the word "fixed" appears in passages that Groupon cites.  And the word "fixed" appears only once, in a sentence that clearly signals that it is an optional embodiment: "***In preferred form***, the method features steps for presenting the command function in a command bar fixed-located on the display screen."  D.I. 51, Ex. A-1 at 3:17-21 (emphasis added).  The rest of Groupon's proposed limitations, such as the requirement that partitions or portions be "dedicated" or "non-

overlapping," are based on words that appear nowhere in the specifications. Below, IBM addresses each of the passages on which Groupon relies.

First, Groupon argues that the command function partition must be "fixed" and "persist across applications"[1] because it includes commands that "permit movement between applications." D.I. 60 at 3 (citing D.I. 51, Ex. A-1 at claim 1). But a command function partition can permit movement between applications without always being displayed and without being confined to a single location. Indeed, Groupon's proposed limitations would read out embodiments in which command functions appear in "pull down windows or an overlapping cascade of windows." Ex. D.I. 51, Ex. A-1 at 17:24-35. A "pull down" window moves; it is not "fixed."

Second, Groupon argues that applications must be "bound to particular partitions"[2] because the specifications state that applications are "composed of a sequence of one or more pages." D.I. 60 at 3 (citing D.I. 51, Ex. A-1 at 9:32-34). But different pages in a sequence can be displayed in different ways, including in different partitions. For example, Figs. 3a and 3b of the Filepp Patents could comprise a sequence of pages that make up an application where the application is first presented at two smaller partitions, such as the two body partitions in Fig. 3a, and then later at one larger partition, such as the single body partition in Fig. 3b.

Third, Groupon also asserts that applications must be "bound to particular partitions" because Fig. 5a shows "page format objects defining partitions, and page element and program objects defining applications 'for a given partition.'" D.I. 60 at 3 (citing D.I. 51, Ex. A-1 at Fig. 5a). Contrary to Groupon's assertion, Fig. 5a does not reference "defining applications."

---

[1] Groupon's proposed constructions do not include the text "persist across applications" and Groupon does not explain why this language is consistent with any of its proposals.
[2] Groupon's proposed constructions do not include the text "bound to particular partitions" and Groupon does not explain how or why this language is consistent with any of its proposals.

Furthermore, Fig. 5a is a preferred embodiment, depicting "the configuration of the page template object **which might be used** for presentation of an application in a network in which the application-presentation method of the present invention **may be practiced**." D.I. 51, Ex. A-1 at 4:12-16 (emphasis added); *see also id.* at 11:20-25 (describing such objects as "the **preferred form**" of the invention (emphasis added)). Finally, the specification explains that far from being "fixed" or "bound," "objects are structured in accordance with an architecture that permits the displayed data to be **relocatable** on the screen . . . [and] **dynamically created** in response to the user's requests" and that "[p]age elements objects are **relocatable** and may be reused by many pages." D.I. 51, Ex. A-1 at 11:11-16 (emphasis added), 11:51-53 (emphasis added).

Fourth, Groupon argues advertising portions are "fixed" and "separate"[3] from application partitions because the Abstract states that "advertising is structured in a manner comparable to the service applications enabling the applications to be presented at a first portion of a display associated with a reception system and the advertising presented at a second portion." D.I. 60 at 3 (citing D.I. 51, Ex. A-1 at Abstract). Even if the claimed invention "enables" the display of an application portion and an advertising portion, that does not mean the invention requires such a configuration. Furthermore, the existence of two different portions of the display does not mean they must be "fixed" or "separate." In fact, the specification describes "steps for opening windows **over** the currently displayed applications."[4] Ex. D.I. 51, Ex. A-1 at 3:44-48; *see also id.* at 1:30-34 (explaining that such windows "may include advertising").

---

[3] Groupon's proposed constructions do not include the word "separate" and Groupon does not explain why this language is consistent with any of its proposals.

