

1313 North Market Street
P.O. Box 951
Wilmington, DE 19899-0951
302 984 6000
www.potteranderson.com

**Bindu A. Palapura**
Attorney at Law
bpalapura@potteranderson.com
302 984-6092 Direct Phone
302 658-1192 Fax

May 30, 2017

**VIA ELECTRONIC-FILING**

The Honorable Leonard P. Stark
U.S. District Court for the District of Delaware
J. Caleb Boggs Federal Building
844 N. King Street
Wilmington, DE 19801-3556

      Re:    *International Business Machines Corporation v. Groupon, Inc., et al.*,
                C.A. No. 16-122-LPS

Dear Chief Judge Stark:

Since November 7, 2016, IBM has repeatedly requested that Groupon produce sales and financial information through requests for production, interrogatories, written correspondence, informal telephone calls, and formal meet and confers. After over six months of delay, Groupon has yet to produce *any* internal financial or sales information. Accordingly, IBM respectfully moves to compel Groupon to produce internal financial and sales documents, including those sufficient to identify Groupon's revenue, costs, and profit associated with any categories or channels (such as Local, Travel, Goods, Coupons, and advertisements) of each of the accused instrumentalities (such as Groupon's websites, iOS mobile applications, and Android mobile applications) that Groupon uses to track sales or transactions (such as the transaction associated with the categories of accused instrumentalities above) and, within those categories or channels, documents sufficient to distinguish U.S. revenue, costs, and profit from non-U.S. revenue, costs and profit, on a monthly basis from 2010 to the present.

**I.    Background**

On October 4, 2016, the Court entered a Scheduling Order, which set deadlines of November 7, 2016 for Defendants to produce sales figures for the accused products and March 24, 2017 for the parties to substantially complete document production. D.I. 17 ¶¶ 7b, 8b. Fact discovery closes on September 8, 2017. *Id.* ¶ 8a.

On November 22, 2016, IBM served requests for production, including requests for:

- All documents that You have contended or expect to contend are relevant to the determination of damages for Your alleged infringement of the Patents-In-Suit. Ex. 1 at No. 28.
- Documents sufficient to identify all associated revenues, costs, profits, funding, and the sources thereof on a month-by-month basis from March 2010 to the present, including any Transaction Events to which the revenues were attributed, the monetary value of gross profits, operating profits, net profits, or any other profit metric that You use, and the monetary value of gross revenue, operating revenue, net revenue, or

- any other revenue metric that You use. *Id.* at No. 29; *see also id.* at No. 33.
- All documents concerning estimated or projected future sales, revenue, gross profits, operating profits, net profits, or any other profit metric for the products and services associated with each Accused Instrumentality. *Id.* at No. 32.
- All documents concerning any market study or commercial study concerning the Accused Instrumentalities. *Id.* at No. 34.
- All documents concerning any license agreement, assignment, grant of rights, or other agreement concerning any Accused Instrumentality, or the subject matter disclosed or claimed in the Patents-In-Suit, including any actual or expected payments under such license agreement, assignment, or grant of rights, between You and any other person or entity. *Id.* at No. 36.

On December 22, 2016, Groupon responded to those requests for production, promising to produce responsive documents "at the appropriate time." Ex. 2 at Nos. 28, 29, 32, 33, 34, 36. On January 20, 2016, IBM wrote Groupon to inquire when Groupon would produce documents responsive to IBM's documents requests, including sales and financial documents. Ex. 3 at 3. On February 7, 2016, Groupon responded that it would produce such documents "on a rolling basis." Ex. 4 at 2. After several additional rounds of correspondence, the parties had a formal meet and confer on March 31, 2017, during which the parties discussed Groupon's failure to produce any sales and financial data. Ex. 5 at 6-7. Groupon promised to produce "summary financial information" by April 14, 2017, *id.* at 4, over IBM's objections that—as the parties had discussed during the meet and confer—IBM sought more than just a summary of such data, *id.* at 2-3. Ten days after it promised to produce "summary financial information," on April 24, 2017, Groupon produced eight public Form 10-Ks that it filed with the Security and Exchange Commission. Harrits Decl., ¶ 8; Ex. 6; *see, e.g. id.* Ex. 7. Those eight 10-Ks are the entirety of Groupon's production of sales and revenue documents to date. Harrits Decl., ¶ 8.

