# ASHBY & GEDDES

ATTORNEYS AND COUNSELLORS AT LAW

500 DELAWARE AVENUE
P. O. BOX 1150
WILMINGTON, DELAWARE 19899

TELEPHONE
302-654-1888

FACSIMILE
302-654-2067

May 31, 2017

The Honorable Leonard P. Stark        **VIA ELECTRONIC FILING**
United States District Court
J. Caleb Boggs Federal Building
844 N. King Street
Wilmington, DE 19801

Re:   *International Business Machines Corporation v. Groupon, Inc., et al.*
      C.A. No. 16-122-LPS-CJB

Dear Chief Judge Stark:

In its motion, IBM asks the Court to compel production of financial and sales information that Groupon has already produced or has agreed to investigate, and if available, to produce. IBM also requests information that it has not raised during the parties' several conferences leading to this motion rendering its request premature and contrary to the Court's procedures set forth in the Scheduling Order. D.I. 17 at 6-7. IBM's request should be rejected.

**Background**

Contrary to IBM's account, the parties' disagreement regarding Groupon's production of financial information arose in the past month. IBM raised its concern with Groupon's "financial and sales information" on March 30. D.I. 87, Ex. 5 at 7. The parties conferred the following day, and Groupon agreed to produce financial information by April 14 but reiterated "that [the requested] individual sales figures are burdensome and not proportional to the needs of the case, particularly given that IBM's infringement contentions accuse the entire Groupon system." *Id.* at 4. Groupon invited IBM to specifically identify what additional information it needed after receiving Groupon's production. *Id.* IBM noted that it would "review Groupon's forthcoming production and will inform Groupon what additional information is required." *Id.* at 3. On April 24, 2017, Groupon produced the financial and sales information that it agreed to produce. D.I. 87, Ex. 6. Specifically, because IBM purports to accuse of infringement the entire Groupon's business, Groupon produced its comprehensive financial statements filed with the Securities and Exchange Commission as they accurately reflect Groupon's financial information. D.I. 87, Ex. 7.

The produced documents disclose revenue, costs, and profits for each year. *Id.* at 31-33. It also discloses gross billings (the total dollar value of customer purchases of goods and services) and units (the number of purchases). *Id.* at 36-37. They provide a geographical

{01216445;v1 }

breakdown of the data, combining the United States and Canada into a North America category, and further provide a breakdown by line of business (e.g., Local, Travel, Goods). *E.g.*, *id.* at 44-65. This information is based on independently audited financial statements. *E.g.*, *id.* at 86-91, 140-41.

IBM objected to the sufficiency of Groupon's production, but failed to articulate what additional relevant information it needed. D.I. 87, Ex. 8. Instead, it simply argued that more detailed information was necessary "to develop a damages theory specific to the technology of the patents-in-suit." *Id.* at 2. On May 11, IBM informed Groupon that it planned to seek intervention of the Court. D.I. 87, Ex. 9 at 4. Prior to the parties' conference regarding the discovery dispute, Groupon again asked IBM to be prepared to "discuss what specific financial and sales information IBM is seeking, as we believe the requested information has been produced." *Id.* at 3. It was during that call on May 15 that IBM specified that the more detailed information it seeks is (1) monthly data and (2) data limited to the United States. *Id.* at 2. Groupon agreed to investigate whether that information exists by June 2 and if so, to produce it then. *Id.* at 1-2. Nonetheless, IBM requested a discovery teleconference and now seeks an order compelling Groupon to produce precisely the information that Groupon agreed to investigate. (D.I. 79, 86).

**Groupon Already Produced Annual Revenue, Cost, and Profit Information By Line of Business for North America.**

IBM purports to accuse Groupon's entire business of patent infringement in this matter. Accordingly, Groupon produced audited financial statements that reflect financial and sales information for its entire business. Indeed, these statements disclose the company's revenue, costs, and profits, broken down by Groupon's line of business and by its North American business for the relevant time period. D.I. 87, Ex. 7.

To the extent IBM contends that the information produced is insufficient merely because it is available to the public, IBM offers no authority that requires Groupon to produce duplicative, internally-restricted information in discovery. IBM's reliance on *Sciele Pharma* is inapposite. There, the producing party sought to limit its production to a summary chart of financial data that it prepared. The court ordered the underlying documents discoverable under Federal Rule of Evidence 1006. D.I. 87, Ex. 11. Here, Groupon produced comprehensive reports that it creates and maintains in the ordinary course of business. That the information Groupon produced is public is irrelevant.

**Groupon Already Agreed to Investigate Monthly and US-Specific Data, and Produce it if it Exists.**

When the parties conferred on May 15, IBM requested that Groupon provide information breaking down Groupon's revenue, costs and profit outlined in the already-produced statements in two additional ways: (1) monthly data and (2) data limited to Groupon's United States business. D.I. 87, Ex. 9 at 1-2. During that conference, Groupon accordingly agreed to investigate whether those two categories of documents exist and if so, agreed to produce them.

*Id.* During the course of its investigation, Groupon has determined that the requested monthly data exists and it is preparing to produce that information. With respect to the second category, as Groupon has repeatedly explained to IBM, in its ordinary course of business Groupon tracks its U.S. operations together with Canada. *See e.g.*, D.I. 87, Ex. 7 at 34 ("Our operations are organized into three segments: North America, EMEA . . . and the remainder of our international operations."). Nonetheless, Groupon agreed to—and is still investigating—whether it can devise some means of breaking out U.S. sales and revenue information from sales made in Canada. IBM's motion should thus be denied as premature. *SoftView LLC v. Apple Inc.*, No. 10-389, 2013 WL 663285, at *3 (D. Del. Feb. 22, 2013) (denying a motion to compel documents that was "not ripe" where the producing party had not refused to produce the discovery).

**IBM Moved to Compel Categories of Information Raised for the First Time Here**

Finally, in its motion, IBM has expanded its request to include categories of documents that it never raised during the parties' conferences. IBM appears to request an order compelling production of "Groupon's projections about future growth, Groupon's understanding of the value of the accused features, market or commercial studies about the accused products, valuations of the company, or patent licenses to technologies similar to the accused products," as well as financial data organized by customer platform. D.I. 86 at 3. IBM never raised any of these issues with Groupon in the parties' conferences prior to filing the instant motion. It is not clear what exactly IBM seeks with respect to these categories. For example, it argues that it needs more granular information tied to the accused instrumentalities, but also apparently seeks discovery on the value of Groupon as a whole. The parties should confer to understand what relevant information proportional to the needs of the case IBM seeks. This issue is not ripe for Court intervention.

**Conclusion**

For the foregoing reasons, Groupon requests that the Court deny IBM's motion to compel.

Respectfully,

*/s/ John G. Day*

John G. Day

JGD: nml

cc:   Counsel of Record (via electronic mail)