# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| INTERNATIONAL BUSINESS MACHINES CORPORATION, | ) ) ) |
| Plaintiff, | ) C.A. No. 16-122-LPS ) |
| v. | ) **JURY TRIAL DEMANDED** ) |
| GROUPON, INC. | ) ) |
| Defendant. | ) |

## IBM'S THIRD NOTICE OF DEPOSITION TO GROUPON, INC.

Pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure and the Local Rules of this Court, Plaintiff International Business Machines Corporation ("IBM"), by its counsel, will take the deposition upon oral examination of Defendant Groupon, Inc. ("Groupon"), regarding the subject matter set forth in the attached Schedule B, which shall be interpreted in accordance with the definitions set forth in the attached Schedule A.

The deposition will begin at 9:30 a.m. on July 19, 2017, at the office of Desmarais LLP, 230 Park Avenue, New York, New York 10169, or at such other time and place as may be agreed upon in writing by counsel for the parties. The examination will be taken before a Notary Public or other person authorized to administer oaths pursuant to Rule 28 of the Federal Rules of Civil Procedure, and will continue day to day until completed. The testimony at the deposition will be recorded by videographic, stenographic, audio, audiovisual, and/or real-time computer means.

In accordance with Rule 30(b)(6) of the Federal Rules of Civil Procedure, Groupon shall designate one or more officers, directors, managing agents, or other persons who consent to testify on its behalf as to each of the topics set forth in the attached Schedule B. IBM requests

that Groupon identify the individual(s) who will testify regarding each topic at least one week in advance of the deposition.

You are invited to attend.

|  | POTTER ANDERSON & CORROON LLP |
|---|---|
| OF COUNSEL: | |
| John M. Desmarais | By: */s/ Bindu A. Palapura* |
| Jon T. Hohenthaner | David E. Moore (#3983) |
| Karim Oussayef | Bindu A. Palapura (#5370) |
| Laurie N. Stempler | Stephanie E. O'Byrne (#4446) |
| Robert C. Harrits | Hercules Plaza, 6th Floor |
| Michael J. X. Matulewicz-Crowley | 1313 N. Market Street |
| Brian D. Matty | Wilmington, DE 19801 |
| DESMARAIS LLP | Tel: (302) 984-6000 |
| 230 Park Avenue | dmoore@potteranderson.com |
| New York, NY 10169 | bpalapura@potteranderson.com |
| Tel: (212) 351-3400 | sobyrne@potteranderson.com |
| | |
| Dated: June 20, 2017 | *Attorneys for Plaintiff International Business Machines Corporation* |
| 5252482 / 43155 | |

2

# SCHEDULE A
# DEFINITIONS

1. As used herein, "Patents-In-Suit" means United States Patent Nos. 5,796,967 ("the '967 Patent"), 5,961,601 ("the '601 Patent), 7,072,849 ("the '849 Patent"), and 7,631,346 ("the '346 Patent").

2. As used herein, "This Action" means the action under the caption *International Business Machines Corporation v. Groupon, Inc.*, Civil Action No. 16-cv-00122-LPS-CJB, in the United States District Court for the District of Delaware.

3. As used herein, "Defendant," "You," and "Your" means Groupon, Inc. and includes any predecessors, divisions, departments, subsidiaries, parents, affiliates, present or former officers, directors, employees, agents, counsel, representatives, and others authorized to act on behalf of Groupon, Inc.

4. As used herein, "Accused Instrumentality" means any product, application, service, or method accused by IBM of infringing any claim of any of the Patents-In-Suit under any subsection of 35 U.S.C. § 271, including without limitation all products identified in IBM's Preliminary Identification of Accused Products served October 7, 2016 (including any supplements or amendments thereto), IBM's Preliminary Infringement Contentions served January 20, 2017 and March 24, 2017 (including any supplements or amendments thereto), and all products identified by Groupon in response to IBM's First Set of Common Interrogatories to Groupon No. 1, served November 22, 2016.

5. As used herein, "Prior Art" has the same meaning as used in 35 U.S.C. § 101 et seq., and includes any patent, printed publication, knowledge, use, sale or offer for sale, or other act or event defined in 35 U.S.C. §§ 102 or 103, taken singly or in combination.

6. As used herein, "include" and "including" shall be construed to mean "without limitation," so as to acquire the broadest possible meaning.

7. As used herein, "communication" means any transmission of information by one or more persons and/or between two or more persons by any means, including telephone conversations, letters, telegrams, teletypes, telexes, telecopies, electronic mail, other computer linkups, written memoranda, and face-to-face conversations.

8. As used herein, "and" and "or" shall be construed conjunctively and disjunctively, so as to acquire the broadest possibly meaning.

9. As used herein, "any" and "all" shall each be construed to mean "each and every," so as to acquire the broadest possibly meaning.

10. The singular and masculine form of a noun or pronoun shall embrace, and shall be read and applied as, the plural or the feminine or neuter, as the particular context makes appropriate and to give the noun or pronoun the broadest possible meaning.

11. As used herein, "document" has the same broad meaning as in Rule 34 of the Federal Rules of Civil Procedure. The term "document" also encompasses tangible things.

