

1313 North Market Street
P.O. Box 951
Wilmington, DE 19899-0951
302 984 6000
**www.potteranderson.com**

**Bindu A. Palapura**
Attorney at Law
bpalapura@potteranderson.com
302 984-6092 Direct Phone
302 658-1192 Fax

September 20, 2017

**VIA ELECTRONIC FILING**

The Honorable Leonard P. Stark
U.S. District Court for the District of Delaware
J. Caleb Boggs Federal Building
844 N. King Street
Wilmington, DE 19801-3556

    Re:    *International Business Machines Corporation v. Groupon, Inc., et al.*,
             C.A. No. 16-122-LPS

Dear Chief Judge Stark:

    IBM submits this letter brief to supplement the parties' briefing on Groupon's Motion for Judgment on the Pleadings. D.I. 29. Groupon relied extensively on *Visual Memory LLC v. NVIDIA Corp.*, C.A. No. 15-789-RGA, 2016 U.S. Dist. LEXIS 69543 (D. Del. May 27, 2017) ("*Visual Memory I*"), and its interpretation of *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327 (Fed. Cir. 2016), in briefing and at oral argument. The Federal Circuit has reversed the district court's opinion. *Visual Memory LLC v. NVIDIA Corp.*, 867 F.3d 1253 (Fed. Cir. 2017) ("*Visual Memory II*"). The Federal Circuit's opinion demonstrates that Groupon's interpretation of *Enfish* was erroneous and confirms that storage techniques that improve computers are patent-eligible.

**I.    The Federal Circuit Rejected Groupon's Interpretation Of *Enfish*.**

    Groupon attempted to distinguish *Enfish*, which found patent claims to pass *Alice* Step One, by relying on a passage that describes the inquiry as "whether the focus of the claims is on the specific asserted improvement in computer capabilities . . . or, instead, on a process that qualifies as an 'abstract idea' for which computers are invoked merely as a tool." *Enfish*, 822 F.3d at 1335-36. The district court in *Visual Memory I* interpreted that passage to mean that there must be a subjective determination about whether claims are sufficiently "specific" or "concrete." *Visual Memory I*, 2016 U.S. Dist. LEXIS 69543, at *14. Although the court acknowledged that the claims related to an alleged "improvement to computer capabilities," it decided, without fully analyzing the specification, that the claims were directed to the allegedly abstract idea of "categorical data storage" because they were not sufficiently "specific." *Id.*

    Groupon relied on the district court's approach in *Visual Memory I* to analyze the Filepp Patents. For example, at oral argument, Groupon cited the district court's *Visual Memory I* opinion and asserted that the Court should find the Filepp Patent claims abstract based on Groupon's assertions that they are not sufficiently "specific" or "concrete," without explaining what those terms mean under *Alice* Step One.[1] Jun. 5, 2017 Hearing Tr. at 5:5-6:10. Groupon

---

[1] Groupon's repeated argument that the Filepp Patents are not "immune" to analysis under *Alice* is a strawman. IBM never argued that the patents are "immune." *See* Jun. 5, 2017 Hearing Tr. at 28:18-30:17 (explaining IBM's position).

makes the same argument in its supplemental brief. D.I. 167 at 2 ("[T]he claims must disclose a 'specific' or 'concrete' improvement."). Like the district court in *Visual Memory I*, Groupon ignores the specification's description of the technological benefits that flow from the claimed invention. *See*, *e.g.*, D.I. 39 at 6-7 (dismissing technological solutions with little analysis of the specification). Groupon even argued that "***the specification's description*** of what might be achieved by a practitioner implementing the claims ***is irrelevant***." *Id.* at 6 (emphasis added). Groupon's supplemental brief does not even mention the specification of the Filepp Patents. *See* D.I. 167.

The Federal Circuit's *Visual Memory II* opinion undermines Groupon's analysis. The Federal Circuit focused on the patent claims and their relationship to the specification. First, the Federal Circuit analyzed the claims, determining that they were directed to a memory system with "programmable operational characteristics." *Visual Memory II*, 867 F.3d at 1259. The Federal Circuit then analyzed the specification in detail and considered the benefits that flowed from those "programmable operational characteristics," including compatibility with different processors, better performance, and larger memory size. *Id.* The Federal Circuit concluded that the claims were patent eligible under *Enfish* because "the claims here are directed to a technological improvement" and "the specification discusses the advantages offered by the technological improvement." *Id.* at 1259-60. The Federal Circuit explained that "[i]t is for this reason that the district court's reliance on patent-ineligible claims in [other cases] was misplaced." *Id.* at 1260.

