# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| INTERNATIONAL BUSINESS MACHINES CORPORATION, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | C.A. No. 16-122-LPS-CJB |
| | : | |
| GROUPON, INC., | : | |
| | : | |
| Defendant. | : | |

---

David E. Moore, Bindu A. Palapura, Stephanie E. O'Byrne, POTTER ANDERSON & CORROON LLP, Wilmington, DE

John M. Desmarais, Jon T. Hohenthaner, Karim Z. Oussayef, Laurie N. Stempler, Robert C. Harrits, DESMARAIS LLP, New York, NY

    Attorneys for Plaintiff International Business Machines Corporation.


John G. Day, Andrew C. Mayo, ASHBY & GEDDES, Wilmington, DE

J. David Hadden, Saina S. Shamilov, Phillip J. Haack, Adam M. Lewin, FENWICK & WEST LLP, Mountain View, CA

    Attorneys for Defendant Groupon, Inc.

---

## **MEMORANDUM OPINION**

November 17, 2017
Wilmington, Delaware

**STARK, U.S. District Judge:**

Plaintiff International Business Machines Corporation ("IBM") filed suit against

Defendant Groupon, Inc. ("Groupon"), alleging infringement of U.S. Patent Nos. 5,796,967;

7,072,849; 5,961,601; and 7,631,346.

Presently before the Court is Groupon's motion for judgment on the pleadings that the

'967 and '849 patents (collectively, the "Filepp patents") are directed to ineligible subject matter

and are invalid under 35 U.S.C. § 101.  (D.I. 29[1])  The parties submitted briefing (*see* D.I. 30, 37,

39) and the Court heard oral argument on June 5, 2017.  (*See* D.I. 100 ("Tr."))  On September 15,

2017, the Court requested supplemental briefing in light of the Federal Circuit's recent decision,

*Visual Memory LLC v. NVIDIA Corp.*, 867 F.3d 1253 (Fed. Cir. 2017).  The parties submitted

letter briefing on September 19, 2017 (D.I. 167) and September 20, 2017 (D.I. 168).  They also

provided their views on another Federal Circuit opinion, *Two-Way Media Ltd. v. Comcast Cable

Commc'ns, LLC*, __ F.3d __, 2017 WL 4931936 (Fed. Cir. Nov. 1, 2017), on November 10 (D.I.

192) and November 14 (D.I. 194).

I.      **BACKGROUND**

The Filepp patents are related patents directed to "generating screen displays for

interactive applications (such as for making travel reservations or shopping) with integrated

advertisements and commands to navigate within and between the applications."  (D.I. 30 at 2-3)

The '967 patent is titled "Method for Presenting Applications in an Interactive Service" and the

'849 patent is titled "Method for Presenting Advertising in an Interactive Service."  (*Id.*)

---

[1]All references to the docket index (D.I.) are to Case No. 16-122-LPS-CJB, unless otherwise
noted.

Groupon asserts that the Filepp patents are invalid under § 101 because they are "directed to the abstract ideas of local storage of information and resources at a user's computer and for using such information and resources in presenting a partitioned display," without the addition of an inventive concept.  (*Id.* at 1, 8) (internal quotation marks omitted)  Groupon bases its motion on the Court's adoption of Magistrate Judge Burke's Report and Recommendation denying a similar motion in related case *IBM v. Priceline*.  In that case, the defendants[2] argued that the Filepp patents and two others were directed to patent-ineligible subject matter pursuant to § 101.  (*IBM v. Priceline,* C.A. No. 15-137-LPS-CJB D.I. 60 ("Priceline R&R"), D.I. 73 ("Priceline Order"))  In the February 16, 2016 Priceline R&R, Judge Burke agreed with the defendants that the claims were directed to abstract ideas under *Alice* step one, finding that "the concepts of locally storing information and resources at a user's computer and presenting a partitioned display are abstractions 'devoid of a concrete or tangible application.'"  (Priceline R&R at 48)  However, Judge Burke recommended the Court deny the motion without prejudice under *Alice* step two because "[c]laim construction and discovery should further illuminate whether the claims' limitations are specific enough to be an inventive concept."  (*Id.* at 49)  On March 30, 2016, the Court adopted the Priceline R&R and denied the motion to dismiss without prejudice, agreeing that "issues of claim construction . . . must be briefed and resolved before Defendants should be permitted to file a renewed motion under 35 U.S.C. § 101."  (Priceline Order at 2-3)

