IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| INTERNATIONAL BUSINESS MACHINES CORPORATION, | ) ) ) | C.A. No. 16-122-LPS |
| Plaintiff, | ) ) | **JURY TRIAL DEMANDED** |
| v. | ) ) | **PUBLIC VERSION** |
| GROUPON, INC. | ) ) ) | |
| Defendant. | ) | |

# IBM'S OPENING BRIEF IN SUPPORT OF ITS MOTION TO EXCLUDE THE TESTIMONY OF JAMES MALACKOWSKI AND JON WEISSMAN CONCERNING NON-INFRINGING ALTERNATIVES

OF COUNSEL:

John M. Desmarais
Karim Oussayef
Laurie N. Stempler
Robert C. Harrits
Brian D. Matty
Michael Matulewicz-Crowley
DESMARAIS LLP
230 Park Avenue
New York, NY 10169
Tel: (212) 351-3400

Dated: March 5, 2018
Public Version Dated: March 12, 2018
5671213 / 43155

David E. Moore (#3983)
Bindu A. Palapura (#5370)
Stephanie E. O'Byrne (#4446)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801
Tel: (302) 984-6000
dmoore@potteranderson.com
bpalapura@potteranderson.com
sobyrne@potteranderson.com

*Attorneys for Plaintiff*
*International Business Machines Corporation*

# TABLE OF CONTENTS

Page

**Contents**

I.   INTRODUCTION .................................................................................................. 1

II.   NATURE AND STAGE OF PROCEEDINGS ................................................... 1

III.   SUMMARY OF THE ARGUMENT .................................................................. 1

IV.   STATEMENT OF UNDISPUTED MATERIAL FACTS ................................... 3

V.   LEGAL STANDARDS ....................................................................................... 3

VI.   ARGUMENT....................................................................................................... 5

      A.   Mr. Malackowski's Testimony On Non-Infringing Alternatives Is Unreliable................................................................................................. 5

      B.   Absent Mr. Malackowski's Testimony On Non-Infringing Alternatives, Dr. Weissman's Testimony Is Irrelevant And Not Helpful. ................................... 9

VII.   CONCLUSION................................................................................................... 9

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Aqua Shield v. Inter Pool Cover Team,*
    774 F.3d 766 (Fed. Cir. 2014) ............................................................................................... 4, 9

*AstraZeneca AB v. Apotex Corp.,*
    782 F.3d 1324 (Fed. Cir. 2015) .................................................................................................. 5

*Daubert v. Merrell Dow Pharm., Inc.,*
    509 U.S. 579 (1993) ............................................................................................................... 2, 4

*Grain Processing Corp. v. Am. Maize-Prods. Co.,*
    185 F.3d 1341 (Fed. Cir. 1999) .......................................................................................... 2, 5, 9

*In re Paoli R.R. Yard PCB Litig.,*
    35 F.3d 717 (3d Cir. 1994) ........................................................................................................ 4

*LaserDynamics, Inc. v. Quanta Comput., Inc.,*
    No. 2:06-cv-348, 2011 WL 197869 (E.D. Tex. Jan. 20, 2011). ......................................... 4, 5, 9

*Lucent Techs., Inc. v. Gateway, Inc.,*
    580 F.3d 1301 (Fed. Cir. 2009) ................................................................................................. 4

**Rules**

Fed. R. Evid. 401 ............................................................................................................................ 9

Fed. R. Evid. 702 .................................................................................................................... 2, 3, 9

## I. INTRODUCTION

Plaintiff International Business Machines Corporation ("IBM") moves to exclude the testimony of Groupon, Inc's ("Groupon") damages expert, James Malackowski, and its technical expert, Jon Weissman, regarding non-infringing alternatives because their opinions are not supported by sufficient facts. Neither expert demonstrated that the proposed alternatives were on the market during the period of infringement, nor did they analyze whether such alternatives were available and acceptable. Moreover, Mr. Malackowski did not reliably apply his "Cost Approach" methodology because he did not analyze the costs or risks of switching to the proposed alternatives. Finally, absent testimony from Mr. Malackowski regarding non-infringing alternatives, Dr. Weissman's testimony regarding non-infringing alternatives would be irrelevant and unhelpful.

