# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| INTERNATIONAL BUSINESS MACHINES CORPORATION, | ) ) C.A. No. 16-122-LPS ) |
| Plaintiff, | ) **JURY TRIAL DEMANDED** ) |
| v. | ) **PUBLIC VERSION** ) |
| GROUPON, INC. | ) ) |
| Defendant. | ) |

### IBM'S OPENING BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT OF NO ANTICIPATION BY MORRIS AND NO OBVIOUSNESS IN VIEW OF MORRIS AND XEROX STAR FOR THE ASSERTED CLAIMS OF U.S. PATENT NO. 5,796,967

OF COUNSEL:

John M. Desmarais
Karim Oussayef
Laurie N. Stempler
Robert C. Harrits
Brian D. Matty
Michael Matulewicz-Crowley
DESMARAIS LLP
230 Park Avenue
New York, NY  10169
Tel:  (212) 351-3400

Dated: March 5, 2018
Public Version Dated: March 12, 2018
5663470 / 43155

David E. Moore (#3983)
Bindu A. Palapura (#5370)
Stephanie E. O'Byrne (#4446)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801
Tel: (302) 984-6000
dmoore@potteranderson.com
bpalapura@potteranderson.com
sobyrne@potteranderson.com

*Attorneys for Plaintiff*
*International Business Machines Corporation*

**Table of Contents**

|   |   | Page |
|---|---|---|
| I. | INTRODUCTION | 1 |
| II. | NATURE AND STAGE OF THE PROCEEDINGS | 1 |
| III. | SUMMARY OF THE ARGUMENT | 1 |
| IV. | STATEMENT OF UNDISPUTED MATERIAL FACTS THAT SUPPORT SUMMARY JUDGMENT | 2 |
| V. | LEGAL STANDARDS | 4 |
|   | A. Summary Judgment | 4 |
|   | B. Anticipation | 4 |
|   | C. Obviousness | 4 |
| VI. | ARGUMENT | 5 |
|   | A. Summary Judgment Of No Anticipation By Morris And No Obviousness In View Of Morris And Xerox Star Should Be Granted With Respect To The Asserted Claims Of The '967 Patent. | 5 |
|   | 1. All of the Asserted Claims of the '967 Patent Require A Second Partition for Presenting A Plurality of Command Functions Constructed From Objects That Can Be Retrieved From The Reception System Or, If Not Present, Then From The Network. | 5 |
|   | 2. Morris Does Not Disclose The Elements of Claims 1, 2, or 4 | 5 |
|   | 3. Xerox Star Did Not Meet The Elements of Claims 1, 2, or 4. | 9 |
|   | 4. Dr. Weissman's Combination Of Morris And Xerox Star Cannot Make Up For The Deficiencies In The Individual References Because Dr. Weissman Does Not Offer Any Opinions That Any Missing Elements Would Be Obvious. | 12 |
| VII. | CONCLUSION | 12 |

## **Table of Authorities**

**Page(s)**

**Cases**

*3M Co. v. Mohan*,
 482 F. App'x 574 (Fed. Cir. 2012) ................................................................................... 12

*Transclean Corp. v. Bridgewood Servs., Inc.*,
 290 F.3d 1364 (Fed. Cir. 2002) ......................................................................................... 7

I.   INTRODUCTION

Plaintiff International Business Machines Corporation ("IBM") moves for summary judgment of no anticipation by the Morris reference[1] and no obviousness in view of Morris in combination with the Xerox Star system[2] for the asserted claims of U.S. Patent No. 5,796,967 (the "'967 patent"). Defendant Groupon, Inc. ("Groupon") has failed to put forth sufficient evidence to show that either Morris alone or Morris in combination with Xerox Star discloses or renders obvious each and every limitation of any asserted claim of the '967 patent. Thus, Groupon cannot prove by clear and convincing evidence that Morris alone or Morris in combination with Xerox Star invalidates any asserted claim.

II.   NATURE AND STAGE OF THE PROCEEDINGS

IBM incorporates the "Nature and Stage of the Proceedings" section of its Opening Brief In Support of Its Motion For Summary Judgment Of No Invalidity Of The Asserted Claims Of U.S. Patent No. 5,961,601 In View Of Amazon And No Invalidity Of Claims 9, 10, 58, And 59 Of U.S. Patent No. 5,961,601, filed concurrently herewith.

