# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| INTERNATIONAL BUSINESS MACHINES CORPORATION, ) ) ) | |
| Plaintiff, ) ) | |
| v. ) ) | C.A. No. 16-122-LPS |
| GROUPON, INC., ) ) ) | |
| Defendant. ) | |

**ANSWERING BRIEF OF GROUPON, INC. IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT OF NO ANTICIPATION BY HYPERCARD AND NO OBVIOUSNESS IN VIEW OF HYPERCARD AND TERRY FOR THE <u>ASSERTED CLAIMS OF U.S. PATENT NO. 5,796,967</u>**

*Of Counsel:*

J. David Hadden
Saina S. Shamilov
Phillip J. Haack
Sapna Mehta
FENWICK & WEST LLP
Silicon Valley Center
801 California Street, 12th Floor
Mountain View, CA  94041
(650) 988-8500

Dated: March 19, 2018

ASHBY & GEDDES
John G. Day (#2403)
Andrew C. Mayo (#5207)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE  19899
(302) 654-1888
jday@ashbygeddes.com
amayo@ashbygeddes.com

*Attorneys for Defendant Groupon, Inc.*

{01302972;v1 }

**TABLE OF CONTENTS**

**Page**

NATURE AND STAGE OF THE PROCEEDINGS ................................................................... 1

SUMMARY OF ARGUMENT ..................................................................................................... 1

STATEMENT OF FACTS ............................................................................................................ 1

I.    OVERVIEW OF THE '967 PATENT ............................................................................... 1

II.    OVERVIEW OF THE HYPERCARD SYSTEM AND TERRY ...................................... 2

ARGUMENT .................................................................................................................................. 3

I.    HYPERCARD ALONE INVALIDATES THE '967 PATENT, AND IBM FAILS TO MEET ITS BURDEN OF PROVING NO DISPUTE OF MATERIAL FACT AS TO THE SCOPE OF ITS DISCLOSURES. ............................................................................. 3

II.    THE COMBINATION OF HYPERCARD AND TERRY RENDERS THE '967 PATENT OBVIOUS. ......................................................................................................... 5

    A.    Groupon has provided adequate motivation to combine HyperCard with Terry, creating a dispute of material fact between the parties. .......................... 6

    B.    HyperCard in view of Terry and the knowledge of one of ordinary skill in the art renders obvious claim 1 of the '967 patent. ....................................... 7

CONCLUSION .............................................................................................................................. 8

## TABLE OF AUTHORITIES

Page(s)

**CASES**

*Anderson v. Liberty Lobby, Inc.*,
 477 U.S. 242 (1986)...........................................................................................................7

*Crown Packaging Tech., Inc. v. Ball Metal Beverage Container Corp.*,
 635 F.3d 1373 (Fed. Cir. 2011).........................................................................................7

*Ericsson, Inc. v. Intellectual Ventures I LLC*,
 IPR2014-00527, 2015 WL 2409306 (May 18, 2015), *aff'd*, 656 F. App'x 541
 (Fed. Cir. 2016)..................................................................................................................2

*Green Edge Enters., LLC v. Rubber Mulch Etc., LLC*,
 620 F.3d 1287 (Fed. Cir. 2010).........................................................................................6

*Helifix Ltd. v. Blok-Lok, Ltd.*,
 208 F.3d 1339 (Fed. Cir. 2000).........................................................................................6

*HSM Portfolio LLC v. Elpida Memory Inc.*,
 CV 11-770-RGA, 2016 WL 552543 (D. Del. Feb. 11, 2016) .........................................3

*IBM v. Priceline Grp. Inc.*,
 No. 1:15-cv-00137-LPS, D.I. 525..................................................................................2, 3

*In re Morsa*,
 713 F.3d 104 (Fed. Cir. 2013)...........................................................................................4

*Leggett & Platt, Inc. v. Hickory Springs Mfg. Co.*,
 285 F.3d 1353 (Fed. Cir. 2002).........................................................................................7

*LG Electronics, Inc. v. Advanced Micro Devices, Inc.*,
 IPR2015-00329 (July 10, 2015).........................................................................................2

*Meyers v. Pennypack Woods Home Ownership Ass'n*,
 559 F.2d 894 (3d Cir. 1977)..............................................................................................3

*MobileMedia Ideas LLC v. Apple Inc.*,
 780 F.3d 1159 (Fed. Cir. 2015)......................................................................................4, 6

*MobileMedia Ideas, LLC v. Apple Inc.*,
 907 F. Supp. 2d 570 (D. Del. 2012), *vacated in part on other grounds*, 780
 F.3d 1159 (Fed. Cir. 2015) ................................................................................................2

# TABLE OF AUTHORITIES
## (CONTINUED)

**Page(s)**

**STATUTES**

35 U.S.C. § 102(a) ...................................................................................................................2

35 U.S.C. § 103 .........................................................................................................................8

Groupon, Inc. submits its opposition to IBM's motion for summary judgment that the asserted claims of U.S. Patent No. 5,796,967 (the "'967 patent") are not anticipated by the HyperCard system and not obvious in view of HyperCard and Terry.

