# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| INTERNATIONAL BUSINESS MACHINES CORPORATION, | ) ) ) ) | **TGF CEVGF RWDNKE XGTUKQP** |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| GROUPON, INC. | ) ) | C.A. No. 16-122-LPS-CJB |
| Defendant. | ) ) ) | JURY TRIAL DEMANDED |

## ANSWERING BRIEF OF GROUPON, INC. IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT OF NO AFFIRMATIVE DEFENSES

*Of Counsel*:

J. David Hadden
Saina S. Shamilov
Phillip J. Haack
Sapna Mehta
FENWICK & WEST LLP
Silicon Valley Center
801 California Street
Mountain View, CA  94041
(650) 988-8500

Dated:   March 19, 2018

ASHBY & GEDDES
John G. Day (#2403)
Andrew C. Mayo (#5207)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE  19899
(302) 654-1888
jday@ashby-geddes.com
amayo@ashby-geddes.com

*Attorneys for Defendant*
GROUPON, INC.

{01302898;v1 }

# TABLE OF CONTENTS

**Page**

NATURE AND STAGE OF THE PROCEEDINGS ................................................................... 1

SUMMARY OF ARGUMENT .............................................................................................. 1

STATEMENT OF FACTS ................................................................................................... 1

ARGUMENT ..................................................................................................................... 3

I.      IBM HAS ALREADY RAISED THE VERY SAME ARGUMENTS IN THE
        *PRICELINE* CASE, AND THE COURT DENIED ITS MOTION FOR SUMMARY
        JUDGMENT THERE. ............................................................................................... 4

II.     IBM'S PATENT LICENSES BAR ITS CLAIMS AGAINST GROUPON. ..................... 4

        A.      Groupon's Interrogatory Responses Provided IBM with Sufficient Notice of its
                Defenses. ..................................................................................................... 5

        B.      IBM's ████████████████ Licenses Bar its Claims of Infringement of the
                '346 Patent. ................................................................................................. 6

        C.      IBM's ████████████████ Licenses Bar its Claims of Infringement
                of the '967 and '849 Patents. ......................................................................... 9

                1.      IBM Maps the '967 and '849 Patents to ████████████████████
                        Licensed Under the ████████████████████ Licenses. ................. 10

                2.      IBM Maps the '849 Patent to ████████████████████
                        Licensed Under the ████████████████████ Licenses. ................. 11

CONCLUSION.................................................................................................................. 11

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Carborundum Co. v. Molten Metal Equip. Innovations, Inc.*,
   72 F.3d 872 (Fed. Cir. 1995)..................................................................................................12

*Glenayre Elecs., Inc. v. Jackson*,
   443 F.3d 851 (Fed. Cir. 2006)..................................................................................................5

*Int'l Bus. Machs. Corp. v. Priceline Grp. Inc.*,
   No. 15-cv-137-LPS-CJB (D. Del. Feb. 7, 2018), D.I. 1 ................................................. *passim*

*Integra Lifesciences Corp. v. Hyperbranch Med. Tech., Inc.*,
   No. 15-819-LPS-CJB (Nov. 14, 2017 D. Del.), Dkt. No. 448..................................................6

*Jacobs v. Nintendo of Am., Inc.*,
   370 F.3d 1097 (Fed. Cir. 2004)............................................................................................5, 9

*LifeScan Scotland, Ltd. v. Shasta Techs.*,
   LLC, 734 F.3d 1361 (Fed. Cir. 2013)..............................................................................5, 12

*Quanta Comput., Inc. v. LG Elecs., Inc.*,
   553 U.S. 617 (2008)...................................................................................................5, 9, 12

*Thorn EMI N.Am., Inc. v. Intel Corp.*,
   936 F. Supp. 1186 (D. Del. 1996), *aff'd sub nom. EMI Grp. N.Am., Inc. v.*
   *Intel Corp.*, 157 F.3d 887 (Fed. Cir. 1998)............................................................................6

*TransCore, LP v. Electronic Transaction Consultants Corp.*,
   563 F.3d 1271 (Fed. Cir. 2009).........................................................................................7, 10

*U.S. v. Univis Lens Co.*,
   316 U.S. 241 (1942).................................................................................................................5

Groupon presents its opposition to IBM's motion for summary judgment on Groupon's affirmative defenses.[1]

## NATURE AND STAGE OF THE PROCEEDINGS

Groupon incorporates by reference the "Nature and Stage of the Proceedings" section of its Memorandum in Support of Motion for Summary Judgment filed on March 5, 2018.  (D.I. 227.)

