# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| INTERNATIONAL BUSINESS MACHINES CORPORATION, | ) ) ) ) | REDACTED PUBLIC VERSION |
| Plaintiff, | ) ) | |
| v. | ) ) | C.A. No. 16-122-LPS |
| GROUPON, INC. | ) ) ) | |
| Defendant. | ) | |

## REPLY BRIEF OF GROUPON, INC. IN SUPPORT OF MOTION TO EXCLUDE EXPERT TESTIMONY OF DR. JERRY A. HAUSMAN

*Of Counsel*:

J. David Hadden
Saina S. Shamilov
Phillip J. Haack
Sapna Mehta
FENWICK & WEST LLP
Silicon Valley Center
801 California Street
Mountain View, CA  94041
(650) 988-8500

ASHBY & GEDDES
John G. Day (#2403)
Andrew C. Mayo (#5207)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE  19899
(302) 654-1888
jday@ashbygeddes.com
amayo@ashbygeddes.com

*Attorneys for Defendant Groupon, Inc.*

Dated:   March 28, 2018

{01306198;v1 }

## TABLE OF AUTHORITIES

Page(s)

**CASES**

*Ericsson, Inc. v. TCL Commc'n Tech. Holdings, Ltd.*,
  Case No. 2:15-cv-00011 (E.D. Tex. Mar. 7, 2018), D.I. 460 .................................................. 3

*Daubert v. Merrell Dow Pharms., Inc.*,
  509 U.S. 579 (1993) ............................................................................................................... 4

*Finjan, Inc. v. Blue Coat Sys., Inc.*,
  879 F.3d 1299 (Fed. Cir. 2018) .............................................................................................. 3

*Int'l Bus. Machs. Corp. v. Priceline Grp. Inc.*,
  271 F. Supp. 3d 667 (D. Del. 2017) ....................................................................................... 1

**STATUTES AND RULES**

Federal Rule of Evidence 702 ..................................................................................................... 3

Contrary to IBM's assertion, in *Priceline*, this Court did not find the methodology Dr. Hausman applies in this case reliable. There, the Court addressed Dr. Hausman's use of the Nash Bargaining solution, his failure to consider certain existing licenses and negotiation practices, and his application of the entire market value analysis in lieu of apportionment. *Int'l Bus. Machs. Corp. v. Priceline Grp. Inc.*, 271 F. Supp. 3d 667, 691 (D. Del. 2017). The Court did not address Dr. Hausman's arbitrary "apportionment" calculations or use of adjusted EBITDA margin because Dr. Hausman did not use adjusted EBITDA in *Priceline* and his calculations were not challenged. The fact that the Court denied a *Daubert* challenge in the *Priceline* case thus has no bearing on Groupon's motion. The Court should exclude Dr. Hausman's testimony because his analysis in *this* case is flawed.

Dr. Hausman unequivocally opines that during a hypothetical negotiation, IBM and Groupon would split Groupon's *profits*. (*E.g.*, D.I. 225, Ex. 1 ¶¶ 182, 206, 229, 250.) But he then fails to divide actual profits. Indeed, he agrees "that operating profit is not the same as adjusted EBITDA," yet he still uses the adjusted EBITDA margin as such. He even explains that the adjusted EBITDA margin does not account for, for example, the cost of "a certain amount of equipment," such as servers that Groupon must buy (*id.*, Ex. 3 at 72:4-8)—and thus, it cannot be an operating profit under any economic analysis.

That Groupon, in its SEC filings—made after the hypothetical negotiation date—states that the adjusted EBITDA margin is one indicator of its "operating *performance*" does not mean that it equates its adjusted EBITDA margin to its profit margin. Indeed, Groupon's Senior Director of Financial Planning and Analysis, quoted in IBM's brief, explained that ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ (D.I. 246, Ex. 5 at 105:15-106:16.) He explained that those two metrics

are ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (*Id.* at 111:8-13.)  Dr. Hausman ignores this.  He also ignores that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮  He observes ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (D.I. 225, Ex. 1 (Report) at Exhibit 10), but proceeds to ▮▮▮▮▮▮▮▮▮▮▮▮ this alone is a ground to exclude his testimony.

