**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| INTERNATIONAL BUSINESS MACHINES CORPORATION, | ) ) ) | **REDACTED PUBLIC VERSION** |
| Plaintiff, | ) ) ) | |
| v. | ) ) | C.A. No. 16-122-LPS |
| GROUPON, INC. | ) ) | |
| Defendant. | ) ) | |

**REPLY IN SUPPORT OF MOTION FOR
<u>SUMMARY JUDGMENT OF GROUPON, INC.</u>**

ASHBY & GEDDES
John G. Day (#2403)
Andrew C. Mayo (#5207)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE  19899
(302) 654-1888
jday@ashbygeddes.com
amayo@ashbygeddes.com

*Of Counsel*:

J. David Hadden
Saina S. Shamilov
Phillip J. Haack
Sapna Mehta
FENWICK & WEST LLP
Silicon Valley Center
801 California Street
Mountain View, CA  94041
(650) 988-8500

*Attorneys for Defendant
Groupon, Inc.*

Dated:   March 28, 2018

{01306350;v1 }

# TABLE OF CONTENTS

**Page**

I. IBM FAILS TO SHOW THAT A REASONABLE JURY CAN FIND THAT
GROUPON INFRINGES THE FILEPP PATENTS. ...............................................1

    A. IBM cannot prove infringement of the '967 patent. ....................................1

    B. IBM cannot prove infringement of the '849 patent. ....................................4

        1. IBM has no evidence, or expert opinion, that Groupon itself
ever performed the allegedly infringing steps. ................................4

        2. IBM's new joint infringement theory relies on an incorrect
interpretation of the law. .................................................................5

        3. Formatting advertising to be presented with multiple
applications, as the claims require, cannot be done where the
alleged advertising is the purported application itself. ....................6

        4. IBM admits that its prefetching arguments rely on re-
interpreting the claims. ....................................................................8

II. IBM FAILS TO SHOW THAT A REASONABLE JURY CAN FIND THAT
GROUPON INFRINGES THE '601 PATENT. ......................................................9

    A. IBM's mapping of the claimed "service" is fatal to its case.......................9

        1. IBM's original theory mapped the "service" to different
Groupon components for different parts of the claims. ...................9

        2. IBM's new theory contradicts its own expert and still does not
work. ..............................................................................................10

    B. Groupon does not preserve state information in a conversation................11

    C. Groupon's mobile applications do not infringe the '601 patent for
additional reasons.....................................................................................13

        1. Groupon's mobile applications do not perform the "embedding"
step. ...............................................................................................13

        2. Groupon's mobile applications do not perform the
"communicating" step...................................................................14

III. IBM FAILS TO SHOW THAT A REASONABLE JURY CAN FIND THAT
GROUPON INFRINGES THE '346 PATENT. ....................................................15

A.      IBM misconstrues the language of claim 2.................................................15

B.      IBM raises no dispute of material fact that its infringement theory for claims 5, 8, and 10 fails as a matter of law. ...............................................16

IV.   AS A MATTER OF LAW, IBM CANNOT PROVE AN ACTUAL REDUCTION TO PRACTICE OF THE '601 PATENT PRIOR TO THE FILING DATE.........18

V.    CONCLUSION ....................................................................................................21

# TABLE OF AUTHORITIES

CASES

*Akamai Techs. v. Limelight Networks, Inc.*,
    797 F.3d 1020 (Fed. Cir. 2015)..........................................................................5, 6

*Dig. Biometrics, Inc. v. Identix, Inc.*,
    149 F.3d 1335 (Fed. Cir. 1998)............................................................................10

*Fairchild Semiconductor Corp. v. Power Integrations, Inc.*,
    100 F. Supp. 3d 357 (D. Del. 2015)................................................................18, 19

*IBM Corp. v. Priceline Grp. Inc.*,
    No. CV 15-137-LPS, 2016 WL 6405824 (D. Del. Oct. 28, 2016) ..........................14

*IBM Corp. v. Priceline Grp. Inc.*,
    271 F. Supp. 3d 667 (D. Del. 2017)............................................................. *passim*

*IBM Corp. v. Priceline Grp. Inc.*,
    No. 1:15-cv-00137-LPS, Order on Reconsideration (D.I. 559) (Feb. 1, 2018) ........................4

*Kenexa Brassring, Inc. v. Taleo Corp.*
    751 F. Supp. 2d 735 (D. Del. 2010)................................................................19, 20

*Lucent Techs., Inc. v. Gateway, Inc.*
    No. 02CV2060-BCAB, 2007 WL 1877984 (S.D. Cal. June 27, 2007) ...................18

*Medichem, S.A. v. Rolabo, S.L.*,
    437 F.3d 1157 (Fed. Cir. 2006)............................................................................19

*Netscape Commc'ns Corp. v. ValueClick, Inc.*,
    704 F. Supp. 2d 544 (E.D. Va. 2010) ............................................................18, 19

*Netscape Commc'ns Corp. v. ValueClick, Inc.*,
    707 F. Supp. 2d 640 (E.D. Va. 2010) ....................................................................19

*Newkirk v. Luljian*,
    825 F.2d 1581 (Fed. Cir. 1987)............................................................................18

*Scott v. Finney*,
    34 F.3d 1058 (Fed. Cir. 1994)..............................................................................18

*Singh v. Brake*,
    222 F.3d 1362 (Fed. Cir. 2000)............................................................................19

*St. Clair Intellectual Prop. Consultants Inc. v. Matsushita Elec. Indus. Co.*,
    No. 04–1436–LPS, 2012 WL 1015993 (D. Del. Mar. 26, 2012), *aff'd*, 522 F.
    App'x 915 (Fed. Cir. 2013) ................................................................................5

