IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

INTERNATIONAL BUSINESS  :
MACHINES CORPORATION,  :
　　　　　　　　　　　　　:
　　　　Plaintiff,　　　　　　:
　　　　　　　　　　　　　:
v.　　　　　　　　　　　　:　　C.A. No. 16-122-LPS-CJB
　　　　　　　　　　　　　:
GROUPON, INC.,　　　　　　:
　　　　　　　　　　　　　:
　　　　Defendant.　　　　　:

David E. Moore, Bindu A. Palapura, Stephanie E. O'Byrne, POTTER ANDERSON & CORROON LLP, Wilmington, DE

John M. Desmarais, Karim Z. Oussayef, Laurie N. Stempler, Robert C. Harrits, Brian D. Matty, Michael Matulewicz-Crowley, DESMARAIS LLP, New York, NY

　　Attorneys for Plaintiff International Business Machines Corporation.


John G. Day, Andrew C. Mayo, ASHBY & GEDDES, Wilmington, DE

J. David Hadden, Saina S. Shamilov, Phillip J. Haack, Sapna Mehta, FENWICK & WEST LLP, Mountain View, CA

　　Attorneys for Defendant Groupon, Inc.

**MEMORANDUM OPINION**

June 8, 2018
Wilmington, Delaware

**STARK, U.S. District Judge:**

Plaintiff International Business Machines Corporation ("IBM") filed suit against Defendant Groupon, Inc. ("Groupon") on March 2, 2016, alleging infringement of U.S. Patent Nos. 5,796,967; 7,072,849; 5,961,601; and 7,631,346. A jury trial is scheduled to begin on July 16, 2018.

Presently before the Court are the parties' summary judgment and *Daubert* motions. (D.I. 208, 211, 214, 217, 219, 222, 226) Briefing on the pending motions was completed on March 28, 2018. (*See, e.g.,* D.I. 218, 223, 243, 244, 269, 275) The Court heard oral argument on April 24, 2018. (*See* D.I. 294 ("Tr.")) This Opinion solely addresses the parties' *Daubert* motions. (D.I. 217, 222) For the reasons stated below, the Court will deny both parties' *Daubert* motions.

**I.     LEGAL STANDARDS**

In *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993), the Supreme Court explained that Federal Rule of Evidence 702 creates "a gatekeeping role for the [trial] judge" in order to "ensur[e] that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." The rule requires that expert testimony "help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a). There are three distinct requirements for admissible expert testimony: (1) the expert must be qualified; (2) the opinion must be reliable; and (3) the expert's opinion must relate to the facts. *See generally Elcock v. Kmart Corp.*, 233 F.3d 734, 741-46 (3d Cir. 2000). Hence, expert testimony is admissible only if "the testimony is based on sufficient facts or data," "the testimony is the product of reliable principles and methods," and "the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702(b)-(d). Rule 702 embodies a "liberal policy of

1

admissibility." *Pineda v. Ford Motor Co.*, 520 F.3d 237, 243 (3d Cir. 2008). Motions to exclude evidence are committed to the Court's discretion. *See In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 749 (3d Cir. 1994).

## III. DISCUSSION

### A. Groupon's Motion to Exclude Testimony of Dr. Jerry Hausman

Groupon requests that the Court exclude the opinions of IBM's damages expert, Dr. Jerry Hausman, because his opinions are not based on sufficient data or reliable principles. According to Groupon, Dr. Hausman's opinion is "flawed in three principle ways:" (1) he bases his calculations on Groupon's total revenue from sales of goods and services when such revenue is driven through demand for the actual goods and services, not any alleged infringing technology, and such goods and services are not covered by the patents-in-suit; (2) he apportions his calculations by arbitrary "usage percentages;" and (3) he applies an adjusted EBITDA (earnings before interest, taxes, depreciation, and amortization) margin, resulting in a damages claim that "has no basis in economics or reality." (D.I. 218 at 1-2)

IBM responds that Dr. Hausman, in forming his opinion, "relied on Groupon-produced data, testimony from Groupon's witnesses, and documents Groupon provides to the SEC and its investors." (D.I. 244 at 4) Moreover, IBM insists that Dr. Hausman's calculations are based on Groupon's profits, not revenues, from the accused instrumentalities, and that such profits were calculated from data produced by Groupon. (*Id.* at 4 & n.7) According to IBM, Groupon's disagreements with how Dr. Hausman came to his conclusions "are grounds for cross-examination, not exclusion." (*Id.*)

