**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| INTERNATIONAL BUSINESS MACHINES CORPORATION, | ) ) ) | |
| Plaintiff, | ) ) | C.A No. 16-122-LPS |
| v. | ) ) | **JURY TRIAL DEMANDED** |
| GROUPON, INC. | ) ) | <u>**PUBLIC VERSION**</u> |
| Defendant. | ) ) | |

<u>**PROPOSED FINAL PRETRIAL ORDER**</u>

David E. Moore (#3983)
Bindu A. Palapura (#5370)
Stephanie E. O'Byrne (#4446)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801
Tel: (302) 984-6000
dmoore@potteranderson.com
bpalapura@potteranderson.com

OF COUNSEL:

John M. Desmarais
Karim Z. Oussayef
Laurie Stempler
Kevin K. McNish
Robert C. Harrits
Brian Matty
Michael Matulewicz-Crowley
DESMARAIS LLP
230 Park Avenue
New York, NY 10169
Tel: (212) 351-3400

*Attorneys for Plaintiff
International Business Machines Corporation*

John G. Day (#2403)
Andrew C. Mayo (#5207)
ASHBY & GEDDES
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888
jday@ashby-geddes.com
amayo@ashby-geddes.com

*Of counsel:*

J. David Hadden
Saina S. Shamilov
Phillip J. Haack
Sapna Mehta
Jessica M. Kaempf
Athul Acharya
Jessica Benzler
FENWICK & WEST LLP
Silicon Valley Center
801 California Street
Mountain View, CA 94041
(650) 988-8500

*Attorneys for Defendant*
GROUPON, INC.

Dated: June 11, 2018
5839172

On June 18, 2018, the Court will hold a pretrial conference pursuant to Fed. R. Civ. P. 16 in C.A. No. 16-122-LPS.  Trial will begin July 16, 2018.  The parties submit for the Court's approval this proposed Pretrial Order governing the trial pursuant to District of Delaware Local Rule 16.3 and the Court's Scheduling Orders.  (D.I. 17, 201).

This matter comes before the Court at a final pretrial conference held pursuant to Rule 16 of the Federal Rules of Civil Procedure.

**Plaintiff Counsel:**  Plaintiff International Business Machines ("IBM") is represented by:

John M. Desmarais (pro hac vice)
Karim Z. Oussayef (pro hac vice)
Laurie Stempler (pro hac vice)
Kevin K. McNish (pro hac vice)
Robert C. Harrits (pro hac vice)
Brian Matty (pro hac vice)
Michael Matulewicz-Crowley (pro hac vice)
DESMARAIS LLP
230 Park Avenue
New York, NY 10169
Tel: (212) 351-3400

David E. Moore (#3983)
Bindu A. Palapura (#5370)
Stephanie E. O'Byrne (#4446)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801
Tel: (302) 984-6000
dmoore@potteranderson.com
bpalapura@potteranderson.com
sobyrne@potteranderson.com

**Groupon's Counsel:**  Defendant Groupon, Inc. ("Groupon") is represented by:

J. David Hadden (pro hac vice)
Saina S. Shamilov (pro hac vice)
Phillip J. Haack (pro hac vice)
Sapna Mehta (pro hac vice)
Jessica M. Kaempf (pro hac vice)
Athul Acharya (pro hac vice)

Jessica Benzler (pro hac vice)
FENWICK & WEST LLP
Silicon Valley Center
801 California Street
Mountain View, CA  94041
Tel: (650) 988-8500

John G. Day (#2403)
Andrew C. Mayo (#5207)
ASHBY & GEDDES
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE  19899
Tel: (302) 654-1888
jday@ashbygeddes.com
amayo@ashbygeddes.com

## I.   NATURE OF THE CASE

This is a patent case.  The plaintiff in this case is International Business Machines Corporation ("IBM").  The defendant is Groupon, Inc. ("Groupon").

IBM alleges that Groupon infringes four patents:  U.S. Patent No. 5,796,967 (that may be referred to as the "'967 patent"), U.S. Patent No. 7,072,849 (or the "'849 patent"), U.S. Patent No. 5,961,601 (or the "'601 patent"), and U.S. Patent No. 7,631,346 (or the "'346 patent") (collectively, the "patents-in-suit").  The '967 patent and the '849 patent are related.   The '967 patent is titled "Method for Presenting Applications in an Interactive Service," and the '849 patent is titled "Method for Presenting Advertising in an Interactive Service."  Both patents have the effective filing date of July 15, 1988.  [**Groupon's Proposal**: The '967 patent expired on August 15, 2015].[1]  The '601 patent is titled "Preserving State Information in a Continuing Conversation

---

[1] **Groupon's Position:**  It is undisputed that the '967 patent expired on August 15, 2015.  To the extent the Nature of the Case is read to the jury as part of preliminary jury instructions, per the Court's model order, there is no legitimate objection that IBM can raise against inclusion of this sentence especially when the statement informs the jurors when the patent was filed.

between a Client and Server Networked Via a Stateless Protocol" and it was filed on June 7, 1996.

[**Groupon's Proposal**: The '601 patent expired on June 7, 2016.][2]  The fourth patent, the '346 patent, is titled "Method and System for a Runtime User Account Creation Operation within a Single-Sign-On Process in a Federated Computing Environment" and it was filed on April 1, 2005. IBM accuses Groupon's website of infringing the '967 patent, and it accuses Groupon's website and mobile applications of infringing the other three patents.

IBM further alleges that Groupon infringes the patents-in-suit directly **[IBM Proposal**: either alone or jointly with third parties,][3] and indirectly and that Groupon's infringement has been and continues to be willful.  IBM further alleges that, in the alternative, Groupon's website infringes the '849 patent under the doctrine of equivalents and Groupon's website and mobile applications infringe the '601 patent under the doctrine of equivalents.[4]

---

[2] **Groupon's Position:**  It is undisputed that the '601 patent expired on June 7, 2016.  Again, to the extent the Nature of the Case is read to the jury as part of preliminary jury instructions, there is no legitimate objection that IBM can raise against inclusion of this sentence.

[3] **IBM's Position:**  IBM alleged joint infringement in its infringement contentions.  IBM's Final Infringement Contentions at 4-5.   IBM's expert offered opinions on the issue.  D.I. 249, Ex. 1 (Schmidt Opening Report) ¶¶ 231 ██████████████████████████████████████████████████ ██████████████████████████████████████████████████ ███████████████████████; *see also id.* at 110-120; D.I. 249, Ex. 2 (Schmidt Opening Report Exhibit V.A) ¶ 98, D.I. 249, Ex. 3 (Schmidt Opening Report Exhibit VI.A) ¶¶ 202, 223. There should therefore be no objection to this allegation.  **Groupon's Position:**  Groupon objects to IBM including the issue of whether Groupon jointly infringes.  As explained in Groupon's Reply in Support of its Motion for Summary Judgment, the joint infringement theory that IBM is currently asserting (and that it articulated in opposition to Groupon's motion for summary judgment of non-infringement) was not disclosed in IBM's infringement contentions or any of its expert reports. *See* D.I. 291 (Groupon's MSJ Reply) at 5.

[4] **Groupon's Position:**  In the event the Court grants Groupon's motion *in limine* number 3, Groupon objects to IBM's allegation that Groupon infringes the '601 patent under the doctrine of equivalents being read to prospective jurors.

IBM seeks damages to compensate it for Groupon's alleged acts of infringement in a form of a reasonable royalty.  **[IBM's Proposal**: IBM seeks both pre-verdict and post-verdict damages up to the time of judgment, as well as injunctive relief against future acts of infringement by Groupon under 35 U.S.C. § 283.  In the alternative, IBM contends that any denial of a permanent injunction should be conditioned on payment of a reasonable royalty for infringement.[5]  IBM also seeks prejudgment and post judgment interest and costs, pursuant to 35 U.S.C. § 284 and Fed. R. Civ. P. 54, attorneys' fees pursuant to 35 U.S.C. § 285, and enhanced damages against Groupon.][6]

Groupon denies that it infringes any of the four asserted patents in any manner either directly or indirectly, literally or under the doctrine of equivalents.  Groupon further maintains that none of its conduct can support a finding of willful infringement.  Groupon alleges that all asserted claims of each of the four patents are invalid because none is directed to an invention that was new

