# EXHIBIT L

## TABLE OF CONTENTS

GROUPON'S MOTION IN LIMINE No. 1 ........................................................................ 3

GROUPON'S MOTION IN LIMINE No. 2 ...................................................................... 14

GROUPON'S MOTION IN LIMINE No. 3 ...................................................................... 24

EXHIBITS IN SUPPORT OF GROUPON'S MILS ....................................................... 36

DECLARATION OF BRIAN D. MATTY IN SUPPORT OF IBM'S OPPOSITION TO GROUPON'S MOTIONS IN LIMINE[1] ........................................................................ 82

---

[1]  All exhibits referenced in IBMs MILs are to the Declaration of Brian D. Matty.

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| INTERNATIONAL BUSINESS MACHINES COR-PORATION, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | C.A. No. 1:16-cv-00122-LPS |
| GROUPON, INC. | ) ) | |
| Defendant. | ) ) ) | |

**MOTION IN LIMINE NO. 1 OF DEFENDANT GROUPON, INC. TO EXCLUDE IBM CORP. FROM PRESENTING ANY REFERENCE, EVIDENCE, ARGUMENT AND TESTIMONY REGARDING THE SUBSTANCE OF THE PARTIES' PRE-SUIT EXCHANGES AND ALLEGED FAILURE TO OBTAIN ADVICE OF COUNSEL**

**[TO BE FILED REDACTED]**

To establish willful infringement, IBM Corp. must show that Groupon, Inc. infringed the patents-in-suit with "subjective willfulness" through behavior that is "willful, wanton, malicious, bad-faith, deliberate, consciously wrongful, flagrant, or—indeed—characteristic of a pirate." *See Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923, 1932 (2016). To support its willfulness allegation, IBM intends to argue to the jury that ████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████ Neither is appropriate for a trial presentation in this case and both should be excluded.

## I.    THE PARTIES' PRE-SUIT EXCHANGES

████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
███████████████████████████████████████████
████████████████████████
████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
██████████████████████████████

IBM also cites communications from four dates before the Agreement's period (████████ ████████████████████████████████████████████████████████████) and one communication after it (██████████████████ IBM contends that the first three and one of the latter two provided Groupon with notices of the patents-in-suit. But Groupon has already stipulated to the dates when it became aware of the patents. (*See* Joint Pretrial Order, Section III; Att. 4 (Groupon's Second Supp. Interrog. Resp. No. 2).) These communications are irrelevant to IBM's case. *See* FRE 402, 403; *LadaTech, LLC v. Illumina, Inc.*, No. 09-627-SLR (D. Del. March 2, 2012), Dkt. No. 171 at 2-3 (excluding licensing discussions under FRE 403 in light of stipulation of knowledge of the patent). The remaining communication is marked as an FRE 408 communication and cannot be used to establish liability or any value of IBM's claim. *See France Telecom S.A., v. Marvell Semiconductor Inc.*, No. 12-cv-04967-WHO (N.D. Cal. Mar. 2, 2015), Dkt. No. 369 at 29 (the jury is entitled to know the "existence of discussions between the parties," but "the substance of the discussions, including proposed terms and the parties' respective positions . . . is not admissible under Rule 408."); *Parallel Networks Licensing, LLC v. Microsoft Corp.*, No. 13-2073-KAJ-SRF (D. Del. Mar. 20, 2017), Dkt. No. 386 at 32:19-37:16 (precluding pre-suit claim chart to show willfulness).

IBM also identified 2,991 pages of the parties' pre-suit communications under Rule 33(d). ████████████████████████████████████████████████████████████████ ████████████, communications designated as subject to FRE 408 and those that fall under that rule as they were made in the context of settlement discussions and are therefore inadmissible. (███ ████████████████████████████████████████████████████████████ ██████████████ ██████████████████████████████████████ ████████████████████████████████████ None are relevant to IBM's case and all should be excluded from its trial presentation.

In short, aside from the existence of the pre-suit discussions between the parties, and who was involved on behalf of the parties, the substance, frequency, and anything else about those discussions is irrelevant to IBM's case.[1] And if IBM is allowed to present them, it would prejudice Groupon for at least two reasons. █████████████████████████████████████

████████████████████████████████████████████████████████████████████

████  Second, if allowed, Groupon will be forced to decide whether to waive its attorney-client privilege in order to rebut the allegations and implications IBM intends to draw from the communications. *See Quantum Corp. v. Tandon Corp.*, 940 F.2d 642, 644 (Fed. Cir. 1991) (accused infringer should not "be forced to choose between waiving the [attorney-client] privilege in order to protect itself from a willfulness finding . . . and maintaining the privilege").

## II.    ADVICE OF COUNSEL

To support its allegation of willfulness, and despite the fact that Groupon was represented by both in-house and outside counsel during the parties pre-suit negotiations, IBM intends to argue to the jury that Groupon did not obtain or present advice of counsel, and its failure to do so establishes willful infringement.  (Att. 1 at ¶ 229; *see also* Att. 2.)  The America Invents Act mandates that "[t]he failure of an infringer to obtain the advice of counsel . . . or . . .present such advice to the court or jury, may not be used to prove that the accused infringer willfully infringed" and bars juries from drawing an adverse inference from the absence of an opinion of counsel.  The Court should preclude IBM from referencing any absence of opinion of counsel.  35 U.S.C. § 298 (2011); *see Parallel Networks*, Dkt. No. 386 at 25:2-26:9 (excluding evidence or argument regarding alleged failure to obtain advice of counsel); *In re Seagate Tech., LLC*, 497 F.3d 1360, 1370 (Fed. Cir. 2007) (en banc), *abrogated on other grounds by Halo Elecs.*, 136 S. Ct. 1923.

---

[1] This motion does not intend to prevent Groupon from relying on the parties' Agreement or the fact that Groupon was represented by counsel during the pre-suit negotiations with IBM; and if IBM will be allowed to rely on the pre-suit negotiations, Groupon intends to rely on them in defense to and rebuttal of IBM's claims and positions.

Respectfully submitted,

ASHBY & GEDDES

*Of counsel:*

J. David Hadden
Saina S. Shamilov
Phillip J. Haack
Sapna Mehta
FENWICK & WEST LLP
Silicon Valley Center
801 California Street
Mountain View, CA  94041
Telephone:    650.988.8500
Facsimile:    650.938.5200

Dated:    May 14, 2018

By: */s/ Saina S. Shamilov*    _____
Saina S. Shamilov (*pro hac vice*)

John G. Day (#2403)
Andrew C. Mayo (#5207)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE  19899
(302) 654-1888
jday@ashby-geddes.com
amayo@ashby-geddes.com

Attorneys for Defendant
GROUPON, INC.

4

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| INTERNATIONAL BUSINESS MACHINES CORPORATION, | ) ) ) | |
| Plaintiff, | ) ) | C.A. No. 16-122-LPS |
| v. | ) ) | **JURY TRIAL DEMANDED** |
| GROUPON, INC. | ) ) ) | |
| Defendant. | ) | |

## PLAINTIFF INTERNATIONAL BUSINESS MACHINES CORPORATION'S
## OPPOSITION TO GROUPON'S MOTION IN LIMINE #1

OF COUNSEL:

John M. Desmarais
Karim Z. Oussayef
Laurie Stempler
Robert C. Harrits
Brian D. Matty
Michael Matulewicz-Crowley
DESMARAIS LLP
230 Park Avenue
New York, NY 10169
Tel: (212) 351-3400

Dated: May 25, 2018

David E. Moore (#3983)
Bindu A. Palapura (#5370)
Stephanie E. O'Byrne (#4446)
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801
Tel: (302) 984-6000
dmoore@potteranderson.com
bpalapura@potteranderson.com
sobyrne@potteranderson.com

*Attorneys for Plaintiff*
*International Business Machines Corporation*

I.    **GROUPON'S MOTION *IN LIMINE* NO. 1: Motion To Exclude IBM Corp. From Presenting Any Reference, Evidence, Argument And Testimony Regarding The Substance Of The Parties' Pre-suit Exchanges And Alleged Failure To Obtain Advice Of Counsel.**[1]

IBM intends to prove Groupon's "subjective willfulness" in infringing IBM's patents, which includes Groupon's mindset "at the time of the challenged conduct." *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923, 1933 (2016). Contrary to Groupon's suggestion, Groupon's mindset throughout its infringing activity is not just about notice; it includes Groupon's knowledge of its infringement and its intent to continue infringing activity. *See id.* That knowledge is relevant not only to willfulness, but also to IBM's indirect infringement allegations.

The parties' pre-suit exchanges, extending back to ▮▮▮ are relevant evidence of Groupon's knowledge of the manner in which Groupon's products infringed the patents. IBM presented detailed information to Groupon during pre-suit discussions through which a reasonable party would have known of its infringement. This Court has recognized that such evidence of "notice of [] infringement" and "reminder[s] that sales of the accused products constitute infringement of the patent-in-suit" are "highly relevant" to willful infringement. *Bio-Rad Labs. Inc. v. Thermo Fisher Sci. Inc.*, 267 F. Supp. 3d 499, 501 (D. Del. 2017); *see also, e.g., Rhodes Pharm. L.P. v. Indivior, Inc.*, No. CV 16-1308, 2018 WL 326405, at *10 (D. Del. Jan. 8, 2018); *Green Pet Shop Enterprises, LLC v. Telebrands Corp.*, No. CV 17-6179 (SRC), 2018 WL 547544, at *2 (D.N.J. Jan. 24, 2018). While Groupon contends privileged information might have helped its defense, "[t]here is no special reason why purported egregious behavior should be shielded by the fact that the defendant may have to waive its attorney-client privilege." *Finjan, Inc. v.*

---

[1] Groupon aims its motion at excluding (1) documents, communications, and meetings spanning a pre-suit period of nearly ▮▮▮▮ during which the parties discussed licensing and (2) failure to obtain advice of counsel. IBM does not intend to argue failure to obtain the advice of counsel, or failure to present advice of counsel, as a basis for willful infringement. *See* 35 U.S.C. § 298. IBM should not be precluded, however, from presenting relevant evidence of Groupon's knowledge, intent, and delay during pre-suit licensing discussions.

