

1313 North Market Street
P.O. Box 951
Wilmington, DE  19899-0951
302 984 6000
www.potteranderson.com

**Bindu A. Palapura**
Attorney at Law
bpalapura@potteranderson.com
302 984-6092  Direct Phone
302 658-1192  Fax

July 10, 2018

<u>VIA ELECTRONIC-FILING</u>

The Honorable Leonard P. Stark
U.S. District Court for the District of
Delaware
J. Caleb Boggs Federal Building
844 N. King Street
Wilmington, DE 19801-3556

      Re:    *International Business Machines Corporation v. Groupon, Inc.*, C.A. No. 16-122-LPS

Dear Chief Judge Stark:

      Pursuant to the Court's Order, *see* D.I. 323, Plaintiff International Business Machines Corporation ("IBM") and Defendant Groupon, Inc. ("Groupon") jointly submit the following report on the status of authenticity objections.

      Groupon served its Election of Prior Art for Invalidity Defenses on June 26, 2018.  *See* D.I. 314 at 7.  Then, on July 3, 2018, the parties exchanged identifications of previously disclosed authentication objections to documents on each other's trial exhibit list.  The parties met and conferred regarding those objection on July 6, 2018, before submitting this report.

1. <u>IBM's Update Regarding the Status of Resolving the Parties' Authenticity Objections and Request for a Brief Conference on July 13</u>

      Both parties have narrowed their authenticity objections as a result of the meet and confer process.  As things currently stand, IBM has 71 outstanding authenticity objections and Groupon has 119 outstanding authenticity objections.  *See* Ex. 1.  However, multiple disputes remain between the parties, including new disputes raised by two last-minute productions of new materials by Groupon.  As further detailed below, IBM believes that a short opportunity to be heard this Friday should be granted regarding new documents, new witnesses, new deposition designations, and new declarations that Groupon disclosed over the last two days, and its refusal to abide by the Court's Order for reduction of asserted prior art, to avoid prejudice to IBM and streamline the parties' issues.

      Based on the Court's direction that "neither party may introduce into evidence at trial any document that was not produced during discovery absent a showing of good cause and approval of the Court," D.I. 314 at 7, IBM expected Groupon would withdraw those exhibits not produced during discovery from its exhibit list.  However Groupon has refused to remove exhibits that were indisputably produced after the close of fact discovery, including DX-648—one of two

The Honorable Leonard P. Stark
July 10, 2018
Page 2

exhibits directly addressed in IBM's motion to strike granted by the Court—and DX-649, an attachment to DX-648. *See* D.I. 305 at 38-39. Other such exhibits include DX-0195, DX-0196, DX-0197, DX-0203, and DX-0204, which Groupon admits were not produced until it submitted its opposition to IBM's summary judgment motion. Groupon has not identified any good cause for failing to produce or identify such exhibits during fact or expert discovery.

Instead of removing untimely produced documents from its exhibit list, at 2:00am yesterday morning and again today at 12:28 pm, Groupon produced new documents, disclosed new witnesses, identified new deposition designations, and offered new declarations. While Groupon claims that IBM's authenticity objections justify its behavior, Groupon's untimely disclosures seek to introduce evidence on a variety of issues unrelated to authenticity, including alleged public availability of prior art. Objections to exhibits do not provide a unilateral license to re-open discovery without permission—otherwise every case would start over again after pretrial disclosures. And Groupon's unjustifiable last-minute production of documents does not narrow the issues in dispute; it expands them.

IBM's efforts to further narrow its authenticity objections, most of which pertain to prior art, have been further hampered by Groupon's refusal to abide by the Court's Order for reduction of asserted prior art. *See* D.I. 314 at 7. The Court ordered that "Groupon shall assert invalidity defenses based on no more than sixteen (16) total prior art reference and no more than five (5) such reference for any particular patent (with references defined as Groupon proposes)." *Id.* Groupon defined a reference or "piece of prior art" as follows:

> A patent can be a piece of prior art. A publication can be a piece of prior art. A system can be a piece of prior art. Documents describing a single system constitute a single piece of prior art. Source code files for a single system constitute a single piece of prior art. To the extent multiple documents and/or source code files relate to a single system, Groupon would identify the relevant documents and/or source code files.

D.I. 305 at 33-34. Now, Groupon refuses to abide by the very procedure that Groupon proposed and the Court adopted.

