# Morris, Nichols, Arsht & Tunnell llp

1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19899-1347
_____

(302) 658-9200
(302) 658-3989 FAX

Jeremy A. Tigan
(302) 351-9106
(302) 425-3096 FAX
jtigan@mnat.com

July 11, 2018

**BY E-FILING & HAND DELIVERY**

The Honorable Leonard P. Stark
U.S. District Court for the District of Delaware
J. Caleb Boggs Federal Building
844 N. King Street, Room 6124, Unit 26
Wilmington, DE 19801-3556

> Re:  *International Business Machines Corp. v. Groupon, Inc.*,
> C.A. No. 16-122 (LPS)

Dear Chief Judge Stark:

We write on behalf of non-party Facebook, Inc. ("Facebook"). Facebook respectfully joins and agrees with the motion to intervene filed by Go Daddy Operating Company, LLC ("Go Daddy") (D.I. 332, 333), and the other third parties that have written letters pursuant to the Court's orders. Like these other third parties, Facebook is a party to a patent license agreement with plaintiff International Business Machines Corporation ("IBM"). IBM recently provided notice to Facebook that terms of the Facebook-IBM licensing agreement might be introduced into evidence and publicly disclosed during the damages phase of the upcoming July 16, 2018 trial. For purposes of this request, Facebook is similarly situated to the other third parties who have sought to protect the confidentiality of their agreements with IBM.

Facebook, like many technology companies, is often engaged in the negotiation of license agreements with various third parties. When an agreement is reached, the resulting written license agreement will generally contain confidentiality provisions restricting public dissemination of the terms of the license. The IBM-Facebook license agreement at issue here contains such provisions.

Facebook does not include these confidentiality provisions as mere boilerplate contract clauses, or simply to protect a hypothetical or imagined concern. Patent licenses (such as the Facebook-IBM agreement at issue here) can include key terms such as pricing and/or royalty rates, expiration dates, identification of licensed parties, and/or definitions of the licensed

products or permitted fields of licensed use. These terms are the central focus of negotiations in any patent license, and are often negotiated anew every time a new license is contemplated.

As in any contract negotiation, each negotiating party attempts to obtain the best terms possible by, among other things, obtaining as much relevant and reliable information about the other party's position as possible. Each party uses this information to assess how far it can "push" the other party in negotiations with respect to pricing and other key licensing terms.

But the public disclosure of past patent licenses can fundamentally upset this informational balance, and give third parties unfair advantage in future negotiations. For example, from the standpoint of the licensee, suppose a third party seeks to negotiate a potential patent license with Facebook (or any of the other third parties seeking to join Go Daddy's motion). Knowing the key terms of prior executed license agreements with IBM would disclose pricing and other key terms to which Facebook has agreed in the past, which the third party could use to its advantage in negotiations. Conversely, from the standpoint of licensors such as IBM, public knowledge of the terms of past licenses could place them in a worse negotiating posture with other prospective licensees. In this case, Facebook is both licensor and licensee under its license agreement with IBM. As such, the confidentiality clause is systemically important; it protects both sides from having the balance in future negotiations tipped by the public disclosure of executed past licenses.

Facebook acknowledges the general policy in favor of public trials (including in civil cases), but for the reasons stated in the letters filed on behalf of the other parties, respectfully submits that this interest would not be materially undermined by narrowly protecting the key terms of the IBM patent license from disclosure in open court.

For the reasons expressed above and by the other third parties, therefore, Facebook respectfully requests that (1) the Court seal the courtroom when the particulars of its license agreement with IBM is being discussed, (2) it be afforded an opportunity to propose redactions to the transcripts of any such sealed proceedings, and (3) it be afforded an opportunity to request redactions to its agreement before those agreements are made part of any public record.

Respectfully,

Jeremy A. Tigan (#5239)

JAT/dam
cc:     Counsel of Record (by CM/ECF and email)
12049132