[4] The Filepp patents' specifications make clear that windows are a type of partition, called window partitions. *See, e.g.*, D.I. 51, Ex. A-1 at 9:33-62, 17:65-67.

**B.    The Prosecution Histories Of The Filepp Patents Do Not Support Groupon's Proposed Constructions.**

None of Groupon's citations to the prosecution histories demonstrate that IBM made any disclaimer about partitions or portions such that they must be "fixed," "dedicated," or "do not overlap."    "[F]or prosecution disclaimer to attach . . . the alleged disavowing actions or statements made during prosecution [must] be both clear and unmistakable."  *Avid Tech., Inc. v. Harmonic, Inc.*, 812 F.3d 1040, 1045 (Fed. Cir. 2016).  As discussed below, none of the passages that Groupon cites use the words "fixed," "dedicated," or "overlap," much less demonstrate a "clear and unmistakable" intent to limit the claims using such language.

**1.    The Prosecution History Of The '967 Patent Does Not Support Groupon's Proposed Constructions.**

Groupon's arguments about the prosecution history of the '967 patent focus on IBM's discussion of the Windows prior art system in an October 12, 1995 Amendment.  D.I. 60 at 3-4 (citing D.I. 52-1, Ex. A-4 at 5).  There, the claim language at issue was "the partitions being constructed from *elements* that may be reused."  D.I. 51, A-4 at 2 (emphasis added).  IBM pointed out that the "Examiner mistakenly refer[red] to the reuse of partitions" and thus had confused the reuse of "elements" with the reuse of "partitions."  *Id.* at 5.  Because the claim language at issue and IBM's arguments concerned the reuse of "elements," Groupon cannot show that disclaimer attached to the term "partitions."  *See Massachusetts Inst. of Tech. v. Shire Pharm., Inc.*, 839 F.3d 1111, 1122 (Fed. Cir. 2016).  Furthermore, IBM distinguished Windows by arguing that "[i]n Windows, a new window; i.e. partition, is created for each and every application . . . rather than *permitting* navigation through applications presented at a single partition."  D.I. 51, A-4 at 5 (emphasis added).  By using a permissive word—"permitting"— IBM described what the claims allowed, not what they required.  *See IMS Tech., Inc. v. Haas Automation, Inc.*, 206 F.3d 1422, 1433–34 (Fed. Cir. 2000) (finding that claim that "enables" the

performance of a method without using prior art "M and G codes" did not disclaim the use of those codes).

Second, Groupon asserts that "according to IBM, in its invention 'movement through multiple applications' was done via 'a single partition.'" D.I. 60 at 4 (*citing* D.I. 51, Ex. A-4 at 8). To make that assertion, Groupon artfully rewrites the original quote from the prosecution history, which reads: "Applicants teach[] movement through multiple applications, ***preferably*** at a single partition." D.I. 51, Ex. A-4 at 8 (emphasis added); *see also id.* at 5 ("[I]n accord with Applicants' invention, commands are provided for moving between applications; ***as for example***, in a single partition." (emphasis added)). Once again, IBM was careful to distinguish the prior art based on what its invention permitted, not what it required.

Third, Groupon asserts that IBM characterized its invention as solving problems with "screen overlap." D.I. 60 at 4 (citing D.I. 51, Ex. A-4 at 6). But merely describing a potential benefit that is a result of the claimed invention is not a disclaimer. *Purdue Pharma L.P. v. Endo Pharmaceuticals Inc.*, 438 F.3d 1123, 1136 (Fed. Cir. 2006). Furthermore, the passage that Groupon cites mentions "screen clutter," not "screen overlap." D.I. 51, Ex. A-4 at 6. And even if the claimed inventions allowed for non-overlapping windows, that does not mean that all embodiments require all partitions to be non-overlapping.

> ## 2. The Prosecution History Of The '849 Patent Does Not Support Groupon's Proposed Constructions.

Groupon's citations to the prosecution history of the '849 patent are based on IBM's statements about non-limiting embodiments and do not demonstrate that the claim terms were given special meaning to overcome the prior art.