On April 28, 2017, IBM again wrote to Groupon and requested a supplemental production of financial and sales documents to fully respond to IBM's discovery requests by May 5, 2017.[1] Ex. 8 at 1-2. Groupon ignored IBM's letter. On May 11, 2017, IBM informed Groupon that it planned to move to compel the production of documents from its April 28, 2017 letter. Ex. 9 at 4-5. In response, Groupon initially promised to produce the requested documents, which included sales and financial documents, by June 2, 2017. Ex. 9 at 3-4. However, Groupon eventually reversed course and would only "agree to investigate whether . . . more granular [financial] data . . . is maintained by Groupon." *Id.* at 1; *see also* D.I. 80 at 2. To date, Groupon has not updated IBM on its investigations.

## II. Argument

IBM cannot afford further delay. This action has been pending for well over a year, and it is now over six months after the deadline for Groupon to produce sales information, over six months after IBM first requested sales and financial information, over two months after the

---

[1] IBM's April 28, 2017 letter also requested that Groupon remedy other deficiencies in its discovery responses. Ex. 8. The parties reached agreement that Groupon would produce a subset of that information by June 2, 2017, as memorialized in the parties' May 19, 2017 status letter to the Court. D.I. 80 at 2.

deadline for substantial production of documents, and over one month after the date by which Groupon promised to remedy its deficient production of sales and financial documents. Groupon's current position that it "agree[s] to investigate" what sales and financial is available is unacceptable at this stage of the case. Groupon should be compelled to produce such documents by a date certain. *See, e.g.,* Ex. 10 (*Elm 3DS Innovations, LLC v. Samsung Elecs. Co., Ltd. et al.*, C.A. No. 14-1430, D.I. 124 (D. Del. May 12, 2016)).

During meet-and-confers, Groupon has suggested that the eight 10-K filings it has produced are sufficient to meet all of its discovery obligations with respect to sales and revenue information. However, the 10-Ks are not detailed enough to distinguish US revenue from non-US revenue, accused product revenue from other revenue, accused website revenue from accused mobile application revenue, or accused android revenue from accused iOS revenue. The 10-Ks do not breakdown revenue on a month-by-month basis to allow for a calculation of damages for the period during which damages are recoverable. And the 10-Ks do not identify revenue from "coupons," a category that features prominently on Groupon's website, or from advertisements, which are the focus of one of the patents-in-suit. The 10-Ks provide no further granularity for costs and profit than they do for revenue. Undoubtedly there are several other types of relevant revenue and sales information that Groupon tracks internally that do not become part of Groupon's 10-Ks. Therefore, Groupon should be compelled to produce the documents underlying the 10-Ks. Ex. 11 (*Sciele Pharma, Inc., et al. v. Shionogi Pharma, et al.*, C.A. No. 09-37, D.I. 545 at 7 (D. Del. Aug. 27, 2012) (declining to limit the defendant's production of financial information to a "summary chart" and compelling the production of underlying documents)).

Setting aside revenue and sales information, Groupon's 10-K do not address IBM's requests for Groupon's projections about future growth, Groupon's understanding of the value of the accused features, market or commercial studies about the accused products, valuations of the company, or patent licenses to technologies similar to the accused products. *See* Ex. 1, Nos. 28-36. All of those subjects may factor into the parties' hypothetical negotiation and thus are relevant to IBM's damages contentions. Groupon has no explanation for its failure to produce such documents.

IBM will be prejudiced if Groupon is not compelled to produce internal sales and financial documents. First, under current damages law, IBM must closely tailor its damages theory to the patented technology. Groupon's detailed financial information is therefore unquestionably relevant to IBM's damages analysis at least because it would provide IBM a basis for such tailored calculations. Second, waiting for Groupon to continue its investigation after six months of delay is not a realistic option. IBM should have the opportunity to develop its damages theories and prepare for damages-related depositions before the very end of fact discovery. Third, the Delaware local rules encourage the parties to exchange damages-related information promptly so that the parties can develop realistic expectations that may foster settlement discussions. Groupon's refusal to do so frustrates this goal.

### III.   Conclusion

For the foregoing reasons, IBM respectfully requests that this Court grant IBM's motion to compel Groupon to produce the internal financial and sales documents discussed above.

Respectfully,

*/s/ Bindu A. Palapura*

Bindu A. Palapura

BAP:nmt/5216563/42141

cc: Clerk of the Court (via hand delivery)
     Counsel of Record (via electronic mail)