12. As used herein, "person" means any natural person or any business, legal, or governmental entity or association.

13. As used herein, "concerning" or "relating to" means, without limitation, identifying, describing, discussing, concerning, assessing, stating, reflecting, constituting, containing, embodying, tending to support or refute, or referring directly or indirectly to the particular subject matter identified.

14. As used herein, the terms "Complaint," "Answer," and "Affirmative Defense" shall mean the pleadings as originally filed or as amended or supplemented throughout the progression of the case.

15. As used herein, the term "Source Code" means any software, markup language files, style sheet language files, template language files, programming language files, configuration files,

source code, object code, or other electronic information for directing the operation of a computer, mobile device, website, web browser, or for processing electronic data, including but not limited to computer instructions and data definitions expressed in a form suitable for input to an assembler, compiler, other translator, or other data processing module. This definition includes, but is not limited to, JavaScript, Java, Java Server Pages (JSP), Active Server Pages (ASP) (including .Net ASP), VBScript, C++, C, C#, Objective-C, Swift, Python, SQL or other query languages, PostScript, Jade, Apache Velocity Templates, HTML, CSS, XML, batch files, and shell scripts.

16. As used herein, the term "URI" means uniform resource identifier.

17. As used herein, the term "URL" means uniform resource locator.

18. As used herein, the term "Source Code Computer" means the laptop You have made available for inspection in This Action in accordance with Paragraph 12 of the Protective Order in this litigation (D.I. 24).

19. As used herein, "financial data" means any and all information related to Your finances, including but not limited to information concerning revenues, costs, and profits.

20. As used herein, the term "Transaction Event" means any revenue-generating event, including but not limited to user queries, search hit clicks, use of Groupons, coupons, or offers, reservation bookings, completion of reservations (i.e., reservations that are not cancelled or no-show reservations), ad-related bookings, covers, advertisement impressions, advertisement clicks, or purchases (including but not limited to purchases of Groupons).

21. As used herein, the term "data source" means database, wiki, file store, intranet site, data repository, network location, document management system, or other data collection used to access and/or maintain documents.

# SCHEDULE B
# TOPICS

1. All revenues (including but not limited to advertising revenue), costs, and sources (including geographic sources) thereof derived by You from, for, or concerning the Accused Instrumentalities, from March 2010 to the present.

2. The identity, content, and interpretation of the annual profit and loss statements for Your business unit(s) responsible for each of the Accused Instrumentalities.

3. Your pricing policies, strategies, and practices concerning the Accused Instrumentalities.

4. Business plans, marketing strategies, go-to-market plans, market projections, and competitive analyses concerning the Accused Instrumentalities.

5. Any evaluation, study, analysis, or investigation about how users interact with the Accused Instrumentalities, including:

    a. the extent to which users interact with the Accused Instrumentalities, including total visitors, unique visitors, non-unique (i.e., returning) visitors, pages per session, session duration, and conversions;

    b. how users interact with the Accused Instrumentalities to search for services and/or navigate through options to make a purchase and/or reservation;

    c. how users interact with the Accused Instrumentalities to create, "Sign In," "Sign Up," or "Log In" to user accounts using Facebook, Google, or any other third-party platform; and

    d. how users interact with the Accused Instrumentalities to store, cache, or interact with any advertisements or menus on the Accused Instrumentalities.

6. The bases for customer demand or preference for each Accused Instrumentality, including users' preferences for interacting with the Accused Instrumentalities to:

    a. search for services and/or navigate through options to make a purchase and/or reservation where user identification, transaction identification, or other state information is maintained;

    b. create, "Sign In," "Sign Up," or "Log In" to user accounts using Facebook, Google, or any other third-party platform; and

    c. store, cache, or interact with any advertisements, images, or menus on the Accused Instrumentalities.

7. Usage data or metrics for the Accused Instrumentalities, such as the extent to which users interact with the Accused Instrumentalities to:

    a. search for services and/or navigate through options to make a purchase and/or reservation where user identification, transaction identification, deal identification, session identification, or other state information is maintained;

    b. create, "Sign In," "Sign Up," or "Log In" to user accounts using Facebook, Google, or any other third-party platform; and

    c. store, cache, or interact with any advertisements, images, or menus on the Accused Instrumentalities.

8. Any policy, procedure, practice, or program related to licensing (in-bound or out-bound) or use of intellectual property by Groupon, including both written and unwritten policies, procedures, practices, or programs, further including but not limited to patent licensing efforts and Groupon's criteria for taking or offering a license to a patent.

9. The identity, content, interpretation, negotiation, and decision to enter into: (a) any patent license that you have identified or produced in This Action (b) any patent license that pertains to any aspect of any of the Accused Instrumentalities, or (c) any patent license pools that you have entered or in which you have invested.

10. From 2010 to the present, on a monthly basis, for each of the Accused Instrumentalities:

   a. The number of queries for deals and/or "Groupons" performed by users in the United States;

   b. The number and nature (i.e., description) of Transaction Events that generated the revenue produced in This Action and the amount of revenue generated by such Transaction Events; and

   c. The number and nature (i.e., description) of advertising-related Transaction Events, such as, for example, purchase of deals and/or Groupons as a result of clicking on advertisements (including but not limited to third-party advertisements) on the Accused Instrumentalities and the revenues resulting from such advertisements.