The Federal Circuit's decision demonstrates that Groupon's interpretation of *Enfish* is legally erroneous. Contrary to Groupon's argument, analyzing "whether the focus of the claims is on the specific asserted improvement in computer capabilities . . . or, instead, on a process that qualifies as an 'abstract idea' for which computers are invoked merely as a tool," *see Enfish*, 822 F.3d at 1335-36, does not mean deciding whether the claims are "specific" or "concrete" in a vacuum. Rather, the claims meet *Alice* Step One if "the claims . . . are directed to a technological improvement" and "the specification discusses the advantages offered by the technological improvement." *Visual Memory II*, 867 F.3d at 1259-60. The specification is not "irrelevant;" it is essential to understanding whether the claims are directed to a technological improvement and therefore whether they pass *Alice* Step One.

**II.      Under *Visual Memory II*, The Patents Meet *Alice* Step One.**

The Federal Circuit's approach demonstrates that the Filepp Patent claims meet *Alice* Step One. The Federal Circuit first looks to whether "the claims . . . are directed to a technological improvement." *Id.* at 1259. Here, the Filepp Patent claims are directed to improvements that are achieved by breaking content into objects and selectively supplying, storing, or retrieving those objects at the reception system. As IBM argued in its opposition brief, the Filepp Patents claim those concepts through specific limitations, which include:
- "the screen display being generated by the respective reception system from data objects having a prescribed data structure,"
- "the objects being retrieved from the objects stored at the respective reception system, or if unavailable . . . then from the network . . . at least some of the objects may be used in more than one application," and
- "structuring advertising so that it may be selectively supplied to and retrieved at the reception systems for presentation to the respective users in accordance with the

characterizations established for the respective reception system users." D.I. 37 at *7*-8.

After determining whether the claims are directed to a technological improvement, the Federal Circuit asked whether "the specification discusses the advantages offered by the technological improvement." *Visual Memory II*, 867 F.3d at 1260. Here, the specification of the Filepp Patents describes those advantages in detail (underlined below), using language that closely tracks the claims (in bold below). For example:

> The ***network*** described . . . is designed to alleviate the effects of host-centered limitations . . . . This objective is achieved by reducing the demand on the host by ***structuring the network*** so that the higher network levels act primarily to ***maintain and supply data and programs*** to the lower levels of the network, particularly ***RS [reception system] 400***, which acts to manage and sustain the ***user screen displays***. More particularly . . . ***parsing the network data and program instructions . . . into . . . objects***, and ***distributing them into the network*** where they can be ***processed at . . . reception system*** 400. ***The screens presented at the user's monitor*** are each ***divided into*** addressable ***partitions*** . . . Further, the ***objects are structured*** in accordance with ***an architecture that permits the displayed data to be . . . reusable to make up other screens*** and other sessions . . . dynamically created ***in response to the user's requests***.

'967 Patent at 10:57-11:16; *see also* D.I. 37 at 7-8 (linking the claims to additional quotations form the specification). And, as in *Visual Memory II*, *see* 867 F.3d at 1261, the Filepp Patents disclose how to program an embodiment of the claimed inventions using computer code. *See*, *e.g.*, '967 patent, at 14:14-15:7; 37:20-54. Thus, the Filepp Patent claims are patent-eligible under *Alice* Step One because they are directed to concepts that, as described in the specification, yield technological benefits in computer networks. *Visual Memory II*, 867 F.3d at 1259-60.

The *Visual Memory II* decision also confirms that specific ways of storing data that improve computer functionality are patent eligible. Groupon argued that the Filepp Patents are simply directed to "generic local caching" and therefore do not contain an inventive concept. *See*, *e.g.*, D.I. 30 at 12-13. The Federal Circuit's *Visual Memory II* decision confirms that Groupon's characterization of any patent that involves storing as directed to abstract "categorical data storage" is incorrect. *Visual Memory II*, 867 F.3d at 1262. Moreover, the claims that the Federal Circuit found patent-eligible in *Visual Memory II* are far less detailed than the Filepp Patent claims. For example, claim 1 of the *Visual Memory* patent—once the generic computer components are removed—boils down to "programmable operation characteristics . . . based on the processor . . . [which] determines a type of data stored." *Id.* at 1257. The Filepp Patents are much more detailed and explain how objects are supplied, retrieved, stored, and reused to comprise different types of partitions in screen displays and implement interactive applications and advertising. *See*, *e.g.*, D.I. 37 at 7-8. Groupon attempts to distinguish the *Visual Memory* claims because they refer to "memory," various "caches," and a "bus." D.I. 167 at 3. Of course, it was not those generic computer components that led the Federal Circuit to find the claims patents-eligible but the connection between what the patent claimed, "programmable operation characteristics," and what the specification taught about the computer improvements that flowed from that claimed subject matter. *Visual Memory II*, 867 F.3d at 1259-60. Like the *Visual Memory* claims, the Filepp Patent claims are patent eligible because they are linked to specific improvements in computer functionality described in the specification. *See*, *e.g.*, D.I. 37 at 7-8.

The Honorable Leonard P. Stark
September 20, 2017
Page 4

                                                    Respectfully,

                                                  */s/ Bindu A. Palapura*

                                                  Bindu A. Palapura

BAP/msb/5397200/43155

cc:    Clerk of the Court (via hand delivery)
        Counsel of Record (via electronic mail)