Now that claim construction has been completed, Groupon renews the *Priceline* argument, asserting that the Filepp patents, even when construed, are "void of any inventive

---

[2]The defendants include The Priceline Group Inc., Kayak Software Corporation, Opentable, Inc., and Priceline.com LLC.

concept necessary to transform their recited abstract ideas into a patent-eligible application."
(D.I. 30 at 6)  IBM contends that the law has changed since the *Priceline* decision, and under
*Enfish LLC v. Microsoft Corp.*, 822 F.3d 1327 (Fed. Cir. 2016) and its progeny, the Filepp
patents are patent-eligible under *Alice* step one because they are directed toward improvements in
computer functionality.  (D.I. 37 at 6-8)

## II.    LEGAL STANDARDS

### A.    Motion for Judgment on the Pleadings

Pursuant to Federal Rule of Civil Procedure 12(c), a party may move for judgment on the
pleadings "[a]fter pleadings are closed – but early enough not to delay trial."  When evaluating a
motion for judgment on the pleadings, the Court must accept all factual allegations in a
complaint as true and view them in the light most favorable to the non-moving party.  *See
Rosenau v. Unifund Corp.*, 539 F.3d 218, 221 (3d Cir. 2008); *see also Maio v. Aetna, Inc.*, 221
F.3d 472, 482 (3d Cir. 2000).  This is the same standard that applies to a Rule 12(b)(6) motion to
dismiss.  *See Turbe v. Gov't of Virgin Islands*, 938 F.2d 427, 428 (3d Cir. 1991).

A Rule 12(c) motion will not be granted "unless the movant clearly establishes that no
material issue of fact remains to be resolved and that he is entitled to judgment as a matter of
law." *Rosenau*, 539 F.3d at 221.  "The purpose of judgment on the pleadings is to dispose of
claims where the material facts are undisputed and judgment can be entered on the competing
pleadings and exhibits thereto, and documents incorporated by reference." *Venetec Int'l, Inc. v.
Nexus Med., LLC*, 541 F. Supp. 2d 612, 617 (D. Del. 2008); *see also In re Burlington Coat
Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (explaining that any documents integral
to pleadings may be considered in connection with Rule 12(c) motion).  "The issue is not

3

whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Burlington Coat Factory*, 114 F.3d at 1420.  Thus, a court may grant a motion for judgment on the pleadings (like a motion to dismiss) only if, after "accepting all well-pleaded allegations in the complaint as true, and viewing them in the light most favorable to plaintiff, plaintiff is not entitled to relief." *Maio*, 221 F.3d at 482 (3d Cir. 2000).

The Court may consider matters of public record as well as authentic documents upon which the complaint is based if attached to the complaint or as an exhibit to the motion. *See Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994).  The Court may also take judicial notice of the factual record of a prior proceeding. *See Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 416 n.3 (3d Cir. 1988).  Ultimately, a motion for judgment on the pleadings can be granted "only if no relief could be afforded under any set of facts that could be proved." *Turbe*, 938 F.2d at 428.

### B.    Patent-Eligible Subject Matter

Under 35 U.S.C. § 101, "[w]hoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title."  There are three exceptions to § 101's broad patent-eligibility principles: "laws of nature, physical phenomena, and abstract ideas." *Diamond v. Chakrabarty*, 447 U.S. 303, 309 (1980).  Pertinent here is the third category, "abstract ideas," which "embodies the longstanding rule that an idea of itself is not patentable." *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2355 (2014) (internal quotation marks omitted).  "As early as *Le Roy v. Tatham*, 55 U.S. 156, 175 (1852), the Supreme Court explained that '[a] principle, in the abstract, is a fundamental truth; an original

4

cause; a motive; these cannot be patented, as no one can claim in either of them an exclusive right.' Since then, the unpatentable nature of abstract ideas has repeatedly been confirmed." *In re Comiskey*, 554 F.3d 967, 977-78 (Fed. Cir. 2009).

In *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289 (2012), the Supreme Court set out a two-step "framework for distinguishing patents that claim laws of nature, natural phenomena, and abstract ideas from those that claim patent-eligible applications of those concepts." *Alice*, 134 S. Ct. at 2355. First, courts must determine if the claims at issue are directed to a patent-ineligible concept – in this case, an abstract idea ("step 1"). *See id.* If so, the next step is to look for an "'inventive concept' – *i.e.*, an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself" ("step 2"). *Id.* The two steps are "plainly related" and "involve overlapping scrutiny of the content of the claims." *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1353 (Fed. Cir. 2016).