## II. NATURE AND STAGE OF PROCEEDINGS

IBM incorporates by reference the Nature and Stage of Proceedings from its Motion for Summary Judgment of No Invalidity of the Asserted Claims of U.S. Patent No. 5,961,601 in View of Amazon and No Invalidity of Claims 9, 10, 58, and 59 of U.S. Patent No. 5,961,601.

## III. SUMMARY OF THE ARGUMENT

1. Dr. Weissman identified six alleged non-infringing alternatives to the technology of the patents-in-suit in his report on non-infringement. Ex. A at 104-109. Mr. Malackowski relied on Dr. Weissman's proposed non-infringing alternatives in formulating his opinion on reasonable royalty damages. He did so under the Cost Approach, which requires an analysis of the costs to create and develop the alternatives. Ex. B at 48. Mr. Malackowski concluded that the identified alternatives "indicate[] a relatively modest value for a license to the four Patents-in-Suit" (*id.* at 52) and "would have limited the amount of a royalty that Groupon was willing to pay." *Id.* at 64; *see also id.* at 6.

2. However, neither expert identified any websites operating in the same market as Groupon that implemented the proposed alternatives during the period of infringement, nor did they analyze whether such alternatives were available and acceptable. Apart from speculation, there is no testimony about or evidence of the costs of implementing the proposed alternatives, the risks associated with the proposed alternatives, or the impact of such alternatives on Groupon's customers.

3. To be admissible, expert testimony must be relevant and reliable. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993). Expert testimony must come from a qualified expert and must (1) be helpful to the trier of fact; (2) be based on sufficient facts or data; (3) result from reliable principles and methods; and (4) result from a reliable application of those principles and methods to the facts of the case. Fed. R. Evid. 702.

4. Mr. Malackowski's testimony about non-infringing alternatives is unreliable because it is not based on sufficient facts or data. To be viable, non-infringing alternatives must be on the market during the time of infringement or available and acceptable. *Grain Processing Corp. v. Am. Maize-Prods. Co.*, 185 F.3d 1341, 1353 (Fed. Cir. 1999). But neither Mr. Malackowski nor Dr. Weissman identified any websites implementing the proposed alternatives or determined the costs of implementing the proposed alternatives, the risks associated with the proposed alternatives, or the impact of such alternatives on Groupon's customers.

5. In addition, although Mr. Malackowski purported to apply the "Cost Approach" to analyze non-infringing alternatives, he did not reliably apply that methodology because he neglected to account for the costs and risks of implementing the alternatives—the very evaluation the Cost Approach requires. Ex. B at 48. For that additional reason, his testimony is unreliable and should be excluded. Fed. R. Evid. 702.

6.  Finally, non-infringing alternatives are relevant only to damages in this case. Should the Court preclude Mr. Malackowski from testifying on non-infringing alternatives, Dr. Weissman's testimony on non-infringing alternatives would be irrelevant and unhelpful. Therefore, Dr. Weissman's testimony on non-infringing alternatives should also be excluded.

## IV. STATEMENT OF UNDISPUTED MATERIAL FACTS

Dr. Weissman identified alleged non-infringing alternatives for each of the patents-in-suit. In particular, he identified three proposed non-infringing alternatives for the '967 and '849 patents,[1] , two alleged non-infringing alternatives for the '601 patent ▇▇▇ and one alleged non-infringing alternative for the '346 patent ▇▇▇. Ex. A at 104-109. Neither Dr. Weissman nor Mr. Malackowski identified any websites operating in Groupon's market that implemented the proposed alternatives during the time of infringement, analyzed the risks of implementing such alternatives, determined the costs to Groupon of implementing such alternatives, or investigated the availability of such alternatives. *Id.*; Ex. B at 48-52.