III.   SUMMARY OF THE ARGUMENT

IBM seeks summary judgment that none of the asserted claims of the '967 patent are invalid under 35 U.S.C. § 102 by Morris or under 35 U.S.C. § 103 by Morris in combination with Xerox Star. Dr. Weissman, Groupon's technical expert on the issue of invalidity, opines that Morris and Xerox Star disclose "second partitions," as required by claim 1 of the '967 patent. However, there is no evidence of any supposed "second partition" in Morris or Xerox Star that is

---

[1] *Andrew: A Distributed Personal Computing Environment* by James Morris. (Ex. A). All exhibits are to the Declaration of M. Matulewicz-Crowley filed concurrently with this brief.
[2] Dr. Weissman alleges that *Designing the Star User Interface* by David Smith ("Byte Magazine") (Ex. B) and *The Star User Interface: An Overview* by David Smith ("NCC Proceedings") (Ex. C) together describe Xerox Star. (Ex. E at 22.)

constructed from "objects being retrieved from . . . the reception system, or, if the current versions of the objects are not present . . . then from the network," as is also required by claim 1. Nor is there evidence that either "second partition" is constructed from objects that "include[] a header," as required by claim 2. Nor is there evidence that the objects include "a storage control parameter in their respective headers," as required by claim 4. Dr. Weissman does not opine that the missing limitations would be obvious to a person of ordinary skill in the art ("POSITA"). Therefore, Groupon cannot prove by clear and convincing evidence that Morris anticipates the asserted claims of the '967 patent or that Morris in combination with Xerox Star renders obvious the asserted claims of the '967 patent.

**IV.   STATEMENT OF UNDISPUTED MATERIAL FACTS THAT SUPPORT SUMMARY JUDGMENT**

1. IBM has asserted infringement of independent claim 1 and dependent claims 2-7, 12, and 17, which depend from claim 1, of the '967 patent. (Ex. D § III.)

2. Groupon offers the expert opinion of Dr. Weissman to support its assertions that Morris alone anticipates claims 1, 2-7, 12, and 17 of the '967 patent and that Morris in combination with Xerox Star renders obvious claims 1, 2-7, 12, and 17 of the '967 patent. (Ex. E at 70-117.)

3. Groupon does not offer any expert opinion that Xerox Star alone anticipates or renders obvious claims 1, 2-7, 12, and 17 of the '967 patent. (Ex. F at 376:1-4.)

4. Claim 1 of the '967 patent requires a "second partition" that is "constructed from objects, the objects being retrieved from the objects stored at the respective reception system, or, if the current versions of the objects are not present, . . . then from the network."

5. Claim 2 of the '967 patent requires that the "objects" from claim 1 "include[] a header and one or more data segments."

6. Claim 4 of the '967 patent requires that the "objects" from claim 1 have "a storage control parameter in their respective headers."

7. The Court has construed the term "object(s)," as used in claims 1, 2-4, 12, and 17 of the '967 patent, to mean "data structure(s)." (D.I. 121 at 2.)

8. The Court has adopted the construction of the term "storage control parameter," as used in claims 4, 5, and 17 of the '967 patent, to mean "a parameter that identifies the storage characteristic for the object, which may be for initial and/or continued storage." (D.I. 120 at 5 n.1; D.I. 64 at 12.)

9. The Court has adopted the construction of the term "the objects being retrieved from the objects stored at the respective reception system, or if unavailable from the objects stored at the respective reception system, then from the network" as used in claim 1 of the '967 patent, to mean "the objects being retrieved from the objects stored at the respective reception system, or, if the current versions of the objects are not present from the objects stored at the respective reception system, then from the network." (D.I. 120 at 5 n.1; D.I. 64 at 11.)

10. Dr. Weissman opines that Morris discloses an alleged "second partition" that includes six alleged "objects." (Ex. F at 355:24-356:20; Ex. G.)

11. Dr. Weissman identifies "i-nodes" as the alleged headers of the six identified objects. (Ex. F at 369:6-22.)

12. As Dr. Weissman admits, even if the identified objects have associated i-nodes, i-nodes are stored separately from the objects themselves and are not included within the identified objects. (Ex. F at 342:7-23.)

13. Dr. Weissman opines that Xerox Star included an alleged "second partition" that included six alleged objects. (Ex. F at 373:23-374:9; Ex. B at GROUP0011662.)

3

14. Dr. Weissman identifies the properties, such as size and type, as the alleged headers of the six identified objects. (Ex. F at 471:21-472:3.)

15. Dr. Weissman admits that he does not know "whether the properties of the [alleged objects] are stored with the [alleged objects] or somewhere else." (Ex. F at 475:7-16.)