## NATURE AND STAGE OF THE PROCEEDINGS

The nature and stage of the proceedings is identical to the ones described in Groupon's Memorandum in Support of Motion for Summary Judgment filed on March 5, 2018. (D.I. 227.)

## SUMMARY OF ARGUMENT

1.  Because HyperCard prior art references that pre-date the '967 patent disclose a networked configuration of the HyperCard system, IBM's motion for summary judgment fails.

2.  Further, because Groupon's expert opined that the HyperCard references themselves render the asserted claims of the '967 patent obvious and explained that Terry discloses a networked system, both of which IBM ignores in its motion, the combination of HyperCard and Terry discloses the claim limitations IBM argues are missing.

## STATEMENT OF FACTS[1]

### I. OVERVIEW OF THE '967 PATENT

The '967 patent is titled "Method for Presenting Applications in an Interactive Service" and was filed on July 15, 1988. It describes and claims a way of generating screen displays that are broken into partitions for presenting interactive applications over a network, with commands to navigate within and between the applications. (Declaration of Saina Shamilov ("Shamilov Decl."), Ex. 1 ('967 patent) at 2:41-3:8; *see also id.* at 9:41-44.) IBM asserts independent claim 1 and claims 2-7, 12, and 17 that depend on claim 1.

---

[1] As evidenced in this opposition, Groupon disputes several of IBM's purportedly "undisputed" facts. For example, IBM does not accurately identify prior art dates, mischaracterizes the prior art disclosures and Dr. Weissman's deposition testimony, and erroneously claims that Dr. Weissman solely relied on HyperCard for the claim elements argues are missing from the prior art.

## II.     OVERVIEW OF THE HYPERCARD SYSTEM AND TERRY

HyperCard was a software application and programming tool for Apple Macintosh and Apple IIGS computers developed and used before the Web and the '967 patent. (Shamilov Decl., Ex. 2 at 21.) The system displayed interactive applications using windowed interfaces and could be deployed in a distributed networked environment. (*Id.*) It was described in several publications between 1987 and 1988 ("HyperCard publications"). (*See* D.I. 215 at 3.)

The first edition of "The Complete HyperCard Handbook" by Danny Goodman ("First Edition Handbook") identifies a publication date of September 1987[2]—before the '967 patent. (Ex. 2 at 20-22; 35 U.S.C. § 102(a); *see also* Shamilov Decl., Ex. 3 ¶ 24; *id.*, Ex. 4 at GROUP0014071.) Similarly, the "Apple Macintosh HyperCard User's Guide" has a copyright date of 1987, the "Danny Goodman's HyperCard Developer's Guide" ("Developer's Guide") has a publication date of June 1, 1988, and "HyperCard Made Easy" has a publication date of July 8, 1988[3]—all pre-dating the '967 patent's effective filing date.[4] (*See* Shamilov Decl., Exs. 6-8; Ex.

---

[2] The Library of Congress Copyright Office Catalog records list the First Edition Handbook as published on August 3, 1987; regardless, it was published prior to the priority date of the '967 patent. (Shamilov Decl., Ex. 5.)

[3] The Library of Congress Copyright Office Catalog records for HyperCard Made Easy, coupled with its copyright date of 1988, establish it was publically available before July 15, 1988. *MobileMedia Ideas, LLC v. Apple Inc.*, 907 F. Supp. 2d 570, 605 (D. Del. 2012) ("An expert may reasonably rely on a copyright date on documentation to determine an approximate date of public availability and, absent any evidence to the contrary, the court may rely on that prior art date."), *vacated in part on other grounds*, 780 F.3d 1159 (Fed. Cir. 2015); *LG Electronics, Inc. v. Advanced Micro Devices, Inc.*, IPR2015-00329 (July 10, 2015); *Ericsson, Inc. v. Intellectual Ventures I LLC*, IPR2014-00527, 2015 WL 2409306, at *6 (May 18, 2015), *aff'd*, 656 F. App'x 541, 542 (Fed. Cir. 2016).