## SUMMARY OF ARGUMENT

1. IBM's broad patent licenses to ███████████████—which authorize the very technology IBM accuses of performing essential aspects of the '346 patent claims—extinguish IBM's rights to assert that patent here.

2. IBM's broad patent licenses to ████████████████████ likewise extinguish its rights to assert infringement of the '967 and '849 patents.  These third party licensees provide the ████████████████████████████ IBM alleges infringe the '967 and '849 patents in its case against Groupon.

3. At a minimum, genuine disputes of material fact exist with respect to these affirmative defenses as this Court already found in the *Priceline* case.

## STATEMENT OF FACTS

IBM asserts four patents in this case.  All of the asserted patents are subject of multiple IBM patent license agreements that extend to the very technologies IBM accuses here.  Accordingly, in its answer, Groupon pled "License" and "Patent Exhaustion" defenses. D.I. 13 at 10.  The record supports both of these defenses.



(Declaration of Saina Shamilov ("Shamilov Decl."), Ex. 1 at 1, 3, 16.) ████████████████████████

---

[1] IBM does not challenge Groupon's affirmative defenses of Failure to State a Cause of Action, Non-Infringement, Invalidity, Prosecution History Estoppel and Disclaimer, and No Injunctive Relief.  (*See* D.I. 13 at 9-11.)

 (*See* D.I. 228, Exs. 1 ('967 patent), 2 ('849 patent) (filing dates of July 15, 1988).)  The license authorizes

(Ex. 1 at 2.)

(Shamilov Decl., Ex. 2 at 1-3.)

(*See* D.I. 228, Exs. 1 ('967 patent), 2 ('849 patent) (filing dates of July 15, 1988).)  The license authorizes

(Ex. 2 at 3.)

(Shamilov Decl., Ex. 3 at 1-2.)

(*Id.* at 20; *see also* D.I. 228, Exs. 1 ('967 patent), 2 ('849 patent) and 19 ('346 patent) (filing dates of July 15, 1988 and April 1, 2005, respectively).)  The license again authorizes

(Ex. 3 at 2.)

(Shamilov Decl., Ex. 4 at 1, 10, 14.)

(*See* D.I. 228, Ex. 19 ('346 patent) (filing date of April 1, 2005).)   The license again authorizes

███████████████████████████████████████████████████ (Ex. 4 at 1-2.)

On November 22, 2016, IBM served an interrogatory requesting "all factual and legal ba-

ses" for Groupon's contentions that "IBM's claims are barred, in part or in whole, by the doctrines

of laches, estoppel, full compensation, exhaustion, first sale, implied license, license, covenant not

to sue, or release."   (Shamilov Decl. Ex. 6 at 15.)   Groupon responded to the interrogatory on

January 13, 2017, and supplemented its response on June 9, 2017 and September 15, 2017.   In

those responses, Groupon explained that IBM's claims "are barred in whole or in part by virtue of

prior agreements that involve licenses of the patents-in-suit, including without limitation, agree-

ments with ███████████████ and that "[t]o the extent that Groupon's accused instru-

mentalities are combined with products or services of these entities or any other licensees, they are

licensed and/or IBM is barred, in whole or in part, by the doctrines" of patent exhaustion and

implied license. (*Id.* at 16-17.)

The responses explain that ████████████████████████████████████████

██████████████████████████ they are licensed and IBM is barred from asserting its infringe-

ment claims by the doctrine of patent exhaustion ███████████████████████████

███████████████████████████ Prior to filing its motion for summary judg-

ment, IBM did not raise any issue with Groupon's supplemental responses to Interrogatory No. 8

and did not move to compel any additional response to this interrogatory.