But, that is not even his main error.  In patent cases, to split profits ▮▮▮▮▮▮, a damages expert needs to determine "incremental profit" from the accused features.  And to do that, the expert first needs to apportion incremental revenue to those features.  There is nothing wrong with the damages expert relying on a technical expert in this analysis.  What that expert cannot do, however, is take non-economic usage percentages devised by the technical expert and treat them as a measure of incremental revenue.  But as he admits, that is exactly what Dr. Hausman does.  Indeed, Dr. Hausman admits that he lacks "a specific memory" of what Dr. Schmidt's percentages represent.  (*Id.*, Ex. 3 at 102:8-13.)  He concedes that, whatever they may be, they are *not* percentages of sales or revenue.  (*E.g.*, *id.* at 105:6–106:17.)  Yet he uses them as incremental revenue percentages.  (D.I. 225, Ex. 1 ¶¶ 162-168, 186-192, 210-216, 233-237 (declaring that he has "apportioned" revenues and somehow "quantified the economic benefits to Groupon from using" each patent because he used Dr. Schmidt's non-revenue, non-sales, not-based-in-any-economic-analysis percentages).)  His admissions alone are enough for the Court to exclude his testimony.

IBM does not even attempt to explain what incremental revenue Dr. Hausman purportedly uses.  It cannot.  The fact that he is entitled to use "Dr. Schmidt's estimates of the extent to which the accused instrumentalities use the patented technologies" (D.I. 244 at 9) is irrelevant.  That

"Dr. Hausman also cited Groupon documents and testimony demonstrating that the patented features were linked to increased revenue" (*id.* at 10) is also irrelevant. Dr. Hausman did not use those documents and testimony in his analysis; he did not measure, or use, any incremental revenue in his analysis. His analysis fails to survive Rule 702 under the well-established authority cited in Groupon's opening brief. (D.I. 218 at 8-12). IBM's attempts to distinguish that authority also fail.

For example, IBM argues that although the Federal Circuit rejected an expert's opinion for calculating incremental value by simply multiplying usage percentages together—as Dr. Hausman does here—this Court should ignore that directive because the software component in that case performed both infringing and non-infringing functions. (D.I. 244 at 10 (citing *Finjan, Inc. v. Blue Coat Sys., Inc.*, 879 F.3d 1299, 1310 (Fed. Cir. 2018).) But that does not distinguish that case from the facts here. Dr. Hausman himself admitted, for example, that while he allocated ▇ of Groupon's revenue to represent account creations during single sign-on, in fact, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ (D.I. 225, Ex. 3 at 195:4–8.)

Just this month, yet another court rejected a similar damages theory based on arbitrary use percentages, finding it failed to meet the requirements of Rule 702 and *Daubert*. *Ericsson, Inc. v. TCL Commc'n Tech. Holdings, Ltd.*, Case No. 2:15-cv-00011, at 9 (E.D. Tex. Mar. 7, 2018), D.I. 460. Like Dr. Hausman's adoption of Dr. Schmidt's percentages, the damages expert in *Ericsson* adopted a survey expert's finding that 28% of survey respondents allegedly would not have purchased the accused device if it did not have the patented feature. Although the damages expert performed a multi-step calculation, like Dr. Hausman's, the court observed it to be "a roundabout way of multiplying 28% by [the defendant's] average profit per device." *Id.* at 4. Notably, less egregious than Dr. Hausman's use of arbitrary percentages here, the damages expert in *Ericsson* attempted to use numbers that at least bore some relationship to sales. Even so, the *Ericsson* court found that the damages expert's use of the percentage did not properly account for the incremental

value of the infringing feature.  *Id.* at 10.  The same is true of Dr. Hausman's analysis here.  Dr. Hausman cannot use percentages—with no basis in any economic analysis and that he admits are not incremental revenue, any revenue-related metric, or even a dollar-figure, at all—to calculate attributable profit.

It is not Groupon's responsibility to apportion revenue to the accused features, either in the course of its business or in its rebuttal damages analysis.  It is IBM's burden to establish its purported damages by applying sound economic analysis in accordance with the well-established legal principles.  IBM fails to meet that burden as a matter of law.  This Court is a gatekeeper to prevent such unreliable expert testimony from reaching the jury.  *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993).  Dr. Hausman's fundamental flaws are not grounds for cross-examination, they are grounds for exclusion of his testimony.  Groupon respectfully requests that the Court do so.

|  |  |
|---|---|
|  | ASHBY & GEDDES |
|  | /s/ *Andrew C. Mayo* |
|  | John G. Day (#2403)<br>Andrew C. Mayo (#5207)<br>500 Delaware Avenue, 8th Floor |
| *Of Counsel*: | P.O. Box 1150<br>Wilmington, DE  19899 |
| J. David Hadden | (302) 654-1888 |
| Saina S. Shamilov | jday@ashbygeddes.com |
| Phillip J. Haack | amayo@ashbygeddes.com |
| Sapna Mehta |  |
| FENWICK & WEST LLP | *Attorneys for Defendant* |
| Silicon Valley Center | *Groupon, Inc.* |
| 801 California Street |  |
| Mountain View, CA  94041 |  |
| (650) 988-8500 |  |

Dated:   March 28, 2018