*Travel Sentry, Inc. v. Tropp*
    877 F.3d 1370 (Fed. Cir. 2017)................................................................................6

*Versa Corp. v. Ag-Bag Int'l. Ltd.*,
    392 F.3d 1325 (Fed. Cir. 2004)...........................................................................2, 3

## I.   IBM FAILS TO SHOW THAT A REASONABLE JURY CAN FIND THAT GROUPON INFRINGES THE FILEPP PATENTS.

### A.   IBM cannot prove infringement of the '967 patent.

All claims require "generating a first area for presenting applications."  IBM repeatedly claims in its opposition that the area for presenting applications can be the applications themselves. (D.I. 248 at 4-5.)  But if this is true, it eviscerates the claim requirement and logic.  An area for presenting a painting, is not the painting, it is a wall.  Dr. Schmidt's entire infringement theory is based on this faulty premise.

According to Dr. Schmidt, (Shamilov Decl.,[1] Ex. 3 ¶ 174; Ex. 6 ¶ 63); (Ex. 3 ¶ 18); and, although he did not analyze it, (Ex. 4 ("Schmidt Depo.") at 44:4-10, 31:13-19; Supplemental Declaration of Saina Shamilov ("Shamilov Supp. Decl."), Ex. 1 at 41:20-42:16).  If the area for displaying applications must be something other than the application itself—as the as the plain language of the claims construed by the Court requires—his infringement theory fails.

IBM now attempts to present an alternative infringement theory equating the claimed area to "where the content appears" and the claimed applications to "what is presented."  (D.I. 248 at 4.)  But there is no support for that theory in Dr. Schmidt's reports.  IBM concedes as much by altering the figure from Dr. Schmidt's report in its opposition.  Here is the figure from Dr. Schmidt's report on the left (Ex. 6 ¶ 51) and, the one IBM claims is his on the right (D.I. 248 at 3):

---

[1] Unless otherwise noted, exhibit citations are to the Declaration of Saina Shamilov filed in support of Groupon's opening brief (D.I. 228).



IBM changed the red border in Dr. Schmidt's drawing.  In Dr. Schmidt's drawing, ▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Moreover,

Dr. Schmidt explained that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (Schmidt Depo. at 30:7-31:12 (discussing a

similarly annotated figure at Ex. 3 ¶ 153).)

Dr. Schmidt did not opine that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮ (D.I. 248 at 5.)  Indeed, IBM cites to *not a single page* in Dr. Schmidt's

expert reports to support this theory.  There is none.  And IBM's new theory fails. ▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮ (Ex. 5 ¶ 30), much less an area for presenting applications.  Nor are ▮▮ like "'page template

objects' and 'page format objects'" of the patent (D.I. 248 at 5); ▮▮▮ do not "provide the origin,

i.e. drawing points, and dimensions of each page partition."  (Ex. 1 at 11:27-34.)

Further, the *Versa* decision IBM cites does not support IBM's assertion that "the first area

for presenting applications" need not be capable of presenting multiple applications.  There, the

court found that "in *context*, the plural can describe a universe ranging from one to some higher

number."[2]  *Versa Corp. v. Ag-Bag Int'l. Ltd.*, 392 F.3d 1325, 1330 (Fed. Cir. 2004) (emphasis

---

[2] The context there was that the parties disputed a construction of "means . . . for creating air

added).  There is no such "context" here; and IBM points to none.[3]

IBM's infringement theory—for both Filepp patents—is based on the premise that any combination of elements on a webpage can be any claimed area, application, advertisement, and/or command.  This cannot be what the Court meant in its claim construction order.  What IBM cites from that order (D.I. 248 at 8 citing to D.I. 120 at 7-8) merely indicates, at least to Groupon, that a single screen area may display more than one partition if, for example, a window partition is displayed with an advertisement or command overlapping over the area for displaying applications.  Instead, IBM draws arbitrary nested boxes around the same images, links, and text and calls them separate areas.  IBM claims that the same content is both an application and an advertisement, and commands are links within an application.  As a result, according to IBM's theory, anything can be everything and everything can be anything and it can be displayed anywhere on the screen.  IBM's reading of the claims is flawed and justifies a finding of non-infringement as a matter of law or, in the alternative, a finding that the Filepp patents are invalid because they do not provide one skilled in the art with an understanding of what is within the scope of the claims and what is not.[4]

---

channels."  Because the specification described two structure embodiments, the court found that the construction had to embody both embodiments and the disclosure made clear that the function performed by the structures had to encompass an ability to create a single channel.  *Versa Corp.*, 392 F.3d at 1329-30.

[3] As for the "second area for presenting a plurality of command functions" (D.I. 248 at 7), it is Dr. Schmidt that opined in his report that Groupon meets this limitation because ███████████████ █████████████████████████████████████████████████████████████████████ Ex. 3 ¶ 174.)  Further, in its motion, Groupon inadvertently included the wrong cite to Dr. Schmidt's opinion that ██████████████████████████████████████████████████████ ████████████████████████████████████████  The correct citation is as follows:  Shamilov Supp. Decl., Ex. 2 ¶ 129; D.I. 228, Ex. 5 ¶ 55.

[4] The Court's decision in *Priceline* denying a finding of indefiniteness does not apply here; the issue there was the term "applications" renders the claims indefinite.  *IBM Corp. v. Priceline Grp. Inc.*, 271 F. Supp. 3d 667, 678–79 (D. Del. 2017).