The Court agrees with IBM. First, simply because Dr. Hausman may have employed

2

different methods as a damages expert in prior cases does not establish that his method here is unreliable and should be excluded. Moreover, Dr. Hausman used "accused" revenues rather than "total" revenues (*see* D.I. 244 at 1-2 & n.1; D.I. 218 at 3), and based his opinion on data **Groupon** produced (*see* D.I. 246-1 Ex. 4 at 10-12; *id.* Ex. 5 at 120-23, 179-81). In his report, Dr. Hausman explained how he calculated such revenue – "[f]or transactions where Groupon acts as a marketing agent, revenue is equal to 'the purchase price received from the customer less an agreed upon portion of the purchase price paid to the featured merchant,' and for transactions where Groupon sells merchandise directly to customers, revenue is equal to 'the purchase price received from the customer.'" (*Id.* Ex. 1 ¶ 70; *see also id.* Ex. 1 Exhibit 10) Dr. Hausman then based his reasonable royalty calculations on "revenue excluding other gross billings, which excludes revenue from sources such as advertising and commissions." (*Id.* Ex. 1 ¶ 70; *see also id.* Ex. 1 Exhibits 4, 4.1, 10)

While Groupon's revenue is based on sales of goods and services unrelated to the patents-in-suit, the Court does not find Dr. Hausman's theory – that such transactions are only possible when the accused instrumentalities are functioning properly – to warrant exclusion. (*See id.* at 5) "[E]stimating a reasonable royalty is not an exact science" and "there may be more than one reliable method for estimating a reasonable royalty." *Summit 6, LLC v. Samsung Elecs. Co.*, 802 F.3d 1283, 1296 (Fed. Cir. 2015). Dr. Hausman provides adequate support for each of his methods and reasonably ties his calculations to the facts. While Groupon attacks Dr. Hausman's apportionment by use percentages, Groupon recognizes that those numbers come from IBM's expert, Dr. Schmidt – whose opinions Groupon has not challenged. (*See* Tr. at 115; *see also* D.I. 244 at 10) Groupon's concerns with the various metrics Dr. Hausman employs – e.g., use of

3

adjusted EBITDA and arbitrary split of profits – may be addressed on cross-examination.

**B.   IBM's Motion to Exclude Testimony of
Mr. James Malackowski and Dr. Jon Weissman**

IBM seeks to exclude the testimony of Groupon's damages and technical experts, Mr. James Malackowski and Dr. Jon Weissman, respectively, regarding non-infringing alternatives, contending their opinions are not supported by sufficient facts. (D.I. 223 at 1) Specifically, IBM asserts that neither expert demonstrated that any of the six alleged non-infringing alternatives were on the market during the period of infringement, and neither did either expert demonstrate that such alternatives were available and acceptable. (*Id.* at 5-7) IBM additionally contends that Mr. Malackowski did not reliably apply his "Cost Approach" because he failed to analyze the costs or risks of using the proposed alternatives. (*Id.* at 8)

Groupon responds that Dr. Weissman explained that each non-infringing alternative was well-known before Groupon launched its system. (D.I. 243 at 6-7; *see id.* at 7 ("Groupon *already employs* it.")) As the technology was already in existence and well-known, Groupon contends that "Dr. Weissman – with decades of experience in distributed systems – is qualified to opine on the technologies at issue" and "did not need to test these basic and routine web technologies to know that they would work." (*Id.*) Similarly, Groupon contends that Mr. Malackowski accounted for the costs and risks of implementing different technology in his cost approach and was not required to detail a specific accounting in finding such costs and risks to be minimal. (*Id.* at 9) (citing *Carnegie Mellon Univ.*, 2012 WL 3686736, at *5 (W.D. Penn. Aug. 24, 2012))

The Court agrees with Groupon. Dr. Weissman explained the various non-infringing alternatives in detail, specifying how Groupon could implement each alternative – and, hence,

4

how they were available and acceptable. (*See* D.I. 245 Ex. 1 at ¶¶ 339, 341-43, 353-54, 360-63) Moreover, IBM does not dispute that Mr. Malackowski is entitled to rely on Dr. Weissman's opinion (as long as Dr. Weissman's opinion is not stricken). (*See* D.I. 269 at 5) IBM's concerns go to the weight of Mr. Malackowski's and Dr. Weissman's opinions and may be addressed on cross-examination.

## IV. CONCLUSION

For the reasons stated above, the Court will deny the parties' motions. An appropriate Order follows.