---

[5] **Groupon's Position**: Groupon objects to IBM's inclusion of post-verdict "damages" as IBM did not request such relief in its complaint (D.I. 1 at 16).  IBM instead requested "[a]n award of damages adequate to compensate IBM for the patent infringement that *has* occurred," and "[a]n injunction against further infringement." *(Id.)*  And contrary to its contention, its catch-all request for "damages permitted by" Section 284 does not encompass a post-verdict royalty.  Nor did its damages expert provide any opinion regarding post-verdict damages in his reports.  Moreover, while Groupon disputes that IBM is entitled to any post-verdict monetary relief, even if it were, a post-verdict royalty is not compensatory damages and thus should not be before the jury. *See* 35 U.S.C. § 283; *Paice LLC v. Toyota Motor Corp.*, 504 F.3d 1293, 1314-16 (Fed. Cir. 2007).  **IBM's Position**: IBM's complaint requested "[a]n award of damages adequate to compensate IBM for the patent infringement that has occurred," [a]n award of all other damages permitted by 35 U.S.C. § 284," and any "other relief as this Court deems just and proper," each of which encompasses post-verdict damages.  D.I. 1 at 16.  Consistent with that request and with governing law, Dr. Hausman calculated ███████ D.I. 246, Ex. 1 (Hausman Opening Report) ¶ 11.  Dr. Hausman also noted that ███████ *Id.* ¶ 13.
[6] In the event that the "Nature of the Case" is read to the jury, as possible under the Court's model order, this bracketed portion of the text should be omitted.

or non-obvious at the time they were made.  Groupon also contends that the two related patents (the '967 and '849 patents) are invalid because they are indefinite.[7]  Finally, Groupon contends that IBM's infringement claims for the '346 patent are barred because IBM granted patent licenses to ████████████████ and authorized in those licenses the conduct it now alleges is infringing. For all of these reasons, Groupon maintains that IBM is not entitled to any of the monetary damages [or other relief it requests.  Specifically, Groupon contends that IBM is not entitled to injunctive relief or a payment of a reasonably royalty as an alternative.  Groupon also contends that IBM is not entitled to prejudgment and post judgment interest and costs, attorneys' fees, or enhanced damages.  Groupon seeks it attorneys' fees pursuant to 35 U.S.C. § 285 and costs.][8]

## II.      JURISDICTION

The jurisdiction of the Court is invoked under 28 U.S.C. §§ 1331 and 1338(a).  Jurisdiction is not disputed.

## III.     FACTS

### A.      Uncontested Facts[9]

1.      IBM is a New York corporation, with its principal place of business at 1 New Orchard Road, Armonk, New York 10504.

2.      Groupon is a Delaware corporation with a principle place of business at 600 West Chicago Avenue, Suite 400, Chicago, Illinois 60654.

---

[7] **Groupon's Position:**  Groupon also contends that the two related patents (the '967 and '849 patents) are invalid because they are directed to unpatentable subject matter under 35 U.S.C. § 101. Groupon does not intend to try this issue before the jury, but preserves this issue for appeal. *See* D.I. 199.

[8] In the event that the "Nature of the Case" is read to the jury, this portion of the text should be omitted.

[9] This list may be supplemented once the Court resolves the parties' outstanding motions and disputes.

3.      United States Patent Number 5,769,967 ("the '967 patent"), entitled "Method for Presenting Applications in an Interactive Service," was issued August 18, 1998, to named inventors Robert Filepp, Kenneth H. Appleman, Allan M. Wolf, James A. Galambos, and Sam Meo.

4.      The effective filing date of the '967 patent is July 15, 1988.

5.      The '967 patent expired on August 18, 2015.

6.      IBM is the owner of all substantial rights, title, and interest in and to the '967 patent.

7.      United States Patent Number 7,072,849 ("the '849 patent"), entitled "Method for Presenting Advertising In An Interactive Service," was issued July 4, 2006, to named inventors Robert Filepp, Alexander W. Bidwell, Francis C. Young, Allan M. Wolf, Duane Tiemann, Mel Bellar, Robert D. Cohen, James A. Galambos, Kenneth H. Appleman, and Sam Meo.

8.      IBM is the owner of all substantial rights, title, and interest in and to the '849 patent.

9.      The effective filing date of the '849 patent is July 15, 1988.

10.     United States Patent Number 5,961,601 ("the '601 patent), entitled "Preserving State Information in a Continuing Conversation Between a Client and Server Networked via a Stateless Protocol," was issued October 5, 1999, to named inventor Arun K. Iyengar.

11.     IBM is the owner of all substantial rights, title, and interest in and to the '601 patent.

12.     The effective filing date of the '601 patent is June 7, 1996.

13.     The '601 patent expired on June 7, 2016.

14.     United States Patent Number 7,631,346 ("the '346 patent), entitled "Method and System for a Runtime User Account Creation Operation within a Single-Sign-On Process in a Federated Computing Environment," was issued December 8, 2009, to named inventors Heather Maria Hinton, Ivan Matthew Millman, Venkat Raghavan, and Shane Bradley Weeden.

15.     IBM is the owner of all substantial rights, title, and interest in and to the '346 patent.

16.     The effective filing date of the '346 patent is April 1, 2005.

17.     IBM filed this lawsuit on March 2, 2016.

18.     IBM accuses Groupon's website of infringing the patents-in-suit.  IBM also accuses Groupon's Android and iOS mobile applications of infringing the '849, '601 and '346 patents.

19.     Groupon's website is available at www.groupon.com.

20.     Groupon's mobile applications are available for download to Android and iOS phones.

21.     ███████████████████████████████████████████████████████
██████████████████████████.

22.     HTML stands for Hypertext Markup Language.

23.     HTTP stands for the Hypertext Transfer Protocol.

24.     U.S. Patent No. 4,575,579, "Editing Arrangement for Videotex System with Public Terminals," issued to Gerhard J. Simon and Gerhard Schneider from a patent application filed on November 29, 1983.

25.     U.S. Patent No. 6,016,484, "System, Method and Article of Manufacture for Network Electronic Payment Instrument and Certification of Payment and Credit Collection

Utilizing a Payment," issued to Humphrey Williams et al. from a patent application filed on April 26, 1996.

      26.    U.S. Patent No. 7,680,819, "Managing Digital Identity Information," issued to Joseph Andrew Mellmer et al. from a patent application filed on September 27, 2000.

      27.    U.S. Patent No. 7,137,006, "Method and System for Single Sign-on User Access to Multiple Web Servers," issued to Michael L. Grandcolas from a patent application filed on September 22, 2000.

    **B.**    **Contested Facts**

IBM's Statement of Contested Facts is attached as **Exhibit A.**

Groupon's Statement of Contested Facts is attached as **Exhibit B.**

Should the Court find that any of the issues of law listed in Exhibits C or D of the Joint Pretrial Order should be considered as issues of fact, they shall be incorporated as issues in Exhibit A or B, respectively.

**IV.**    **ISSUES OF LAW**

IBM's Statement of Issues of Law is attached as **Exhibit C.**

Groupon's Statement of Issues of Law is attached as **Exhibit D.**

Should the Court find that any issues identified in Exhibits A or B should be considered as an issue of law, they shall be incorporated as issues in Exhibit C or D, respectively.

**V.**    **WITNESSES**

Any witness not listed will be precluded from testifying, absent good cause shown.  In the absence of an alternative agreement between the parties, fact witnesses will be sequestered unless a fact witness is also the party's corporate representative at trial.  Also, unless the parties reach an alternative agreement, the order of the presentation of evidence will follow the burden of proof. The order of proof is:

Phase I:       Plaintiff case-in-chief on infringement and damages.

Phase II:      Defendant response on infringement and damages, and case-in-chief on invalidity

and other affirmative defenses.

Phase III:     Plaintiff response on invalidity and other affirmative defenses.

**A.     List of Witnesses the Plaintiff Expects to Call**

Plaintiff's witness list is attached as **Exhibit E.**

**B.     List of Witnesses the Defendant Expects to Call**

Groupon's witness list is attached as **Exhibit F.**

**C.     List of Witnesses Third Parties Expect to Call**

There are no third parties to this action.

**D.     Testimony By Deposition**

IBM's deposition designations are attached as **Exhibit G.**

Groupon's deposition designations are attached as **Exhibit H.**

This pretrial order contains the maximum universe of deposition designations, counter-designations, and objections to admission of deposition testimony; none of the foregoing shall be supplemented without approval of all parties or leave of the Court, on good cause shown.

For any witnesses whose testimony the parties intend to present at trial by deposition, the parties shall identify a list of deposition designations to be played or read to the jury and the proposed exhibits used in the designations by 7:00 p.m. three (3) days before the designations are to be played or read to the jury.  Any objections and counter-designations shall be provided by 10:00 a.m. the following morning.  The parties shall meet and confer and if there are objections that remain to be resolved, the party calling the witness by deposition shall, no later than two (2) calendar days before the witness is to be called at trial, submit, on behalf of all parties:  (i) a copy of the entire deposition testimony of the witness at issue, clearly highlighting the designations,

counter-designations, and pending objections; and (ii) a cover letter clearly identifying the pending objections as well as a brief indication (i.e., no more than one sentence per objection) of the basis for the objection and the offering party's response to it.  The party introducing the deposition testimony shall be responsible for editing the deposition video to include the testimony and any counter-designation testimony, minus any attorney objections, and provide a final version of the video to the other party by 7:00 p.m. the day before it is to be shown to the jury or state in writing that the deposition testimony will be instead read into the record.  Failure to comply with these procedures, absent an agreement by the parties and approval by the Court, will result in waiver of the use of the deposition testimony or waiver of objection to the use of the deposition testimony.