*SonicWall, Inc.*, No. 17-cv-04467-BLF, 2018 WL 2234370, at *5 (N.D. Cal. May 16, 2018).

Groupon's proposed broad and conclusory exclusion would encourage infringers to string along licensing negotiations and later claim prejudice to block evidence of bad faith, which is relevant to willfulness. *See Finjan*, 2018 WL 2234370, at *3. Groupon's knowledge and actions during licensing discussions are undeniably relevant. This Court has acknowledged the importance of timing and knowledge for willfulness, including the relevance of "those defenses that were never relied on during this period of challenged conduct." *Evonik Degussa GmbH v. Materia, Inc.*, No. 09-CV-636 (NLH/JS), 2018 WL 1532425, at *12 (D. Del. Mar. 28, 2018). Even the Supreme Court in *Halo*, as well as the *Halo* district court on remand, discussed evidence of pre-suit exchanges and corresponding defenses as relevant to willfulness in that case. *Halo*, 136 S. Ct. at 1931; *see also Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 281 F. Supp. 3d 1087 (D. Nev. 2017).

████████████████████████████████████████████

Groupon's reference to FRE 408 is likewise misplaced.[2] "[E]vidence of facts disclosed during compromise negotiations is not inadmissible by virtue of having been first disclosed in the compromise negotiations." *Phoenix Sols. Inc. v. Wells Fargo Bank, N.A.*, 254 F.R.D. 568, 584 (N.D. Cal. 2008). Groupon cannot exclude its knowledge of infringement merely because it was presented by IBM during licensing discussions. And Rule 408 does not exclude evidence offered for knowledge and intent relevant to willfulness. *See, e.g.*, *Samsung Electronics Co., Ltd. v. Quanta Computer, Inc.*, No. C-00-4524-VRW, 2006 WL 2850028 (N.D. Cal. 2006); *Ericsson Inc. v. TCL Commc'n Tech. Holdings, Ltd.*, No. 2:15-CV-00011-RSP, 2017 WL 5137401, at *8 (E.D. Tex. Nov. 4, 2017).

Pre-suit exchanges are relevant and admissible for purposes that Groupon does not address, including to give context to the parties' dispute. They are relevant to knowledge for indirect infringement, *Commil USA, LLC v. Cisco Syst., Inc.*, 135 S. Ct. 1920, 1926 (2015), to the parties' sophistication in negotiations, a factor in the damages analysis, *see Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970), and to Groupon's decision to continue its infringing actions instead of implementing alternatives. *See EMC Corp., et al. v. Pure Storage, Inc.*, No. 13-1985-RGA, 2016 WL 775742, at *1 (D. Del. Feb. 25, 2016).

---

[2] The string of cases Groupon cites in its assertion of FRE 402, 403, and 408 also do not support exclusion. First, in *LadaTech, LLC v. Illumina, Inc.*, No. 09-627-SLR, 2012 WL 1188266 (D. Del. Feb. 14, 2012), this Court excluded evidence of licensing attempts as prejudicial in a case where willfulness and damages had been bifurcated from the case, but explicitly noted "the court disagrees with defendants that Federal Rule of Evidence 408 bars the admission of this evidence." *Id.* at *1. Second, in *France Telecom S.A. v. Marvell Semiconductor Inc.*, 82 F. Supp. 3d 987 (N.D. Cal. 2015), the Court held that documents from the "discussions between the parties" "is relevant to [plaintiff's] willfulness allegation, and is appropriately admitted under Rule 408." *Id.* at 1009. Third, in *Parallel Networks Licensing, LLC v. Microsoft Corp.*, No. 13-2073-KAJ-SRF (D. Del. Mar. 20, 2017), the Court excluded a single email sent under an NDA, a far cry from the nearly five years of exchanges Groupon seeks to exclude. *Id.* at Dkt. No. 386 at 32:18-33:5.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| INTERNATIONAL BUSINESS MACHINES CORPORATION, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | C.A. No. 1:16-cv-00122-LPS |
| GROUPON, INC. | ) ) | |
| Defendant. | ) ) | |

**REPLY OF DEFENDANT GROUPON, INC.**
**IN SUPPORT OF GROUPON, INC.'S MOTIONS *IN LIMINE***

**[TO BE FILED REDACTED]**

1

## I.    REPLY IN SUPPORT OF GROUPON'S MOTION *IN LIMINE* NO. 1

IBM identifies not one pre-suit communication that is purportedly relevant to its willful-ness and indirect infringement allegations.  Nor does it explain why any specific pre-suit commu-nication is admissible under FRE 408.  The parties were negotiating a settlement.  Using the com-munications to prove indirect and willful infringement claims is prohibited under FRE 408.  *See Parallel Networks Licensing, LLC v. Microsoft Corp.*, No. 13-2073-KAJ-SRF, D.I. 386 at 32:19-37:16 (D. Del. Mar. 20, 2017) (precluding pre-suit claim chart to show willfulness); *Trading Techs. Int'l, Inc. v. BCG Partners, Inc.*, 10 C 715, 2011 WL 3946581, at *2 (N.D. Ill. Sept. 2, 2011) (striking settlement negotiations to show indirect infringement); *see also Inline Connection Corp. v. AOL Time Warner Inc.*, 470 F. Supp. 2d 435, 444 (D. Del. 2007) ("Evidence of prior settlement negotiations . . . is generally forbidden under FRE 408.").



IBM's attempt to now use the substance of the commu-nications for a finding of willfulness must be rejected.  The only reason to seek a willfulness de-termination is to attempt to enhance damages—the claim of willfulness serves no other purpose.[1]

---

[1] IBM also makes passing references to the parties' sophistication—something that can be estab-lished otherwise at trial, and Groupon's decision to continue infringement—again, something that can be established otherwise at trial through Groupon's fact witnesses.  Neither justifies ignoring FRE 408 and ▮▮▮▮▮▮▮▮▮▮.  (IBM Opp. at 3.)

1

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

INTERNATIONAL BUSINESS MACHINES COR-
PORATION,

              Plaintiff,

              v.

GROUPON, INC.

              Defendant.

C.A. No. 1:16-cv-00122-LPS

**MOTION IN LIMINE NO. 2 OF DEFENDANT GROUPON, INC. TO EXCLUDE IBM CORP. FROM PRESENTING ANY REFERENCE TO THE PRESUMPTION OF VALIDITY**

Groupon, Inc. moves the Court to preclude IBM Corp. from referencing the presumption of patent validity in its trial presentation.  In this case, the Court will instruct the jury that to establish invalidity of the asserted patents, Groupon must meet the clear and convincing evidence standard.  The Federal Circuit has ruled that the presumption of validity and the clear and convincing evidence standard are "in reality different expressions of the same thing—a single hurdle to be cleared." *Chiron Corp. v. Genentech, Inc.*, 363 F.3d 1247, 1258-59 (Fed. Cir. 2004).  Any reference to the separate concept of a "presumption" would therefore provide the jury with no greater insight as to the nature of the burden of proof and will only result in jury confusion and prejudice to Groupon. *See* Fed. Judicial Ctr., Patent Case Mgmt. Judicial Guide (3d ed 2016) at § 7.3.4.3 (noting that it is "generally agreed that while juries should be instructed on the higher burden of proof required to prove invalidity, they should not be instructed that there is a presumption of validity, which would be redundant and likely confusing"); *Erfindergemeinschaft UroPep GbR v. Eli Lilly & Co.*, No. 2:15-cv-1202-WCB, 2017 WL 959592, at *6 (E.D. Tex. Mar. 13, 2017); *Axcess Int'l, Inc. v. Savi Techs., Inc.*, No. 3:10-cv-1033-F, Dkt No. 270 at 4 (N.D. Tex. Jan. 25, 2013).

For this reason, courts have precluded parties from referring to a presumption of validity at trial. *Voda v. Cordis Corp.*, No. 03-cv-1512-L, 2006 WL 5347777, at *2-3 (W.D. Okla. May 10, 2006) (precluding reference to the presumption of validity because the jury will be instructed on the burden of proof for invalidity); *Smith & Nephew, Inc. v. Interlace Med., Inc.*, No. 10-10951-RWZ, 2012 WL 3560811, at *2 (D. Mass. Aug. 17, 2012) (same); *Koninklijke Philips Elecs. N.V. v. Cinram Int'l Inc.*, No. 08-cv-00515-RGS, Dkt. No. 639 at 2-3 (S.D.N.Y. Oct. 31, 2012) (same); *Erfindergemeinschaft UroPep GbR*, 2017 WL 959592, at *6 (same); *Axcess Int'l*, Dkt. No. 270 at 4 (same); *Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*, No. 3:08-cv-00335-IEG-NLS, Dkt. No. 250 (S.D. Cal. Nov. 12, 2009) (granting motion to preclude references to presumption of

validity at trial); *Prisim Techs. LLC v. AT&T Mobility, LLC*, No. 8:12-cv-122, Dkt. No. 427 at 8 (D. Neb. Oct. 6, 2014) (same); *EVM Sys., LLC v. Rex Med., L.P.*, No. 6:13-cv-184, Dkt No. 183 at 2-3 (E.D. Tex. June 10, 2015) (same); *Tinnus Enters., LLC v. Telebrands Corp.*, No. 6:16-cv-00033-RWS, Dkt No. 477 at 3 (E.D. Tex. Oct. 26, 2017) (same); *see also Callaway Golf Co. v. Acushnet Co.*, No. 06-cv-091-SLR, Dkt. No. 648 at 15-16 (D. Del. Apr. 21, 2011) (finding no legal error in excluding from jury instructions an instruction about the presumption of validity); *Server Tech., Inc. v. Am. Power Conversion Corp.*, No. 3:06-cv-00698-LRH, 2014 WL 1308617, at *4 (D. Nev. Mar. 31, 2014) (finding argument and instruction relating to a patent's presumption of validity prejudicial to the defendant "where the evidence before the factfinder was not before the PTO during the examination process" (citing *Oracle Am., Inc. v. Google Inc.*, No. 10-cv-03561-WHA, 2012 U.S. Dist. LEXIS 688, at *11–12 (N.D. Cal. Jan. 4, 2012))).