First, Groupon has identified seven (7) publications under the heading "Liberty Alliance System Specification." Ex. 2. Groupon admits that those references do not pertain to any alleged prior art system at issue in this case. Moreover, the references concern different topics and different versions of the alleged specification. *See, e.g.*, Ex. 3 (DX-0380 - Liberty ID-FF Architecture Overview Version 1.2-errata-v1.0); Ex. 4 (DX-382 - Liberty ID-FF Bindings and Profiles Specification Version: 1.2-errata-v2.0); Ex. 5 (DX-383 - Privacy and Security Best Practices Version 2.0). The distinction between multiple documents describing a system and multiple publications is not trivial. To respond to a prior art system described by multiple publications, IBM can focus on the characteristics of that one system. To respond to multiple prior art documents, IBM cannot focus on any one publication lest Groupon advance alternative publication(s) at trial. Here, because of Groupon's non-conforming identification, IBM is unable to predict what version(s) or specification(s) will be at issue. In total, Groupon has advanced at

The Honorable Leonard P. Stark
July 10, 2018
Page 3

least ten (10) prior art publications for the '346 patent,[1] which is twice the number Groupon is permitted under the Court's order.

   In light of the above issues, IBM respectfully requests a short opportunity to be heard on these issues after the hearing scheduled for 8:30 am on Friday, July 13, 2018.  IBM believes such a hearing is necessary in light of Groupon's last-minute production of documents and the parties' ongoing disputes regarding prior art references.

  **2.** <u>Groupon's Update Regarding Status of Resolving IBM's Authenticity Objections</u>

   In response to the Court's order at the Pretrial Conference on June 8, 2018, Groupon writes to update the Court regarding the parties' attempts to resolve IBM's authenticity objections to Groupon's trial exhibits.

   Despite IBM's representation at the Pretrial Conference that it had objected to only a "small handful" of exhibits based on authenticity, and would further narrow those objections (*see* Pretrial Conference Tr. 28:6-7), IBM continues to maintain authenticity objections to 71 trial exhibits. (*See* Exhibit A (IBM's Second Amended Identification of Authenticity Objections).)  IBM's authenticity objections are objectively unreasonable.  IBM objects to various newspapers and periodicals that are self-authenticating at least under Fed. R. Evid. 902(6).  (*Id.*, DX-0094, DX-0107, DX-0339, DX-0343, DX-0356, DX-0357, DX-0359, DX-0360, DX-0366, DX-0367, DX-0368, DX-0444, DX-0483, DX-0666.)  IBM objects to documents with self-identifying appearance and contents that render the documents authentic at least under Rule 901(b)(4).  For example, IBM objects to copies of books that contain title, ISBN, and publisher information.  (*Id.*, DX-0067, DX-0148, DX-0160, DX-0162, DX-0167, DX-0344, DX-0352, DX-0353, DX-0354, DX-0371, DX-0374, DX-0394, DX-0643.)  IBM objects to several printouts from Groupon's website used as exhibits during deposition of IBM's technical expert, while including multiple printouts from the same Groupon website on its own trial exhibit list.  (*Id.*, DX-0029, DX-0030-0033; *see* IBM's trial exhibit list, PX-0060, PX-0177, PX-0963, PX-0972, PX-0975, PX-0982, PX-1110).  IBM objects to printouts from third party websites, which contain URL information and identify their origin on the face of the printouts.  (*See* Ex. A, *e.g.*, DX-0057, DX-0063, DX-0195, DX-0196, DX-0197, DX-0203, DX-0204, DX-0350, DX-0638, DX-0639, DX-0640, DX-0641, DX-0642.)  IBM objects to technical specifications and product manuals, whose sole purpose is public disclosure and which contain the origin identification on the face of the documents.  (*Id.*, DX-0148, DX-0149, DX-0150, DX-0151, DX-0152, DX-0351, DX-0380, DX-0381, DX-0382, DX-0383, DX-0645, DX-0646, DX-0647).  IBM objects to documents that are over twenty (20) years old, which are authentic at least under Fed. R. Evid. 901(b)(8).  (*Id.*, *e.g.*, DX-0058, DX-0094, DX-0107, DX-0157, DX-0160, DX-0163, DX-0165, DX-0167, DX-0195, DX-0196, DX-0197, DX-0339, DX-0343, DX-0344, DX-0348, DX-0350, DX-0351, DX-0352, DX-0353, DX-0356, DX-0357, DX-0359, DX-0360, DX-0363, DX-0366, DX-0367, DX-0368, DX-0372, DX-0373, DX-0374, DX-0375, DX-0376, DX-0394, DX-0444, DX-0643.)  And, up until 9 pm yesterday, IBM had objected

---

[1] Groupon has also identified two exhibits for its "Japanese Patent Application Publication No. 2004-302907 to Sunada" reference.  IBM has not raised an issue regarding the number of exhibits for that identification.