First, Groupon argues that the prosecution history of the '849 patent supports its proposed constructions because IBM stated that an "application could be present at a first part of the

screen and advertising presented *separately and concurrently* at a second part of the screen."
D.I. 60 at 4 (citing D.I. 51, Ex. B-10 at 3) (emphasis in original). While Groupon emphasizes the
words "separately and concurrently," those words do not appear in Groupon's proposed
constructions and Groupon does not explain how they relate to its proposed constructions. For
example, two applications can appear separately and concurrently without being "fixed" to a
particular location. Furthermore, IBM's use of the permissive language "could be" clearly
indicates a non-limiting embodiment. Finally, the passage that Groupon quotes comes from the
"Summary of the Invention" portion of an appeal brief that IBM filed with the Board of Patent
Appeals and Interferences—it was not a disclaimer made to overcome the prior art. Such general
background statements about the invention cannot give rise to disclaimer. *See Pall Corp. v.
Micron Separations, Inc.*, 66 F.3d 1211, 1220 (Fed. Cir. 1995).

Second, Groupon cites to IBM's statement that "advertising objects 510 include text and
graphics that may be presented at ad partition 280 presented on the monitor screen as shown in
FIG. 3b." D.I. 60 at 4-5 (citing D.I. 51, Ex. B-7 at 11). Again, IBM's use of permissive
language—"may be presented"—indicates a non-limiting embodiment. And again, the passage
that Groupon quotes does not distinguish the prior art and therefore does not disclaim claim
scope. *See Pall Corp.*, 66 F.3d at 1220. Finally, Groupon does not explain how IBM's general
discussion of presenting an ad partition has anything to do with Groupon's proposed limitations.

Third, Groupon points out that IBM relied on "the dichotomy of applications and
advertising" in the prosecution history of the '849 patent. D.I. 60 at 5 (citing D.I. 51, Ex. B-8 at
26). In that passage, IBM distinguished the Agarwal reference based on the fact that while
claims required both applications and advertising, Agarwal only disclosed applications. D.I. 51,
Ex. B-8 at 25. Thus, IBM's argument during the prosecution history relied on the fact that

applications and advertising are different, not on the characteristics of "portions" or "partitions," and certainly not on any contention that "portions" or "partitions" must be "fixed," "dedicated," or "do not overlap," as set forth in Groupon's proposed constructions. Groupon provides no support for its assumption that a "dichotomy" between two types of information means that they must be fixed or non-overlapping. And the Court should reject any attempt to import limitations that go beyond what IBM actually stated during prosecution. *See Avid Tech., Inc.*, 812 F.3d at 1045–46 (reversing a district court's claim construction because the patentee's statements in the prosecution history were "readily susceptible to a narrower reading than the one needed to support the district court's disclaimer."); *N. Telecom Ltd. v. Samsung Elecs. Co.*, 215 F.3d 1281, 1294–95 (Fed. Cir. 2000).

## II. Disputed Terms For U.S. Patent Nos. 5,796,967 And 7,072,849

### A. "object(s)"[5]

| IBM's Proposal | Groupon's Proposal |
|---|---|
| data structure(s) that have a uniform, self-defining format known to the reception system | data structure(s) |

IBM's opening claim construction brief explains that, notwithstanding the Court's prior construction of object(s), the specifications and the prosecution histories demonstrate the construction should be more specific than "data structure(s)." D.I. 58 at 3. Groupon argues that the words "self-defining" and "uniform" make IBM's proposed construction of object(s) unclear, but those concepts are explained in the specification. A "self-defining" format means that an object contains an indication of its format within the object itself. *See* D.I. 51, Ex. A-1 at 12:61-13:4. For example, a self-defining object contains a header that identifies the object's types.

---

[5] IBM has slightly modified its proposed construction of "object(s)" from "data structure(s) having a uniform, self-defining format that are known in the reception system" to "data structure(s) that have a uniform, self-defining format known to the reception system" to clarify that the reception system understands the format of the objects. *See* D.I. 51, Ex. A-1 at 5:49-55.