### 1. Step 1

At step 1, "the claims are considered in their entirety to ascertain whether their character **as a whole** is directed to excluded subject matter." *Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1346 (Fed. Cir. 2015) (emphasis added); *see also Affinity Labs of Texas, LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1257 (Fed. Cir. 2016) ("The 'abstract idea' step of the inquiry calls upon us to look at the 'focus of the claimed advance over the prior art' to determine if the claim's 'character as a whole' is directed to excluded subject matter."). Claims implemented purely in software are not necessarily directed to patent-ineligible abstract ideas under step 1. *See Enfish*, 822 F.3d at 1335 ("Software can make non-abstract improvements to

5

computer technology just as hardware improvements can . . . ."); *id.* ("We thus see no reason to conclude that all claims directed to improvements in computer-related technology, including those directed to software, are abstract and necessarily analyzed at the second step of *Alice*, nor do we believe that *Alice* so directs."); *see also id.* at 1338 ("[W]e are not persuaded that the invention's ability to run on a general-purpose computer dooms the claims."); *id.* at 1339 ("Much of the advancement made in computer technology consists of improvements to software that, by their very nature, may not be defined by particular physical features but rather by ***logical structures and processes***.") (emphasis added).

At step 1, the Federal Circuit has distinguished claims that are "directed to ***an improvement to computer functionality*** versus being directed to an abstract idea." *Id*. at 1335 (emphasis added). *Enfish*, for example, found claims to be not abstract because the "plain focus of the claims is on an improvement to computer functionality itself," distinguishing such patent claims from those involved in *Alice*, which involved "economic or other tasks for which a computer is used in its ordinary capacity." *Id.* at 1336. By contrast, in *Alstom*, the Federal Circuit determined that certain claims ***were*** directed to an abstract idea because "the focus of the claims is not on . . . an improvement in computers as tools, but on certain independently abstract ideas that use computers as tools." *Alstom*, 830 F.3d at 1354. *Enfish* adds that a patent specification's disparagement of prior art or "conventional" implementations may bolster a conclusion that claims are directed to a non-abstract improvement of technology rather than an abstract idea. 822 F.3d at 1337, 1339. However, "the level of detail in the specification does not transform a claim reciting only an abstract concept into a patent-eligible system or method." *Accenture Glob. Servs., GmbH v. Guidewire Software, Inc.*, 728 F.3d 1336, 1345 (Fed. Cir.

6

2013)

Courts should not "oversimplif[y]" key inventive concepts or "downplay" an invention's benefits in conducting a step 1 analysis.  *See id.* at 1337; *see also McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1313 (Fed. Cir. 2016) ("[C]ourts 'must be careful to avoid oversimplifying the claims' by looking at them generally and failing to account for the specific requirements of the claims." (quoting *In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d 607, 611 (Fed. Cir. 2016))).  "Whether at step one or step two of the *Alice* test, in determining the patentability of a method, a court must look to the claims as an ordered combination, without ignoring the requirements of the individual steps."  *McRO*, 837 F.3d at 1313.

###     2.      Step 2

At step 2, the Federal Circuit has instructed courts to "look to both the claim as a whole and the individual claim elements to determine whether the claims contain an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself."  *McRO*, 837 F.3d at 1312 (internal brackets and quotation marks omitted).  The "standard" step 2 inquiry includes consideration of whether claim elements "simply recite 'well-understood, routine, conventional activit[ies].'"  *Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1350 (Fed. Cir. 2016) (quoting *Alice*, 134 S. Ct. at 2359).  "Simply appending conventional steps, specified at a high level of generality, [is] not ***enough*** to supply an inventive concept."  *Alice*, 134 S. Ct. at 2357 (emphasis in original; internal quotation marks omitted).

However, "[t]he inventive concept inquiry requires more than recognizing that each claim element, by itself, was known in the art."  *Bascom*, 827 F.3d at 1350.  In *Bascom*, the Federal

7

Circuit held that "the limitations of the claims, taken individually, recite generic computer, network and Internet components, none of which is inventive by itself," but nonetheless determined that an ***ordered combination*** of these limitations was patent-eligible under step 2. *Id.* at 1349. The Federal Circuit has looked to the claims as well as the specification in performing the "inventive concept" inquiry. *See Affinity Labs*, 838 F.3d at 1271 ("[N]either the claim nor the specification reveals any concrete way of employing a customized user interface.").