## V. LEGAL STANDARDS

Federal Rule of Evidence 702 governs the admissibility of expert testimony and requires a qualified expert to provide testimony that (1) is helpful to the trier of fact, (2) is based upon sufficient facts or data, (3) is the product of reliable principles and methods, and (4) reliably applies those principles and methods to the facts of the case. The Court has a "gatekeeping role"

---

[1] Dr. Weissman identified a single set of non-infringing alternatives for the '967 and '849 patents combined. Ex. A at 104-105.
[2] As Dr. Schmidt explained, the second and third proposed non-infringing alternatives for the '967 and '849 patents are not non-infringing. Ex. D ¶ 260.

to "ensur[e] that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert*, 509 U.S. at 597; *see also In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 744 (3d Cir. 1994)

As compensation for infringement, a patentee is entitled to no less than a reasonable royalty. 35 U.S.C. § 284. The hypothetical negotiation is a framework for determining a reasonable royalty and asks what the parties "would have agreed had they successfully negotiated an agreement just before infringement began." *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1324 (Fed. Cir. 2009). Non-infringing alternatives are relevant to what the parties would have agreed at the hypothetical negotiation. *Aqua Shield v. Inter Pool Cover Team*, 774 F.3d 766, 771-72 (Fed. Cir. 2014). "When an infringer can easily design around a patent and replace its infringing goods with non-infringing goods, the hypothetical royalty rate for the product is typically low . . . . [I]f avoiding the patent would be difficult, expensive, and time-consuming, the amount the infringer would be willing to pay for a license is likely to be greater." *AstraZeneca AB v. Apotex Corp.*, 782 F.3d 1324, 1334-35 (Fed. Cir. 2015).

A viable non-infringing alternative must either be on the market during the time of infringement or available and acceptable. *Grain Processing*, 185 F.3d at 1349, 1355. Speculation that non-infringing alternatives were possible is not enough. *Id.* at 1353-54; *LaserDynamics, Inc. v, Quanta Comput., Inc.*, No. 2:06-CV-348, 2011 WL 197869, at *3, (E.D. Tex. Jan. 20, 2011). In determining whether a proposed non-infringing alternative is "available," relevant factors include whether the accused infringer has the materials, equipment, experience, and know-how to make the proposed alternative and whether the proposed alternative was well-known in the industry. *Grain Processing*, 185 F.3d at 1354; *see also LaserDynamics*, 2011 WL 197869, at *3.

4

## VI. ARGUMENT

### A. Mr. Malackowski's Testimony On Non-Infringing Alternatives Is Unreliable.

To be a viable non-infringing alternative, the proposed alternative must be on the market at the time of infringement or available and acceptable. *Grain Processing*, 185 F.3d at 1349, 1355. Mr. Malackowski's testimony on non-infringing alternatives is unreliable because he did not analyze whether his proposed alternatives are available and acceptable—he did not quantify how much it would cost or how long it would take Groupon to switch to the proposed alternatives—nor did he identify any examples of proposed alternatives that were on the market during the period of infringement. Ex. B at 48-52; *see also* Ex. E at 293:23-294:24, 295:11-23.[3] Rather, Mr. Malackowski simply outlined his understanding of the technology of the proposed alternatives, which he obtained from Dr. Weissman. Ex. B at 48-52.

But Dr. Weissman's opinions are equally devoid of any analysis of the costs or risks to Groupon of switching to any of his proposed non-infringing alternatives. For example, Dr. Weissman did not quantify the costs and risks associated with his proposed alternatives:

> Q. You don't quantify any out-of-pocket expenditures Groupon would have to bear for your proposed non-infringing alternative, true?
> A. That's true. I give no monetary value.
> Q. You don't quantify any risks for your proposed non-infringing alternative, do you?
> A. I don't quantify the risks, but I think they're minimal.