16. Dr. Weissman's opinion that the claims of the '967 patent are obvious in view of Morris and Xerox Star is based only on explicit disclosures from Morris and Xerox Star. Dr. Weissman does not offer any opinion that any undisclosed claim element would be obvious to a POSITA. (Ex. E at 96-102, 106-107; Ex. H ¶¶ 81, 83-90, 95-97.)

## V. LEGAL STANDARDS

### A. Summary Judgment

IBM incorporates the applicable legal standard for summary judgment from its Opening Brief In Support of Its Motion For Summary Judgment Of No Invalidity Of The Asserted Claims Of U.S. Patent No. 5,961,601 In View Of Amazon And No Invalidity Of Claims 9, 10, 58, And 59 Of U.S. Patent No. 5,961,601, filed concurrently herewith.

### B. Anticipation

IBM incorporates the applicable legal standard for anticipation from its Opening Brief In Support of Its Motion For Summary Judgment Of No Invalidity Of The Asserted Claims Of U.S. Patent No. 5,961,601 In View Of Amazon And No Invalidity Of Claims 9, 10, 58, And 59 Of U.S. Patent No. 5,961,601, filed concurrently herewith.

### C. Obviousness

IBM incorporates the applicable legal standard for obviousness from its Opening Brief In Support of Its Motion For Summary Judgment Of No Anticipation By HyperCard And No Obviousness In View Of HyperCard And Terry For The Asserted Claims U.S. Of Patent No. 5,796,967, filed concurrently herewith.

VI.   **ARGUMENT**

    A.   **Summary Judgment Of No Anticipation By Morris And No Obviousness In View Of Morris And Xerox Star Should Be Granted With Respect To The Asserted Claims Of The '967 Patent.**

        1.   **All of the Asserted Claims of the '967 Patent Require A Second Partition for Presenting A Plurality of Command Functions Constructed From Objects That Can Be Retrieved From The Reception System Or, If Not Present, Then From The Network.**

As construed by the Court, claim 1 of the '967 patent, element "a" recites: "generating a screen display . . . including a plurality of partitions, *the partitions being constructed from objects*, the objects being *retrieved from the objects stored at the respective reception, or, if the current versions of the objects are not present . . . then from the network*." Claim 1, element "c" recites "generating . . . *a second partition* for presenting a plurality of command functions . . . selectable to permit movement between applications." The elements of claim 1 of the '967 patent, when read together, make clear that the claimed "second partition" is constructed from objects that are retrieved either from the reception system or from the network. All of the other claims of the '967 patent depend from claim 1 and therefore share that requirement.

        2.   **Morris Does Not Disclose The Elements of Claims 1, 2, or 4.**

            a.   **Morris Does Not Disclose A Second Partition For Presenting A Plurality Of Command Functions Constructed From Objects That Can Be Retrieved From The Reception System Or, If Not Present, From The Network.**

Groupon cannot show that Morris discloses a second partition that meets the requirements of claim 1 of the '967 patent because Dr. Weissman does not demonstrate that the alleged second partition is constructed from objects that are retrieved either from the reception system or from the network. Dr. Weissman relies on Figure 8 from the Morris document to meet the "second partition" element. (Ex. E at 96-97.) At deposition, Dr. Weissman was asked to identify the claimed components of the "second partition" by marking that figure from Morris in different

5

colors.[3] He identified the alleged "second partition" (in red) the "command functions" (in green) and the "objects" in the "second partition" (with numbered black arrows). (Ex. F at 355:24-356:20.) Dr. Weissman's annotations appear below:



(Ex. G.)

The components that Dr. Weissman identifies as objects do not meet the Court's construction of "object" or the claim language "retrieved from . . . the reception system, or, if the current versions of the objects are not present . . . then from the network." At deposition, Dr. Weissman opined that the six components he identified with black arrows as "objects" are files. (Ex. F at 357:10-24.) Later he equivocated and opined that they may be merely "stored in files."

---

[3] The marked figure contains the only "second partition(s)" identified by Dr. Weissman in Morris. (Ex. E at 96-98; Ex. H ¶¶ 83-84.)

6

(Ex. F at 362:15-24.)  In fact, there is no evidence that the portions of text identified above with black arrows are files or are stored in files.  Nor is there any evidence that they are "data structures," as required by the Court's construction, or that they have a "prescribed structure," as required by claim 1.  Nor is there any evidence that they are retrieved from the reception system, or if not present, from the network.  Therefore, Groupon cannot show that Morris discloses the elements of claim 1.