[4] Because no evidence reflecting the actual publication dates of several of the HyperCard references was at issue in the *Priceline* case, the Court's order in the *Priceline* case finding that HyperCard did not anticipate the '967 patent (*IBM v. Priceline Grp. Inc.*, No. 1:15-cv-00137-LPS, D.I. 525) does not apply to this case. After the Court issued that order, Groupon was able to locate the Library of Congress Copyright Office Catalog records showing early publication dates of the references. Groupon should be allowed to rely on these records for several reasons. The references were timely disclosed to IBM. Dr. Weissman opined that not only the references are prior art, but they are evidence of the prior art HyperCard system that the references describe as available before

3 ¶ 24.) Only the second edition of "The Complete HyperCard Handbook" by Danny Goodman ("Second Edition Handbook") has a publication date that post-dates the '967 patent's priority date. (*See* Shamilov Decl., Ex. 9.)

"Caching Hints in Distributed Systems" by Douglas B. Terry ("Terry") was published in the Journal IEEE Transactions on Software Engineering, Vol. 13, on January 1987. (Shamilov Decl., Ex. 10.) Terry describes a caching technique for storing local and remote objects in a distributed system. (*See* Ex. 2 at 22.)

## ARGUMENT

IBM does not dispute that HyperCard discloses the main concepts of the '967 patent claims, including applications, partitions for displaying those applications, command functions, and partitions for displaying those command functions, and that Terry discloses selective local storing and retrieval of remote objects from a network. IBM only disputes that there is sufficient (1) computer network disclosure in the HyperCard publications pre-dating the '967 patent, (2) motivation to combine HyperCard and Terry, and (3) that the combination of HyperCard and Terry discloses command functions selectable to permit movement between applications. Because these are factual disputes, they must be resolved by the jury at trial, not on summary judgment.

### I. HYPERCARD ALONE INVALIDATES THE '967 PATENT, AND IBM FAILS TO MEET ITS BURDEN OF PROVING NO DISPUTE OF MATERIAL FACT AS TO THE SCOPE OF ITS DISCLOSURES.

Contrary to IBM's assertion, the HyperCard publications identified above do disclose the

---

the patent; the records do not change Dr. Weissman's opinions. IBM's expert addressed the references and Dr. Weissman's opinions about them in detail in his reports, dedicating over 90 pages to them. The records are publicly accessible. Groupon did not act in bad faith or intentionally withhold the records. Finally, these records are important to Groupon's defenses in light of the Court's summary judgment order in *Priceline*, as they establish the true and early-enough prior art dates. Accordingly, Groupon should be allowed to rely on them in this case. *See Meyers v. Pennypack Woods Home Ownership Ass'n*, 559 F.2d 894, 904-905 (3d Cir. 1977); *HSM Portfolio LLC v. Elpida Memory Inc.*, CV 11-770-RGA, 2016 WL 552543, at *2 (D. Del. Feb. 11, 2016) (allowing evidence regarding publication dates of prior art not made available during discovery.)

use of the system on a computer network, and do not include only "forward looking statements." Although the First Edition Handbook states that "HyperCard will become the familiar 'front end' to information access not only on our own disk drives, but in *network* file servers" (Shamilov Decl., Ex. 4 at 12 (emphasis added)), the Developer's Guide—that pre-dates the '967 patent and describes a HyperCard version in use before the patent—describes the system's *actual* operations on a network. It describes "the *networking* features of HyperCard 1.2." (Ex. 11 at back cover (emphasis added).)[5] It describes security measures for protecting stacks that are "advisable" "in a *network* situation." (*Id.*, *see also id.* at 135-36 (emphasis added).) And it explains that the "private access protection" feature was available in "the first release of HyperCard," but it "is not a good solution when running HyperCard on a multi-user *network*" because "anyone on the *network* will be able to open that stack."[6] (*Id.* at 134-135 (emphasis added).) Accordingly, the parties dispute what the prior art references disclose. Because "[w]hat a particular reference discloses is a question of fact," this dispute must be resolved by the jury. *MobileMedia Ideas LLC v. Apple Inc.*, 780 F.3d 1159, 1167 (Fed. Cir. 2015).

And because the HyperCard references do disclose the use of the system with a computer network, IBM's argument that they do not disclose that objects can be retrieved locally and if unavailable from the network because HyperCard could not be used with a network, fails. Further,

---

[5] This reference, along with the others, was cited in and incorporated by reference into Dr. Weissman's reports and he explained that his citations to this over 600-pages long book are exemplary; IBM had sufficient notice of the reference, its disclosure and Dr. Weissman's opinions that the references disclose networked configurations known and in use before the '967 patent. (Shamilov Decl., Ex. 2 at 20; Ex. 2 at 21-29; Ex. 3 ¶¶ 27, 29, 33-37; Ex. 12 at 313:6-314:1.)