## ARGUMENT

IBM's licenses authorized distribution and use by others of the very technologies IBM now

claims perform the essential elements of the asserted patent claims.   IBM disputes that.   But that

is a material factual issue to be resolved by the jury at trial, not to be decided by the Court at

summary judgment.[2]

## I.   IBM HAS ALREADY RAISED THE VERY SAME ARGUMENTS IN THE *PRICELINE* CASE, AND THE COURT DENIED ITS MOTION FOR SUMMARY JUDGMENT THERE.

In the *Priceline* case, IBM asserted the very same patents it asserts here.  (*Int'l Bus. Machs. Corp. v. Priceline Grp. Inc.*, No. 15-cv-137-LPS-CJB (D. Del. Feb. 7, 2018) ("*IBM v. Priceline*"), D.I. 1 (Complaint) at ¶ 2.)  Defendants raised defenses of implied license and patent exhaustion in light of the same IBM patent licenses described above and identified in Groupon's discovery responses.  (*Id.*, *e.g.*, D.I. 105 at ¶ 59.)  IBM moved for summary judgment on those defenses arguing—just as it does here—that defendants there "failed to show that any products licensed to the third parties infringed" the patents, "failed to adduce sufficient evidence that those agreements extend to Defendants or their products," and "no license agreement exists between IBM and any Defendant."  (*IBM v. Priceline*, D.I. 525 ("Priceline Order") at 33; *id.*, *compare* D.I. 344 (IBM's Motion) at 9, *with* instant case, D.I. 212 at 4-5 (arguing, *e.g.*, that Groupon did not establish that the licenses "extend to Groupon or the accused instrumentalities," that the licensed "instrumentalities infringe" the patents-in-suit, or that there is "any agreement between IBM and Groupon.").)  The Court denied IBM's motion for summary judgment finding that "the record reveals genuine disputes of material fact with respect to Defendants' affirmative defenses of single recovery and license."  (*Id.*, D.I. 525)  A similar, if not nearly identical, record here, does not warrant a different outcome.  Accordingly, the Court should deny IBM's motion.

## II.   IBM'S PATENT LICENSES BAR ITS CLAIMS AGAINST GROUPON.

The doctrine of patent exhaustion, commonly referred to as the "first sale" doctrine, applies where (1) there is an authorized sale or distribution of an article, and (2) the article is patented or

---

[2] Groupon disputes several of IBMs purportedly "undisputed facts," as evidenced by this opposition.  For example, Groupon's defenses are not based on its interrogatory response; they are based on IBM's patent licenses produced in this case, IBM's infringement theories mapping the technologies provided by its licensees to steps of the asserted claims, and on Groupon's technical expert reports and testimony addressing IBM's infringement theories.

substantially embodies the patent.  *Quanta Comput., Inc. v. LG Elecs., Inc.*, 553 U.S. 617, 638 (2008); *LifeScan Scotland, Ltd. v. Shasta Techs.*, LLC, 734 F.3d 1361, 1375 (Fed. Cir. 2013). Courts have long recognized that to "substantially embody" the patent, an article need not completely practice the patent; rather, exhaustion is triggered by any component that "essentially, even if not completely, embod[ies] an invention."  *Quanta*, 553 U.S. at 630-631 (citing *U.S. v. Univis Lens Co.*, 316 U.S. 241, 251 (1942)); *see also Univis Lens*, 316 U.S. at 249 (exhaustion applies "[w]hether the licensee sells the patented article in its completed form or sells it before completion for the purpose of enabling the buyer to finish and sell it").

Like the defense of patent exhaustion, the defense of implied license arises as a result of an authorized sale or distribution of a product only useful in practicing the claimed invention. *Glenayre Elecs., Inc. v. Jackson*, 443 F.3d 851, 867 (Fed. Cir. 2006); *see also Jacobs v. Nintendo of Am., Inc.*, 370 F.3d 1097, 1100 (Fed. Cir. 2004).  Even if the product sold has non-infringing uses, an implied license will exist if the patent holder authorized the product's infringing uses, for example, through a license lacking a "restriction of any kind."  *Jacobs*, 370 F.3d at 1100-1101.