### B.     IBM cannot prove infringement of the '849 patent.

IBM accuses the same technology it did in *Priceline*: ██████████████████

███████████████████████████████████████████████████████████████████

Whether those parameters are followed is outside of Groupon's control and in the hands of users

and browser makers.  It is undisputed that Groupon has no control over whether the cache is ena-

bled on desktop or mobile browsers.  Similarly, as this Court held in *Priceline*, it is undisputed that

the storage of the accused objects on a user's mobile device is performed by the mobile OS.  (*Price-*

*line*, No. 1:15-cv-00137-LPS, Order on Reconsideration (D.I. 559) at 3 n.3 (Feb. 1, 2018) ("De-

fendants' cache control parameters instruct the operating system as to which object(s) to cache and

for how long; the actual caching is performed by the mobile operating systems.").)

IBM's argument, relying on cases regarding multi-use products, misses the mark.  (D.I.

248 at 10.)  The issue is not whether a product provided by Groupon has infringing and non-

infringing uses.  The issue, as in *Priceline*, is whether Groupon or a third party controls the required

storing step of the asserted method claims.  The answer is the same as in *Priceline*:  The undisputed

facts demonstrate that Groupon is not the party performing or controlling the storing step of the

'849 patent claims, and cannot be held liable for infringement.  This alone is sufficient for the

Court to enter summary judgment of non-infringement.  None of IBM's other arguments change

the result that Groupon does not infringe.

### 1.     IBM has no evidence, or expert opinion, that Groupon itself ever per-formed the allegedly infringing steps.

IBM contends that, even if Groupon does not infringe when users use its website, Groupon

████████████████ and thus directly infringes the asserted claims.  (D.I. 248 at 10-11.)  But in his

---

[5] IBM relies on language in the HTTP specification stating that "[t]he Cache-Control general-header is used to specify directives that MUST be obeyed by all caching mechanisms" but IBM omits the fact that each of these headers merely *limit* what may be cached; none of these parameters require the caching of anything.  (D.I. 248 at 13, citing D.I. 249, Ex. 19 at 108.)

report, Dr. Schmidt only generally alleges that Groupon infringes the asserted patents ███████

████████████ (*Id.* at 10.)  Dr. Schmidt does not identify ████████████████

████████████████████████████████████████████████████████████████

████████████████ There is no "evidence of infringement ████████████████ (*id.* at

11) and no expert opinion of the same to rebut.  IBM has not even identified evidence that ████

████████████████████ It is IBM's burden to prove infringement, and it cannot

meet it. [6]

### 2.      IBM's new joint infringement theory relies on an incorrect interpretation of the law.

In its opposition—for the first time in this case—IBM introduces a theory of joint infringe-

ment based on Groupon's alleged control of its users.  (D.I. 248 at 13-14.)  IBM includes no cita-

tions to its expert reports in support of this theory, because it is not there.  Every citation IBM

████████████████████████████████████████████████████████████████

(*Id.* at 13.)  Nor did IBM disclose this theory in its infringement contentions.[7]  (*See* Shamilov Supp.

Decl., Ex. 3.)  IBM has waived any such theory.  *See St. Clair Intellectual Prop. Consultants Inc.*

*v. Matsushita Elec. Indus. Co.*, No. 04–1436–LPS, 2012 WL 1015993, at *9 (D. Del. Mar. 26,

2012) (denying patentee's request to add new infringement theories after summary judgment mo-

tions filed), *aff'd*, 522 F. App'x 915 (Fed. Cir. 2013).

And, in any event, IBM's new theory fails.  *Akamai* requires that the accused infringer "[1]

condition[] participation in an activity or receipt of a benefit upon performance of a step or steps

of a patented method and [2] establish[] the manner or timing of that performance." *Akamai Techs.*

---

[6] Nor has IBM offered an opinion on what damages it is entitled for ████████████████

███

[7] At most, IBM's expert report and infringement contentions passingly reference a joint infringe-
ment theory based on ████████████████████████████████████████
████████████ (Shamilov Supp. Decl., Ex. 4 ¶ 231.)  This theory is unrelated to IBM's
newly-asserted joint infringement theory based on Groupon's users.

*v. Limelight Networks, Inc.*, 797 F.3d 1020, 1023 (Fed. Cir. 2015).  It is undisputed that ████████

██████████████████████████████████████████████ (D.I. 227 at 10-11; *see also*

Ex. 5 ¶ 59.)  Therefore, the first prong of the *Akamai* test fails here.  IBM's reliance on *Travel*

*Sentry, Inc. v. Tropp* similarly fails because in that case "the very activity in which [the customer]

seeks to participate is the very activity identified in the claim steps."  (D.I. 248 at 14; 877 F.3d

1370, 1384 (Fed. Cir. 2017).)  Not so here.  ███████████████ even if it was the activity

identified in the claimed steps, and it is not—is not the "very activity in which [Groupon custom-

ers] seek[] to participate."  Groupon's customers are interested in buying deals.  ████████████

█████████████████████ Groupon does not direct or control its customers actions under the

standard laid out by *Akamai*.  IBM's last-minute theory fails.

### 3.   Formatting advertising to be presented with multiple applications, as the claims require, cannot be done where the alleged advertising is the purported application itself.

IBM's mapping of the claims to Groupon's website also fails because Groupon's alleged

"advertising" is the purported application itself.  Contrary to IBM's arguments in opposition,

Groupon does not contend that partitions may not overlap, such as when "window partitions 'pop-

up' in front of the body partition."  (D.I. 120 at 7–8.)  IBM is not pointing to overlapping windows.