All irrelevant and redundant material, including colloquy between counsel and objections, will be eliminated when the deposition is read or viewed at trial.

When the witness is called to testify by deposition at trial, the party calling the witness shall provide the Court with two copies of the transcript of the designations and counter-designations that will be read or played.  The parties agree to use deposition videos to the extent such videos exist for the depositions the parties wish to read or play at trial.  The parties will be charged for all time that elapses from the time the witness is called until the next witness is called, according to the proportions to be provided by the parties.

If a party decides to play less than all of the designated testimony for a witness at trial, or to include less than all of its counter-designations or counter-counter-designations, the opposing parties may use such dropped testimony as counter-designations or counter-counter designations to the extent the usage of such testimony in such manner is otherwise consistent with Fed. R. Evid. 106, Fed. R. Civ. P. 32, and any other applicable Federal Rule of Evidence or Federal Rule of Civil Procedure.

10

[**Groupon Proposes:** A fact witness to be presented for live testimony is to take the stand once, and only as a non-adverse witness. To the extent the other party has identified the witness on its witness list, the scope of cross-examination of that witness shall not be limited by the scope of the witness's direct testimony, and the witness can be examined on any issue relevant to the issues being tried to the jury, regardless of the order of the presentation of evidence.][10]

### E.     Impeachment with Prior Inconsistent Testimony

Pursuant to Fed. R. Evid. 613, deposition and other testimony or statements not specifically identified on a party's deposition designation list or exhibit list may be used at trial for the purpose of impeachment, if otherwise competent for such purpose. The Court will rule at trial on any objections based on lack of completeness and/or lack of inconsistency.

### F.     Objections to Expert Testimony

The parties have submitted motions *in limine* that may affect the scope of expert testimony. The Court will rule on any objections to expert testimony as beyond the scope of expert disclosures at trial, taking time from the parties' trial presentation to argue and decide such objections.

---

[10] **IBM's Position:** IBM objects to Groupon's proposal, which is not part of the Court's standard pretrial order. There is no need to modify standard practice and Groupon's language is likely to cause confusion and future disputes. Groupon's reference to overlapping witnesses concerns "may call" witness. **Groupon's Position**: Twelve fact witnesses on the parties' respective witness lists overlap. All but one of them will be traveling from out-of-state if they are called to testify at trial. Accordingly, to respect their time, their work and family obligations, and to streamline trial presentations, Groupon proposes that those fact witnesses identified as a witness by *both* parties only take the stand once and not be required to be on standby during the entire trial. This is a common practice. IBM has not identified what confusion and future disputes the proposed language may cause. Groupon knows of at least two of its "will call" witnesses that have scheduling constraints due to personal obligations, and offers this proposal as a means to reduce the inconveniences of trial to both parties' fact witnesses.

## VI.    EXHIBITS

### A.    Exhibits

IBM's exhibit list is attached as **Exhibit I.**

Groupon's exhibit list is attached **Exhibit J**.

This pretrial order contains the maximum universe of exhibits to be used in any party's case-in-chief, as well as all objections to the admission of such exhibits, neither of which shall be supplemented without approval of all parties or leave of the Court, on good cause shown. Exhibits not listed will not be admitted unless good cause is shown.

No exhibit will be admitted unless offered into evidence through a witness, who must at least be shown the exhibit. At some point before the completion of the witness's testimony, any party that has used an exhibit with the witness and wishes that exhibit to be admitted into evidence must formally move the exhibit into evidence by exhibit number. Exhibits may not be published, displayed, or otherwise shown to the jury until after they have been admitted into evidence. Once admitted, counsel may publish exhibits to the jury without requesting to do so. A party will provide exhibits to be used in connection with direct examination by 7:00 p.m one (1) day before their intended use, and objections will be provided no later than 9:00 p.m. the night before their intended use. The parties are to meet and confer to resolve any objections at 10:00 p.m. the night before the exhibits' intended use. If good faith efforts to resolve the objections fail, the party objecting to the exhibits shall bring its objections to the Court's attention prior to the witness being called to the witness stand. Failure to comply with these procedures, absent an agreement by the parties and approval by the Court, will result in waiver of the use of an exhibit or waiver of objection to the exhibit.

Exhibits not objected to will be received into evidence by the operation of the Final Pretrial Order without the need for additional foundation testimony, provided they are shown to a witness.

The parties agree that any description of a document on an exhibit list is provided for convenience only and shall not be used as an admission or otherwise as evidence regarding the listed document or any other listed document.

**[Groupon Proposes:** A party may replace poor print or digital quality copies of exhibits with improved or higher print or digital quality copies.

**Groupon Further Proposes:** Any party may use an exhibit that is listed on the other party's exhibit list, to the same effect as though it were on its own exhibit list, subject to all evidentiary objections. Any exhibit, once admitted at trial, may be used equally by either party for any proper purpose in accordance with the Federal Rules of Evidence. The listing of a document on a party's exhibit list is not an admission that such document is relevant or admissible when offered by the opposing party for the purpose that the opposing party wishes to enter the document into evidence. If a party attempts to introduce an exhibit listed on the other party's exhibit list, the listing party reserves the right to object to such introduction.

**Groupon Further Proposes:** Any trial exhibit that was produced in discovery by a party or by a third party pursuant to a subpoena and that on its face appears to have been authored by an employee, officer, or agent of the party or third party subpoena recipient producing such document, shall be deemed to be a true and correct copy of a document maintained in that party's files as of the date of the party's document collection under Federal Rule of Evidence 901.

**Groupon Further Proposes:** Any trial exhibit that is a publication or article that was produced in discovery by a party shall be deemed to be a true and correct copy of that publication or article from the source from which it originates under Federal Rule of Evidence 901. Legible photocopies of printed publications (with agreed upon English translations thereof where relevant) may be offered and received in evidence in lieu of originals thereof.

**Groupon Further Proposes:** Legible photocopies of United States and foreign patents, published applications, and the contents of their associated file histories and other Patent Office records may be offered and received into evidence in lieu of certified copies thereof, subject to all other objections that may be made to the admissibility. For patents identified on any party's exhibit list, the dates of filing and issuance shall be deemed to be shown on the face of the patent, subject to the right of the party against whom it is offered to adduce evidence to the contrary. In addition, copies of such documents are deemed to be authentic under the Federal Rules of Evidence, including Rule 901.

**Groupon Further Proposes:** None of the foregoing stipulations shall serve as a waiver of any other objections a party may have to any trial exhibits, or abrogate the requirement that the party offering an exhibit into evidence satisfy any other rules governing the admissibility of evidence set forth in the Federal Rules of Evidence, the Federal Rules of Civil Procedure, this Court's Local Rules, the Court's practices, or any other applicable rule or regulation. The parties

agree to meet and confer in good faith to resolve objections to trial exhibits prior to their

introduction at trial.][11][12]

---

[11] **IBM's Position:** IBM objects to Groupon's non-standard language, which spans several pages. Groupon's proposed language attempts to brush aside various evidentiary requirements as they apply to all aspects of the case in the abstract, without addressing how they may apply to specific issues. In particular, Groupon attempts to short circuit proof that documents are "a true and correct copy of a document maintained in that party's files as of the date of the party's document collection," despite the fact that IBM disputes the authenticity and source of many of the documents that Groupon relies on. For example, Groupon relies on untimely produced documents that allegedly depict screenshots from the Library of Congress website to attempt to demonstrate the public availability of prior art—despite the fact that the screenshots contradict the dates of the references themselves. D.I. 277 at 2. As another example, Groupon has recently added documents to its exhibit list that were never produced during discovery and that appear to show that Groupon obtained declarations and documents without disclosing them to IBM or permitting any investigation as to their source. Exhibit J at DX-649, DX-650. As a final example, Groupon has relied on documents that allegedly originated from Amazon despite admissions from its expert and its paid fact witness that call into question the authenticity and source of the documents. D.I. 209 at 3. Groupon should not be permitted to sidestep those and other evidentiary challenges. Groupon's proposed language even goes so far as assume that all documents produced by a party are "true and correct" and originate from a particular source, even if that source is not the producing party. Finally, Groupon's proposed language assumes that the parties have made various stipulations, when they have not.