The Court should do the same here. Its instruction to the jury that Groupon must prove invalidity by clear and convincing evidence is alone sufficient and need not be bolstered by any reference in IBM's trial presentation to a "presumption of validity" that suggests an additional— if not more exacting—standard of proof. Indeed, the parties have agreed that the instructive "Patent Process – An Overview for Jurors" video prepared by the Federal Judicial Center should be played for the jury at the outset of trial. The video does not reference the presumption of validity. Nor is such reference necessary because the presumption of validity "is one of law, not fact, and does not constitute 'evidence' to be weighed against a challenger's evidence." *Avia Grp. Int'l, Inc. v. L.A. Gear Cal., Inc.*, 853 F.2d 1557, 1562 (Fed. Cir. 1988), *abrogated on other grounds by Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665 (Fed. Cir. 2008). Any reference to the presumption would only confuse and mislead the jury about the appropriate burden of proof, and irreparably prejudice Groupon, as jurors may not understand that the presumption is already built

2

into the clear and convincing evidence standard for invalidity.  Fed. R. Evid. 403; *Iron Grip Barbell Co. v. USA Sports, Inc.*, 392 F.3d 1317, 1323 (Fed. Cir. 2004) ("[T]he grant of a patent does not create a presumption of validity beyond the requirement that the party seeking to invalidate a patent must prove invalidity by clear and convincing evidence.").

Accordingly, the Court should bar IBM from referring or arguing to the jury that the patents it asserts are presumed to be valid.

Respectfully submitted,

ASHBY & GEDDES

*Of counsel:*

J. David Hadden
Saina S. Shamilov
Phillip J. Haack
Sapna Mehta
FENWICK & WEST LLP
Silicon Valley Center
801 California Street
Mountain View, CA  94041
Telephone:    650.988.8500
Facsimile:    650.938.5200

Dated:    May 14, 2018

By: */s/ Saina S. Shamilov*
    Saina S. Shamilov (*pro hac vice*)

    John G. Day (#2403)
    Andrew C. Mayo (#5207)
    500 Delaware Avenue, 8th Floor
    P.O. Box 1150
    Wilmington, DE  19899
    (302) 654-1888
    jday@ashby-geddes.com
    amayo@ashby-geddes.com

    Attorneys for Defendant
    GROUPON, INC.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| INTERNATIONAL BUSINESS MACHINES CORPORATION, | ) ) ) | |
| Plaintiff, | ) ) | C.A. No. 16-122-LPS |
| v. | ) ) ) | **JURY TRIAL DEMANDED** |
| GROUPON, INC. | ) ) ) | |
| Defendant. | ) | |

## PLAINTIFF INTERNATIONAL BUSINESS MACHINES CORPORATION'S
## OPPOSITION TO GROUPON'S MOTION IN LIMINE #2

OF COUNSEL:

John M. Desmarais
Karim Z. Oussayef
Laurie Stempler
Robert C. Harrits
Brian D. Matty
Michael Matulewicz-Crowley
DESMARAIS LLP
230 Park Avenue
New York, NY 10169
Tel: (212) 351-3400

Dated: May 25, 2018

David E. Moore (#3983)
Bindu A. Palapura (#5370)
Stephanie E. O'Byrne (#4446)
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801
Tel: (302) 984-6000
dmoore@potteranderson.com
bpalapura@potteranderson.com
sobyrne@potteranderson.com

*Attorneys for Plaintiff*
*International Business Machines Corporation*

II.    **GROUPON'S MOTION *IN LIMINE* NO. 2: Motion To Exclude IBM Corp. From Presenting Any Reference To The Presumption Of Validity.**

Groupon's motion *in limine* seeks to exclude information that this Court routinely includes in jury instructions and that would help the jury understand the difference between the burden for proving infringement and that for proving invalidity. Groupon's motion is also unnecessary because instructing the jury on the statutory presumption of validity is not prejudicial.

This Court has routinely instructed juries on the statutory presumption of validity to explain why a defendant in a patent case has a higher burden of proof than the plaintiff. *See, e.g., GlaxoSmithKline LLC et al. v. Teva Pharmaceuticals USA Inc.*, No. 14-cv-877, D.I. 440 at 33 (D. Del. Jun. 19, 2017) (Ex. H) ("The law presumes that the Patent and Trademark Office acted correctly in issuing the patent. . . . This presumption puts the burden on [the defendant] of proving invalidity by clear and convincing evidence."); *W.L. Gore & Associates Inc. v. C.R. Bard Inc.*, No. 11-cv-515, D.I. 777 at 25 (D. Del. March 7, 2017) (Ex. I) (same); *Idenix Pharmaceuticals LLC et al. v. Gilead Sciences, Inc.*, No. 14-cv-846, D.I. 516 at 13 (D. Del. Dec. 15, 2016) (Ex. J) (same); *Greatbatch Ltd. v. AVX Corporation et al.*, No. 13-cv-723, D.I. 623 at 38 (D. Del. Jan. 25, 2016) (Ex. K) (same); *see also* AIPLA's 2017 Model Patent Jury Instructions (Ex. L) at 4 ("A patent is presumed to be valid."); *id.* at 6. By allowing the parties to explain and discuss the statutory presumption of validity, the jury will have the proper framework for understanding the reasoning behind the parties' different burdens.

Additionally, explaining the presumption of validity will be helpful to the jury, not confusing. To understand the reason behind the parities' different evidentiary burdens, the jury should be informed of the statutory presumption of validity. 35 U.S.C. § 282 ("A patent shall be presumed valid."). Numerous courts have found it "helpful for the parties to discuss the presumption as a way of educating the jury about the differing burdens." *Ion, Inc. v. Sercel, Inc.*,

No. 5:06-cv-236, 2009 WL 10677800, at *3 (E.D. Tex. July 22, 2009); *see also WesternGeco L.L.C. v. ION Geophysical Corp.*, No. 4:09-CV-1827, 2012 WL 2911968, at *4 (S.D. Tex. July 16, 2012) ("This presumption is inextricably linked to Defendants' burden . . . . The Court finds that the presumption of validity is not only appropriate information for the jury, but that it is helpful."). By explaining the presumption of validity, the jury will be better able to understand why the burdens are assigned to the parties. *Donnelly Corp. v. Gentex Corp.*, 918 F. Supp. 1126, 1131 (W.D. Mich. 1996) ("Such instructions do not wrongly describe the effect of the presumption as evidentiary, but rather simply explain to the jury why the burdens are so assigned."). Further, failing to explain the reasoning behind Groupon's heightened burden creates the risk that the jury will conflate the burden for infringement with the burden for invalidity. *Fleming v. Escort, Inc.*, No. 09-cv-105-BLW, 2012 WL 1995069, at *5 (D. Idaho June 4, 2012) ("To instruct the jury on [defendant]'s burden of proof without explaining why it is more demanding than [plaintiff]'s burden could cause jurors to overlook the different wording of the burdens and treat them both the same."). Thus, to avoid confusing the jury, the parties should be permitted to discuss the presumption of validity. *Id.* ("By identifying the source of a potential stumbling point for the jury—an unequal burden of proof—the court prevented them from tripping over it during deliberations.").

Finally, discussing the presumption of validity will not prejudice Groupon. The Federal Circuit has already held that it is not error to instruct the jury about the presumption of validity. *See Ion, Inc.*, 2009 WL 10677800 at *3 (*citing Novo Nordisk A/S v. Becton Dickinson and Co.*, 304 F.3d 1216, 1220 (Fed. Cir. 2002)); *see also Harris Corp. v. Fed. Express Corp.*, No. 607CV1819ORL28KRS, 2010 WL 11474447, at *1 (M.D. Fla. July 19, 2010) (noting that in *Chiron* the Federal Circuit "did not find, as [defendant] suggests, that any mention of the

presumption in the presence of the jury is somehow prejudicial to the alleged infringer"). "[P]resumption is a matter of federal law . . . [and] [t]he low risk of unfair prejudice, misleading the jury, and confusing the issues does not justify excluding any reference to a 'presumption' of validity." *Bombardier Recreational Prod., Inc. v. Arctic Cat Inc.*, No. CV 12-2706 (JRT/LIB), 2017 WL 5256741, at *4 (D. Minn. Nov. 11, 2017); *see also Lighting Ballast Control, LLC v. Philips Elecs. N. Am. Corp.*, No. 7:09-CV-29-O, 2011 WL 7575006, at *8 (N.D. Tex. June 10, 2011) (finding "the contention that [the plaintiff]'s reference to a patent's statutory presumption of validity is prejudicial is not well taken"); *Texchem Advanced Prod. Inc. Sdn. Bhd. v. e.PAK Int'l Inc.*, No. EDCV121341JGBSPX, 2014 WL 12589656, at *4 (C.D. Cal. June 11, 2014) (denying motion *in limine* where the defendant argued the presumption would "confuse the jury and cause undue prejudice"). Given the lack of prejudice and confusion to the jury, numerous courts have denied similar motions and upheld instructions based on the presumption of validity. *See, e.g., Nobelbiz, Inc. v. Glob. Connect, L.L.C.*, No. 6:12-CV-244, 2015 WL 11072170, at *3 (E.D. Tex. Sept. 2, 2015) (denying motion *in limine*); *Ultratec, Inc. v. Sorenson Commc'ns, Inc.*, No. 13-CV-346-BBC, 2014 WL 4955302, at *1 (W.D. Wis. Oct. 1, 2014) (finding "no reason to deviate from this court's practice of instructing juries about the presumption and permitting the lawyers to refer to it in their arguments"); *Volterra Semiconductor Corp. v. Primarion, Inc.*, No. C-08-05129 JCS, 2011 WL 4079223, at *10 (N.D. Cal. Sept. 12, 2011).