The Honorable Leonard P. Stark
July 10, 2018
Page 4

to documents it itself produced in the case. (*Id.*, DX-0359, DX-0444, DX-0483, DX-0643.)[2] When pressed during the parties' conference last week to explain the basis for maintaining the vast majority of its objections or identify what suspicion IBM may have that the documents are not authentic, IBM could not, instead it merely kept repeating that it is Groupon's burden to prove authenticity. (*See id.* at 2-29 ("Groupon has no evidence showing this document is a true and accurate copy.")[3] In short, it became apparent during the parties' discussions that IBM did not intend to narrow its authenticity objections, but decided to use the process to disrupt Groupon's trial preparation efforts.

Nonetheless, in an attempt to resolve IBM's authenticity objections, albeit baseless, Groupon undertook substantial effort to collect documents further demonstrating the authenticity of the documents to which IBM continues to object. Within hours after receiving IBM's amended objections, Groupon provided these documents to IBM with the hope that IBM—in accordance with the Court's directive at the pretrial conference that it must "identify which, if any, authentication objections it wants to press *based on what it knows at this point*"—would reevaluate its authenticity objections in good faith. D.I. 329 at 29:15-17. More specifically, in an attempt to avoid the unnecessary time and cost of bringing witnesses to trial to authenticate each of the 71 trial exhibits to which IBM objects, Groupon provided to IBM (1) ancient documents that cite the documents to which IBM objects, demonstrating their authenticity under Fed. R. Evid. 901(b)(8); (2) declarations by those with personal knowledge confirming that the documents are true and correct copies of what they purport to be; (3) designation of deposition testimony to lay the foundation for authentication; and (4) a copy of an exhibit to support its self-authentication under Fed. R. Evid. 902(6).[4] Groupon amended its trial witness list to include names of individuals

---

[2] Groupon continues to maintain its objections to only those exhibits for which it could not infer authenticity from the face of the documents, for example, because the document was a handwritten note (*e.g.*, PX-0579), a physical book that IBM did not provide a copy of (*e.g.*, PX-1095), or source code comparisons that were not produced by any party or in response to any subpoena in this action (*e.g.*, PX-1556-1563). Because IBM listed individual source code files on its trial exhibit list as separate exhibits, rather than treating a collection of them as a single trial exhibit, like Groupon has done on its list, Groupon had to object to each individual source code file lacking authenticity indications on its face. IBM did not attempt to resolve any of Groupon's objections during the parties' meet and confer process.

[3] Confirming that the Federal Rules of Evidence do not require such evidence, IBM has not put forth any evidence showing that the documents on its trial exhibit list are true and accurate copies of what IBM purports they are.

[4] Any information regarding date of publication was included in these documents in response to IBM's authenticity objections because 1) IBM conflated its authenticity objections with objections as to the date when the documents were purportedly released, and 2) Groupon had no prior notice of IBM's objection to the date of public availability for many of its exhibits. *See* Ex. A, e.g., DX-022 ("Groupon has provided no evidence showing this document is a true and accurate copy of portions of a book purportedly released in 1996"). In the example of DX-022 noted above, IBM now appears to object to the date of public availability, but until now IBM did not dispute the date of public availability for "Spinning the Web: A Guide to Serving Information on the World Wide Web" by Yuval Fisher. Indeed, its expert did not question the public availability of this exhibit.

The Honorable Leonard P. Stark
July 10, 2018
Page 5

Groupon may call to rebut IBM's authenticity objections. Instead of reevaluating its objections in light of this information, however, IBM has taken the position that it intends to prevent Groupon from relying on any of these documents to overcome IBM's authenticity objections.[5] In doing so, it ignores the Court's finding that, absent resolution by the parties, it is likely to allow Groupon to "produce a witness or witnesses if that's the only way to authenticate these exhibits" because IBM has "not yet specified exactly why they're objecting based on authentication grounds." D.I. 329 at 30:10-20.