D.I. 51, Ex. A-1 at 13:32-34. A "uniform" object means that the object has a "specific structure" according to a type of object that is known to the reception system. D.I. 51, Ex. A-1 at 13:66-67. The specification gives examples of uniform object types. D.I. 51, Ex. A-1 at 14:14-15:7. To the extent the Court finds that a jury would benefit from additional clarification about the meaning of "self-defining" or "uniform," IBM's proposed definition should not be rejected; rather it should be supplemented with the above-cited language from the specification to provide additional guidance about the meaning of those terms. There is no reason to ignore the requirement that object(s) be "self-defining" and "uniform," as provided by the definition of objects. *See* D.I. 51, Ex. A-1 at 5:49-55.

### B. "a first partition for presenting applications"

| IBM's Proposal | Groupon's Proposal |
|---|---|
| plain and ordinary meaning or, alternatively:<br><br>a first area for presenting applications | a fixed portion of the screen that is dedicated for displaying applications |

Groupon cannot show that the "first portion" must be "fixed" and "dedicated for displaying applications." First, Groupon argues that claim 1's recitation of "generating a first partition for presenting applications" requires that the partition be capable of presenting multiple applications. D.I. 60 at 5-6 (citing D.I. 51, Ex. A-1 at claim 1). To the contrary, "for presenting applications" just describes the type of information that can be displayed—applications—and does not require the ability to display more than one application. *See Versa Corp. v. Ag-Bag Int'l Ltd.*, 392 F.3d 1325, 1330 (Fed. Cir. 2004) (construing "for creating air channels" and finding that "in context, the plural can describe a universe ranging from one to some higher number, rather than requiring more than one item"). And even if partitions are capable of presenting multiple applications, it does not follow that they must be "fixed" or "dedicated for displaying applications." A partition does not need to be "fixed" in order to display multiple applications—

it could change size and location based on which applications are displayed. Nor does a partition need to be "dedicated for displaying applications" to display multiple applications—it could display multiple applications as well as other content.

Second, Groupon reiterates its argument that the "page format objects" discussed in the specification support its proposed construction. D.I. 60 at 6 (citing D.I. 51, Ex. A-1 at 11:26-44). But, as discussed in Section I.A., the specific object types discussed in the specifications, which "might be used," are "preferred" embodiments that allow for data to be "relocatable on the screen." D.I. 51, Ex. A-1 at 4:12-16, 11:11-16, 11:20-25. The parts of the specification that Groupon cites thus contradict Groupon's contention that partitions must be fixed.

Groupon also reiterates its arguments about the Windows prior art system as support for its proposed construction of "a first partition for presenting applications." D.I. 60 at 6-7 (citing D.I. 51, Ex. A-4 at 5, 8). As discussed in Section I.B.1., the passage that Groupon relies on concerned the term "elements" rather than "partitions." Furthermore, IBM's discussion of the technology at issue is clearly introduced as a non-limiting "example" and a "preferable" way of presenting applications. D.I. 51, Ex. A-4 at 5, 8.

Third, Groupon asserts that IBM's proposed construction would cause the claims to cover the Windows prior art. D.I. 60 at 6-7. But IBM distinguished Windows on the basis that it did not reuse information elements that make up the partitions. D.I. 51, Ex. A-4 at 5-7. IBM's proposed construction of "a first partition for displaying applications" would have no effect on this distinction. Groupon's citation to *Gillespie v. Dywidag Sys. Int'l, USA*, 501 F.3d 1285, 1291 (Fed. Cir. 2007) is irrelevant because *Gillespie* concerns the effect of prosecution disclaimer while Groupon has not identified a "clear and unmistakable" statement that triggers disclaimer in the first place. *See Avid Tech., Inc.*, 812 F.3d at 1045–46.