The "mere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention" under step 2. *Alice*, 134 S. Ct. at 2358. "Given the ubiquity of computers, wholly generic computer implementation is not generally the sort of additional feature that provides any practical assurance that the process is more than a drafting effort designed to monopolize the abstract idea itself." *Id.*

### 3.    Preemption

The Supreme Court has instructed that, "in applying the § 101 exception, [courts] must distinguish between patents that claim the building blocks of human ingenuity and those that integrate the building blocks into something more, thereby transforming them into a patent-eligible invention." *Alice*, 134 S. Ct. at 2354 (internal citation and quotation marks omitted). That is, where a patent would preempt use of "basic tools of scientific and technological work," *i.e.*, "[l]aws of nature, natural phenomena, and abstract ideas," the patent would "impede innovation more than it would tend to promote it, thereby thwarting the primary object of the patent laws." *Id.* (internal quotation marks omitted).

The Federal Circuit has considered the issue of preemption at both steps 1 and 2. For example, in *McRO*, 837 F.3d at 1315, in support of its conclusion that a claim was patent-eligible

8

under step 1, the Federal Circuit held that limitations of a claim "prevent[ed] preemption of all

processes for achieving automated lip-synchronization of 3-D characters."  In *Bascom*, 827 F.3d

at 1350, in support of the Court's conclusion that claims reciting "a specific, discrete

implementation of the abstract idea of filtering content" were patent-eligible under step 2, the

Federal Circuit explained that the claims did not preempt "all ways of filtering content on the

Internet."

## III.   DISCUSSION

Groupon contends that independent claim 1 of the '967 patent and independent claims 1,

8, 13, 14, and 21 of the '849 patent are ineligible under § 101.  (D.I. 30 at 3-4)  Claim 1 of the

'967 patent is representative and recites:

> A method for presenting interactive applications on a computer
> network, the network including a multiplicity of user reception
> systems at which respective users may request a multiplicity of
> available applications, the respective reception systems including a
> monitor at which the applications requested can be presented as
> one or more screens of display, the method comprising the steps of:
>
>> a.  generating a screen display at a respective
>> reception system for a requested application, the
>> screen display being generated by the respective
>> reception system from data objects having a
>> prescribed data structure, at least some of which
>> objects may be stored at the respective reception
>> system, the screen display including a plurality of
>> partitions, the partitions being constructed from
>> objects, the objects being retrieved from the objects
>> stored at the respective reception system, or if
>> unavailable from the objects stored at the respective
>> reception system, then from the network, such that
>> at least some of the objects may be used in more
>> than one application;
>>
>> b. generating at least a first partition for presenting

9

applications; and

c. generating concurrently with the first partition at
least a second partition for presenting a plurality of
command functions, the command functions
including at least a first group which are selectable
to permit movement between applications.

While the claims of the '967 and '849 patents differ slightly, the parties agree that both

Filepp patents are directed to the same concept.  (D.I. 30 at 4; *see IBM v. Priceline*, C.A. No. 15-

137-LPS-CJB D.I. 54 at 141-42)  Rather than claiming a "method for presenting interactive

applications," like the '967 patent, the '849 patent claims are directed to a "method for presenting

advertising."  Similarly, where the '967 patent recites "partitions," the '849 patent claims

"portions."

### 1.    Step 1

Step 1 requires the Court to consider whether the claims are directed to a patent-ineligible

abstract idea.  Groupon contends that, through the adoption of the Priceline R&R, this Court

already determined that the Filepp patents are directed to the abstract idea of local storage.  (D.I.

30 at 9)  Furthermore, according to Groupon, the Filepp patents are materially distinct from those

at issue in *Enfish* because the Filepp patents fail to claim a specific implementation of a solution

to a software problem, and instead only "claim a functional result with nothing more than a

suggestion to use conventional computer concepts to achieve it."  (*Id.* at 9-10)

IBM responds that the Filepp patents are "directed to achieving an improvement in

computer capabilities – specifically, improving the capabilities of network hosts and computer

networks."  (D.I. 37 at 7)  Prior to the Filepp patents, IBM contends, network-based interactive

services operated by "processing and stor[ing] all of the applications a user might request through

a 'dumb terminal,'" resulting in slower response times and limits on the number of users a single

host could serve.  (*Id.*)  The Filepp patents improved that functionality, according to IBM, by

structuring applications and advertising as objects and selectively storing and retrieving those

objects at the reception system, enabling the host to respond more quickly to user requests and,

therefore, serve more users, more quickly.  (*Id.*)  IBM contends, therefore, that the Filepp patents

are directed to an improvement in computer capabilities and, under *Enfish* and its progeny, are

patent-eligible.