Ex. C at 282:8-15; *see also id.* at 290:2-14, 299:11-19. Dr. Weissman also did not investigate the technological steps Groupon would have to take, the impact on Groupon's customers or its

---

[3] Although Dr. Weissman told Mr. Malackowski that there would be no additional engineering or technical costs of implementing the proposed alternatives (Ex. E at 295: 2-10), Dr. Weissman has no evidence to support his position, as discussed above.

5

systems, or whether Groupon has the materials, equipment, know-how, and experience to implement the proposed alternatives, as set forth in more detail below. And, like Mr. Malackowski, Dr. Weissman failed to identify any examples of his proposed alternatives that were "on the market" during the period of infringement. Ex. A at 104-109.[4]

For the '967 and '849 patents, Dr. Weissman proposed that Groupon could ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ omitting any discussion of whether such an alternative would have even been available and acceptable to Groupon. For example, Dr. Weissman did not test the technological feasibility of disabling browser caching:



Ex. C at 285:12-18; *see also id.* at 285:3-11. He also did not investigate which source code files Groupon would need to modify ▆▆▆▆▆▆▆▆. *Id.* at 281:1-11. In addition to ignoring the feasibility and acceptability of his proposed alternative, Dr. Weissman did not estimate how long it would take Groupon to ▆▆▆▆▆▆▆▆ or how much it would cost. *Id.* at 282:2-11. He also did not quantify the risks of implementing the alternative. *Id.* at 282:12-15. Dr. Weissman did not investigate *any* of the costs (in time, money, or technology) associated with implementing his proposed alternative. The only evidence is from Groupon's own corporate witness and indicates that the proposed alternative of ▆▆▆▆▆▆▆▆▆▆▆▆ was ***not***

---

[4] Dr. Weissman's conclusory statements that his proposed alternatives were "available" or "standard practice" do not demonstrate that any websites offering services in the same market as Groupon practiced such alternatives at the time of infringement.

available or acceptable because it would require "a lot of re-engineering" and would increase latency for users. Ex. F - Dunham Tr. at 187:11-24, 188:7-10. Finally, Dr. Weissman's proposed alternative is indisputably unavailable for the accused mobile applications. Ex. C at 280:13-19.

As he did for the '967 and '849 patents, Dr. Weissman simply identified two alleged non-infringing alternatives to the '601 patent— ▮▮▮▮▮ —without investigating how Groupon would implement such alternatives. *Id.* at 289:11-18. He did not opine on how long it would take Groupon to implement them or on how much it would cost. *Id.* at 289:19-290:7. He also did not quantify the risks associated with implementing the proposed alternatives. *Id.* at 290:8-14. Dr. Weissman did not analyze whether his proposed alternatives for the '601 patent are acceptable to Groupon and its customers. For example, he did not test his proposed alternatives. *Id.* at 290:15-291:21. And, as is the case for the '967 and '849 patents, Dr. Weissman admits that his non-infringing alternatives for the '601 patent are not available for the accused mobile applications. *Id.* at 288:21-289:10.

For the '346 patent, Dr. Weissman proposed that Groupon could ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Ex. A at 108-09. As was the case for the '967 and '849 proposed alternatives, Groupon's corporate witness confirmed that Dr. Weissman's proposed alternative would require re-engineering (Ex. F at 188:11-17), but Dr. Weissman did not analyze the effort required. For example, he did not identify the source code Groupon would have to modify. Ex. C at 297:7-11. He did not analyze the costs or risks of implementing such an alternative. *Id.* at 299:11-25. He could not identify any company that performed single-sign-on according to his proposed non-infringing alternative.

7

*Id.* at 293:17-23. And, although he admitted that his proposed alternative would have to avoid system crashes to be viable, he did not test it. *Id.* at 296:21-297:6, 300:1-13.