      **b.**  **Morris Does Not Disclose A Second Partition For Presenting A Plurality Of Command Functions Constructed From Objects That Include A Header, As Required By Claim 2 Of The '967 Patent.**

Even if Groupon were able to demonstrate that the portions of text that Dr. Weissman identifies satisfy the requirements of claim 1, Groupon cannot show that they include a header, as required by claim 2.  Dr. Weissman opines that "Morris discloses data objects in the form of files for both data and programs" and that "in the popular Berkley UNIX file system, a file contains a header of attribute meta-data (called i-nodes)."  (Ex. E at 100.)  But Morris does not disclose i-nodes, (Ex. F at 341:17-23), and Dr. Weissman cites no evidence in support of his contention that "i-nodes" contain headers.  (Ex. F at 368:2-7.)  To the extent Groupon is relying on inherency, Dr. Weissman has not disclosed such a theory.  And Groupon has not met its burden to prove inherency, which requires showing that the prior art "must *necessarily* include the unstated limitation . . . ."  *Transclean Corp. v. Bridgewood Servs., Inc.*, 290 F.3d 1364, 1373 (Fed. Cir. 2002) (emphasis added).  Finally, according to Dr. Weissman, i-nodes are stored "elsewhere" from the data, (Ex. F at 342:21-23; Ex. H ¶ 44), so they cannot be headers that are *included within* an object, as recited in claim 2.  Therefore, Groupon cannot show that Morris discloses the elements of claim 2.

7

### c. Morris Does Not Disclose A Second Partition For Presenting A Plurality Of Command Functions Constructed From Objects That Include A Header That Contains A Storage Control Parameter, As Required By Claim 4 Of The '967 Patent.

Even if Groupon were able to demonstrate that the portions of text that Dr. Weissman identifies satisfy the requirements of claims 1 and 2, Groupon cannot demonstrate that the supposed headers contain a "storage control parameter," as required by claim 4. Dr. Weissman offers two theories, both of which fail to meet the elements of claim 4.

First, Dr. Weissman opines that "Morris also discloses that the storage control parameters can be based on a file path name which is stored *outside* the contents of the file object." (Ex. E at 106 (emphasis added).) Dr. Weissman thus admits that his supposed parameters are stored *outside* of files, and do not meet the claimed objects that *include* headers that *contain* storage control parameters. Also, Dr. Weissman does not show that the supposed objects he identifies for the purposes of claims 1 and 2—portions of text—have any connection with file path names.

Second, Dr. Weissman opines that the i-nodes he relies on for claim 2 include size and type parameters. (Ex. E at 106.) Again, Dr. Weissman provides no evidence of this assertion. Furthermore, because Dr. Weissman states that i-nodes are stored "elsewhere" from the data, (Ex. F at 342:21-23; Ex. H ¶ 44), they cannot satisfy the claim requirement that objects must *include* a header that *contains* a storage control parameter.

Finally, Dr. Weissman does not offer an opinion for how either file path names or the i-nodes would meet the Court's construction of storage control parameter—a parameter that identifies the storage characteristic for the object, which may be for initial and/or continued storage—and he presents no evidence in support of such an opinion. Therefore, Morris does not disclose the elements of claim 4.

8

### 3. Xerox Star Did Not Meet The Elements of Claims 1, 2, or 4.

#### a. Xerox Star Did Not Include A Second Partition For Presenting A Plurality Of Command Functions Constructed From Objects That Can Be Retrieved From The Reception System Or, If Not Present, From The Network.

Dr. Weissman cannot show that Xerox Star included a second partition that meets the requirements of claim 1 of the '967 patent because he does not demonstrate that the alleged second partition is constructed from objects that are retrieved either from the reception system or from the network. Dr. Weissman relies on Figure 2 from Byte Magazine to show the "second partition" element. (Ex. E at 98-100.) At deposition, Dr. Weissman was asked to identify the claimed components of the "second partition" by marking that figure in different colors.[4] He identified the alleged "second partition" (in red), the "command functions" (in green), and the "objects" in the "second partition" (with numbered black arrows). (Ex. F at 373:23-374:9.) Dr. Weissman's annotations appear below:

---

[4] The marked figure is the only "second partition" identified by Dr. Weissman for Xerox Star. (Ex. E at 98-100; Ex. H ¶¶ 85-86.)

9



(Ex. B at GROUP0011662.)

The components that Dr. Weissman identifies as objects do not meet the Court's construction of "object" or the claim language "retrieved from . . . the reception system, or, if the current versions of the objects are not present . . . from the network." At deposition, Dr. Weissman opined that the six components he identified with black arrows as "objects" are icons. (Ex. F at 374:15-19.) However, there is no evidence that those icons are retrieved from the reception system, or if not present, from the network. Indeed, Dr. Weissman opines that the "Xerox Star icon[s]" meet this limitation only when combined with disclosures in Morris. (Ex. H ¶ 86.) But, as discussed above, there is no evidence that Morris discloses a second partition constructed from objects that meet this limitation. Therefore, Xerox Star did not meet the elements of claim 1.