[6] The Developer's Guide describes HyperCard 1.2. The Library of Congress record confirms that it was published on June 1, 1988, before the '967 patent. (Ex. 11.) Any dispute over the publication date of this or any of the HyperCard references is a dispute of fact. *See In re Morsa*, 713 F.3d 104, 109 (Fed. Cir. 2013). And, Dr. Weissman explained that his invalidity opinion is based both on the publications and on the HyperCard *system* they describe. (Shamilov Decl., Ex. 12 at 306:12-307:4.) And, as he explained, this book is evidence of the features and functionality of the HyperCard 1.2 system and that the system was available before the book was written and thus before the '967 patent. (*See id.* at 313:6-314:1.)

Dr. Weissman did not admit that HyperCard does not disclose this selective storage and retrieval. The fact that he did not identify any end users of the HyperCard system is irrelevant. He specifically testified that the references "talk[] about . . . many data objects that are local, because that's the most common use case, but also mention[s] that, for example, stacks can be on file servers" and thus "non-local." (Ex. 12 at 334:16-335:4.) He explained that one skilled in art would understand the references to describe "an available mode of configuration" with "a capability to go to a file server to get objects." (*Id.* at 334:16-336:15.) Indeed, Dr. Weissman explicitly explains in his reports that the HyperCard objects that "include cards and stacks" "may be stored as files on the local disk of the user, which one of ordinary skill would understand to be, attached to their desktop and therefore part of the reception system" or they may be "stored and distributed across the network such as through a file server." (Ex. 2 at 34-37.) IBM's disagreement with his analysis is not a ground for summary judgment.

Notably, IBM does not argue in its motion that the HyperCard references do not render the asserted claims of the '967 patent obvious. Because they also do and Dr. Weissman explicitly opined so. For example, Dr. Weissman explained in his reports that not only the references disclose the networked HyperCard configurations, but "it would have at a minimum been obvious to a person of ordinary skill in the art to use a system like HyperCard on a network prior to the date of invention of the '967 patent." (Shamilov Decl., Ex. 3 at ¶ 34.) Dr. Weissman's opinion is supported by the earlier HyperCard publications that describe using HyperCard on "network file servers" in the near future, and the later publications, including the prior art ones, describing that particular use and confirming that it was feasible and possible before the patent. (Shamilov Decl., Ex. 4 at 12, Ex. 11 at 134-36, Ex. 9 at 794-95; *see also* Ex. 11 at 306:17-307:4, 313:6-314:1.)

**II.   THE COMBINATION OF HYPERCARD AND TERRY RENDERS THE '967 PATENT OBVIOUS.**

IBM's motion for summary judgment with respect to the combination of HyperCard and

Terry similarly fails because it implicates several factual determinations that fall squarely within the jury's purview. Indeed, whether the claimed invention would have been obvious to a person of ordinary skill in the art at the time of the invention "is a question of law based on underlying questions of fact." *Green Edge Enters., LLC v. Rubber Mulch Etc., LLC*, 620 F.3d 1287, 1298 (Fed. Cir. 2010). "What a particular reference discloses is a question of fact, as is the question of whether there was a reason to combine certain references." *MobileMedia*, 780 F.3d at 1167 (citation omitted). A dispute as to any of these elements defeats a motion for summary judgment. *See Helifix Ltd. v. Blok-Lok, Ltd.*, 208 F.3d 1339, 1346 (Fed. Cir. 2000). Here, the factual issues in dispute include the scope and the content of the prior art and whether there was motivation to combine the references. These material disputes preclude summary judgment of non-obviousness.

> A. **Groupon has provided adequate motivation to combine HyperCard with Terry, creating a dispute of material fact between the parties.**

Because the prior art references disclose HyperCard's networked configuration, IBM's argument that Groupon cannot demonstrate a motivation to combine HyperCard with Terry fails. It also fails, because Dr. Weissman described that the networked configuration of HyperCard was at a minimum obvious in light of the prior art disclosures. And thus, one way or the other, use of HyperCard on a computer network would be known or obvious and therefore could be combined with Terry as Dr. Weissman described in his reports.