### A.      Groupon's interrogatory responses provided IBM with sufficient notice of its defenses.

Groupon's interrogatory response properly provided IBM with "sufficient notice of [its] contentions" and an "opportunity to respond to those contentions" by identifying the basis for the implied license and patent exhaustion defenses and identifying the factual issues to be litigated. *Thorn EMI N.Am., Inc. v. Intel Corp.*, 936 F. Supp. 1186, 1191 (D. Del. 1996), *aff'd sub nom. EMI Grp. N.Am., Inc. v. Intel Corp.*, 157 F.3d 887 (Fed. Cir. 1998).  The responses explained that the technology IBM licensed in third party licenses it produced in this case, if accused by IBM against Groupon, extinguish IBM's infringement claims.  (Ex. 6 at 16, 19.)

Prior to filing its motion, IBM did not raise any issue with Groupon's supplemental interrogatory responses or complain that it had insufficient notice of the basis of Groupon's defenses.

Nor is Groupon required to include its trial presentation in an interrogatory response.  IBM has no basis for moving to exclude the defenses now.  *Thorn*, 936 F. Supp. at 1191 (denying request to strike "new" contentions raised in opposition to motion for summary judgment because interrogatory response gave sufficient notice of the factual issue to be litigated); *Integra Lifesciences Corp. v. Hyperbranch Med. Tech., Inc.*, No. 15-819-LPS-CJB (Nov. 14, 2017 D. Del.), Dkt. No. 448 at 10-11 (denying motion to strike a theory that was disclosed in interrogatory responses, even if the disclosure was "admittedly sparse," where party could have pressed for or moved to compel more detailed responses but did not.).

**B.     IBM's** ▮▮▮▮▮▮▮▮▮ **Licenses Bar its Claims of Infringement of the '346 Pa**▮▮

For the '346 patent, that is generally directed to account creation in single sign-on environments, IBM bases its infringement allegations on Groupon's use of ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (Shamilov Decl., Ex. 7 at ¶ 272; Shamilov Decl., Ex. 8 at, *e.g.*, ¶ 33, Shamilov Decl., Ex. 9 at, *e.g.*, ¶ 32.)  IBM licensed ▮▮▮▮▮▮ (Ex. 4 at 1-2 ▮▮▮▮▮▮▮ Ex. 3 at 1-3 ▮▮▮▮▮▮ .) ▮▮▮▮▮▮▮▮▮ licenses authorize ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮[3]  (*Id.*)  The ▮▮▮▮▮ license explicitly authorizes, without any restriction, ▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮ (Ex. 4 at 1-2.)  And the ▮▮▮▮ license explicitly specifies that IBM ▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮[4]  (Ex. 3 at 2, 4, 9.)  *See TransCore*,

---

[3] IBM's corporate witness explained in his deposition that IBM's portfolio licenses are ▮▮▮▮▮ (Shamilov Decl., Ex. 10 (McBride Deposition Tr.) at 85:4-13.)
[4] The ▮▮▮▮ agreement excludes ▮▮▮▮▮▮▮▮ which do not apply here.  (Ex. 3 at 3-4.)  It also states that ▮▮▮▮▮▮

*LP v. Electronic Transaction Consultants Corp.*, 563 F.3d 1271, 1275 (Fed. Cir. 2009).  Accordingly, the licenses—that are evidence in the record—cover and authorize ███████████████

███████████████████████████████████████████████████████

███████████████████████ (Ex. 8 at ¶¶ 71, 225.)

Yet, it is the use of ███████████████████ that IBM accuses in this case.  IBM accuses a feature on Groupon's website and mobile applications that allow users to log into the Groupon's system using their ███████████████ credentials. (Ex. 8 at ¶¶ 71 ███████████

██████████████████████████████████████████████████ 77

████████████████████████████████████████████████████; *see also id.* Ex. 9 at ¶¶ 65, 73).)  Indeed, IBM's expert explains that his infringement opinions are based on Groupon's system █████████████████████████████████ (Ex. 8 at ¶ 29, Ex. 9 at ¶ 30.)  He cites extensively to ████████████████████████████ in his infringement analysis for the '346 patent and points to the ███████ as meeting essential elements of the asserted claims.  (Ex. 8 at ¶¶ 5, 6.)