Rather, ████████████████████████████████████████████████████████████████

████████████████████████████████ (Schmidt Depo. at 150:10-23 ████████████

██████████████████████████████████████████████████████████████████████

████████; Shamilov Supp. Decl., Ex. 1 at 167:3-11.)  Displaying one thing—a single image or

piece of text—cannot meet the requirement of "display[ing] concurrently" two different things at

two different areas of the screen.  And contrary to IBM's assertion, "the identified advertising is

*[not]* distinct from the identified applications."  (D.I. 248 at 15-16.)  Its own expert explains that

██████████████████████████████████████████████████████████████████████

████████████████████████████████   (Shamilov Supp. Decl., Ex. 1 at 160:4-20.)

█████████████████████████████████████████████

In its opposition IBM now argues for the first time—contrary to its expert reports and testimony—████████████████████████████████████████████ █████████   (D.I. 248 at 16.)   According to IBM's new theory ██████████████████████ ████████



Screenshot of Groupon's Website, "Advertising" Removed.



Screenshot of Groupon's Mobile Website, "Advertising" Removed.



Screenshot of Groupon's Android Application, "Advertising" Removed.



Screenshot of Groupon's iOS Application, "Advertising" Removed.

(Ex. 7 ¶¶ 144; Shamilov Supp. Decl., Ex. 5 ¶ 146 (annotated); Shamilov Supp. Decl., Ex. 6 ¶¶ 140-

141 (annotated).)  IBM's new theory—███████████████████is too little and too late to avoid

summary judgment.

> **4.     IBM admits that its prefetching arguments rely on re-interpreting the claims.**

As in *Priceline*, ███████████████████████████████████, the Court

need not consider the "prefetching" requirement in order to grant Groupon's motion.  (*Priceline*,

271 F. Supp. 3d at 638 n.7 ("Because the Court finds that Defendants cannot be liable for infringe-

ment of the '849 patent due to lack of direction or control of the 'storing' step, the Court need not

address [the pre-fetching argument].").  But if it does, IBM advances a number of theories for pre-

fetching that, as it admits, do not even require "fetching" to the reception system or "fetching" in

advance of when content is needed.

IBM's CDN theory (D.I. 248 at 17) "reinterprets" the Court's construction to contradict

the claim language the Court was construing:  "selectively storing at a store established at the

reception system."  The fact that the Court construed the claimed "selectively storing" to include

two aspects (prefetching and storing) did not rewrite the claim to mean something other than what

it says, performing the "selective storage" *at the reception system*.  █████████████████

██████████████████████████cannot meet the claims or the Court's construction.

IBM's other theory, ████████████████████████████████████████

███████reads the "pre" out of "pre-fetching."  (*Id.* at 17-18.)  █████████████████

███████████████████████████████████████████████████████████

██████████████████████████████████████████  It was not pre-

fetched in "anticipation of *future* display" as the claims require.

Finally, IBM fails to rebut Groupon's showing that ██████████████████████

███████████████████████████████████████████████████████████

██████████████████████  (D.I. 248 at 21.)  In addition, even under IBM's own, albeit

broken, double-mapping, the claimed advertising ███████████████████████████

██████████ (*Id.*)  The claims require "configuring the advertising as objects," and then selec-

tively storing *those objects*.  (Ex. 2 at 39:58-61.)  IBM has never identified a "selectively stored"

advertising object that is a combination of ████████████████████████████  IBM

cannot show infringement of the '849 patent, and summary judgment is proper.

## II.   IBM FAILS TO SHOW THAT A REASONABLE JURY CAN FIND THAT GROUPON INFRINGES THE '601 PATENT.

### A.   IBM's mapping of the claimed "service" is fatal to its case.

One of the '601 patent's central features is the claimed "service":  "one or more of data

and programs *which the client may request*."  (Ex. 9 at 18:2-3 (emphasis added).)  In its expert

reports, IBM mapped this "service" to different Groupon components as needed to piece together

an infringement theory.  In the beginning of the claim, the "service" was ████████████████

████████████ later, it was █████████████████████████████ (*Compare,*

*e.g.*, Shamilov Supp. Decl., Ex. 7 ¶¶ 92-96 *with* D.I. 228, Ex. 6 ¶ 305.)  Now, on summary judg-

ment, IBM argues squarely that █████████████████████████ (D.I. 248 at

25-26.)  Not only is that argument belied by its expert reports and by its expert's deposition testi-

mony, but it simply doesn't work.  ██████████████████████████████

████████████████████████████████████ IBM's mapping of the claimed

"service" is flawed and IBM cannot show that Groupon infringes the '601 patent.

#### 1.   IBM's original theory mapped the "service" to different Groupon components for different parts of the claims.

IBM's original theory, as set forth in the expert reports of Dr. Schmidt, mapped the claimed

"service" in a single claim to two different things.  For the preamble, which states that the "service"

must be something requested by the client, Dr. Schmidt identified ████████████████████

████████████████████████ as the relevant requested service.  (Ex. 14 ¶¶ 34-36.)  Similarly,

when discussing "the client initiating the conversation with the server," Dr. Schmidt again pointed to ███████████████████████████ (Shamilov Supp. Decl., Ex. 7 ¶¶ 92-96.)  This mapping continued for the "detecting" step, in which Dr. Schmidt ██████████████████████████████████ ████████████████████████████████████████████████ ███████████████████████████████ (Schmidt Depo. at 360:3-17.)  But when it came to the "identifying all continuations" step, Dr. Schmidt switched footing.  The "said service" became ███████████████████████████████████ ████████████████████████████████████████████████

(Ex. 6 ¶ 305; *see* Ex. 14 ¶ 131.)  Because the claimed "service" must be the same service across all claim limitations, IBM's infringement theory fails as a matter of law.  *See Dig. Biometrics, Inc. v. Identix, Inc.*, 149 F.3d 1335, 1345 (Fed. Cir. 1998) ("[T]he same word appearing in the same claim should be interpreted consistently.").