[12] **Groupon's Position**: Groupon included this proposed stipulation in an attempt to obviate the need for presentation of evidence to establish the authenticity of every trial exhibit to streamline trial proceedings. After attempting to confer with IBM on potential solutions (including Section XVI below), Groupon suggested including language that other litigants have stipulated to before this Court. *See, e.g., Idenix Pharms. LLC v. Gilead Sciences, Inc.*, No. 14-846-LPS; *Personalized User Model, LLP v. Google, Inc.*, No. 1:09-cv-00525-LPS, D.I. 602 at 8-9; *see also Merck & Sharp & Dohme Corp. v. Xelia Pharms. APS*, No. 1:14-cv-00199-RGA, D.I. 107 at 7-8. This stipulation only addresses one evidentiary requirement: proving that an exhibit is what the proponent says it is. *See* Fed. R. Evid. 901. To date, IBM has not articulated any *authenticity* challenges to Groupon's exhibits. During the parties' conferences to finalize the pretrial order, Groupon repeatedly asked IBM to raise any such challenges so that the parties may resolve them in advance of trial, and so that the parties could resolve an apparent dispute regarding Groupon's inclusion of prior art custodian(s) on its witness list. IBM raised none. Nor did IBM raise any authenticity objections when it initially served objections to Groupon's trial exhibits. To date, despite Groupon's requests, IBM still has not articulated any authenticity challenges it may raise. Indeed, IBM's arguments regarding whether an exhibit "demonstrate[s] the public availability of prior art" or whether an exhibit was timely produced are *not* questions of authenticity and are thus misplaced. For example, IBM cannot, in good faith, contest that the exhibits of screenshots from the Library of Congress' website are from the Library of Congress' website. And IBM's contention that Groupon's expert and one of its fact witnesses "call into question the authenticity and source" of

On or before the first day of trial, counsel will deliver to the Courtroom Deputy a completed AO Form 187 exhibit list for each party.

If a party proposes to read a statement by a party opponent from any request for admission responses or interrogatory responses, they will provide notice at least by 6:00 pm EST the night before the statement will be used at trial. This notice provision does not apply when a party intends to use the statement during cross-examination or for impeachment purposes.

### B.    Demonstrative Exhibits

The parties will exchange demonstratives to be used in opening statements by 8:00 p.m. two nights before opening statements. The parties will provide any objections to such demonstratives by 12:00 p.m. (noon) on the day before opening statements. The parties are to meet and confer to resolve any objections to the demonstratives for opening statements at 3:00 p.m. the day before opening statements. No party can use the other party's disclosed demonstrative in its opening statement presentation before the disclosing party used it in its own opening statement.

A party will provide demonstrative exhibits to be used in connection with direct examination by 7:00 p.m. the night before their intended use, and objections will be provided no later than 9:00 p.m. the night before their intended use. If any of the demonstratives change after the deadline, the party intending to use the demonstrative will promptly notify the opposing party of the change(s) to provide the opposing party with reasonable notice of the changes before the demonstratives are presented to the jury.

---

documents produced in this case is simply incorrect. Absent stipulation or order from the Court, the parties will produce evidence to establish authenticity. Groupon simply proposes a stipulation in an attempt to save the jurors and the Court time from not hearing such evidence. IBM has no good reason to dispute this.

The party seeking to use a demonstrative will provide a color representation of the demonstrative to the other side in PDF form. However, for video animations, the party seeking to use the demonstrative will provide it to the other side on a DVD or CD or make it available via a secure file share. For irregularly sized physical exhibits, the party seeking to use the demonstrative will provide a color representation as a PDF of 8.5 x 11 copies of the exhibits. For physical demonstratives for which a color representation as a PDF is not feasible, the party must identify it in writing with specificity by the 7:00 p.m. deadline and, upon request, make it available for inspection no later than the 9:00 p.m. deadline for objections.

This provision does not apply to demonstratives created during testimony or demonstratives to be used for cross-examination, neither of which need to be provided to the other side in advance of their use. In addition, blow-ups or highlights of exhibits or parts of exhibits or testimony are not required to be provided to the other side in advance of their use.

The parties are to meet and confer to resolve any objections at 10:00 p.m. the night before the demonstratives' intended use. If good faith efforts to resolve objections to demonstrative exhibits fail, the objecting party shall bring its objections to the Court's attention prior to the opening statements or prior to the applicable witness being called to the witness stand. Failure to comply with these procedures, absent an agreement by the parties and approval by the Court, will result in waiver of the use of an exhibit or waiver of objection to the exhibit.

## VII.  DAMAGES

IBM's Position

At trial, IBM will seek damages in the form of a reasonable royalty pursuant to 35 U.S.C. § 284 as compensation for Groupon's infringement of each of the patents-in-suit. IBM contends that damages are available from the earliest date of known infringement through expiration of the

patents-in-suit and will ask the jury to award reasonable royalties in the amount of ██████████.[13]

In particular, IBM contends that damages are available as follows[14]:

---

[13] **Groupon's Position**: As set forth in its Motion to Strike (D.I. 300), IBM's damages expert's revised damages theory, increasing IBM's damages claim in this case by over ████████, is untimely. Tellingly, IBM did not even revise its damages claim in this pre-trial order until June 7, 2018. Groupon objects to IBM's attempt to introduce this amount to the jury and any expert testimony in support of this claimed amount. **IBM's Position:** Dr. Hausman ██████████████
████ D.I. 246, Ex. 1 (Hausman Opening Report) ¶ 11. Dr. Hausman also noted that ████████████████████████ and that he would ████████████████████████
████████████ which encompasses the post-verdict period ████████████ *Id.* ¶ 13. Updating damages numbers to account for damages between the end of fact discovery and trial is standard practice. IBM will more fully address Groupon's recently-filed Motion to Strike in its opposition, due on June 15, 2018.

[14] **IBM's Position:** IBM will ask the jury to award reasonable royalties for Groupon's infringement of the '849 and '346 patents through trial, but Groupon has only produced financial data through July 2017. IBM will update the above figures for the '849 and '346 patents upon Groupon's production of updated financial data for the accused instrumentalities. Groupon's latest financial data for the accused instrumentalities falls within the scope of the discovery IBM requested in this case. *See, e.g.*, D.I. 87, Ex. 1 (IBM's Request for Production) at RFP Nos. 28, 29, 30, 32, 33, 84; D.I. 246, Ex. 4 (Groupon's Objections and Responses to IBM's Interrogatories) at Interrogatory No. 4. Moreover, the updated data is directly relevant to IBM's calculation of damages. *See* 35 U.S.C. § 284 ("Upon finding for the claimant the court shall award the claimant damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer, together with interest and costs as fixed by the court."). IBM's request is not untimely because IBM could not have asked Groupon for financial information that did not yet exist. **Groupon's Position:** IBM requested an accounting of damages through trial on May 2, 2018, *months* after fact and expert discovery closed in this case. Because fact discovery and expert disclosures are closed, Groupon thus maintains that IBM's request for additional data to supplement its damages theories is untimely. Contrary to IBM's contention, it did not request "financial data for the accused instrumentalities" through trial. And the discovery requests that it cites do not support its position. For example, IBM's Request for Production Nos. 29, 30, and 84, and Interrogatory No. 4, sought information "from March 2010 to the present," RFP No. 32 sought certain estimate and projections, and RFP No. 33 sought records "since March 2010." And Groupon objected to IBM's overbroad, vague and ambiguous Request No. 28 for *all* documents "relevant to the determination of damages" as failing to describe the documents sought with reasonable particularly.

For sales during the period of March 2010 through August 2015, IBM will ask the jury to award reasonable royalties of ███████ for compensation for Groupon's infringement of the '967 patent.

For sales during the period of March 2010 through July 2017, IBM will ask the jury to award reasonable royalties of ████████[15] for compensation for Groupon's infringement of the '849 patent.

For sales during the period of March 2010 through June 2016, IBM will ask the jury to award reasonable royalties of ███████ for compensation for Groupon's infringement of the '601 patent.

For sales during the period of July 2011 through July 2017, IBM will ask the jury to award reasonable royalties of ██████[16] for compensation for Groupon's infringement of the '346 patent.

IBM also seeks post-verdict damages up to the time of judgment. IBM further seeks an award of prejudgment interest, an award of attorneys' fees pursuant to 35 U.S.C. § 285, and interest, costs, and disbursements as justified under 35 U.S.C. § 284 and/or Fed. R. Civ. P. 54. IBM also seeks treble damages based on Groupon's willful infringement of the patents-in-suit. IBM also seeks injunctive relief against future acts of infringement by Groupon under 35 U.S.C.

---

[15] **Groupon's Position:** For the reasons set forth in its Motion to Strike (D.I. 300), Groupon objects to IBM's attempt to introduce this amount and any expert testimony in support of this claimed amount as untimely. **IBM's Position**: Updating damages numbers to account for damages between the end of fact discovery and trial is standard practice. IBM will more fully address Groupon's recently-filed Motion to Strike in its opposition, due on June 15, 2018.

[16] **Groupon's Position:** For the reasons set forth in its Motion to Strike (D.I. 300), Groupon objects to IBM's attempt to introduce this amount and any expert testimony in support of this claimed amount as untimely. **IBM's Position**: Updating damages numbers to account for damages between the end of fact discovery and trial is standard practice. IBM will more fully address Groupon's recently-filed Motion to Strike in its opposition, due on June 15, 2018.

§ 283.   In the alternative, IBM contends that any denial of a permanent injunction should be conditioned on payment of a reasonable royalty for infringement.