For all of the above reasons, the Court should deny Groupon's motion *in limine* No. 2.

# GROUPON REPLY MIL 2

## II.     REPLY IN SUPPORT OF GROUPON'S MOTION *IN LIMINE* NO. 2

Presumption of validity and the clear and convincing evidence standard are different terms for the same concept. *Chiron Corp. v. Genentech, Inc.*, 363 F.3d 1247, 1258-59 (Fed. Cir. 2004) (they are "in reality different expressions of the same thing—a single hurdle to be cleared").[2] Instructing the jury on both would mislead them to believe that the invalidity standard is higher than it is. It risks presenting Groupon with two hurdles to clear, thereby prejudicing Groupon. Fed. R. Evid. 403. A presumption of validity instruction is also unnecessary to clarify the differences between the two evidentiary standards; the definitions of those standards alone are sufficient. *Erfindergemeinschaft UroPep GbR v. Eli Lilly & Co.*, No. 2:15-cv-1202-WCB, 2017 WL 959592, at *6 (E.D. Tex. Mar. 13, 2017) ("use of the phrase 'presumption of validity' would add little to the jury's understanding of the burden of proof on the validity issues" and "might be confusing to the jury, to the extent that the jury is required to consider both that phrase and the Court's instructions on the burden of proof"). Indeed, Groupon's proposed jury instructions explain that the clear and convincing evidence standard is higher than preponderance of the evidence, stating that it requires evidence "produc[ing] an abiding conviction that the truth of a factual contention is highly probable" as compared to the "more likely than not" preponderance standard. And an instruction that "the law presumes that the [PTO] acted correctly in issuing the patent" is not the same as, and is less prejudicial than, an instruction that the law presumes an issued patent to be valid. This Court routinely issues instructions without any reference to the presumption of validity.[3] It should do so here and should bar IBM from referring to the presumption of validity at trial.

---

[2] The Federal Circuit case IBM cites is irrelevant. *Novo Nordisk A/S v. Becton Dickinson & Co.* addressed a plaintiff's claim that it was prejudiced by statements at trial concerning examiner error. 304 F.3d 1216, 1220 (Fed. Cir. 2002). The presumption of validity instruction was only mentioned as one of several counter-arguments upon which the Federal Circuit did not rely in its ruling. *Id.*
[3] *See, e.g.*, No. 09-cv-0080-LPS, D.I. 908 (2014); No. 12-cv-0540-LPS, D.I. 400 (2015); No. 14-cv-1330-WCB, D.I. 524 (2017); No. 15-cv-839-RGA, D.I. 323 (2017); No. 15-cv-709-RGA, D.I. 259 (2018); No. 14-cv-1250-RGA, D.I. 325 (2017); No. 13-cv-01985-RGA, D.I. 448 (2016); No. 12-cv-569-SLR, D.I. 360 (2015); No. 15-cv-0033-RGA, D.I. 719 (2017).

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| INTERNATIONAL BUSINESS MACHINES COR-PORATION, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) C.A. No. 1:16-cv-00122-LPS ) |
| GROUPON, INC. | ) ) |
| Defendant. | ) ) |

**MOTION IN LIMINE NO. 3 OF DEFENDANT GROUPON, INC. TO EXCLUDE IBM CORP. FROM PRESENTING ANY DOCTRINE OF EQUIVALENTS THEORIES THAT CAPTURE THE PRIOR ART**

Groupon, Inc. moves the Court to prohibit IBM Corp. from presenting any evidence, reference, argument, or testimony regarding any theory of infringement under the doctrine of equivalents, which would ensnare the prior art.  IBM and its technical expert have advanced an infringement theory under the doctrine of equivalents for U.S. Patent No. 5,961,601 (the "'601 patent") that ensnares the Amazon prior art system at issue in the case.[1]  Under binding Federal Circuit precedent, such infringement theory is improper and irrelevant for any presentation to the jury.  It can, and here should, be excluded "through [a] pretrial motion in limine."  *Jang, M.D. v. Boston Sci. Corp.*, 872 F.3d 1275, 1285, 1287–88 (Fed. Cir. 2017), *pet. for cert. filed*, 86 U.S.L.W. 3504 (U.S. Mar. 21, 2018) (No. 17-1332).

Ensnarement is "a limitation on the reach of the doctrine" of equivalents, which specifies that a doctrine of equivalents infringement theory may not "ensnare" the prior art.  *Id.* at 1284–85, 1287–88.  It is rooted in the well-established principle that a "patentee should not be able to obtain, under the doctrine of equivalents, coverage which he could not lawfully have obtained from the PTO by literal claims."  *We Care, Inc. v. Ultra-Mark Int'l Corp.*, 930 F.2d 1567, 1570 (Fed. Cir. 1991) (citation omitted).  "[E]nsnarement is a question of law for the court, not the jury, to decide."  *DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 567 F.3d 1314, 1324 (Fed. Cir. 2009).

The Federal Circuit's preferred way to determine whether an asserted equivalence is permissible is "to construct a hypothetical claim that literally covers the accused device" according to the patentee and then "determine whether the patentee has carried its burden of persuading the court that the hypothetical claim is patentable over the prior art."  *Jang*, 872 F.3d at 1285 (quoting *Intendis GmbH v. Glenmark Pharms. Inc., USA*, 822 F.3d 1355, 1363–64 (Fed. Cir. 2016)); *see also Conroy v. Reebok Int'l, Ltd.*, 14 F.3d 1570, 1576 (Fed. Cir. 1994).  This hypothetical claim

---

[1] The Amazon prior art system invalidates the asserted claims of the '601 patent regardless of whether IBM is allowed to advance its doctrine of equivalents infringement theory.

"may not add any narrowing limitations." *Jang*, 872 F.3d at 1286. If the patentee cannot prove that its claim would not ensnare the prior art, "then it would be improper to permit the patentee to obtain that coverage in an infringement suit under the doctrine of equivalents." *Wilson Sporting Goods Co. v. David Geoffrey & Assocs.*, 904 F.2d 677, 684 (Fed. Cir. 1993); *Jang*, 872 F.3d at 1285.

Here, IBM cannot meet its burden. The '601 patent requires "identifying *all continuations in an output*" from a service and "embedding the state information in *all identified continuations*." (D.I. 1-1, Ex. C ('601 patent) at 18:15–19 (emphases added).) IBM and its expert assert that Groupon's website and mobile applications infringe the patent under the doctrine of equivalents because they purportedly identify and embed state information in *some* continuations, rather than "all" required by the claims. (*E.g.*, D.I. 228, Ex. 14 (Schmidt Report Ex. VII.A) ¶¶ 165–67, ¶¶ 195–97 (opining that Groupon infringes under the doctrine of equivalents because it is sufficient for its accused instrumentalities to identify and embed state information in only those "continuations that are related to a transaction, search, or deal").) In other words, to show infringement under the doctrine of equivalents, IBM and its expert propose that the "all continuations" requirement of the claims be replaced with "some continuations." At the same time, however, IBM and its expert assert that the Amazon prior art system does not anticipate the claims of the '601 patent because, purportedly, only some and not all continuations in its output contain embedded state information. (*See, e.g.*, *id.*, Ex. 27 (Schmidt Rebuttal Report) ¶ 1699; D.I. 209 (IBM's motion for summary judgment) at 10–11.) IBM cannot have it both ways. It simply cannot construct a claim that would literally encompass Groupon's website and mobile applications but not ensnare the Amazon prior art system (whether that system embeds state information in all or some of its continuations). Indeed, it has not even attempted to do so. IBM's expert has not advanced any opinion attempting to establish that the Amazon prior art system does not capture his infringement theory

2

under the doctrine of equivalents.

The ensnarement limitation was precisely designed to exclude infringement theory such as the one advanced by IBM here. *See Jang*, 872 F.3d at 1285. Indeed, if an infringement theory under the doctrine of equivalents would ensnare the prior art, then, even if a jury finds "equivalence as to each claim element," the accused process or device is deemed not an equivalent. *Id.* (quoting *DePuy Spine*, 567 F.3d at 1323). Accordingly, because any evidence, reference, argument, or testimony relating to IBM's doctrine of equivalents infringement theory for the '601 patent would be irrelevant and "of [no] consequence in determining the action" for the jury, the Court should forbid IBM from raising it at trial. *See* Fed. R. Evid. 401(b).