At this stage, in light of IBM's position, Groupon proposes that two days before trial, on July 14, by 7 pm, IBM identifies with particularity any true authenticity objections it may continue to maintain with specific identification of any purported suspicions why any document is not authentic. The parties will then follow the procedures outlined in the parties' Proposed Pretrial Order (D.I. 305 at 12) to raise the objections with the Court for resolution.

With respect to IBM's dispute regarding prior art references, Groupon responds as follows.

First, Groupon's identification of prior art was not designed to help reduce IBM's authenticity objections. Nor was it designed to limit prior art references that Groupon may use at trial. It was designed to narrow Groupon's *invalidity defenses*. (*See* D.I. 314 ("Groupon shall *assert invalidity defenses* based on no more than sixteen (16) total prior art references"); D.I. 315 ("Groupon's deadline to *assert invalidity defenses* pursuant to the Order shall be extended to June 26, 2018.").) Groupon has done that.[6]

Second, the Liberty Alliance prior art is a single industry standard, akin to a system. That standard for performing single-sign-on is described at various level of details in a number of related specifications. The asserted patent itself confirms it. (D.I. 1-1, the '346 patent, at 27:8-15 (identifying "Liberty Alliance ID-FF" as an "independently published or developed federated user lifecycle management standard"); *see also id.* at 2:25-28 (acknowledging that "the Liberty Alliance ID-FF specifications" describe a "prior art single-sign-on solution.").) Groupon's expert, Dr. Weissman, explained in his expert report that the Liberty Alliance Project, the standard, invalidates the asserted claims of the '346 patent. (Weissman Invalidity Expert Report at 321-322.) He did not offer invalidity theories based on individual Liberty Alliance documents. And, contrary to IBM's claim that it cannot prepare to address Groupon's Liberty Alliance invalidity defense, IBM's technical expert had no issue responding to Dr. Weissman's opinions by collectively referring to the standard as the "Liberty Alliance Specifications." Indeed, IBM's expert treated the Liberty Alliance documents as a single industry standard, a single piece of prior art, and at no point expressed an opinion that the documents concern "different topics" or "versions." (*See* Schmidt Rebuttal Rep. at, *e.g.*, ¶¶ 1848 ("A key objective of the Liberty Alliance was to '[p]rovide

---

(*See* Schmidt Rebuttal Rep. at 506-540 (noting, without rebutting, Groupon's expert's opinion that the reference was available in 1996).)

[5] While IBM claims that these documents somehow prevent it from "undertaking related discovery," it is unclear what discovery IBM may actually need on authenticity grounds.

[6] In contrast, IBM's election of claims is inconsistent with the parties' stipulation and the Court's order requiring IBM to streamline its case. IBM asserted several dependent claims without also asserting the claims on which they depend. As a result, IBM has, in reality, asserted four additional claims in excess of the 16 claims that the Court allowed.

The Honorable Leonard P. Stark
July 10, 2018
Page 6

*an open single-sign-on standard*'"); 1876 ("And *the Liberty Alliance Specifications disclose a protocol* in which user accounts already exist"). By demanding now that Groupon reduce the number of Liberty Alliance documents, IBM is attempting to ensure that Groupon cannot advance the Liberty Alliance invalidity theory at trial at all. It is yet another IBM attempt to reduce invalidity theories that Groupon can advance at trial—an attempt the Court already rejected. (D.I. 314 ("IBM's alternative proposal – to limit the 'theories' Groupon may assert – is not warranted in this case, where it appears Groupon has already reasonably streamlined its case.").)

Finally, regarding IBM's complaint that Groupon's exhibit list includes documents not produced during discovery, Groupon intends to comply with the Court's pretrial order. D.I. 314 at 7. Should Groupon decide to use an exhibit that IBM contends was not produced, it will raise the issue with the Court and, if needed, establish any good cause necessary as the Court has indicated. Groupon notes that IBM itself included documents on its trial exhibit list that it did not produce during discovery. (*See, e.g.,* PX-0750, PX-0767, PX-1099.)

Groupon respectfully requests that the Court order IBM to identify specific issues that legitimately raise authentication issues or be forced to waive the objections.

Respectfully yours,

*/s/ Bindu A. Palapura*

Bindu Palapura

BAP/MSB/5863284/43155
Enclosures

cc:    Clerk of the Court (via hand delivery) (w/encs.)
       Counsel of Record (via electronic mail) (w/encs.)