Finally, Groupon cites to IBM's infringement contentions and accuses IBM of attempting to "convince the Court to ignore the intrinsic evidence." D.I. 60 at 6-7. Ironically, by citing IBM's infringement contentions, it is Groupon, not IBM, that seeks to rely on extrinsic rather than intrinsic evidence. IBM's infringement contentions are irrelevant to claim construction.[6] *SRI Int'l v. Matsushita Elec. Corp. of Am.*, 775 F.2d 1107, 1118 (Fed. Cir. 1985) ("It is only *after* the claims have been *construed without reference to the accused device* that the claims, as so construed, are applied to the accused device to determine infringement.") (emphasis in original).

**C.     "a second partition for presenting a plurality of command functions"**

| IBM's Proposal | Groupon's Proposal |
|---|---|
| plain and ordinary meaning or, alternatively:<br><br>a second area for presenting a plurality of command functions | a fixed portion of the screen that is dedicated to displaying command functions which does not overlap with the fixed portion of the screen that is dedicated for displaying applications |

Groupon provides no support for the limitations it seeks to impose on the definition of "a second partition for presenting a plurality of command functions." First, Groupon argues that the "claim language itself" supports its proposed construction. D.I. 60 at 8. The problem with this argument is that Groupon seeks to change the plain and ordinary meaning of the claim language to something else entirely. If the claim language already incorporated Groupon's limitations of "fixed," "dedicated to displaying command functions," and "does not overlap," Groupon would have no need to artificially introduce those concepts into the claims. Thus, Groupon's proposal to change the claim language based on the claim language itself should be rejected. *See Johnson*

---

[6] Furthermore, Groupon's criticism of IBM's infringement contentions is illogical: Groupon contends that IBM's identification of "a first partition" is arbitrary but at the same time acknowledges that it is based on Groupon's own HTML code, which includes a "body tag" that defines the content of the webpage. D.I. 60 at 7.

*Worldwide Assocs., Inc.*, 175 F.3d at 989 ("General descriptive terms will ordinarily be given their full meaning; modifiers will not be added to broad terms standing alone.").

Second, Groupon argues that its proposed constructions are supported by the specification's description of "page format objects" allowing the display to be "tesselat[ed] or til[ed]." D.I. 60 at 8 (citing D.I. 51, Ex. A-1 at 11:37-39). This argument is yet another attempt to improperly incorporate limitations into the claims from the "preferred form," Ex. A-1 at 11:20-24, of network objects that "might be used," *id* at 4:12-16, and therefore should be rejected. *See Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1218 (Fed. Cir. 2014). Even if "tesselat[ed] or til[ed]" means non-overlapping—something that Groupon assumes but does not demonstrate—the mere fact that partitions have the ability to be non-overlapping does not mean that each partition "does not overlap." Moreover, Groupon's proposed construction would exclude one of the preferred embodiments where "the invention functions supporting the user-partitioned application interface can be performed using the command bar 290, or its equivalent using pull down windows *or an overlapping cascade of windows*." Ex. D.I. 51, Ex. A-1 at 17:24-35 (emphasis added).

Third, Groupon engages in further criticism of IBM's infringement contentions. D.I. 51 at 8-10. Once again, IBM's infringement contentions are irrelevant to claim construction. *SRI Int'l*, 775 F.2d at 1118. Furthermore, while Groupon objects to partitions that overlap with or appear within other partitions, the specifications disclose embodiments that are consistent with IBM's infringement theories. D.I. 58 at 6-8. For example, Fig. 3a shows Window Partition 275 (in red) within Body Partition 260 (in blue).



FIG. 3a

D.I. 56, Ex. A-1 at Fig. 3a.  Groupon's complaints about IBM's infringement contentions are not only irrelevant, they are meritless.