The Court agrees with IBM.[3]  In the Priceline R&R, the Court found the Filepp patents

directed to the abstract idea of local storage, but ultimately denied the motion to dismiss because

claim construction and discovery were required before a finding on patent eligibility could be

made.  The Court found it was plausible that the claims, upon being construed, were patent-

---

[3]At oral argument, Groupon relied heavily on a decision from this Court in arguing that *Enfish* does not hold that "any claim that aspires and [pur]ports to improve computers or computer networking is somehow immune under [§] 101 or immune to [§] 101 scrutiny."  (Tr. at 5) (citing *Visual Memory LLC v. NVIDIA Corp.* ("*Visual Memory I*"), 2016 WL 3041847, at *4 (D. Del. May 27, 2016)).  Under *Enfish* and *Visual Memory I*, Groupon argued that the "real test" is "whether the claims provide a specific concrete solution" to a computer-centric problem.  (Tr. at 5-6, 13-14; *see also Visual Memory I*, 2016 WL 3041847, at *4-5 (finding that, at step 1, "the question of whether a given claim improves the way a computer works is not, by itself, determinative" and instead, claims must be "directed to a specific implementation of a solution to a problem in the software arts") (internal quotation marks and citations omitted))  Subsequently, the Federal Circuit reversed this Court's *Visual Memory I* decision.  *See Visual Memory LLC v. NVIDIA Corp.* ("*Visual Memory II*"), 867 F.3d at 1259-60 (Fed. Cir. 2017); *see also* D.I. 167 at 1-2 (Groupon arguing that despite reversing this Court's decision, the Federal Circuit agreed with this Court's interpretation of *Enfish* that the key determination at step 1 is "whether the focus of the claims is on the specific-asserted improvement in computer capabilities").

Consistent with *Visual Memory II*, the Court here analyzes whether the claims at issue specifically assert an improvement in computer capability.  Instead of "deciding whether the claims are 'specific' or 'concrete' in a vacuum," the Court's inquiry considers the claims as a whole and in view of the specification.  (D.I. 168 at 2) (quoting *Visual Memory II*, 867 F.3d at 1259-60)

eligible under step 2 because they could "be seen to improve the functioning of computer networks by 'reducing the demand on the host for processing resources.'"  (Priceline R&R at 48-50 (quoting '967 Patent at 10:60-65, '849 Patent at 10:64-11:2); Priceline Order at 2-3)

Subsequently, the Federal Circuit issued *Enfish*, finding that *Alice* did not "broadly hold that all improvements in computer-related technology are inherently abstract and, therefore, must be considered at step two."  822 F.3d at 1335-36.  Rather, the Court must consider at step 1 "whether the focus of the claims is on the specific asserted improvement in computer capabilities . . . or, instead, on a process that qualifies as an 'abstract idea' for which computers are invoked merely as a tool."  *Id.*

The claims of the Filepp patents are directed to a specific computer functionality improvement – improving the capabilities of networks hosts and computer networks – and are patent-eligible under step 1.  Claim 1 of the '967 patent discloses a "method for presenting interactive applications on a computer network" that requires three steps: "generating a screen display at a respective reception system for a requested application;" "generating at least a first partition for presenting applications;" and "generating concurrently with the first partition at least a second partition for presenting a plurality of command functions."  The specific computer-centric improvement is claimed in the first step, which requires that the screen display be "generated by the respective reception system from data objects[4] . . . at least some of which objects may be stored at the respective reception system, the screen display including a plurality of partitions, the partitions being constructed from objects . . . retrieved from the objects stored at

---

[4]The Court construed "object(s)" as "data structure(s)."  (D.I. 120 at 8-9; C.A. No. 15-137-LPS-CJB D.I. 234 at 5)

the respective reception system, or if unavailable . . . , then from the network."  This method allows the computer to function more quickly by speeding the data storage process and reducing memory requirements, allowing the computer to serve more users.