In addition to being unsupported by facts or data, Mr. Malackowski's testimony is also inadmissible because he did not reliably apply his methodology. Mr. Malackowski purported to analyze non-infringing alternatives under the Cost Approach. Malackowski Report at 48. He explained that the Cost Approach, as applied to a reasonable royalty determination, requires analyzing the costs of creating and developing alternatives:

> Under the Cost Approach, the licensee would pay no more in royalties than the cost of a non-infringing alternative. Properly applied, the Cost Approach considers out-of-pocket expenditures, as well as risks, lost sales and other adverse economic impacts connected with the alternative technology.

Ex. B at 48 (annotation added).

> Q   The cost approach values assets based on the cost to create and develop those assets, right?
> A   Well, more specifically for purposes of a reasonable royalty analysis as separate from an appraisal. A reasonable royalty analysis looks to the cost of the next best alternative and the cost to switch.

Ex. E at 293:7-13. Yet Mr. Malackowski did not properly apply the Cost Approach. Other than making conclusory and unsupported statements that the patented technologies contribute "minimal value" and that a switch to the proposed alternatives would not harm Groupon's product performance (*id.* at 293:14-22), Mr. Malackowski did not calculate the "out-of-pocket expenditures, risks, lost sales, and other adverse economic impacts connected with the alternative technology." By Mr. Malackowski's own words, the Cost Approach requires more. Ex. B at 48.

The Court should preclude Mr. Malackowski from testifying about non-infringing alternatives because he lacks sufficient facts and data to support his conclusions that the

8

proposed alternatives qualify as non-infringing alternatives. His proposed alternatives are merely speculative and thus irrelevant. Fed. R. Evid. 702; *Grain Processing*, 185 F.3d at 1353-54; *see also LaserDynamics*, 2011 WL 197869, at *3. In addition, the Court should exclude Mr. Malackowski's conclusions concerning the availability of acceptable non-infringing alternatives because he did not did not reliably apply the Cost Approach.

### B. Absent Mr. Malackowski's Testimony On Non-Infringing Alternatives, Dr. Weissman's Testimony Is Irrelevant And Not Helpful.

"Evidence is relevant if (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. Non-infringing alternatives are relevant to the issue of damages. *Aqua Shield* at 774 F.3d at 771. They are not relevant to any other issue in this case. Should the Court grant IBM's request to preclude Groupon's damages expert from testifying about non-infringing alternatives, Dr. Weissman's testimony concerning non-infringing alternatives would no longer be helpful to the jury because it would lack probative value, would be of no consequence to any issues in the case, and would not help the jury "to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702; Fed. R. Evid. 401. For this additional reason, the Court should exclude Dr. Weissman's testimony concerning non-infringing alternatives.

## VII. CONCLUSION

IBM respectfully requests that the Court grant its motion to exclude the testimony of Groupon's experts concerning non-infringing alternatives.

9

|  |  |
|---|---|
| OF COUNSEL:<br><br>John M. Desmarais<br>Karim Oussayef<br>Laurie N. Stempler<br>Robert C. Harrits<br>Brian D. Matty<br>Michael Matulewicz-Crowley<br>DESMARAIS LLP<br>230 Park Avenue<br>New York, NY 10169<br>Tel: (212) 351-3400<br><br>Dated: March 5, 2018<br>Public Version Dated: March 12, 2018<br>5671213 / 43155 | Respectfully submitted,<br><br>POTTER ANDERSON & CORROON LLP<br><br>By: /s/ Stephanie E. O'Byrne<br>    David E. Moore (#3983)<br>    Bindu A. Palapura (#5370)<br>    Stephanie E. O'Byrne (#4446)<br>    Hercules Plaza, 6th Floor<br>    1313 N. Market Street<br>    Wilmington, DE 19801<br>    Tel: (302) 984-6000<br>    dmoore@potteranderson.com<br>    bpalapura@potteranderson.com<br>    sobyrne@potteranderson.com<br><br>*Attorneys for Plaintiff*<br>*International Business Machines Corporation* |