10

        **b.**        **Xerox Star Did Not Include A Second Partition for Presenting A Plurality of Command Functions Constructed From Objects That Include A Header, As Required By Claim 2 Of The '967 Patent.**

Even if Groupon were able to demonstrate that the icons that Dr. Weissman identifies satisfy the requirements of claim 1, Groupon cannot show that they include a header, as required by claim 2. Dr. Weissman opines that certain properties of objects, such as name and size, are headers. (Ex. E at 100-101.) However, there is no evidence that either "properties" or "attributes" are included within the objects. In fact, Dr. Weissman admits that he did not analyze whether the alleged headers are included in the alleged objects because he erroneously thought that it was irrelevant. (Ex. F at 475:7-16 ("Q. Okay. So you don't know whether the properties of the icons are stored with the icons or somewhere else? A. I don't know where they're stored. It's not important to meeting the claim.").) Therefore, Xerox Star did not meet the elements of claim 2.

        **c.**        **Xerox Star Did Not Include A Second Partition For Presenting A Plurality Of Command Functions Constructed From Objects That Include A Header That Contains A Storage Control Parameter, As Required By Claim 4 Of The '967 Patent.**

Even if Groupon were able to demonstrate that the icons that Dr. Weissman identifies satisfy the requirement of claims 1 and 2, Groupon cannot demonstrate that the supposed headers contain a "storage control parameter," as required by claim 4. Dr. Weissman opines that the "size" and "type" parameters are storage control parameters. (Ex. E at 106-107.) However, as discussed above, because there is no evidence that the parameters are included within the icons, any such parameters cannot satisfy the claim requirement that objects must *include* a header that *contains* a storage control parameter. Finally, Dr. Weissman does not offer an opinion for how either "size" or "type" parameters would meet the Court's construction of storage control parameter—a parameter that identifies the storage characteristic for the object, which may be for initial and/or

continued storage—and he presents no evidence in support of such an opinion. Therefore, Xerox Star did not meet the elements of claim 4.

### 4. Dr. Weissman's Combination Of Morris And Xerox Star Cannot Make Up For The Deficiencies In The Individual References Because Dr. Weissman Does Not Offer Any Opinions That Any Missing Elements Would Be Obvious.

There is no evidence that the missing claim elements of claims 1, 2, and 4 would have been obvious to a POSITA. An allegation that a claimed element would have been obvious to a POSITA requires evidence in support of that contention. *3M Co. v. Mohan*, 482 F. App'x 574, 577–78 (Fed. Cir. 2012) (affirming summary judgment of nonobviousness because "conclusory assertions of patent invalidity do not raise a genuine issue of material fact sufficient to defeat summary judgment"). Dr. Weissman opines that each element of the asserted claims is disclosed by either "Morris alone" or "Morris in combination with Xerox Star," but does not offer an opinion that the missing elements would be obvious to a POSITA if they are not disclosed by either Morris or Xerox Star. (Ex. E at 70-117; Ex. H ¶¶ 69-109.) As discussed above, neither Morris nor Xerox Star disclose several key elements of claims 1, 2, and 4. Therefore, Morris alone does not anticipate and Morris in combination with Xerox Star does not render obvious claims 1, 2-7, 12, and 17 of the '967 patent and summary judgment should be granted.

## VII. CONCLUSION

IBM respectfully requests that the Court enter summary judgment for IBM of no anticipation by Morris and no obviousness in view of Morris in combination with the Xerox Star system for the asserted claims of the '967 patent.

OF COUNSEL:

John M. Desmarais
Karim Oussayef
Laurie N. Stempler
Robert C. Harrits
Brian D. Matty
Michael Matulewicz-Crowley
DESMARAIS LLP
230 Park Avenue
New York, NY 10169
Tel: (212) 351-3400

Dated: March 5, 2018
Public Version Dated: March 12, 2018
5663291 / 43155

Respectfully submitted,

POTTER ANDERSON & CORROON LLP

By: */s/ Stephanie E. O'Byrne*
David E. Moore (#3983)
Bindu A. Palapura (#5370)
Stephanie E. O'Byrne (#4446)
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801
Tel: (302) 984-6000
dmoore@potteranderson.com
bpalapura@potteranderson.com
sobyrne@potteranderson.com

*Attorneys for Plaintiff
International Business Machines Corporation*

13