Indeed, he described that both prior art references "refer to networked distributed systems that store, retrieve, and display application and data objects in multiple partition-based windows for multiple users." (Shamilov Decl., Ex. 2 at 23.) But, contrary to IBM's assertion, he does not stop there. He explains that the HyperCard publications "recognized the need to have local storage" and Terry "describe[s] in detail a method of data storage" including "local storage of objects by caching." (*Id.*; *see also* Ex. 3 ¶ 37.) Accordingly, Dr. Weissman explains, because "Terry essentially picks up where HyperCard leaves off, a person of ordinary skill would have naturally

turned to Terry" and "would have had every expectation that the caching technique be used successfully." (Ex. 2 at 23.) "Combining teachings of HyperCard with Terry would do nothing more than combine known techniques according to their established functionality" and "would have predictably resulted in an efficient and robust storage of application and data objects." (*Id.*) Dr. Weissman—with a Ph.D. in computer science and 25 years of designing, developing, and testing distributed networked systems—opines that "a person of ordinary skill in the art would regard the combination [of HyperCard with Terry] as natural and straightforward." (*Id.*) That IBM's expert disagrees with Dr. Weissman's opinions merely creates a dispute for the jury to resolve; it does not entitle IBM to summary judgment in its favor.

Indeed, at the summary judgment stage, the Court may not weigh evidence or make credibility determinations. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Instead, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.*; *see also Crown Packaging Tech., Inc. v. Ball Metal Beverage Container Corp.*, 635 F.3d 1373, 1384 (Fed. Cir. 2011) ("Where there is a material dispute as to the credibility and weight that should be afforded to conflicting expert reports, summary judgment is usually inappropriate."); *Leggett & Platt, Inc. v. Hickory Springs Mfg. Co.*, 285 F.3d 1353, 1362 (Fed. Cir. 2002) (finding summary judgment inappropriate because "the conflicting allegations of the experts here leave unresolved factual disputes").

      **B.**    **HyperCard in view of Terry and the knowledge of one of ordinary skill in the art renders obvious claim 1 of the '967 patent.**

IBM again bases its argument that a combination of HyperCard and Terry does not disclose "command functions . . . selectable to permit movement between the applications" on its mistaken conclusion that the HyperCard references do not disclose or suggest a networked configuration and the system itself could not be deployed in that configuration before the patent. IBM's argument fails for this reason alone.

Moreover, IBM is wrong that Dr. Weissman only relies on HyperCard for this claim limitation. As an initial matter, in making its argument, IBM draws from at least the preamble limitation of the claim to argue that the applications the command functions move between must operate on a network. Dr. Weissman explains in his report that *both* Terry and HyperCard disclose the preamble's requirement that the interactive applications operate "on a network." (*See* Ex. 2 at 23-30; Ex. 3 ¶¶ 27, 29, 33-37.) He therefore does not "rel[y] solely on HyperCard for this limitation," which as IBM's argument demonstrates necessarily includes the preamble analysis as well. And Dr. Weissman opines that the HyperCard references would at a minimum render the networked configuration obvious; thus, a combination of HyperCard and Terry would also render the networked configuration obvious. Indeed, he explicitly explains in his report that Terry "discloses a distributed computer network." (Ex. 2 at 29-30.) This fact alone, combined with HyperCard's disclosure of presenting a plurality of command functions for switching between applications (*e.g.*, navigation buttons to switch between cards in a stack, or to switch to another stack, or to exit HyperCard) in an area of a screen, meets the limitation IBM contends is missing from the combination. (*Id.* at 43-47; Ex. 3 ¶ 41) Dr. Weissman explains that these command functions would operate on a network, quoting the following description from the HyperCard prior art reference itself: "*From HyperCard, you will have access to every application and file;* you'll be able to reach personal and business information you feel important enough to store on a disk *or file server*; you'll use HyperCard to access *new information bases*." (Ex. 3 ¶ 41, *see also* Ex. 4 at 11 (emphasis added).) Accordingly, HyperCard in view of Terry and the knowledge of one of ordinary skill in the art renders the asserted claims obvious, and IBM's motion should be denied.

## CONCLUSION

For the foregoing reasons, Groupon respectfully requests that IBM's motion for summary judgment regarding the validity of the '967 patent be denied.

| | |
|---|---|
| *Of Counsel:* | ASHBY & GEDDES |
| | */s/ John G. Day* |
| J. David Hadden | |
| Saina S. Shamilov | John G. Day (#2403) |
| Phillip J. Haack | Andrew C. Mayo (#5207) |
| Sapna Mehta | 500 Delaware Avenue, 8th Floor |
| FENWICK & WEST LLP | P.O. Box 1150 |
| Silicon Valley Center | Wilmington, DE  19899 |
| 801 California Street, 12th Floor | (302) 654-1888 |
| Mountain View, CA  94041 | jday@ashbygeddes.com |
| (650) 988-8500 | amayo@ashbygeddes.com |
| | |
| Dated:  March 19, 2018 | *Attorneys for Defendant Groupon, Inc.* |