For example, the asserted claim 1 requires "[a] method for managing user authentication . . . wherein a first system and a second system interact within a federated computing environment and support single-sign-on operations . . . ."  This claimed "first system," according to IBM, is ███████████████████████████ (Shamilov Decl., Ex. 11 ("Schmidt Depo. Tr."), at 243:17-20; Ex. 8 at ¶ 33.)  And IBM does not dispute that the ████████████████████ are designed to support single-sign-on operations.  Indeed, their sole purpose is to provide authentication tokens and user attributes to service providers, like Groupon, in order to allow single sign-on and runtime account

---

███████████████████████████████████████ (Ex. 3 at 8.)  This clause is irrelevant to the analysis here, because it explicitly does not negate any other provisions in the agreement, such as ████████████████████████████████ Nor does Groupon acquire ████████████ (Ex. 8 at ¶ 35, fn. 7.)

creation.  For example, ███████████████

████████████████████████████████████████

(Shamilov Decl., Ex. 12.) ████████████████

███████████████████████ (Shamilov Decl., Ex. 13 ███████

████████████████████████████████████████

████████████████████; *see also id.*, Exs. 14 ███████████

████████████████████████████████████████

████████████████████████████



For the "triggering a single single-sign-on operation on behalf of the user …" element of claim 1, IBM's expert includes in his report the figure reproduced here, ███████████████████ ████████████████ (*See* Ex. 8 at ¶ 68, Ex. 9 at ¶ 48; *see also* Shamilov Decl., Ex. 16 at ¶ 296.)  And he maps the remaining steps of the claim ("receiving from the first system an identifier associated with the user" and "creating a user account for the user at the second system based at least in part on the received identifier") to

████████████████████████████████ (Ex. 8 at ¶¶ 95 ("receiving"

step occurs when ██████████████████████████████████

████████████████████, 126 ███████████████████████████████

█████████████████

As another example, claim 2 of the '346 patent requires "creating an alias identifier for the user at the first system after triggering the single-sign-on operation."  IBM's expert repeatedly

explains that the required ███████████████████████████████████ (Ex. 8 at ¶ 179; *see also id.* at ¶¶ 181, 184; Ex. 9 at ¶¶ 170, 172, 175.)

Because ████████████████████████████ is authorized without re-striction by ████████████████ and because IBM maps the essential, if not all, elements of its asserted claims to ████████ IBM's claim of infringement of the '346 patent is barred under the doctrines of patent exhaustion or first sale and license. *See Quanta*, 553 U.S. at 638; *Jacobs*, 370 F.3d at 1100.

C. **IBM's** ████████████████ **Licenses Bar its Claims of Infringement of the** ████

IBM's claims of infringement of the '967 and '849 patents are also barred by IBM's licenses to ████████████████ which cover the very instrumentalities—i.e., ████████████████████—that IBM's expert identifies as carrying out essential aspects of the '967 and '849 patent claims.

Each license broadly covers ████████████████████████████████████ ████████████████████████████████████ (Ex. 1 at 2; Ex. 2 at 3; Ex. 3 at 2; Ex. 4 at 1-2.) Each license covers the asserted '967 and '849 patents. (Ex. 1 at 16; Exhibit 2 at 1; Ex. 3 at 20 (specifically identifying the '849 patent).) And ████████████ ████████████████████████ thus authorizing their use in ways that may practice the '967 and '849 patents.[5] The licenses even authorize ████████████ ████████████████ The ████████ license includes a ████████████████ ████████████████████ (Ex. 1 at 7-8, 14-15 (████████████████ ████████████) *See TransCore*, 563 F.3d at 1275. The ████ license also includes ████████████████████████ (Ex. 2 at 12-14, 21

---

[5] Because Groupon does not ████████████████ ████████████████ is irrelevant to this case, and in any event, as explained above, it does not negate any other provisions in the agreement, such as the ████████████

([redacted].) And, as explained above, the [redacted] license authorizes [redacted] *See supra* II.B.