### 2.    IBM's new theory contradicts its own expert and still does not work.

In its opposition, IBM seeks to cure this discrepancy.  It now argues that ███████████████ ███████ is the claimed "service" throughout the claimed steps.  (D.I. 248 at 25-26.)  First, this theory is nowhere in any of its expert reports.  Second, IBM's own expert testified that, for example, ████████████████████████████████████████████████ ████████████████████████████████████████████████ (Schmidt Depo. at 364:6-13.) ██████████████████████████████████████ ████████████████████████████████████████████████ (Ex. 14 ¶¶ 121, 125; Ex. 13 ("Dunham Depo.") at 157:16-158:7.) ██████████████████████████████ ███████ are not the "data and programs which the client may request."[8]

---

[8] Indeed, claim 51 confirms that the backend services cannot be the claimed service.  The claim requires that the received request for service "include[] state information," which is exchanged between the client and one or more servers.  (Ex. 9 at 23:54-55.)  IBM fails to show that this requirement is met by ██████████████████████  In fact, IBM adduces no evidence

Third, IBM cannot show infringement even under this new theory. If ███████████
is the "service" of the claims, contrary to what IBM's expert explained in his expert reports, its
output must contain continuations to identify. (Ex. 9 at 18:15-17, 23:56-57.) IBM claims that ███
███████████ qualifies. (D.I. 248 at 26-27.) It is true that ███████
███████████ (*Id.* (citing D.I. 249, Ex. 10 at 106:21-107:3).) But IBM is still
wrong for two reasons. First, ███████████████████
███████████████████████ so nothing in it can be a continu-
ation or "a new request which a client may send to a server, such as, for example, a hyperlink"
under the Court's construction. (D.I. 121 at 2; Shamilov Supp. Decl., Ex. 8 at 44:20-24.) Second,
███████████████████████████ (Dunham
Depo 92:8-12 (emphasis added).) ███████████████
███████████ (Ex. 14 ¶ 183.) ███████████
███████████████████ (*See* Ex. 14
¶ 131.) IBM's erroneous mapping of the "service," required by all the claims, is a ground for the
Court to grant Groupon's motion. But it is not the only one.

**B.      Groupon does not preserve state information in a conversation.**

IBM concedes that "Groupon's website includes some links that do not have state infor-
mation." (D.I. 248 at 31.) But the claimed methods must "preserv[e] state information in a con-



---

about ███████████████ All the requests it identifies—both those
that do and those that do not contain the purported state information—███████
███████ (*See* Shamilov Supp. Decl., Ex. 7 ¶¶ 40-43, 274-79.)
[9] And contrary to IBM's implications (D.I. 248 at 26-27), ███████████
███████ and none of IBM's evidence suggests that it does. (*Cf. id.*) ██████
███████████████████ (Dunham Depo. 92:8-12
███████████; Ex. 5 ¶ 225.)

versation." (Ex. 9 at 17:66-67, 23:50-51.)  In claim 1, that is done by providing the state infor-mation "to all services for the duration of the conversation," and in claim 51, "the continuations enable another service request and one of the continuations must be invoked to continue the con-versation." (*See id.* at 18:21-23, 23:61-64.)  A conversation is "a sequence of communications between a client and server in which the server responds to each request with a set of continuations and the client always picks the next request from the set of continuations." (D.I. 64 at 25.)  That is, the conversation continues *whenever* a client picks a continuation from the set the server pro-vides it.  Thus, every continuation sent to the client must contain embedded state information.[10] Otherwise, if an unmodified continuation were selected by the user, the conversation would con-tinue but would lose its state. (Ex. 5 ¶ 233.)

Flouting all of that, IBM seeks to limit the meaning of "conversation" to the invocation of some *subset* of returned links. (D.I. 248 at 31–32; Shamilov Supp. Decl., Ex. 1 at 432:4-433:14.) It argues that even if Groupon's system displays some continuations that do not preserve state information, it still infringes so long as "state is preserved and provided to all services . . . at least in the situation where the user proceeds through *the transaction*." (D.I. 248 at 31–32 (emphasis added).)  But the '601 patent claims require preserving state throughout a *conversation*, not a "transaction."[11]  And the user continues the conversation as long as he "picks the next request from

---

[10] *See also* Ex. 9 at 16:1-4 ("This method of the present invention advantageously preserves state information by embedding the state in all hyperlinks passed back and forth between the client 450 and server 410."); 14:16-18 ("[T]he convert1 module of the converter program modifies all the hypertext links to HTML in *h*, to preserve the state variables."); 12:5-7; 12:36-38; 14:31-33; 14:47-48; 15:35-39.