Groupon's Position

Groupon disputes that IBM is entitled to any damages in this action or any relief whatsoever.   Groupon further disputes that IBM is entitled to any injunctive relief because IBM cannot show irreparable harm; there are adequate remedies available to IBM, though it cannot show entitlement to any such relief; granting an injunction would contravene public interest; and consideration of the balance of hardships to IBM and Groupon disfavors an injunction.  And IBM's request for a payment of a reasonable royalty as an alternative to a permanent injunction is improper as IBM did not request in its complaint monetary relief for alleged future infringement. (D.I. 1 at 16.)  Instead, IBM's request is limited to "damages adequate to compensate IBM for the patent infringement *that has occurred*" and "[a]n injunction against further infringement."   (*Id.*) IBM's damages expert also did not provide any opinion regarding post-verdict monetary relief. Finally, Groupon disputes that IBM is entitled to any post-verdict damages, prejudgment interest, attorneys' fees, interest, costs, or enhanced damages.

Groupon does not have a pending claim for damages.  It does, however, maintain that this is an exceptional case for which it is entitled to an award of reasonable attorneys' fees pursuant to 35 U.S.C. § 285.  Groupon also seeks its costs.

## VIII.   **BIFURCATED TRIAL**

Groupon's Position

Groupon requests that the Court bifurcate and stay IBM's claims with respect to the '346 patent.  IBM asserts claims 1-3, 5, 8, 10, 12, and 13 of the '346 patent in this case.  On August 7, 2017, the Patent Trial and Appeal Board found four of those eight asserted claims (claims 1, 3, 12, 13) and three additional claims (claims 14, 15, 18) unpatentable and thus invalid in two separate

post grant review proceedings.  The remaining claims at issue in this case (claims 2, 5, 8, and 10)

all depend on the claims found invalid by the PTAB.  On October 17, 2017, IBM appealed the

PTAB's findings to the Federal Circuit.  Those appeals will not be resolved before trial in this

matter, but the Federal Circuit is likely to issue its orders in the next six months.  If the '346 patent

is not bifurcated and stayed pending final resolution of the PTAB's decisions, the parties will need

to present to the jury the claims and defenses for the patent claims that are currently invalid.  If the

PTAB's decisions are affirmed, all of that time and those resources would have been spent for

nothing.

Further, if the PTAB's decisions are affirmed, and if IBM prevails at trial, the parties will

still need to have another trial, because IBM has not disclosed a damages theory limited to the

remaining dependent claims.  At his deposition, IBM's damages expert ███████████████



███████████████████████████████████████████████████

████████████████████████████████████████████ (*Id.*

at 202:14-16, 202:19).  For example, ████████████████████████ ██████

████████████████████████████████████ IBM's citations

to his testimony below do not establish otherwise, but only show that █████████████

███████████████████████████████████████████████████

███████████████████████████████. (D.I. 225-3 at 202:14-16, 202:19-22).

Thus, his testimony and any damages awarded by the jury for the '346 patent would ███████

███████████████████████████████████████████████████

███.  Bifurcation and stay pending a final resolution of the PTAB's proceedings will promote

judicial efficiency by simplifying the issues at trial this summer and eliminating the risk of

duplicative trials on the same claims.  IBM will suffer no prejudice from a brief stay.  Although it

maintains that it seeks injunctive relief, the parties are not competitors (according to IBM's damages expert himself) and IBM cannot prove any irreparable harm as its damages expert opined as to purportedly proper dollar amounts to compensate IBM for any alleged infringement.  And any minimal inconvenience IBM may face is outweighed by conserving the Court and parties' resources, and the jurors' time, by not considering claims that may be, and are likely to be, affirmed as unpatentable and thus invalid.

As an alternative to the bifurcation, to ensure the most efficient trial presentation, Groupon submits that the trial in the case should be postponed until the Federal Circuit resolves the current appeals.  This alternative will eliminate the need for two trials, either for bifurcation or to assess damages if the PTAB's decisions are affirmed.

<u>IBM's Position</u>

Bifurcation of issues related to the '346 patent would be inefficient and burdensome on the Court and the parties.

Asserted claims 1, 3, 12, and 13 will only be cancelled if the PTAB issues a trial certificate cancelling them, which can only occur after IBM has exhausted its rights to seek review of the PTAB's final written decisions.  35 U.S.C. § 318(b); 37 C.F.R. § 42.80.  As Groupon recognizes, those claims are currently up on appeal before the Federal Circuit.  Unless and until the PTAB issues a trial certificate cancelling those claims, IBM has a viable cause of action based on those claims.  *Id.; Intellectual Ventures I LLC v. Toshiba Corp.*, 221 F. Supp. 3d 534, 553-554, n.18 (D. Del. 2016); *see also Fresenius USA, Inc. v. Baxter Int'l, Inc.*, 721 F.3d 1330, 1344 (Fed. Cir. 2013).

The parties will need to try the issues of infringement, validity, and damages on at least asserted claims 2, 5, 8, and 10, regardless of the outcome at the Federal Circuit.  Groupon's proposed bifurcation guarantee *two* trials, one with the '967, '849, and '601 patents, and one with

the '346 patent, regardless of the Federal Circuit's decision because a subset of the asserted claims of the '346 patent will survive regardless of the result of IBM's appeal. The trials will feature many of the same technical, licensing, and expert witnesses and will require the parties, the witnesses, the Court, and jurors to go through the process twice.

Moreover, contrary to Groupon's contention, no further trial is needed on damages related to the '346 patent, regardless of the outcome at the Federal Circuit. IBM's damages expert assumed infringement, as he was required to do. He explained that he could estimate damages for the claims that survived the PTAB challenge. D.I. 225, Ex. 3 (Hausman Dep. Tr.) at 202:7-8; 202:19-22. In addition, IBM's technical expert explained that the PTAB's decision on the '346 patent does not change the infringement analysis, that the benefits of the independent claims extend to the benefits of the dependent claims, and that the extent of use of the independent claims is directly relevant to the extent of use of the dependent claims. D.I. 249, Ex. 11 (Schmidt Reply Report) at Section XVIII.B. That analysis further supports IBM's expert's damages opinion for the '346 patent.

The parties have spent the past two years developing theories related to the '346 patent. Both sides are calling experts who have already opined on infringement, validity, and damages issues related to the '346 patent to testify at trial. Postponing that testimony to later try those issues after the Federal Circuit rules on a subset of the asserted claims is an inefficient use of the Court's and parties' time and resources. The most efficient way for the parties to proceed is to try infringement, validity, and damages issues of all four patents-in-suit at the same time.

Groupon's backup proposal to delay trial until the Federal Circuit resolves the PTAB appeal has no merit, and Groupon does not offer any justification for its claim that such a drastic measure would be the "most efficient" path forward. At most, the appeal could only remove four

claims (of eight asserted claims) from one of four asserted patents in this case.  *See PGS Geophysical AS v. Iancu*, __ F.3d __, (Fed. Cir. June 7, 2018) (finding that despite *SAS Institute, Inc. v. Iancu*, 138 S. Ct. 1348 (2018), "we need not, and will not, sua sponte revive the 'non-instituted" claims and grounds").  There will need to be a trial on all four patents, and this case is ready to proceed, and should proceed, to trial now.

## IX.   **MOTIONS *IN LIMINE***

Motions *in limine* have been fully briefed.  IBM's motions *in limine*, Groupon's oppositions, and IBM's replies are attached as **Exhibit K**.  Groupon's motions *in limine*, IBM's oppositions, and Groupon's replies are attached as **Exhibit L**.  No separate briefing shall be submitted on *in limine* requests, unless otherwise permitted by the Court.

The parties have also agreed on the following motions *in limine*:

- Exclude any reference to stealing or copying by Groupon.

- Exclude any reference to, or any argument, evidence, or testimony that patent infringement requires proof of copying or stealing.

- Exclude any reference, argument, evidence, or testimony referring to any alleged deceptive intent by the inventors, IBM, Prodigy/Trintex, or the prosecuting attorneys during the prosecution of the patents-in-suit.

- Exclude any reference to, or any argument, or testimony concerning the concept of an injunction, treble damages, equitable estoppel, unclean hands, or inequitable conduct.  This motion *in limine* does not bar either party from introducing evidence relevant to those issues, so long as that evidence is relevant to other issues properly before the jury, and is not subject to another granted or agreed motion *in limine*.

- Exclude any reference to, or any argument, evidence, or testimony concerning the amount of legal fees a party incurred prosecuting or defending the case.

- Exclude any reference to, or any argument, evidence, or testimony concerning Groupon's suit against IBM. This motion *in limine* does not preclude the use of such evidence for purposes of impeachment. *See e.g.* Fed. R. Evid. 613, 801(d).

## X.    <u>DISCOVERY</u>

Each party has completed discovery.

## XI.    <u>NUMBER OF JURORS</u>

There shall be eight jurors. The Court will conduct jury selection through the "struck juror" method, beginning with the Court reading voir dire to the jury panel in the courtroom, continuing by meeting with jurors individually in chambers or at sidebar and there addressing any challenges for cause, and concluding with peremptory strikes.