<div style="margin-left: 50%;">

Respectfully submitted,

ASHBY & GEDDES

</div>

*Of counsel:*

J. David Hadden
Saina S. Shamilov
Phillip J. Haack
Sapna Mehta
FENWICK & WEST LLP
Silicon Valley Center
801 California Street
Mountain View, CA 94041
Telephone:    650.988.8500
Facsimile:    650.938.5200

Dated:   May 14, 2018

By: */s/ Saina S. Shamilov*
        Saina S. Shamilov (*pro hac vice*)

        John G. Day (#2403)
        Andrew C. Mayo (#5207)
        500 Delaware Avenue, 8th Floor
        P.O. Box 1150
        Wilmington, DE 19899
        (302) 654-1888
        jday@ashby-geddes.com
        amayo@ashby-geddes.com

        Attorneys for Defendant
        GROUPON, INC.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| INTERNATIONAL BUSINESS MACHINES CORPORATION, | ) ) ) | |
| Plaintiff, | ) ) | C.A. No. 16-122-LPS |
| v. | ) ) | **JURY TRIAL DEMANDED** |
| GROUPON, INC. | ) ) ) | |
| Defendant. | ) | |

## PLAINTIFF INTERNATIONAL BUSINESS MACHINES CORPORATION'S
## OPPOSITION TO GROUPON'S MOTION IN LIMINE #3

OF COUNSEL:

John M. Desmarais
Karim Z. Oussayef
Laurie Stempler
Robert C. Harrits
Brian D. Matty
Michael Matulewicz-Crowley
DESMARAIS LLP
230 Park Avenue
New York, NY 10169
Tel: (212) 351-3400

Dated: May 25, 2018

David E. Moore (#3983)
Bindu A. Palapura (#5370)
Stephanie E. O'Byrne (#4446)
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801
Tel: (302) 984-6000
dmoore@potteranderson.com
bpalapura@potteranderson.com
sobyrne@potteranderson.com

*Attorneys for Plaintiff*
*International Business Machines Corporation*

III.    **GROUPON'S MOTION *IN LIMINE* NO. 3: Motion To Exclude IBM Corp. From Presenting Any Doctrine Of Equivalents Theories That Capture The Prior Art.**

Groupon argues that all evidence and testimony relating to IBM's doctrine of equivalents infringement theory for U.S. Patent No. 5,961,601 (the "'601 patent") should be excluded because it is "irrelevant and 'of [no] consequence in determining the action' for the jury." Groupon MIL 3 Opening Brief at 3. But evidence relating to an infringement theory is relevant to the issue of infringement. In seeking to exclude an entire infringement theory, Groupon's motion is not directed to an evidentiary issue but to a substantive issue: alleged ensnarement. Moreover, Groupon seeks a ruling as a matter of law, despite numerous unresolved factual issues.

Motions *in limine* that "seek[] a dispositive ruling on a substantive issue in the case" are improper and should be denied. *Sonos, Inc. v. D&M Holdings Inc.*, No. CV 14-1330-WCB, 2017 WL 5633204, at *2 (D. Del. Nov. 21, 2017) (Bryson, J.); *Meyer Intellectual Properties Ltd. v. Bodum, Inc.*, 690 F.3d 1354, 1378 (Fed. Cir. 2012). Groupon's untimely decision to assert its ensnarement defense in the guise of a motion *in limine* denies IBM the "procedural protections of notice which the federal rules require before judgment on the merits may be granted." *Bradley v. Pittsburgh Bd. of Educ.*, 913 F.2d 1064, 1070 (3d Cir. 1990). It also deprives the parties and the Court of the opportunity to develop the issue in detail. *Moon Express, Inc. v. Intuitive Machines, LLC*, No. CV 16-344-LPS, 2017 WL 6380750, at *2 (D. Del. Dec. 14, 2017). Groupon's motion is thus improper and should be denied.[3]

Groupon uses language from *Jang, M.D. v. Boston Sci. Corp.*, 872 F.3d 1275 (Fed. Cir. 2017) to imply that doctrine of equivalents theories can be excluded "through [a] pretrial motion

---

[3] Furthermore, Groupon's brief only references IBM's doctrine of equivalents theory for the '601 patent and its alleged ensnarement of Amazon. Groupon does not reference any other alleged prior art, patent, or doctrine of equivalents theories. Therefore, the Court should at a minimum deny Groupon's motion *in limine* with respect to all other alleged prior art, patents, and doctrine of equivalents theories.

in limine." Groupon's MIL 3 Opening Brief at 1. However, *Jang* concerned an appeal from a post-trial hearing, not a motion *in limine*. *Jang, M.D.*, 872 F.3d at 1281. And Groupon's quoted language only concerns whether the accused infringer preserved its ensnarement defense, not whether it should be excluded *in limine*. *Id.* at 1288; *see* Brief of Plaintiff-Appellant at 23, *Jang, M.D. v. Boston Sci. Corp.*, No. 2016-1275 (Fed. Cir. filed May 23, 2016), ECF No. 34 (Ex. M).

Groupon's dispositive motion fails on the merits as well. To analyze ensnarement, courts first create a "hypothetical claim" that covers infringement under the doctrine of equivalents[4] and then determine whether the prior art would render the hypothetical claim invalid. *Conroy v. Reebok Int'l, Ltd.*, 14 F.3d 1570, 1576 (Fed. Cir. 1994). Although ensnarement is a question of law, it involves "underlying factual issues," such as the scope of the prior art and the differences between the prior art and the "hypothetical claim." *DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 567 F.3d 1314, 1324 (Fed. Cir. 2009). Genuine disputes as to these underlying factual issues preclude resolution of the dispositive motion. *Conroy*, 14 F.3d at 1577.

IBM's doctrine of equivalents theory does not ensnare the prior art. As an initial matter, Groupon mischaracterizes IBM's theory. IBM does not contend that identifying and embedding state information in *some* continuations is always equivalent to identifying and embedding state information in *all* continuations. *See* Groupon's MIL 3 Opening Brief at 2. Rather, Dr. Schmidt opines that identifying and embedding state information in "*all continuations that are related to a current deal, search, or transaction*" is equivalent to identifying and embedding state information in *all continuations*. (D.I. 249, Ex. 5 ¶¶ 164-167, 194-197 (Schmidt Opening Report,

---

[4] Groupon alleges that "[IBM] has not even attempted to [construct a hypothetical claim]." But Groupon never raised ensnarement before its motion *in limine* and IBM is "not required to negate an [ensnarement] affirmative defense that has not been pled and supported with evidence." *See Fiskars, Inc. v. Hunt Mfg. Co.*, 221 F.3d 1318, 1323 (Fed. Cir. 2000).

Ex. VII A).)  Groupon failed to analyze ensnarement with respect to IBM's actual doctrine of equivalents theory and thus has not met its "burden of coming forward with evidence to show that the accused device is in the prior art." *Nat'l Presto Indus., Inc. v. W. Bend Co.*, 76 F.3d 1185, 1192 (Fed. Cir. 1996).

Further, ensnarement only applies where the prior art would invalidate the "hypothetical claim" as a whole, not just the equivalent claim element. *Abbott Labs. v. Dey, L.P.*, 287 F.3d 1097, 1106 (Fed. Cir. 2002).  Here, substantial evidence demonstrates that IBM's doctrine of equivalents theory does not ensnare the prior art.  As set forth in IBM's pending Motion For Summary Judgment Of No Invalidity In View Of Amazon (D.I. 208), there is no evidence that Amazon was publicly used or known in an invalidating configuration prior to the date of invention of the '601 patent. (*See generally* D.I. 209.)  Even if Amazon were prior art to the '601 patent, it did not meet all of the elements of the claims. First, Dr. Schmidt opined that there is no evidence that the Amazon system met the identifying and embedding steps for all continuations "related to a current deal, search, or transaction."    (D.I. 249, Ex. 34 ¶¶ 1689-1699 (Schmidt Rebuttal Report).) Likewise, Dr. Weissman admitted that Amazon did not recursively embed state information in all continuations that are related to a current deal, search, or transaction in an output.  (D.I. 210, Ex. D ¶ 22 (Weissman Supplemental Reply Report).)  Second, Dr. Schmidt opined that Amazon did not meet other claim elements, such as the "detecting" and "communicating" steps. (D.I. 249, Ex. 34 ¶¶ 1685-1693, 1700-1704 (Schmidt Rebuttal Report).)  Third, Dr. Weissman admitted at deposition that Amazon "may not meet claim 51" because it performs the elements in the wrong order.  (D.I. 210, Ex. E at 409:18-25 (Weissman Dep. Tr.).)  Therefore, IBM's doctrine of equivalents theory does not ensnare the prior art.

DATED: May 25, 2018

Respectfully submitted,

POTTER ANDERSON & CORROON LLP

*/s/ Bindu A. Palapura*

David E. Moore (#3983)
Bindu A. Palapura (#5370)
Stephanie E. O'Byrne (#4446)
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801
Tel: (302) 984-6000
dmoore@potteranderson.com
bpalapura@potteranderson.com
sobyrne@potteranderson.com

John M. Desmarais (admitted *pro hac vice*)
Karim Z. Oussayef (admitted *pro hac vice*)
Laurie Stempler (admitted *pro hac vice*)
Robert C. Harrits (admitted *pro hac vice*)
Brian D. Matty (admitted *pro hac vice*)
Michael Matulewicz-Crowley (admitted *pro hac vice*)
DESMARAIS LLP
230 Park Avenue
New York, NY 10169
(212) 351-3400

*Attorneys for Plaintiff*
*International Business Machines*
*Corporation*

# GROUPON REPLY MIL 3

### III.    REPLY IN SUPPORT OF GROUPON'S MOTION *IN LIMINE* NO. 3

IBM has not identified a hypothetical claim that is "sufficient in scope to cover literally" the accused instrumentalities but which is also "patentable over the prior art." *See Conroy v. Reebok Int'l, Ltd.*, 14 F.3d 1570, 1576 (Fed. Cir. 1994). That is IBM's burden, and by failing to carry it, it has forfeited this theory of infringement. *See Jang, M.D. v. Boston Sci. Corp.*, 872 F.3d 1275, 1285, 1287 (Fed. Cir. 2017) ("Because, as a threshold matter, [plaintiff] failed to submit a proper hypothetical claim for consideration, he was unable to meet his burden of proving that his doctrine of equivalents theory did not ensnare the prior art."); *Intendis GMBH v. Glenmark Pharm. Inc., USA*, 822 F.3d 1355, 1363 (Fed. Cir. 2016) (patentee bears the burden of persuading court that the hypothetical claim is patentable over the prior art). Besides, according to IBM, Groupon infringes as an equivalent for the *same* reason that the Amazon prior art does not anticipate. (*See* Att. 16 (Schmidt Rebuttal Report) ¶ 1699; Att. 17 (Schmidt Report Ex. VII.A) ¶¶ 165–67, ¶¶ 195–97.) That is just the sort of sleight-of-hand that the ensnarement doctrine was fashioned to prevent and what Groupon's motion *in limine* seeks: to preclude IBM from advancing a doctrine of equivalents theory that ensnares the prior art.