**D.  "selectively storing advertising objects at a store established at the reception system"**

| IBM's Proposal | Groupon's Proposal |
|---|---|
| storing advertisement objects according to a predetermined storage criterion at a store established at the reception system | pre-fetching advertising objects and storing at a store established at the reception system in anticipation of display concurrently with the applications |

Groupon relies on two citations to the specification to support its arguments about "selectively storing advertising objects at a store established at the reception system," neither of which support its construction.  First, Groupon cites to descriptions of the invention that state that advertising "can be pre-fetched from the network and staged at the reception system in anticipation of being called for presentation."  D.I. 60 at 15 (citing D.I. 51, Ex. B-1 at 3:16-21).  Second, Groupon cites to a portion of the abstract that states that pre-fetching "minimizes the potential for communication line interference between application and advertising traffic and

makes the advertising available at the reception system so as not to delay presentation of the service applications." D.I. 60 at 15 (citing D.I. 51, Ex. B-1 at Abstract). Groupon's citations to the specification's discussions of pre-fetching are not sufficient to support its construction of "selectively storing . . ." because "there must be a textual reference in the actual language of the claim with which to associate a proffered claim construction." *Johnson Worldwide Assocs., Inc.*, 175 F.3d at 990. Groupon does not explain how the above passages about "pre-fetching" have any connection to the "selectively storing" claim language. Thus Groupon's citations only show that the specification discloses pre-fetching, not that the specification equates "selectively storing" with "pre-fetching." For the reasons stated in IBM's opening brief, the Court should adopt IBM's proposed construction.

E. **"structuring applications so that they may be presented through the network at a first portion of one or more screens of display / structuring applications so that they may be presented at a first portion of one or more screens of display"**

| IBM's Proposal | Groupon's Proposal |
|---|---|
| plain and ordinary meaning or, alternatively: formatting applications so that they may be presented through the network at a first area of one or more screens of display / formatting applications so that they may be presented at a first area of one or more screens of display | Formatting applications so that they are displayed on a fixed portion of the screen that is dedicated to displaying applications |

Groupon's arguments about the "structuring applications . . ." claim terms mirror its arguments about "a first partition . . ." and "a second partition . . ." and should be rejected for the reasons discussed in Sections II.B and II.C. The '849 patent, like the '967 patent, discloses embodiments, such as Fig. 3a, where partitions overlap with other partitions, *see* D.I. 51, Ex. B-1, at Fig. 3a, and embodiments where windows overlap with other windows, *see* D.I. 51, Ex. B-1, at 17:36-39, 20:32-35. Groupon once again objects to IBM's infringement contentions as

identifying a screen display that "is not even specified by Groupon," but in the same paragraph, Groupon admits that "the Groupon web page [is] specified by the HTML body tags." D.I. 60 at 10-11. IBM relies on the HTML body tags that define Groupon's webpage, which disproves Groupon's assertion that IBM's contentions are not tied to features of Groupon's accused instrumentalities.

F.     **"at a second portion of one or more screens of display concurrently with applications"**

| IBM's Proposal | Groupon's Proposal |
|---|---|
| plain and ordinary meaning or, alternatively: at a second area of one or more screens of display concurrently with applications | on a second fixed portion of the screen that does not overlap the fixed portion of the screen for displaying applications |

Groupon cannot demonstrate that the claimed "portions" of the screen are "fixed" and "non-overlapping." First, Groupon argues that the second portion must be fixed and non-overlapping because IBM stated during prosecution that the screen was configured "so that applications could be presented at a first part of the screen and advertising presented separately and concurrently at a second part of the screen." D.I. 60 at 12 (citing DI. 51, Ex. B-10 at 3). As discussed above, in Section I.B.2., Groupon never explains why IBM's general statements about displaying content "separately and concurrently" should be rewritten to mean "fixed" and "does not overlap," as Groupon proposes. Furthermore, that passage describes how applications "could be" presented and thus is non-limiting. That passage also appears in a part of the prosecution history that discusses the invention generally, rather than defining a particular claim term to overcome the prior art, and therefore does not amount to a disclaimer of claim scope. *See Pall Corp.*, 66 F.3d at 1220.