Furthermore, contrary to Groupon's assertion that the claims of the Filepp patents "merely use 'result-based functional language,' without disclosing ***how*** to achieve the result" (D.I. 192 at 2) (quoting *Two-Way Media*, 2017 WL 4931936, at *4), the Filepp patents' claims are, in fact, more specific than those at issue in *Two-Way Media*.  Rather than broadly using only generic functional language (*e.g.*, solely claiming the step of "generating a screen display" without more), the Filepp patents' claims go on to describe the specific architecture behind the claimed computer improvement by reciting how the screen display is generated (in part, by selectively-stored data objects at the respective reception system) and what it is generated from (data objects and partitions).

Claims 1, 13, and 14 of the '849 patent similarly require "configuring the advertising as objects that include advertising data" and "selectively storing advertising objects at a store established at the reception system."  Claims 8 and 21 of the '849 patent require "structuring advertising so that it may be selectively supplied to and retrieved at the reception systems for presentation to the respective users in accordance with the characterizations established for the respective reception system users" and "storing a predetermined amount of the advertising data in a store established at the respective reception systems."  As a whole, the claims of the Filepp patents are not directed to local data storage generally, but recite specific features for improving computer functionality by generating screen displays and partitions by breaking the data content of applications or advertisements into objects, storing them locally, and selectively retrieving

13

them when needed.  This method reduces the processing demand on the host system, allowing

the host to function more efficiently.

As in *Enfish*, this Court's finding "that the claims are directed to an improvement of an

existing technology is bolstered by the specification's teachings that the claimed invention

achieves other benefits over conventional databases."  833 F.3d at 1337; *see, e.g.,* '967 patent at

6:56-7:2, '849 patent at 6:57-7:3 ("RS [(Reception System)] 400 includes a means to selectively

store objects according to predetermined storage criterion, thus enabling frequently used objects

to be stored locally at the RS, and causing infrequently used objects to forfeit their local storage

location. . . .  Because selective storage of objects is local, response time is reduced for those

partitioned applications that the user accesses most frequently."); '967 patent at 7:8-12, '849

patent at 7:9-12 ("The narrowed functional load of the higher network elements permits many

more users to be serviced within the bounds of computer power and I/O capability of

conventional host-centered architectures."); '967 patent at 10:57-65, '849 patent at 10:61-11:1

("The network described above . . . is designed to alleviate the effects of host-centered

limitations, and extend the network saturation point.  This objective is achieved by reducing the

demand on the host for processing resources by structuring the network so that the higher

network levels act primarily to maintain and supply data and programs to the lower levels of the

network . . . .").

In sum, the claims are directed to a specific asserted improvement in computer

capabilities, namely, improving the way a host system stores and retrieves data, allowing more

users to access the system more quickly.  The claims are not directed to the abstract idea of data

storage generally, but, rather, claim a specific implementation of computer-centric problem.  The

14

Court finds that the asserted claims of the Filepp patents are patent-eligible under step 1.  The Court need not continue to step 2.

### 2. Preemption

Groupon contends that the preemption threat of the Filepp patents is "unacceptably high." (D.I. 30 at 18)  In Groupon's view, the claims, as construed, "cover any technology that generates a meaningful display of information to a user of a computer using some locally stored information."  (*Id.*)

The focus of a preemption analysis is on whether the claims would "'disproportionately t[ie] up the use of the underlying' ideas." *Alice*, 134 S. Ct. at 3254 (quoting *Mayo*, 132 S. Ct. at 1294).  The Court finds that the asserted claims of the Filepp patents do not tie up use of all technologies that generate a display using some locally stored data.  As discussed above, the claims do more than relate to data storage generally; they claim a specific improvement implemented by breaking applications (or advertisements) into data objects and allowing for particularized local storage.  Moreover, the claims do not preempt all manners of improving data storage.  As IBM contends, "[o]ne alternative is to transfer the entire interactive application to user reception systems at once, instead of breaking it up into data objects," and "[a]nother alternative is to require users to retrieve content from the server each time the user interacts with the application, instead of storing data objects at the user reception system."  (D.I. 37 at 19)  The Court is persuaded that still other alternatives are also available.

Accordingly, the Court finds that the asserted claims of the Filepp patents do not run afoul of preemption concerns.

15

**IV.     CONCLUSION**

For the reasons stated above, the asserted claims of the Filepp patents are not directed to an abstract idea and are directed to patent-eligible subject matter.  The Court will deny Groupon's motion.  An appropriate Order follows.