**1. IBM maps the '967 and '849 patents to [redacted] licensed under the [redacted] licenses.**

IBM's expert identifies the licensed [redacted] as performing the methods claimed in the '967 and '849 patents. For example, he identifies the [redacted] as the claimed "reception system" that "generat[es] the screen display" and "present[s] one or more screens of display." (*See, e.g.*, Shamilov Decl., Ex. 17 at ¶ 52 (defining reception system as [redacted]; Shamilov Decl., Ex. 18 at ¶ 20 [redacted]) Indeed, under IBM's infringement theory, the claimed screen display is simply any generic web page with any delineable sections and links rendered by any web browser. (D.I. 227 at 9.) And, as this Court found in the *Priceline* case, and as IBM's expert confirms, it is the licensed [redacted] Priceline Order at 20 (noting "the web browsers' . . . performance of the storing step"); Ex. 17 at ¶ 101 ([redacted].)

IBM's expert also relies on [redacted] to show how the various elements of the asserted claims are met. For example, for claim 1 of the '967 patent, he uses [redacted] to map the "generating a screen display," "generating at least a first partition," and "generating . . . at least a second partition" elements. (*See* Ex. 17 at ¶¶ 80-82, 84, 88, 93, 105-107, 112, 115, 119, 122, 130-131, 133, 143, 144 (generating screen display), 153-155, 166 (generating a first partition), 175-177, 179-180, 182-183, 187-189, 199-200 (generating a second partition).) Similarly, for claim 1 of the '849 patent, he relies on [redacted] to show how the "presenting advertising," "structuring applications" and "structuring advertising" elements are purportedly met. (*See* Ex. 18 at ¶¶ 22, 24, 40-43, 45-47, 50, 56-57, 66, 68, 80-85 ("presenting advertising"

preamble), 95-96, 99-100, 116-122, 136, 138, 144, 146, 157, 158, 161-162, 165-166, 168, 171, 174, 177, 189-195 ("structuring applications" and "structuring advertising" elements).)  Accordingly, IBM's unrestricted authorization ████████████████████████████████████

████████████████████████████████████████████████████████ in the manner that IBM broadly contends infringes the asserted claims, bars its patent rights under the patent exhaustion or first sale and license doctrines.  *Quanta*, 553 U.S. at 631; *LifeScan Scotland*, 734 F.3d at 1369; *Carborundum Co. v. Molten Metal Equip. Innovations, Inc.*, 72 F.3d 872, 878 (Fed. Cir. 1995) (implied license from sale of product with no non-infringing uses).

**2.   IBM maps the '849 patent to ██████████████ licensed under the ████████████████ licenses.**

Like the ████████ IBM's expert maps the claim elements of the '849 patent to the ████████████████████████████████████ that he admits are required to access the accused Groupon's mobile applications.  (*See* Shamilov Decl. Ex. 19 at ¶¶ 246, n.72 (citing to ████████████████████), 296 (referring to ██████████████████.)  Indeed, this Court reiterated in the *Priceline* case that the required "storing of objects" on a mobile application, like the one provided by Groupon, is performed by the licensed ████████████████ not Groupon.  Priceline Order at 20 (finding that Defendants do not direct or control "mobile applications' performance of the storing step"); *IBM v. Priceline*," D.I. 559 ("Priceline Reconsideration Order") at 3 ("[C]aching is performed by the mobile operating system, a system not controlled by Defendants.").  Thus a material part of the patented process is performed by the licensed and authorized ████████████████ and IBM's claims are barred by the patent exhaustion or first sale and license doctrines.  *Quanta*, 553 U.S. at 633.

## CONCLUSION

For the foregoing reasons, Groupon respectfully requests the Court to deny IBM's motion for summary judgment.

*Of Counsel*:                                   ASHBY & GEDDES

                                                /s/ *John G. Day*

J. David Hadden                                 _____
Saina S. Shamilov                               John G. Day (#2403)
Phillip J. Haack                                Andrew C. Mayo (#5207)
Sapna Mehta                                     500 Delaware Avenue, 8th Floor
FENWICK & WEST LLP                              P.O. Box 1150
Silicon Valley Center                           Wilmington, DE  19899
801 California Street                           (302) 654-1888
Mountain View, CA  94041                        jday@ashby-geddes.com
(650) 988-8500                                  amayo@ashby-geddes.com


Dated:   March 19, 2018                         *Attorneys for Defendant*
                                                GROUPON, INC.