[11] IBM tells the Court that "Groupon's corporate witness agreed that Groupon ███████████████████████████████████████ (D.I. 248 at 31–32 (quoting Dunham Depo. at 166:20-167:10)).)  The very next ques-tion gives the lie to IBM's assertion. ██████████████████████████████████████

(Dunham Depo. at 167:13-16 (emphasis added).) ███████████████████ (Ex. 9 at 8:66-9:27.)

the set of continuations" returned by the server—whether or not the continuation is related to a particular transaction.  (D.I. 64 at 25; *Cf.* Schmidt Depo. at 399:16-19, 404:16-405:3.)  Because most links on any given Groupon webpage do not contain the purported state information (*see, e.g.*, Ex. 5 ¶ 238), IBM cannot show that Groupon infringes the '601 patent.[12]

### C.   Groupon's mobile applications do not infringe the '601 patent for additional reasons.

Much of the reasoning articulated above applies equally to Groupon's mobile applications. For instance, just like the website, Groupon's mobile applications also do not preserve state information in a conversation.  (*See* Ex. 5 ¶ 212 (showing clickable elements in the mobile apps that do not preserve state).)  But IBM's infringement theories additionally fail because the accused mobile applications do not perform the required "embedding" step, and they do not "communicat[e]" anything "in response to" any embedding step.

### 1.   Groupon's mobile applications do not perform the "embedding" step.

In its opposition, IBM argues that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮[13]  (D.I. 248 at 28–29.)  To show this, it submits two screenshots.  The first is of the URL generated at the servers.  (*Id.* at 29 (reproducing part of Ex. 16 ¶ 115).)  The second is purportedly of the URL as modified and attached to a displayed button.  (*Id.* (reproducing part of Shamilov Supp Decl., Ex. 9 ¶ 151).)  IBM argues, that because the URLs changed, the mobile applications must have embedded the state information.  But the latter screenshot is *not* the URL attached to any button—it is, instead, the "request that [the client] sent back to Groupon's servers."  (*Id.*)  IBM presents no evidence of

---

[12] IBM argues that if Groupon does not infringe literally, it infringes under the doctrine of equivalents.  (D.I. 248 at 33–34.)  But it provides *no* such analysis for the requirement that state be preserved throughout a conversation.  (Shamilov Supp. Decl., Ex. 7 ¶¶ 210-238.)  IBM therefore cannot show that Groupon infringes under the doctrine of equivalents either.

[13] Previously, IBM's expert had also argued that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (Schmidt Depo. at 486:21-487:23.)

the URL attached to any user interface element.  It has no evidence that the client or server applied "a process one or more times to each identified continuation to modify all identified continuations to include state information," as the Court's construction requires.  Nor does IBM point to Groupon code that performs this process.  Thus, IBM cannot show that Groupon's mobile applications perform the "embedding" step.

### 2. Groupon's mobile applications do not perform the "communicating" step.

The claims require communicating output to the client either "in response to said step of embedding" or "including . . . embedded state information."  (Ex. 9 at 18:20-21, 23:60-61.)  IBM argues that the "embedding" step takes place at the client.  (D.I. 248 at 28-29.)  How can the output with the embedded information be communicated to the client when it is already on the client?  To get around this, IBM argues that communicating the output *within* the client is the same as communicating the output *to* the client.  (*E.g.*, D.I. 248 at 29; Schmidt Depo. at 497:10-17; *see also id.* at 499:14-500:8 (acknowledging the same mapping for claim 51).)

IBM argues that the Court permitted such a reading of the claims in *Priceline*.  (D.I. 248 at 28.)  But what IBM cites is the Court's identification of a structure for a means-plus-function element of a claim (claim 40) not asserted in this case.  *IBM Corp. v. Priceline Grp. Inc.*, No. CV 15-137-LPS, 2016 WL 6405824, at *14 & n.28 (D. Del. Oct. 28, 2016).  The Court did not find in *Priceline*, or here, that communicating "to" the client can mean communicating *within* the client. *Id.*  The two are not the same and to permit otherwise ignores the definitions of common prepositions.  For this reason, IBM cannot show that Groupon's mobile applications perform the "communicating" step.  IBM cannot convince a reasonable jury to find that Groupon infringes the '601 patent.

## III.   IBM FAILS TO SHOW THAT A REASONABLE JURY CAN FIND THAT GROUPON INFRINGES THE '346 PATENT.

### A.      IBM misconstrues the language of claim 2.

To sidestep the fact that █████████████████████████████████████████

█████████████████ IBM parses "creating an alias identifier for the user at the first system" to mean

that the identifier refers to the user located at the first system, not that the creating is done at the

first system.  (D.I. 248 at 34-35.)  This claim construction argument fails as a matter of law.

First, IBM's interpretation is contrary to the plain and ordinary meaning of the claim lan-

guage.  Disputed claim 2 depends from claim 1, which recites in part:  "creating a user account for

the user at the second system."  The parties agree that this limitation means that the account is

created at the second system.  (*See, e.g.*, Shamilov Supp. Decl., Ex. 9 ¶ 123; *id.*, Ex. 11 ¶ 118.)  In

other words, there is no dispute that "at the second system" specifies where "creating a user ac-

count" is performed, and not the location of the user.  Claim 2 uses parallel language:  "creating

an alias identifier for the user at the first system."  The plain and ordinary reading of this limitation

is again that the "creating" step is performed at the first system, not that the user is at the first

system.  Moreover, "the user" in claim 2 refers to the "user" in claim 1.  Under IBM's new inter-

pretation, the same "user" would have to be "at the second system" in claim 1 and "at the first

system" in claim 2.  That cannot be.  The logical reading of the claims is as follows:  claim 1 recites

after SSO is triggered, "receiving from the first system at the second system an identifier associated

with the user," and claim 2 adds that (1) this identifier is an "alias identifier" as defined in the

specification and (2) the first system creates this alias identifier after SSO is triggered.  Properly

construed, Groupon does not infringe claim 2.