## XII.    <u>NON-JURY TRIAL</u>

The parties agree that certain issues involving damages in this case, including injunction, enhanced damages, attorney fees, and costs, are issues for the Court to determine, if warranted, and should not be presented to the jury.

## XIII.    <u>LENGTH OF TRIAL</u>

The trial will be timed. Unless otherwise ordered, time will be charged to a party for its opening statement, direct and redirect examinations of witnesses it calls, cross-examination of witnesses called by any other party, closing argument, its argument on any motions for judgment as a matter of law, and all sides' argument on objections a party raises (outside the presence of the jury) to another party's exhibits and demonstrative exhibits.

The Courtroom Deputy will keep a running total of trial time used by counsel. If any party uses all of its allotted trial time, the Court will terminate that party's trial presentation.

Considering the Court's procedures for counting time, and considering the nature and extent of the parties' disputes, the parties request a total of [**IBM's Proposal:** 40] [**Groupon's Proposal:** 52] hours for their trial presentation, allocated as [**IBM's Proposal:** 20] [**Groupon's Proposal:** 26] hours per side.

## XIV.   MOTIONS FOR JUDGMENT AS A MATTER OF LAW

The parties propose that motions for judgment as a matter of law be made and argued during breaks when the jury is out of the courtroom or at the end of the day after the jury has been dismissed.  The parties agree that such motions will be raised with the Court at the first break after the appropriate point during trial so that the Court may inform the parties when such motions will be heard and whether the Court wishes to receive briefing.

## XV.   AMENDMENTS OF THE PLEADINGS

The parties are not seeking any amendments to the pleadings at this time.

## XVI.   ADDITIONAL MATTERS

### A.   Request Regarding Confidentiality and Introducing Evidence Under Seal

Groupon's Position

Recognizing that "[a]s a general matter, sealing judicial records, including the transcript of a trial or portions of the trial transcript, is contrary to the principle that judicial proceedings in this country are to be conducted in public," Groupon contends that the vast majority of the trial proceedings in this case should be in open court. *Bianco v. Globus Med., Inc.*, No. 2:12–CV–00147–WCB, 2014 WL 3422000, at *1 (E.D. Tex. July 14, 2014) (Bryson, J.).  Specifically, other than information that Groupon or third-parties have designated as HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY – SOURCE CODE, disclosure of which would undoubtedly cause competitive harm by providing the designee's competitors with an unfair advantage in competitive product design and development, no other information, including financial and patent licensing

information, should be sealed from public access. "The public has a common law right of access to judicial proceedings and records" and "[t]he exercise of this right to access, among other benefits, promotes public confidence in the judicial system by enhancing the quality of justice dispensed by the court and diminishes possibilities for injustice, incompetence, perjury and fraud while providing the public with a more complete understanding of the judicial system and a better perception of its fairness." *Mosaid Techs. Inc. v. LSI Corp.*, 878 F. Supp. 2d 503, 507 (D. Del. 2012) (internal quotations and citation omitted). Accordingly, it is well settled that at trial, a party seeking to prevent disclosure "must demonstrate compelling reasons for keeping such information out of public view," such as a "clearly defined and serious injury." *AmerGen Energy Co. v. United States*, 115 Fed. Cl. 132, 137-38 (2014) (citation omitted); *Mosaid*, 878 F. Supp. 2d at 508. The fact that material was produced under a blanket protective order during discovery is not a compelling reason and cannot rebut the presumption in favor of public access. *AmerGen*, 115 Fed. Cl. at 138; *Mosaid*, 878 F. Supp. 2d at 508-09. A party seeking to seal material introduced at trial accordingly bears a heavy burden to show that a sealing order would protect important countervailing values. *Id.*

Here, other than with respect to highly confidential source code information, which the parties have already agreed should be afforded heightened protections (D.I. 24 ¶¶ 11, 12), no party can meet this heavy burden. For example, IBM has produced in this litigation a number of license agreements relating to the asserted patents. The parties dispute which ones are relevant for purposes of computing damages, but *some* of IBM's licenses will likely be admitted at trial. *See generally Prism Techs. LLC v. Sprint Spectrum L.P.*, 849 F.3d 1360, 1368-73 (Fed. Cir. 2017), *cert. denied*, 138 S. Ct. 429 (2017). Those licenses and testimony about them should be accessible to the public. The grant of a patent is a matter "between the public, who are the grantors, and the

patentee." *Oil States Energy Servs., LLC v. Greene's Energy Grp.*, LLC, 138 S. Ct. 1365, 1373 (2018) (quotation marks and alteration omitted). "By issuing patents, the PTO takes from the public rights of immense value, and bestows them upon the patentee." *Id.* The public accordingly has a right to know the measure of value it has granted—especially when that value is litigated in a public forum. *See Mosaid*, 878 F. Supp. 2d at 512 ("There are other forums—such as arbitration—available if parties wish to protect all of this type of information from public view."). The patents and parties involved, and the amounts paid, will be critical to "giv[ing] the public an opportunity to truly understand the issues in [the damages portion of] this case." *LifeNet Health v. LifeCell Corp.*, No. 2:13cv486, 2015 WL 12516758, at *2 (E.D. Va. Jan. 9, 2015).

IBM proffers no compelling reason that overcomes the presumption of public access and the importance of the information, instead, it simply contends without factual support that disclosure would impede its ability to negotiate license agreements. Courts have permitted or required much more sensitive information than ordinary licensing contracts to be presented in open court or unsealed in service of the public's right to access judicial proceedings:

- In *Microsoft Corp. v. Motorola, Inc.*, No. C10-1823JLR, 2012 WL 5476846, at *3-4 (W.D. Wash. Nov. 12, 2012), the court held that witness testimony relating to license terms would be held in open court and that "any license agreement relied upon by the court . . . will also be made public." Only individual licensing agreements that no party used at trial remained under seal. *Id.*

- In *Carnegie Mellon Univ. v. Marvell Tech. Grp., Ltd.*, 2013 WL 1336204, at *7-8 (W.D. Pa. Mar. 29, 2013), the court refused to seal a party's "highly sensitive financial data' which, if disclosed, would purportedly allow [its] competitors to undercut their pricing and

allow suppliers and customers to gain leverage against them in negotiations," in part because it was "essential to understanding the jury calculation of damages in [that] case."

- In *Fed. Trade Comm'n v. Penn State Hershey Med. Ctr.*, 2016 WL 1242272, at *1 (M.D. Pa. Mar. 30, 2016), the court ordered the plaintiffs to file a fully unredacted complaint containing competitive business information of the defendants, two major regional healthcare providers, including their competitive positions vis a vis one another.

- In *Hausfeld v. Cohen Milstein Sellers & Toll, PLLC*, 2009 WL 3335930, at *3 (E.D. Pa. Oct. 14, 2009), the court refused to redact a law firm's capital account information, representations of projected revenue, and information from law firm's financial statements from a hearing transcript.  It did redact some things, like *personal* financial information and "bank account information with wiring instructions," but those only demonstrate how high the bar is.  *See id.*

- In *Brown & Williamson Tobacco Corp. v. F.T.C.*, 710 F.2d 1165, 1179-80 (6th Cir. 1983), the Sixth Circuit declined to "carve out an exception to the right of access" to protect tobacco companies' documents disclosing "the accurate 'tar' and nicotine content of the various brands of cigarettes on the market."  The court reasoned that "[t]here is no trade secret issue." *Id.*

- In *Joy v. North*, 692 F.2d 880, 894-96 (2d Cir. 1982), the Second Circuit reversed a district court's order placing under seal a bank's internal report detailing "poor management," conflicts of interest, and possible breach of fiduciary duty.  "That is hardly a trade secret," reasoned the court.  Because the report had been submitted at summary judgment and was the "basis for the adjudication," the court held that the injury to the bank's standing in the banking and local communities could not justify foreclosing public scrutiny. *Id.*

The Court should accordingly ensure that the public retains the right and the ability to access that information.

Moreover, limiting the information to be sealed from the public during trial to source code information will promote more efficient trial proceedings and reduce, if not eliminate, disruptions to be caused by requests to seal the Courtroom once the trial has commenced. Contrary to IBM's contention, no "administrative burden" outweighs the presumption of public access here. IBM should already have provided the licensees notice of disclosure when it produced the agreements during discovery in this case, and should have notified the licensees of the possibility of disclosure during court proceedings at that time. IBM also permitted access to such information to certain Groupon employees outside the scope of the protective order, further undermining its claim of considerable administrative burden in providing notice.

IBM thus cannot meet its heavy burden to prevent disclosure of non-highly confidential source code material at trial.

<u>IBM's Position</u>

The public's right to access judicial records is not absolute, and courts may deny access to "business information that might harm a litigant's competitive standing." *Littlejohn v. Bic Corp.*, 851 F. 2d 673, 678 (3d Cir. 1988). That is the nature of the highly confidential information in IBM's license agreements. They contain highly sensitive and confidential business information, such as payment and pricing information, negotiated scope of rights, licensees' confidential information, and details related to licensed products. Making such information public would give members of the public, including potential future licensees, access to IBM's licensing strategy. Disclosing the terms of IBM's license agreements would thus deprive IBM of the ability to freely negotiate license agreements in the future.