And there is "nothing legally unsound" in raising ensnarement "through [a] pretrial motion in limine." *Jang*, 872 F.3d at 1288. The defendant in *Jang* did just that. *Id.* "[E]nsnarement is a legal question for the district court to decide"—be it in a case-dispositive motion *or* in a motion *in limine*. *Id.* And that defense is timely as long as it is raised before trial. *Jang, M.D. v. Boston Sci. Corp.*, No. EDCV 05-426-VAP, 2015 WL 5822585, at *2 (C.D. Cal. Sept. 29, 2015). The exclusion Groupon seeks would dispose of no "substantive issue in the case"—not infringement, nor invalidity, nor damages. (*See* Opp. at 7–8 (quoting *Sonos, Inc. v. D&M Holdings Inc.*, No. CV 14-1330-WCB, 2017 WL 5633204, at *2 (D. Del. Nov. 21, 2017))). It would preclude IBM from presenting evidence of infringement on a particular theory that is improper as a matter of law.

Respectfully submitted,

ASHBY & GEDDES

*Of counsel:*

J. David Hadden

Saina S. Shamilov

Phillip J. Haack

Sapna Mehta

FENWICK & WEST LLP

Silicon Valley Center

801 California Street

Mountain View, CA  94041

Telephone:    650.988.8500

Facsimile:    650.938.5200

Dated:   May 31, 2018

By: /s/ Saina S. Shamilov
    Saina S. Shamilov (*pro hac vice*)

    John G. Day (#2403)

    Andrew C. Mayo (#5207)

    500 Delaware Avenue, 8th Floor

    P.O. Box 1150

    Wilmington, DE  19899

    (302) 654-1888

    jday@ashby-geddes.com

    amayo@ashby-geddes.com

    Attorneys for Defendant

    GROUPON, INC.

# ATTACHMENT 1



# ATTACHMENT 2





# ATTACHMENT 3





# ATTACHMENT 4





# ATTACHMENT 5



# ATTACHMENT 8



# ATTACHMENT 9

# ATTACHMENT 15



# ATTACHMENT 16





# ATTACHMENT 17







# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| INTERNATIONAL BUSINESS MACHINES CORPORATION, | ) ) ) |
| | ) C.A. No. 16-122-LPS |
| Plaintiff, | ) |
| | ) **JURY TRIAL DEMANDED** |
| v. | ) |
| | ) **FILED UNDER SEAL** |
| GROUPON, INC., | ) **HIGHLY CONFIDENTIAL –** |
| | ) **ATTORNEYS' EYES ONLY** |
| Defendant. | ) |

## DECLARATION OF BRIAN D. MATTY IN SUPPORT OF
## IBM'S OPPOSITION TO GROUPON'S MOTIONS *IN LIMINE*

I, Brian D. Matty, declare as follows:

1.      I am an attorney with the law firm of Desmarais LLP, counsel of record for Plaintiff International Business Machines Corporation ("IBM") in the above-captioned matter, and I am admitted *pro hac vice* to this Court. I submit this declaration based on personal knowledge, and if called upon as a witness, I could competently testify to the truth of each statement herein.

2.      I make this declaration in support of IBM's Opposition to Groupon's Motions *in Limine*.

3.      Attached hereto as Exhibit H is a true and correct copy of excerpts of the jury instructions in the case *GlaxoSmithKline LLC et al. v. Teva Pharmaceuticals USA Inc.*, No. 14-cv-877, D.I. 440 at 33 (D. Del. Jun. 19, 2017). Highlighting has been added for clarity.

4.      Attached hereto as Exhibit I is a true and correct copy of excerpts of the jury instructions from *W.L. Gore & Associates Inc. v. C.R. Bard Inc.*, No. 11-cv-515, D.I. 777 at 25 (D. Del. March 7, 2017). Highlighting has been added for clarity.

5.      Attached hereto as Exhibit J is a true and correct copy of excerpts of the jury instructions in the case *Idenix Pharmaceuticals LLC et al. v. Gilead Sciences, Inc.*, No. 14-cv-846, D.I. 516 at 13 (D. Del. Dec. 15, 2016). Highlighting has been added for clarity.

6.      Attached hereto as Exhibit K is a true and correct copy of excerpts of the jury instructions in the case *Greatbatch Ltd. v. AVX Corporation et al.*, No. 13-cv-723, D.I. 623 at 38 (D. Del. Jan. 25, 2016). Highlighting has been added for clarity.

7.      Attached hereto as Exhibit L is a true and correct copy of an excerpt of the March 15, 2017 AIPLA Model Patent Jury Instructions obtained at https://www.aipla.org/learningcenter/library/books/other-

pubs/Documents/Forms/DispForm.aspx?ID=15.  Last accessed May 24, 2018. Highlighting has been added for clarity.

8.      Attached hereto as Exhibit M is a true and correct copy of excerpts from the Principal Brief of Plaintiff-Appellant G. David Jang, M.D. (ECF No. 34) filed on May 23, 2016 in the case *Jang, M.D. v. Boston Sci. Corp.*, No. 2016-1275 (Fed. Cir.).

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on May 25, 2018, in Annapolis, MD.


*/s/ Brian D. Matty*
_____

Brian D. Matty (*admitted pro hac vice*)

# EXHIBIT H

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

GLAXOSMITHKLINE LLC and
SMITHKLINE BEECHAM (CORK)
LIMITED,

          Plaintiffs,

   v.

TEVA PHARMACEUTICALS USA, INC.,

          Defendant.

C.A. 14-878-LPS-CJB

**FINAL JURY INSTRUCTIONS**

5.    **INVALIDITY**

5.1        **INVALIDITY GENERALLY**

The granting of a patent by the United States Patent and Trademark office carries with it the presumption that the patent is valid. The law presumes that the Patent and Trademark Office acted correctly in issuing the patent. Each of the asserted claims is presumed valid independently of the validity of each other claim. This presumption puts the burden on Teva of proving invalidity by clear and convincing evidence on a claim-by-claim basis; that is, you must be left with an abiding conviction that the asserted claims of the '000 patent are invalid. This burden may be more difficult to meet when the accused infringer attempts to rely on prior art that was before the patent examiner during prosecution.

Patent invalidity is a defense to patent infringement.

Even though the Patent Office examiner allowed the claims of a patent, you have the ultimate responsibility for deciding whether the claims of the patent are proven to be invalid. For a patent to be valid, the subject matter claimed in the individual claims of the patent must be new, non-obvious, and the specification of the patent must contain a sufficient written description of the claimed invention. A patent cannot take away from the right of anyone who wants to use what was already known or used by others, or what would have been obvious to those of skill in the art at the time the invention was made.

Teva alleges that the '000 patent is invalid because:

1.  claims 1-3 and 6-9 are anticipated by David Kelly's 1993 article "Carvedilol in Heart Failure," which I will refer to as "Kelly 1993";

2.  claims 1-3 and 6-9 are obvious in light of the prior art; and

33

3.  claim 8 lacks an adequate written description because the specification does not suggest the inventors were in possession of methods for reducing mortality cause by CHF using carvedilol.

I will now instruct you in more detail why Teva alleges that the asserted claims of the '000 patent are invalid.

# EXHIBIT I

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| W.L. GORE & ASSOCIATES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 11-515 (LPS) (CJB) |
| | ) | |
| C.R. BARD, INC. and | ) | |
| BARD PERIPHERAL VASCULAR, INC., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**FINAL JURY INSTRUCTIONS**

5.     **INVALIDITY**

**5.1     PATENT INVALIDITY**

Patent invalidity is a defense to patent infringement.  I will now instruct you on the rules you must follow in deciding whether or not Bard has proven that any asserted claim is invalid.

The law presumes that the U.S. Patent Office acted correctly in issuing the patent.  To prove that any claim of a patent is not valid, Bard must persuade you by clear and convincing evidence that the claim is not valid.

Bard challenges the validity of the asserted claims of the '892 patent.  As with infringement, in making your determination as to invalidity, you should consider each claim separately.  Even if you find one patent claim invalid, other claims of the same patent may still be valid.

In determining whether Bard has met its burden, you may consider that you have heard evidence about prior art references that the PTO had no opportunity to evaluate before granting the patent.

# EXHIBIT J

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

IDENIX PHARMACEUTICALS LLC and
UNIVERSITA DEGLI STUDI DI
CAGLIARI,

              Plaintiffs,

     v.

GILEAD SCIENCES, INC.,

             Defendant.

C.A. No. 14-846-LPS

## **FINAL JURY INSTRUCTIONS**

## 1.13    BURDENS OF PROOF

In any legal action, facts must be proven by a required weight of the evidence, known as the "burden of proof." In a patent case such as this one, there are two different burdens of proof that you will apply. The first is called "preponderance of the evidence." The second is called "clear and convincing evidence."

Infringement of the '597 patent is not an issue you are deciding in this case and Idenix is not required to prove infringement at this trial. Instead, you are to assume that Gilead infringes the '597 patent. You must decide whether Idenix has proven that Gilead's infringement of any valid claim of the '597 patent was willful by what is called a preponderance of the evidence. That means Idenix must produce evidence that, considered in the light of all the facts, leads you to believe that what Idenix alleges is more likely true than not true. To put it differently, if you were to put the evidence of Idenix and Gilead concerning willful infringement on opposite sides of a scale, the evidence supporting Idenix's allegations would have to make the scale tip somewhat toward Idenix's side for you to issue a verdict in favor of Idenix on the issue of willful infringement. If the scale should remain equally balanced or tip in favor of Gilead, your verdict must be for Gilead on the issue of willful infringement.