Second, Groupon again criticizes IBM's infringement contentions because they identify advertising partitions that overlap with or appear within other partitions. D.I. 60 at 13. As

discussed above, IBM's infringement contentions are irrelevant to claim construction. *SRI Int'l*, 775 F.2d at 1118. Setting that issue aside, the '849 patent explicitly discloses the possibility of overlapping partitions and/or windows. D.I. 51, Ex. B-1, at Fig. 3a, 17:36-39, 20:32-35. Groupon also accuses IBM of mapping both claimed portions "to the very same areas of the screen." The excerpt from IBM's infringement contentions that Groupon cites, however, shows that the blue and red boxes, which show different partitions, occupy different areas of the display. D.I. 60 at 13. Groupon also accuses IBM of "drawing boxes around arbitrary portions of a web page." That accusation simply ignores the portions of the website that Groupon specifically designs and programs to show advertisements, shown as red boxes in IBM's contentions. *See id.*

### III. Disputed Terms For U.S. Patent No. 5,961,601

#### A. "continuation(s)"

| IBM's Proposal | Groupon's Proposal |
|---|---|
| a new request in a conversation which a client may send to a server, such as, for example, a hyperlink | a new request which a client may send to a server, such as, for example a hyperlink |

Groupon urges the Court to adopt its prior construction of "continuations" without explaining why the Court should decline to provide helpful clarification that is consistent with the specification. The Court should construe "continuation" as "a new request *in a conversation*," and Groupon's arguments confirm that IBM's construction more closely follows the '601 patent's specification. As Groupon acknowledges, the '601 patent teaches that a client "explicitly requesting a new URL instead of following hypertext links," *i.e.* sending a new request to a server, is not a client selecting a continuation. D.I. 60 at 20 (citing D.I. 51, Ex. C-1 at 7:8-11). Groupon also acknowledges that an explicit new request for a URL "leaves or interrupts the conversation," and therefore is differentiated from a continuation by not being *in*

*the conversation*.  *See* D.I. 60 at 20.  Groupon does not and cannot explain why its proposed construction is consistent with those scenarios.  Therefore, the Court should adopt IBM's construction, which clarifies the distinction between new requests that are continuations and those that are not.

Groupon asserts its noninfringement contentions as the basis for its construction of "continuation(s)" and in so doing fails to provide any sound reason why IBM's construction is incorrect.  Groupon accuses IBM of "attempting to change [the Court's construction] so that it can read the claims on web pages that do not embed state information in every link," but Groupon's disagreement with infringement contentions is not persuasive evidence for construing the claims in Groupon's favor.  *SRI Int'l*, 775 F.2d at 1118.

**B.    "all continuations in an output from said service"**

| IBM's Proposal | Groupon's Proposal |
|---|---|
| [no construction necessary] | all new requests which a client may send to a server, such as, for example a hyperlink in a web page or other output sent to the client |

Groupon bases its argument on the premise that "all continuations in an output" means "all hyperlinks in a web page" and proceeds to yet again argue noninfringement at the wrong stage of this case.  D.I. 60 at 1; *see also id.* at 17.  That premise conflicts with the specification, the claims, and even with Groupon's own proposed construction.

Groupon's contention that "continuations" are synonymous with "hyperlinks" and that "output" is synonymous with "the entire web page" contradicts the specification.  The specification explains that "[h]ypertext links are *examples* of continuations," D.I. 51, Ex. C-1 (emphasis added) at 6:59-60, and that "[a]lthough, the ***preferred embodiment*** is for computers communicating over the World Wide Web (WWW or Web) . . . the present invention applies to other forms of network communications."  D.I. 51, Ex. C-1 at 9:43-47 (emphasis added).

Dependent claims 8, 21, 34, 47, 57, and 66 confirm that the claimed "output" in the independent claims is not limited to webpages by claiming more specific embodiments that are limited to web pages on the "World Wide Web." *Id.* at claims 8, 21, 34, 47, 57, and 66.