Second, IBM's new claim construction contradicts its own expert report and the '346 pa-

tent.  As IBM's expert originally opined and the parties agree, ████████████████████████

 (*See* Shamilov Supp. Decl., Ex. 9 ¶¶ 179-85; *id.*, Ex. 11 ¶¶ 170-76.)[14]  The '346 patent explains that the alias identifier is the identity and service providers' "agreed-upon means of referring to this user" that "is included in the single-sign-on response that is sent *from the identity provider to the service provider.*"  (Ex. 19 at 30:48-59 (emphasis added).)  Here, in response to a SSO request, (Ex. 20 ¶ 179, Ex. 21 ¶ 170.) (Shamilov Supp. Decl., Ex. 9 ¶¶ 180-81, 183-85; *id.*, Ex. 11 ¶¶ 171-72, 174-76.) (*See* Shamilov Supp. Decl., Ex. 12 ¶¶ 417-421 Therefore, be the "alias identifier" required by claim 2, Because Groupon's system does not perform the step of creating an alias identifier at the first system required to infringe claim 2.  As IBM has failed to show a dispute of material fact, summary judgment of non-infringement of claim 2 should be granted.

### B.  IBM raises no dispute of material fact that its infringement theory for claims 5, 8, and 10 fails as a matter of law.

IBM fails to address substantially all of Groupon's motion with respect to claims 5, 8, and 10 of the '346 patent.  As Groupon previously explained,

---

[14] Dr. Schmidt also never opined on IBM's new theory that claim 2 only requires the user be at the first system, not that the "creating" step must take place at the first system.

███████████████████████████████████████████████████████ (D.I. 227 at 32-33;

Ex. 5 ¶¶ 311-13.) IBM's opposition essentially ignores ████████████████████████

██████████████ Groupon established do not infringe claim 5 (and claims 8 and 10 that depend

on it).[16]

     Instead, IBM relies on deposition testimony from Groupon's corporate witness discussing

only ████████████████████ contending it proves the "determination" step required by the

claims. However, even assuming this testimony accurately described Groupon's system ██████

███████████ it does not negate the fact that Groupon's system does not meet the remainder of

claim 5's limitations. As Groupon previously explained, even if ██████████████████████████

████████████████████████████████████████████████████████████ is the "deter-

mination" required by the claims, Groupon's system does not then in response to that "determina-

tion" "send a request message . . . to retrieve user attribute information" to ██████ and "receive . . .

a response message that contains user attribute information," as the claims require. Rather, █████

████████████████████████ that IBM has failed to show infringes the claims. (Ex. 5

---

[15] IBM provides citations to Dr. Schmidt's report and deposition as "examples of how Groupon ████████████████████████████████████████████████████ (D.I. 248
at 36-37.) However, IBM fails to explain how any of these examples show any determination
about whether ██████████ sufficient *user attribute* information ██████
██████████ *to create a new user account.* This testimony only relates to (1) ████████████
████████████ (*see* Schmidt Depo. at 290:11-25) and (2) ████████████
████████████ (*see* D.I. 248 at 37; Shamilov Supp. Decl., Ex. 12 ¶ 428), and therefore
is irrelevant.

[16] Ultimately, it is IBM's burden to prove infringement. IBM obfuscates its failure to satisfy this
burden by faulting Groupon's citations to Dr. Schmidt's largely unresponsive deposition testi-
mony. (D.I. 248 at 36-37.) But, the testimony Groupon cited are a few of the most coherent
examples of Dr. Schmidt's and IBM's failure to identify with specificity any place in Groupon's
source code where such a determination is made. Indeed, Dr. Schmidt admits that █████████
██████████████████████████████████████████████████████████
██████████████████████████████ (Schmidt Depo. at 324:16-325:22.) He also admit-
ted ██████████████████████████████████████████████████████
██████████████████████████████████████████████████ (*Id.* at
319:2-320:1.)

¶¶ 312-13; *see also* Ex. 22 at 143:7-155:24.)  Specifically, Groupon's system ▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮ (*Id.*)

IBM has failed to establish that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮ practices the first limitation of claim 5, and presents no argument for how ▮▮▮▮

▮▮▮▮▮ practices the second limitation of claim 5.  Summary judgment should be entered.

## IV.   AS A MATTER OF LAW, IBM CANNOT PROVE AN ACTUAL REDUCTION TO PRACTICE OF THE '601 PATENT PRIOR TO THE FILING DATE.

IBM admits that it cannot prove prior conception and diligence.  Instead, it argues that ▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ demonstrate an actual reduction to practice.

That assertion fails as a matter of law.

The asserted claims are all method claims.  Proving actual reduction to practice of a method

claim requires clear and convincing evidence that each step of the method "was actually per-

formed" by the purported invention date.  *Lucent Techs., Inc. v. Gateway, Inc.*, No. 02CV2060-B

CAB, 2007 WL 1877984, at *5 (S.D. Cal. June 27, 2007); *Netscape Commc'ns Corp. v. Value-

Click, Inc.*, 704 F. Supp. 2d 544, 561–62 (E.D. Va. 2010) (reduction to practice of method claim

"necessarily requires that the *process be performed*" (emphasis added) (citing *In re Omeprazole*

*Pat. Litig.*, 536 F.3d 1361, 1373 (Fed. Cir. 2008))).  Indeed, the key requirement to proving an

actual reduction to practice is a "demonstration that the embodiment relied upon as evidence of

priority *actually worked* for its intended purpose."  *Scott v. Finney*, 34 F.3d 1058, 1061 (Fed. Cir.