Moreover, the highly sensitive and confidential information in IBM's patent licenses belongs to third party licensees as well. The disclosure would deter future potential licensees, who may hesitate or even decline to take a license lest their own strategies be disclosed to the public. Moreover, IBM must provide notice to its third party licensees of disclosure of their license agreements in open court. Sufficient time must be allotted to permit such licensees the opportunity to seek protection from the Court before any public disclosure at trial. Groupon claims there is no burden from notice because IBM has already provided notice to licensees. That notice, however, was limited to disclosure of the licenses to Groupon pursuant to a protective order, and did not extend to full disclosure of the licenses to the public in open court. The administrative burden of affording third party licensees the opportunity to intervene outweighs any potential benefit the public could possibly receive from obtaining access to the details of IBM's license agreements.

Contrary to Groupon's assertion, *Mosaid Techs. Inc. v. LSI Corp.* does not stand for the proposition that disclosure of license agreements is appropriate because it allegedly satisfies the public's right to know the value of patents. Rather, in *Mosaid*, the Court specifically noted that payment terms of license agreements and licensing strategy is "the type of information which . . . could cause real and serious harm to the parties' future negotiations if disclosed to competitors" and "is also the sort of material that courts have frequently redacted." *See, e.g.*, *Mosaid Techs. Inc. v. LSI Corp.*, 878 F. Supp. 2d 503, 510 (D. Del. 2012) (agreeing to seal information concerning payments made pursuant to license agreements, confidential financial information, and licensing strategy); *see id.* at 511 ("[T]erms that relate to pricing, valuation, monetary payments, and financial information should be protected.").

Groupon also claims that IBM "permitted access to such information to certain Groupon employees outside the scope of the protective order," but IBM has provided no such permission to

Groupon or its counsel. The parties agreed prior to mediation that up to two in-house attorneys and one non-attorney business representative from each party could access the parties' damages reports for the purposes of evaluating the case and settlement possibilities. The agreement was not for disclosure "outside the scope of the protective order," but rather was explicitly contingent upon each such representative signing and agreeing to be bound by the Protective Order in this case prior to access. Groupon should not be permitted to use IBM's efforts to engage in settlement discussions against IBM.

IBM's confidential licensing information should remain under seal. Only three witnesses—IBM's corporate witness and both parties' damages experts—are expected to testify about the IBM license agreements. Only portions of those witness's direct and cross examinations will relate to those agreements. Those portions can be identified in advance to arrange for a sealed courtroom and minimize disruption of the trial.

In the alternative, the Court should maintain an open courtroom for all testimony, including Groupon's technical information. Groupon has not identified with any specificity the "highly confidential technical information" it contends should remain under seal, let alone met its burden to show that disclosure of such information would cause serious injury to Groupon. *Mosaid*, 878 F. Supp. 2d at 508.

## B.    Request Regarding Reduction of Asserted Claims

<u>Groupon's Position</u>

Groupon requests that IBM reduce the number of its asserted claims prior to trial. IBM is currently asserting fifty-three (53) claims across four patents. Given the finite number of hours that the parties will have for trial presentation, asserting fifty-three (53) claims is not practical. Further, without requiring IBM to reduce its asserted claims to a manageable number sufficiently in advance before the trial commences in this matter will prejudice Groupon, as it will be forced

to prepare to defend against claims that IBM ultimately intends to drop or may not cover in its trial presentation without any advance notice to Groupon (indeed, it is Groupon's burden to prove invalidity of each asserted claim).  Courts in this district have repeatedly required parties to reduce the number of asserted claims to a manageable number prior to trial.  *See, e.g., Nox Med. ehf v. Natus Neurology Inc.*, C.A. No. 1-15-cv-00709, D.I. 241 (D. Del. Apr. 12, 2018) (requiring plaintiff to commit to reducing number of asserted claims by pretrial conference); *Reckitt Benckiser Pharm. Inc. v. Watson Labs.*, C.A. No. 13-1674-RGA, D.I. 320 at 1 (D. Del. Sep. 9, 2015) (requiring plaintiffs to reduce the number of asserted claims to fifteen (15) claims from three (3) patents prior to trial); *GreatBatch Ltd. v. AVX Corp.*, C.A. No. 13-723-LPS, D.I. 368 at 1-2 (D. Del. July 28, 2015) (reducing number of asserted claims to no more than fifteen (15) from five (5) asserted patents, noting that narrowing "is proper in light of the complexity of the subject matter at issue in the asserted patents, the number of patents that remain asserted in this case, and the parties' competing proposals"); *Galderma Labs. LP v. Actavis Labs. UT Inc.*, C.A. No. 1-15-cv-00232, D.I. 215 (D. Del. Dec. 14, 2016) (J. Stark) ("the Court expects that the parties will narrow the case (including in terms of asserted claims as well as invalidity references) in an expeditious manner following the completion of expert discovery").

Although the parties submit competing proposals, they agree that by June 15, 2018, IBM will narrow its asserted claims to five (5) asserted claims per patent and no more than sixteen (16) asserted claims total.  Groupon proposes that by June 22, 2018, it, in turn, will identify no more than five (5) pieces of prior art per patent for a total of no more than sixteen (16) pieces of prior art.  A patent can be a piece of prior art.  A publication can be a piece of prior art.  A system can be a piece of prior art.  Documents describing a single system constitute a single piece of prior art.  Source code files for a single system constitute a single piece of prior art.  To the extent multiple

documents and/or source code files relate to a single system, Groupon would identify the relevant documents and/or source code files. This proposal is proportionate to Groupon's request that IBM reduce the number of its asserted claims prior to trial.

In contrast, IBM's proposal below unfairly limits Groupon's invalidity *theories*, while allowing IBM to pursue an unlimited number of infringement *theories* on its asserted claims. The *Galderma* case IBM cites below supports Groupon's position, as there, a defendant was not required to reduce its invalidity *theories*, but invalidity *references*. *Galderma Labs. LP v. Actavis Labs. UT Inc.*, C.A. No. 1-15-cv-00232, D.I. 215 (D. Del. Dec. 14, 2016) ("[T]he Court expects that the parties will narrow the case (including in terms of asserted claims *as well as invalidity references*) . . . .") (emphasis added). The only other authority IBM offers below is the scheduling order from the *Priceline* case, which was entered at the outset of the case there, before service of any invalidity contentions and before service of any expert reports. Here, IBM already knows what invalidity theories Groupon has advanced per each asserted claim, because the expert reports have already been served. IBM argues that its proposal is preferable because Groupon's proposal purportedly does not require it to limit its asserted prior art at all. But contrary to IBM's argument, Groupon's technical expert discussed more than four prior art references for at least the '849 patent, and in any event, Groupon should not be punished for streamlining its case in advance of trial just because IBM did not. By limiting Groupon's invalidity *theories* instead of prior art, as IBM suggests below, and being fully on notice of Groupon's invalidity theories per each asserted claim, IBM can strategically select claims from the 53 it asserts now in a way that will prevent Groupon from being able to present an invalidity defense for each claim IBM will assert at trial. This is highly prejudicial and entirely unnecessary.

Further, the purpose of reducing asserted claims and prior art is to streamline the trial while providing the parties with sufficient notice of their respective trial presentations.  IBM's proposal, however, is aimed at prejudicing Groupon's invalidity case not only because it seeks to limit Groupon's *theories*, but also because it seeks to define theories in a highly limiting and prejudicial manner.  For example, the only purpose for IBM to require that "the combination of primary reference A with secondary reference B and/or C counts as three theories:  A+B, A+C, and A+B+C," is to ensure that Groupon cannot advance the full scope of its invalidity defenses at trial.  The combination will require the same presentation of evidence at trial, regardless of how one counts it, thus IBM's proposed counting does not serve to streamline the trial, and the combination provides IBM with notice of the theory, thus such a restrictive counting does not advance the purpose of sufficient notice either.  And, contrary to IBM, in Groupon's proposal, each piece of prior art cannot be a system and there are no "dozens of possible theories" based on combinations; the universe of Groupon's invalidity theories is disclosed in Groupon's expert reports and it does not include 16 prior systems or "dozens" of possible combination theories.  IBM's proposal should be rejected.