Gilead also alleges that the asserted claims of the '597 patent are invalid. A patent is presumed to be valid under the U.S. patent laws. Accordingly, Gilead has the burden of proving by clear and convincing evidence that each asserted claim is invalid. Clear and convincing evidence is evidence that produces an abiding conviction that the truth of a factual contention is highly probable. Proof by clear and convincing evidence is thus a higher burden than proof by a preponderance of the evidence.

Those of you familiar with criminal cases will have heard of "proof beyond a reasonable doubt." That burden is higher than those that apply in this case, and it does not apply in a civil

case like this one. Therefore, you should put it out of your mind in considering whether or not either party has met its burden of proof.

Idenix must also prove by a preponderance of the evidence the amount of damages that is adequate to compensate Idenix for Gilead's infringement. I will give you more detailed instructions on damages later.

# EXHIBIT K

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

GREATBATCH LTD.,

        Plaintiff,

        v.

AVX CORPORATION and
AVX FILTERS CORPORATION,

        Defendants.

C.A. No. 13-cv-723-LPS

## FINAL JURY INSTRUCTIONS

9/

## 4. INVALIDITY

### 4.1 GENERALLY

Patent invalidity is a defense to patent infringement. Even though the United States Patent and Trademark Office has allowed the claims of a patent, you have the ultimate responsibility for deciding whether or not the claims of the Patents-in-Suit are valid.

For a patent to be valid, the subject matter claimed in the individual claims of the patent must be new and non-obvious. A patent cannot take away from the right of anyone who wants to use what was already known or would have been obvious to those of skill in the art before the invention date of the patent.

Defendants have challenged the validity of the Patents-in-Suit. In making your determination as to invalidity, you should consider each claim separately.

The granting of a patent by the United States Patent and Trademark Office carries with it the presumption that the patent is valid. The law presumes that the Patent and Trademark Office acted correctly in issuing the patent. This presumption puts the burden of proving invalidity on the challengers, the Defendants.

To prove that any claim of any of the Patents-in-Suit is invalid, Defendants must persuade you by clear and convincing evidence, i.e., you must be left with an abiding conviction that the claim is invalid. This burden always remains with Defendants and never shifts to Greatbatch.

Each of the Asserted Claims is presumed valid independently of the validity of each other claim. In other words, even if you find one claim of a patent is invalid, other claims of the same patent are still presumed to be valid until proven otherwise by clear and convincing evidence.

# EXHIBIT L

# AIPLA's Model Patent Jury Instructions

© 2017, American Intellectual Property Law Association

Disclaimer

The Model Jury Instructions are provided as general assistance for the litigation of patent issues. While efforts have been, and will be made, to ensure that the Model Jury Instructions accurately reflect existing law, this work is not intended to replace the independent research necessary for formulating jury instructions that are best suited to particular facts and legal issues. AIPLA does not represent that the information contained in the Model Jury Instructions is accurate, complete, or current. The work could contain typographical errors or technical inaccuracies, and AIPLA reserves the right to add, change, or delete its contents or any part thereof without notice.

claims in the application are patentable.[1] The Patent Examiner considers, among other things, whether each claim defines an invention that is new, useful, and not obvious in view of this prior art. In addition, the Patent Examiner may consider whether the claims are directed to subject matter that is not eligible for patenting, such as natural phenomena, laws of nature, and abstract ideas.

Following the prior art search and examination of the application, the Patent Examiner advises the applicant in writing what the Patent Examiner has found and whether any claim is patentable (in other words, "allowed"). This writing from the Patent Examiner is called an "Office Action." More often than not, the initial Office Action by the Patent Examiner rejects the claims. The applicant then responds to the Office Action and sometimes changes the claims or submits new claims. This process may go back and forth between the Patent Examiner and the applicant for several months or even years until the Patent Examiner is satisfied that the application and claims are patentable. At that time, the PTO "issues" or "grants" a patent with the allowed claims.

The collection of papers generated by the Patent Examiner and the applicant during this time of corresponding back and forth is called the "prosecution history." You may also hear the "prosecution history" referred to as the "file history" or the "file wrapper."

In this case, it is ultimately for you to decide, based on my instructions to you, whether [the Defendant] has shown that the patent claims are invalid.

### ii.     Patent Litigation

Someone is said to be infringing a claim of a patent when they, without permission from the patent owner, import, make, use, offer to sell, or sell [[the patented invention] [a product made by the patented process]], as defined by the claims, within the United States before the term of the patent expires. A patent owner who believes someone is infringing the exclusive rights of a patent may bring a lawsuit, like this one, to attempt to stop the alleged infringing acts or to recover damages, which generally means money paid by the infringer to the patent owner to compensate for the harm caused by the infringement. The patent owner must prove infringement of the claims of the patent. The patent owner must also prove the amount of damages he or she is entitled to.

A patent is presumed to be valid. In other words, it is presumed to have been properly granted. But that presumption of validity can be overcome if clear and convincing evidence is presented that proves the patent is invalid. Someone accused of infringing a patent may deny that they infringe and/or prove that the asserted claims of the patent are invalid. If a party challenges the validity of the patent, you must decide, based on the instructions I will give you, whether the challenger has overcome the presumption of validity with proof that the asserted claims of the patent are invalid. The party challenging validity must prove invalidity by clear and convincing evidence. I will discuss more of this topic later.

I will now briefly explain the parties' basic contentions in more detail.

### B.     Contentions of the Parties

---

[1] If the litigation involves a patent governed by the America Invent Act (AIA), prior art is art that was effectively filed or published before the filing of the application or patent.

[The Plaintiff] contends that [the Defendant] imports, makes, uses, offers to sell, or sells a [[product] [method]] that infringes [claim(s) in dispute] of the [abbreviated patent number] patent. [The Plaintiff] must prove that [the Defendant] infringes the [abbreviated patent number] patent by a preponderance of the evidence. That means that [the Plaintiff] must show that it is more likely that [the Defendant]'s [allegedly infringing product] infringes than it does not infringe.

There are two ways in which a patent claim can be directly infringed.[2] First, a claim can be literally infringed. Second, a claim can be infringed under what is called the "doctrine of equivalents." To determine infringement, you must compare the accused [[product] [method]] with each claim from the [abbreviated patent number] that [the Plaintiff] asserts is infringed. It will be my job to tell you what the language of the patent claims mean. You must follow my instructions as to the meaning of the patent claims. You are not to define the patent claims yourselves.

A patent claim is literally infringed only if [the Defendant]'s [[product] [method]] includes each and every [[element] [method step]] in that patent claim. If [the Defendant]'s [[product] [method]] does not contain one or more [[elements] [method steps]] in that claim, [the Defendant] does not literally infringe that claim. You must determine literal infringement with respect to each patent claim individually.

> **Practice Note:** It may be confusing to the jury to charge the jury under theories of both literal infringement and under the doctrine of equivalents, depending on the number of asserted claims and infringement theories. Various case management techniques are available to the Court to minimize this risk, such as requiring the patent owner to identify representative claims to be tried. Alternatively, the jury could be charged under both theories under a more limited number of claims. The court should consider requiring the patentee to state its theory of infringement prior to trial and the jury should be charged on only the theory of infringement—literal or equivalent—that is adequately supported by the evidence.

A patent claim is infringed under the doctrine of equivalents only if there is an equivalent [[component] [part] [method step]] in [the Defendant]'s [[product] [method]] for each [[element] [method step]] of the patent claim that is not literally present in [the Defendant]'s [[product] [method]]. In other words, [the Plaintiff] must prove that it is more likely than not that [the Defendant]'s [[product] [method]] contains the equivalent of each element of the claimed invention that is not literally present in the [allegedly infringing product]. An equivalent of an element is a [[component] [action]] that is only insubstantially different from the claimed element. One way of showing that an element is only insubstantially different is to show that it performs substantially the same function, in substantially the same way, to achieve substantially the same result as would be achieved by the element that is not literally present in the accused [[product] [method]].

---

[2] This section and below should be modified in accordance with the patent owner's infringement contentions, *e.g.*, where the doctrine of equivalents is not at issue.

[The Defendant] denies that it is infringing the [abbreviated patent number] patent and contends that the [abbreviated patent number] patent is invalid [and/or unenforceable].[3] [INSERT BRIEF DESCRIPTION OF THE PARTICULAR INVALIDITY AND UNENFORCEABILITY DEFENSES BEING ASSERTED].

Invalidity of the asserted patent claim(s) is a defense to infringement. Therefore, even though the Patent Examiner has allowed the claims of the [abbreviated patent number] patent, you, the jury, must decide whether each claim of the [abbreviated patent number] patent that is challenged by [Defendant] is invalid. [The Defendant] must prove invalidity of each challenged claim by clear and convincing evidence in order to overcome the presumption of validity. Clear and convincing evidence means that it is highly probable that the fact is true. This standard is different from the standard that applies to other issues in this case. I have instructed you that other issues, such as infringement, may be found under a lower standard, namely, by a preponderance of the evidence. You may think of this "preponderance of the evidence" as slightly greater than 50%. This is different from the criminal law standard of "beyond a reasonable doubt." You may think of this "beyond a reasonable doubt" standard as approaching certainty, without reasonable doubt. The "clear and convincing" standard is between the two.

## C.    Trial Procedure

We are about to commence the opening statements in the case. Before we do that, I want to explain the procedures that we will be following during the trial and the format of the trial. This trial, like all jury trials, comes in six phases. We have completed the first phase, which was to select you as jurors.

We are now about to begin the second phase, the opening statements. The opening statements of the lawyers are statements about what each side expects the evidence to show. The opening statements are not evidence for you to consider in your deliberations. You must make your decision based on the evidence and not the lawyers' statements and arguments.