Furthermore, the specification confirms that "an output" is not the same thing as "the entire web page" even for those embodiments that involve the World Wide Web. In some embodiments, the output from a service is further processed before it becomes the web page that is subsequently sent and displayed to the user. The specification explains that such processing may include "filtering and/or addition of hyperlinks and data output from the services according to a predetermined criteria" before the entire web page is generated. D.I. 51, Ex. C-1 at 17:13-17; 17:40-54; 18:58-63. Those disclosures from the specification correspond to some of the dependent claims. *See, e.g., id.* at claims 58-59.

Further still, Groupon's arguments that the "output" must be a "web page" contradicts the very construction that Groupon proposes. Groupon equates an "output from said service" to "the entire web page returned to a user" in its claim construction brief, but Groupon's proposed construction acknowledges that an output may in fact be "a web page *or other output*." D.I. 60 at 17 (emphasis added). Groupon should not be permitted to narrow the claims to one embodiment of the '601 patent (in which the output from a service is the web page itself) to the exclusion of all other embodiments. *Ericsson, Inc.*, 773 F.3d at 1218.

Groupon argues that "[d]uring prosecution of the '601 patent, IBM told the Patent Office that 'the present invention advantageously preserves state information by embedding the state in all hyperlinks passed back and forth between the client, 450 and server 410.'" D.I. 60 at 17. But that statement is simply a quotation from a description of the preferred embodiment of the '601 patent. *Compare* D.I. 51, Ex. C-4 at 16:1-4; *see also id.* at 12:42 (introducing the passage that

Groupon relies on as "The Preferred Embodiment"). A patentee's description of a preferred embodiment during the prosecution history does not give rise to prosecution disclaimer. *IMS Tech., Inc.*, 206 F.3d at 1433–34. Furthermore, IBM's general discussion of the claimed inventions cannot give rise to prosecution disclaimer because it was not used to distinguish the prior art or define a claim term. *See Pall Corp.*, 66 F.3d at 1220 (Fed. Cir. 1995).

Groupon's remaining arguments should be rejected because they mischaracterize the *inter partes* review (IPR) proceedings before the patent office and ignore the context of those proceedings. *See Massachusetts Inst. of Tech.*, 839 F.3d at 1120-21 ("[I]t is important to consider the statements made by the applicant both in the context of the overall prosecution history and the then-pending claims."). In the IPR proceedings before the patent office, the petitioner alleged that "the web page to which the user has been directed" was "an output from a service" and alleged that "all hyperlinks" that are "selected and tested" in such a webpage amounted to "all continuations." Ex. 1 at 24. Responding to that mapping, IBM explained that petitioner had not carried its burden because ***petitioner's*** characterization of the claims and the prior art did not match up. *See* D.I. 60, Ex. C-4 at 11 (explaining that the prior art does not embed alleged state information in what was identified as "all identified continuations' ***in Petitioner's arguments***" (emphasis added)); *see also id.* (explaining that the prior art "does not append the CMID—which ***Petitioner alleges*** is 'state information'—onto all tested URLs on a destination web page—which ***Petitioner argues are needed*** to meet the claimed 'all identified continuations'" (emphasis added)).

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

John M. Desmarais
Jon T. Hohenthaner
Karim Oussayef
Laurie N. Stempler
Robert C. Harrits
Michael J. X. Matulewicz-Crowley
Brian D. Matty
DESMARAIS LLP
230 Park Avenue
New York, NY 10169
Tel: (212) 351-3400

Dated: May 5, 2017
5154139 / 43155

By:  _/s/ Stephanie E. O'Byrne_____
David E. Moore (#3983)
Bindu A. Palapura (#5370)
Stephanie E. O'Byrne (#4446)
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801
Tel: (302) 984-6000
dmoore@potteranderson.com
bpalapura@potteranderson.com
sobyrne@potteranderson.com

*Attorneys for Plaintiff International Business
Machines Corporation*

21