1994) (emphasis added) (quoting *Newkirk v. Luljian*, 825 F.2d 1581, 1582 (Fed. Cir. 1987)).  IBM

has no such proof.  A mapping of a handful of source code files to the claim limitations by its

expert, at best, establishes a "theoretical capability," which is insufficient as a matter of law to

establish an actual reduction to practice.  *Newkirk*, 825 F.2d at 1583.  Nor can timestamps of the

source code files establish actual operation of the claimed methods.  IBM must show an *actual*

operation; it failed to do so.[17] *Fairchild Semiconductor Corp. v. Power Integrations, Inc.*, 100 F. Supp. 3d 357, 368 (D. Del. 2015).

Not only does IBM lack any evidence ███████████████████████████████ but it also cannot meet the "stringent standard" of proof required to *corroborate* its alleged reduction to practice. *Singh v. Brake*, 222 F.3d 1362, 1370 (Fed. Cir. 2000). The standard for corroborating a reduction to practice is even higher than that required for conception. *Id.* Courts have repeatedly held that an inventor's source code files—which are "akin to an unwitnessed inventor's note-book"—are insufficient to corroborate conception, much less a reduction to practice. *Kenexa Brassring, Inc. v. Taleo Corp.* 751 F. Supp. 2d 735, 760-761 (D. Del. 2010); *Medichem, S.A. v. Rolabo, S.L.*, 437 F.3d 1157, 1170 (Fed. Cir. 2006) (unwitnessed notebook insufficient to support reduction to practice).

No case stands for the proposition that source code timestamps coupled with an expert's testimony mapping elements of method claims to those source code files establish the required actual operation and satisfy the stringent corroboration requirement. And IBM cites none. Its reliance on *Netscape* is misplaced for several reasons. There, the source code files were not written solely by the inventor, they were coupled with the "documents produced by Soverain in the course of this litigation" and a corporate affidavit authenticating those documents, and an expert specifi-cally opining that the files "were put into practice." *Netscape Commc'ns Corp. v. ValueClick, Inc.*,

---

[17] Nor can it. The inventor himself testified that ████████████████████████████████████████████ ████████████████████████████ none of which is in evidence in this case. (Shamilov Supp. Decl., Ex. 13 at 42:5-22, 88:20-89:4; 94:16-19, 123:6-8.) And although he testified that ████████████████████—that IBM has never produced in this case—███████████████, he did not testify that ███████████████████ ████████████████████████████████████████████████████████████ (Ex. 29 at 50:13-18, 51:11-19.)  Regardless, no evidence of ██████████████ is in the case and his testi-mony is insufficient to corroborate ██████████████

707 F. Supp. 2d 640, 652 (E.D. Va. 2010).  Here, we have no such source code, documents, affi-davit, or expert testimony.  IBM's reliance on *Kenexa* also fails.  The Court there did not find that source code timestamps created an issue of material fact; it found timestamped source code files coupled with testimony from multiple non-inventor witnesses as creating a triable issue of fact for some of the prior art systems and finding no such triable issue for the systems for which only timestamped source code files were produced.  *Kenexa Brassring*, 751 F. Supp. 2d at 759–761.

Finally, the Court should deny IBM's belated request for leave to submit additional evi-dence.  (D.I. 248 at 37 n.22.)  Fact discovery ended months ago.  Groupon requested information about prior invention at the start of discovery.  (*See* Shamilov Supp. Decl., Ex. 14 at 7 ("[D]escribe in detail the circumstances of conception and reduction to practice of its subject matter . . . . [in-cluding] the complete circumstances surrounding such conception and reduction to practice . . . [and] an identification of the specific document(s) that corroborate the conception and reduction to practice of each element of the claim.").)  Groupon identified multiple intervening prior art references in its invalidity contentions on February 22, 2017 long before the close of discovery. [18] (*See id.*, Ex. 15 at 19-20.)  To the extent IBM needed to pursue additional discovery after *Spinning the Web* was produced, IBM already had that opportunity, but did not take it.  (D.I. 197 at 1 ("IBM is granted leave to pursue additional discovery relevant to (a) the 'Spinning the Web' reference . . . up to and including December 6, 2017").)  IBM had a full opportunity to investigate the facts sur-rounding its own purported prior invention during this case and was required to provide them during **DISCOVERY**; it is too late to do so now.

---

[18] Groupon's preliminary invalidity contentions disclosed multiple intervening prior art references, including U.S. Patent No. 6,016,484 (Williams), filed on April 26, 1996; U.S. Patent No. 5,835,712 (DuFresne), filed on May 3, 1996; and U.S. Patent No. 5,768,581 (Cochran), filed on May 7, 1996. (*See id.*, Ex. 6 at 19; D.I. 228, Ex. 26 (U.S. Patent No. 6,016,484).)

## V.    CONCLUSION

IBM has failed to meet its burden of establishing that Groupon's system infringes the asserted patents for at least the foregoing reasons.  IBM has also failed to prove prior conception, diligence, and reduction to practice prior to the filing date of the '601 patent.  Accordingly, Groupon respectfully requests that the Court grant its motion for summary judgment of non-infringement and enter judgment that the '601 patent is not entitled to a priority date earlier than June 7, 1996.


ASHBY & GEDDES

/s/ *Andrew C. Mayo*

_____

John G. Day (#2403)
Andrew C. Mayo (#5207)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE  19899
(302) 654-1888
jday@ashbygeddes.com
amayo@ashbygeddes.com

*Of Counsel*:

J. David Hadden
Saina S. Shamilov
Phillip J. Haack
Sapna Mehta
FENWICK & WEST LLP
Silicon Valley Center
801 California Street
Mountain View, CA  94041
(650) 988-8500

*Attorneys for Defendant
Groupon, Inc.*

Dated:    March 28, 2018