IBM's Position

IBM is willing to reduce the number of asserted claims before trial in exchange for Groupon reducing and identifying with specificity the invalidity theories it will rely on at trial. IBM proposes that by June 15, 2018, IBM will narrow its asserted claims to five asserted claims per patent and no more than sixteen asserted claims total.  *IBM v. Priceline*, C.A. No. 1:15-cv-00137-LPS, D.I. 65 at 10-11 (D. Del. Feb. 25, 2016); *see also Galderma Labs. LP v. Actavis Labs.*, No. 1:16-cv-00732-LPS, D.I.  215.  By June 22, 2018, Groupon shall identify with specificity no more than 5 invalidity theories per patent for a total of no more than 16 invalidity theories.  An

invalidity theory constitutes (1) an anticipation theory based on a single reference; (2) an obviousness theory based on a single reference; or (3) an obviousness theory based on a primary reference and up to three secondary references in combination with the primary reference. For example, the combination of primary reference A with secondary reference B and/or C counts as three theories: A+B, A+C, and A+B+C. In the event that any of Groupon's invalidity theories are based on a reference that is a system, Groupon shall also identify the documents that allegedly describe that system.

IBM's proposal is preferable to Groupon's proposal. First, Groupon's proposal for sixteen "pieces of prior art," each of which may comprise a "system" described by numerous documents, does not meaningfully narrow the invalidity case. In fact, Groupon's proposal (five references per patent, sixteen references total) does not require it to limit its asserted prior art at all, as Groupon's expert asserted four to five prior art references in various combinations against each of the four asserted patents. Groupon's proposal would also permit dozens of possible theories based on the various ways in which the five pieces of prior art asserted against each patent could be combined into obviousness theories. Second, with respect to system prior art, Groupon's proposal does not require sufficient identification as to what "source code," or "documents" constitute an asserted system and how "pieces" of prior art may be combined at trial. Groupon asserts that IBM already knows what combinations are at issue based on expert discovery, but the summary judgment briefing concerning the alleged HyperCard system demonstrates the challenges of addressing prior art based on shifting theories that were not explicitly disclosed during expert discovery. *See, e.g.* D.I. 277 at 2. Third, under IBM's proposal, Groupon is not unfairly limited. Groupon still has flexibility in deciding what components of its prior art theories meets the claim limitations—subject, of course, to what was disclosed during discovery. That is proportional to the flexibility

36

IBM has in asserting infringement. Finally, IBM's proposal is consistent with the scheduling order from previous litigation. *See*, *e.g.*, *IBM v. Priceline*, C.A. No. 1:15-cv-00137-LPS, D.I. 65 at 10-11 (D. Del. Feb. 25, 2016).

### C.      Request Regarding Groupon's Witness List

IBM's Position: IBM objects to Groupon's disclosure of "[a]ny custodian of records necessary to authenticate prior art" on Groupon's Witness List. [Groupon has represented to IBM that any such custodian would offer testimony only for the limited purpose of authenticating prior art references and would not offer any testimony concerning the content, publication dates, or public availability of any prior art reference[17]]. Groupon's counsel stated during meet and confers, however, that they do not currently know the identity of any custodian who would be called to provide that limited testimony. IBM requests that the Court order Groupon to identify by name any such prior art custodians that Groupon may call as witnesses at trial. IBM reserves the right to further object to any witness Groupon chooses to call that Groupon did not specifically identify in its Rule 26 Initial Disclosures.

Groupon's Position: Groupon does not anticipate calling any witness to authenticate prior art, but reserves its right to do so should IBM challenge the authenticity of a prior art reference. Groupon disclosed such a witness only out of an abundance of caution. Should IBM not challenge the authenticity of any prior art reference, Groupon does not intend to call such a witness. IBM has raised foundation objections to prior art references on Groupon's exhibit list, and, in preparation of this proposed order, IBM refused to stipulate to basic facts regarding prior art references, including even titles, filing dates, and issue dates of certain *United States patents*. As

---

[17] **Groupon's Position:** Groupon represented that it intends to offer testimony only for the limited purpose of authenticating prior art references. Such testimony may include publication dates and public availability to the extent such dates are relevant to authentication (for example, under Fed. R. Evid. 901(b)(8)).

described in footnote twelve above, to date, IBM has not articulated any authenticity challenge despite repeated requests by Groupon for it to do so during the parties' conferences to finalize the pretrial order.  IBM nonetheless refuses to stipulate to the authenticity of the parties' trial exhibits. Absent such a stipulation, and in the interest of judicial efficiency, Groupon proposes the following:  Groupon will disclose the prior art references upon which it intends to rely to IBM, pursuant to 35 U.S.C. § 282, on June 15, 2018.  IBM will notify Groupon of any disclosed reference for which it will not stipulate to the authenticity by June 16.  Groupon will identify any prior art custodians it intends to call as a witness at trial by June 21.  Should IBM agree to Groupon's proposals regarding authentication of exhibits in Section VI, Groupon does not anticipate needing to identify any prior art custodians.

### D.     Request To Strike Documents From Groupon's Exhibit List That Were Not Produced Until After The Deadline For Groupon To Serve Its Exhibit List

IBM's Position:  After the agreed-upon deadline for Groupon to serve its exhibit list, Groupon amended its exhibit list to include several documents that had never been produced in the litigation.  For example, Groupon's Exhibit DX-0648 appears to be an affidavit from a Christopher Butler from the Internet Archive, dated April 4, 2017, which was never produced.  Groupon presumably intends to use that late-disclosed exhibit to support Groupon's allegations about the public availability of Groupon's prior art references.  As another example, Groupon's Exhibit DX-0650 appears to be an undated image of a previous version of the Amazon website.  Groupon presumably intends to use that late-disclosed exhibit to support allegations about the appearance of the Amazon website at some point in time.  After multiple requests for information regarding the exhibits that had never been produced before, Groupon confirmed that its exhibit list includes documents that were never produced by responding, "*[n]early all* of the documents identified on Groupon's First and Second Amended Exhibit Lists were previously produced in this action."

06/07/2018 Benzler Email (Ex. 1).  Groupon should not be permitted to rely on documents that were not produced during fact discovery, during expert discovery, or before the agreed-upon deadline to exchange exhibit lists.  The date of the late-disclosed Internet Archive declaration indicates that Groupon has had at least one of the documents in its possession for over one year without producing it to IBM.  IBM respectfully requests that the Court strike exhibits that were not previously disclosed to IBM from Groupon's exhibit list.

Groupon's Response:  IBM's request to strike fails to identify with particularity the documents it seeks to preclude.  It identifies only two documents:  DX-0648 (Internet Archive Affidavit) and DX-0650 (Amazon.com Website Screenshot), neither of which causes any prejudice to IBM.  Regarding the Internet Archive Affidavit, IBM's refusal to agree to the authenticity of the documents in this case, or to provide notice of the particular documents of which it will contest authenticity, necessitated the production and inclusion of this affidavit on Groupon's Exhibit List.  IBM is not prejudiced by its inclusion because it has had the underlying documents for over a year, in connection with the '346 patent IPR proceeding and as part of Groupon's Invalidity Contentions in this action, along with the Declaration of Thomas D. Wason, Ph.D. authenticating these documents.  Regarding the Amazon.com Website Screenshot, this screenshot was reproduced in Dr. Weissman's expert report and Dr. Weissman relied on it in forming his opinions.  *See* Expert Report of Jon Weissman Regarding Invalidity at p. 210.

## XVII.  **SETTLEMENT**

The parties have engaged in a good faith effort to explore resolution of the controversy by settlement, including mediation sessions before a private mediator on July 20, 2016 and Magistrate Judge Christopher J. Burke on April 3, 2018.

* * *

**IT IS HEREBY ORDERED** that this Final Pretrial Order shall control the subsequent course of the action, unless modified by the Court to prevent manifest injustice.

DATED:  June 11, 2018

Public Version Dated: June 20, 2018

_____
United States District Judge

APPROVED AS TO FORM AND
SUBSTANCE:

POTTER ANDERSON & CORROON LLP

OF COUNSEL:                          By:   _Bindu A. Palapura_
                                           David E. Moore (#3983)
John M. Desmarais                          Bindu A. Palapura (#5370)
Karim Z. Oussayef                          Stephanie E. O'Byrne (#4446)
Laurie Stempler                            Hercules Plaza, 6th Floor
Kevin K. McNish                            1313 N. Market Street
Robert C. Harrits                          Wilmington, DE  19801
Michael Matulewicz-Crowley                 Tel:  (302) 984-6000
Brian Matty                                dmoore@potteranderson.com
DESMARAIS LLP                              bpalapura@potteranderson.com
230 Park Avenue                            sobyrne@potteranderson.com
New York, NY  10169
Tel:  (212) 351-3400                       _Attorneys for Plaintiff_
                                           _International Business Machines Corporation_

ASHBY & GEDDES

OF COUNSEL:                         By:    /s/ John G. Day
                                           John G. Day (#2403)
J. David Hadden                            Andrew C. Mayo (#5207)
Saina S. Shamilov                          500 Delaware Avenue, 8th Floor
Phillip J. Haack                           P.O. Box 1150
Sapna Mehta                                Wilmington, DE  19899
FENWICK & WEST LLP                         (302) 654-1888
Silicon Valley Center                      jday@ashby-geddes.com
801 California Street                       amayo@ashby-geddes.com
Mountain View, CA  94041
(650) 988-8500                       *Attorneys for Defendant*
                                     *Groupon, Inc.*

41