In the third phase, the evidence will be presented to you. Witnesses will take the witness stand and documents will be offered and admitted into evidence. [The Plaintiff] goes first in calling witnesses to the witness stand. These witnesses will be questioned by [the Plaintiff]'s counsel in what is called direct examination. After the direct examination of a witness is completed, [the Defendant] has an opportunity to cross-examine the witness. After [the Plaintiff] has presented its witnesses, [the Defendant] will call its witnesses, who will also be examined and cross-examined. The parties may present the testimony of a witness by having the individual testify live for you, by reading from their deposition transcript, or by playing a videotape of the witness's deposition testimony. All three are acceptable forms of testimony. A deposition is the sworn testimony of a witness taken before trial and is entitled to the same consideration as if the witness had testified at trial.

The evidence often is introduced piecemeal, meaning that all of the evidence relating to an issue may not be presented all at one time but, rather, may be presented at different times during

---

[3] This section and below should be modified in accordance with the Defendant's defenses, *e.g.*, where the Defendant has opted to not allege non-infringement or invalidity.

the trial. You need to keep an open mind as the evidence comes in. You are to wait until all the evidence comes in before you make any decisions. In other words, keep an open mind throughout the entire trial.

In the fourth phase, the lawyers will again have an opportunity to talk to you in what is called "closing arguments." As with the opening statements, what the lawyers say in the closing arguments is not evidence for you to consider in your deliberations.

In the fifth phase, I will read you the final jury instructions. I will instruct you on the law that you must apply in this case. I have already explained to you a little bit about the law. In the fifth phase, I will explain the law to you in more detail.

Finally, the sixth phase is the time for you to deliberate and reach a verdict. You will evaluate the evidence, discuss the evidence among yourselves, and make a decision in this case. We both have a job to do. You will decide the facts, and I will apply the law. I will explain the rules of law that apply to this case, and I will also explain the meaning of the patent claim language. You must follow my explanation of the law and the patent claim language, even if you do not agree with me. Nothing I say or do during the course of the trial is intended to indicate what your verdict should be on those facts that you must decide.

## III.    Glossary of Patent Terms

**Application**–The initial papers filed by the applicant in the United States Patent and Trademark Office (also called the "USPTO" or "PTO"). [see p.3]

**Claims**–The numbered sentences or paragraphs appearing at the end of the patent that define the invention. The words of the claims define the scope of the patent owner's exclusive rights during the life of the patent.

**File wrapper**–See "prosecution history" below.

**License**–Permission to use the patented invention(s), which may be granted by a patent owner (or a prior licensee) in exchange for a fee called a "royalty" or other compensation.

**Office Action**–Communication from the Patent Examiner regarding the specification (see definition below) or the claims in the patent application.

**[[Ordinary skill in the art** (pre-AIA)–The level of experience, education, or training generally possessed by those individuals who work in the area of the invention at the time of the invention.]

**[Ordinary skill in the art** (post-AIA)–The level of experience, education, or training generally possessed by those individuals who work in the area of the invention before the effective filing date of the patent.]]

**Patent Examiners**–Personnel employed by the PTO in a specific technical area who review (examine) the patent application to determine (1) whether the claims of a patent application are patentable over the prior art considered by the examiner, and (2) whether the specification/application describes the invention with the required specificity.

# EXHIBIT M

**2016-1275, 1575**

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

G. DAVID JANG, M.D.,

*Plaintiff-Appellant,*

v.

BOSTON SCIENTIFIC CORPORATION, and
SCIMED LIFE SYSTEMS, INC., nka Boston Scientific Scimed, Inc.,

*Defendants-Cross-Appellants.*

*Appeal from the United States District Court for the Central District of California in Case No. 5:05-cv-00426, Judge Virginia A. Phillips.*

## PRINCIPAL BRIEF FOR PLAINTIFF-APPELLANT
## G. DAVID JANG, M.D

Jed I. Bergman
KASOWITZ, BENSON, TORRES
& FRIEDMAN LLP
1633 Broadway
New York, NY 10019
(212) 506-1700

Jeffrey J. Toney
KASOWITZ, BENSON, TORRES
& FRIEDMAN LLP
1349 West Peachtree St., NW, Suite 1500
Atlanta, GA 30309
(404) 260-6080

Adam M. Conrad
KING & SPALDING LLP
100 N. Tryon St., Suite 3900
Charlotte, NC 28202
(704) 503-2600

Daryl L. Joseffer
KING & SPALDING LLP
1700 Pennsylvania Avenue, NW
Washington, DC 20006
(202) 737-0500

Jonathan K. Waldrop
Darcy L. Jones
KASOWITZ, BENSON, TORRES
& FRIEDMAN LLP
333 Twin Dolphin Dr., Suite 200
Redwood Shores, CA 94065
(650) 453-5170

*Counsel for Appellant G. David Jang, M.D.*

MAY 23, 2016

versions of claim 1, two of which (version #3 and version #5) were specifically

addressed at the hearing.

| Hypothetical Claim Proposal No. | Language Altered in Dr. Jang's Proposals |
|---|---|
| 3 | the first connecting strut ~~intermediate section being non-parallel to the first connecting strut proximal and distal sections~~ **column configured to provide increased flexibility compared to the first and second expansion columns,** |
| 5 | a first connecting strut including **at least** a first connecting strut proximal section, a first connecting strut distal section and a first connecting strut intermediate section, |

(Appx10795.)

Dr. Jang submitted declarations from his experts, Mr. Lee and Dr.

Chronos, showing that these hypothetical claims would be infringed literally by

the Express stent but would not ensnare the prior art references on which BSC

relied – the Lau, Brown, and Wijay patents. (Appx10835-10885 at ¶¶ 56-177;

Appx10903-10909 at ¶¶ 6-24.) Dr. Jang also collected and presented evidence

that the Wijay patent was not actually prior art. (Appx10911-10912,

Appx10915-10920; Appx10922-10926; Appx174-176, Appx180; Appx210;

Appx216; Appx10978-10979 at 46:17-47:13; Appx11015-11017 at 83:10-85:16;

Appx11018-11031 at 86:3-99:14.)

BSC proposed its own hypothetical claim for consideration by the court

(Appx10764-10769), but did not submit a declaration from its expert, Dr.

Moore. (Appx11204 at 72:7-12.) At the hearing, Dr. Moore admitted that he had never previously opined on ensnarement in this case. *Id.*

The district court overturned the jury's verdict. The court found that BSC had preserved its ensnarement defense in (i) a motion *in limine* that (unsuccessfully) sought to exclude Dr. Jang's equivalents case, in part on the ground that the PTO had invalidated the patent claims, and (ii) a footnote in a another pretrial pleading briefly stating that the accused products are "the same as what is in the prior art." (Appx9-12; Appx7215 at fn. 5.)

The court then rejected Dr. Jang's hypothetical claims. Hypothetical claim 3 responded to BSC's literal-infringement defenses by replacing the requirement of a non-parallel intermediate section with a requirement that the connecting strut be configured to provide increased flexibility. (Appx14.) The court held that this claim was improper because it narrowed the claim. (Appx14-16.)

In response to BSC's argument that the Micro elements include "extra metal," Dr. Jang's hypothetical claim 5 required that connecting struts include "at least" the parts specified in the claim language. (Appx17.) The court held that the added language – "at least" – did not broaden the claim scope because it did not remove any claim limitations. (Appx18.)

Without further analysis, the court determined that BSC was entitled to entry of judgment in its favor. (Appx1-5.) It never conducted an actual ensnarement analysis by determining whether a properly drafted hypothetical claim would ensnare the relevant prior art. (Appx12-18.)

### E.    The District Court's Denial Of Dr. Jang's Rule 50(b) Motion

Dr. Jang moved for judgment as a matter of law at the close of evidence, *see* Fed. R. Civ. P. 50(a), on the issue of literal infringement. (Appx10454-10464.) After the verdict, Dr. Jang renewed his argument, *see* Fed. R. Civ. P. 50(b), that any "extra metal" in Express's Micro elements did not preclude literal infringement because it was at most an additional feature. (Appx11337, Appx11344-11348.) Dr. Jang also emphasized that, for purposes of ensnarement, BSC had argued, and the district court had held, that adding "at least" to the claims did not narrow them precisely because the literal claims were not limited to products containing *only* the recited elements. (Appx11349-11351; Appx18.) Dr. Jang argued that BSC could not have it both ways – it could not argue that the literal claim scope excluded products with "extra metal," yet argue that adding "at least" did not broaden claim scope in any way. The district court disagreed. The court credited BSC's expert testimony that the "extra metal" was a "significant structural feature[] of the microelement." (Appx30.)

Dated: May 23, 2016                    Respectfully submitted,


                                       /s/ Jed I. Bergman
                                       Jed I. Bergman
                                       KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
                                       1633 Broadway
                                       New York, NY 10019
                                       Tel: (212) 506-1700

                                       Daryl L. Joseffer
                                       KING & SPALDING LLP
                                       1700 Pennsylvania Ave., NW
                                       Washington, DC 20006
                                       Tel: (202) 737-0500

                                       Jeffrey J. Toney
                                       KASOWITZ, BENSON, TORRES &
                                       FRIEDMAN LLP
                                       1349 West Peachtree Street, NW Ste. 1500
                                       Atlanta, GA 30309
                                       Tel: (404) 260-6080

                                       Jonathan K. Waldrop
                                       Darcy L. Jones
                                       KASOWITZ, BENSON, TORRES &
                                       FRIEDMAN LLP
                                       333 Twin Dolphin Drive, Ste. 200
                                       Redwood Shores, CA 94065
                                       Tel: (650) 453-5170

                                       Adam M. Conrad
                                       KING & SPALDING LLP
                                       100 N. Tryon St., Ste. 3900
                                       Charlotte, NC 28202
                                       Tel: (704) 503-2600

                                       *Attorneys for Plaintiff-Appellant G. David Jang, M.D.*