# ASHBY & GEDDES

ATTORNEYS AND COUNSELLORS AT LAW

500 DELAWARE AVENUE

P. O. BOX 1150

WILMINGTON, DELAWARE 19899

TELEPHONE
302-654-1888

FACSIMILE
302-654-2067

July 11, 2018

**VIA ELECTRONIC FILING**

The Honorable Leonard P. Stark  
United States District Court  
J. Caleb Boggs Federal Building  
844 N. King Street  
Wilmington, DE 19801

**REDACTED PUBLIC VERSION**

Re: *International Business Machines Corporation v. Groupon, Inc.,*  
C.A. No. 16-122-LPS-CJB

Dear Chief Judge Stark:

In accordance with the Court's July 9, 2018 Order (D.I. 337), Defendant Groupon, Inc. ("Groupon") files this response to the Motion to Intervene Pursuant to Fed. R. Civ. P. 24(b)(1) (D.I. 332) and contemplated Motion for Protective Order (D.I. 332-2) filed by third-party Go Daddy Operating Company, LLC ("GoDaddy"), the letter and Joinder filed by third-party Wipro Limited ("Wipro") (D.I. 334), the letter and Joinder filed by third-party Maxim Integrated Products, Inc. ("Maxim") (D.I. 335), the letter filed by Hulu, LLC ("Hulu") (D.I. 343), the Joinder filed by Infosys Limited ("Infosys") (D.I. 346), and any future filings "that may yet be filed on this issue." Groupon does not oppose the requests to intervene for the stated "limited purpose" of moving for a protective order regarding the third-party movants' purportedly "confidential, proprietary, and commercially sensitive information" that will be admitted at trial in this case. (D.I. 332.) The movants' proposed motion for protective order, however, should be denied for at least two reasons.

First, their blanket request to seal the courtroom for any discussion of their respective license agreements is unnecessarily broad. The movants each bear the burden of articulating a "clearly defined and serious injury" with specificity that outweighs the presumption of public access to judicial proceedings. (D.I. 332-2 at 2-3.) This requires them to, at a minimum, identify the particular information in their respective licensing agreements that is sensitive, explain why such information is sensitive, and articulate what harm they would suffer if it was disclosed in a public trial.[1] The movants concede this (D.I. 332-2 at 2-3) but then neglect to include any specific

---

[1] Aside from being required to meet their burden of proof, such identification with specificity would also have allowed the parties to address whether that particular information is even expected to be disclosed during trial testimony in this case. Indeed, Groupon conferred with GoDaddy in an attempt to resolve its motion without unnecessarily burdening the Court, and to that end, asked

{01343109;v1 }

The Honorable Leonard P. Stark
July 11, 2018
Page 2

information to support their request. GoDaddy and Hulu, for example, broadly claim unspecified injury from disclosure of "licensing, payment, and pricing terms" without identifying a single provision in their respective agreements that is sensitive. (D.I. 332-2 at 6; D.I. 343 at 3.) Likewise, Wipro and Maxim generally refer to injury from disclosure of "sensitive, non-public information concerning [their] business and strategies." (D.I. 334 at 2; D.I. 335 at 2.) Wipro and Maxim allude to purportedly sensitive "license scope," "payment schedule," "license renewal terms and termination provisions," but any license agreement will have scope, payment schedule, and renewal or termination provisions, and neither Wipro nor Maxim explain what is specifically sensitive or confidential in their agreements. Infosys fails to proffer even a generic description and instead simply concludes that its agreement with IBM "contains confidential, proprietary, and commercially sensitive information." (D.I. 346 at 1.) Tellingly, each of the third-party movants parroted each other's request and that made by IBM at the pretrial conference (and rejected by the Court), rather than articulating sensitive information specific to their respective agreements, suggesting that the terms of their agreements are standard provisions across IBM's agreements.[2]

More importantly, rather than articulating serious injury from disclosure, all five movants generically claim "competitive" injury in future negotiations. (*e.g.*, D.I. 334 at 2 ("This information in the hands of competitors and other patent owners can be used to cause irreparable harm to Wipro's interests."); D.I. 335 at 2 (same).) This Court found that IBM's articulation of the same, broad competitive harm to its ability to conduct future licensing negotiations did not come "close to being significant enough" to close the courtroom. (D.I. 329 at 35:5-14, 39:8-10.) And unlike IBM, movants have not proffered "an active licensing practice" as part of their core businesses.[3] (*Id.* at 31:10-18.) They have thus not explained what competitive injury they might face in future negotiations. Nor have they proffered any other basis from which the Court could conclude that they may potentially be harmed in their respective industries. They do not, for example, claim any trade secret in the agreements that could give their competitors an unfair advantage.

Without the requisite specificity, the purported harm claimed by movants simply does not outweigh the public interest in maintaining an open courtroom during trial. *See Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 786 (3d Cir. 1994) (noting that "[b]road allegations of harm, unsubstantiated by specific examples or articulated reasoning" are insufficient) (citation omitted). And, because none of the movants has even attempted to tie its request to a specific harm, the cases they cite are inapposite.[4] Indeed, under the movants' presumptive articulation of injury, the Court

---

GoDaddy to articulate what particular information raised a concern. GoDaddy did not provide the requested information, opting to pursue its blanket motion to seal instead.

[2] It is also interesting to note that IBM has refused multiple requests from Groupon to disclose the subject-matter and extent of its communications with the third-party movants.

[3] On their respective websites, GoDaddy describes itself as a domain registrar and web hosting service provider, Wipro and Infosys describe themselves as an information technology company, Maxim describes itself as a semiconductor company, Hulu describes itself as an online streaming service.

[4] *Cf. Del. Display Grp. LLC v. LG Elecs. Inc.*, 221 F. Supp. 3d 495, 497 (D. Del. 2016) (denying motion to redact transcript of pretrial conference with the exception of "narrow" redactions for two specific numbers); *Mosaid Techs. Inc. v. LSI Corp.*, 878 F. Supp. 2d 503, 510-11 (D. Del.

would categorically be required to seal any non-public license agreement. Such a finding runs contrary to governing authority, which imposes a heavy burden on movants to justify foreclosing public access to trial proceedings. (*e.g.*, D.I. 332-2 at 2-3.) And it ignores the wealth of authority in which courts have permitted or required disclosure of far more sensitive information under the principle of public access to judicial proceedings. (D.I. 324 at 28-29 (collecting cases).)

Even if movants had articulated harm with the requisite specificity—which they did not—their request ignores the significance of the evidence at issue. The movants' license agreements with IBM cannot be described as a "peripheral issue in the underlying litigation." (D.I. 332-2 at 3.) The movants' agreements are central to Groupon's rebuttal to IBM's damages claim. Indeed, with the exception of Hulu's agreement, Groupon's damages expert considers the movants' agreements among the most relevant to determining a reasonable royalty in this case. (Ex. A (Malackowski Rebuttal Report at 38, 40-41, 47).) Moreover, IBM stated its intent to use its license agreements to argue that the patents-in-suit "have been successfully licensed in the past." (D.I. 329 at 34:4-9.)[5] As movants concede (D.I. 332-2 at 5), at least one fact witness and two expert witnesses identified on the parties' "will call" lists will testify about the agreements at various times during both parties' trial presentations. Thus, the jury will have access to the agreements and hear testimony about them in order to make their decision. As this Court found, "[t]he public has a First Amendment right for reasons that are well settled" and "it's important that the public have access to the information on which the jury is going to make their decision." (D.I. 329 at 38:8-16, 39:5-8.) Movants have not articulated any harm that even comes close to changing that assessment or overcoming the presumption of public access in this case.

---

2012) (redacting information that was "largely incidental to the substantive issues" presented, but denying redaction of terms pertinent to the parties' dispute); *Boucher v. First Am. Title Ins. Co.*, No. C10-199RAJ, 2011 WL 5299497, at *5 (W.D. Wash. Nov. 4, 2011) (allowing redaction of specific terms where the relevant content had already been disclosed, finding "further disclosure" unnecessary); *Kasilag v. Hartford Inv. Fin. Servs., LLC*, No. CV 11-1083 (RMB/KMW), 2016 WL 1394347, at *8 (D.N.J. Apr. 7, 2016) (granting motions to seal specific and limited information where "no less restrictive means" were available).

[5] IBM also previously identified at least two of the agreements as evidence of non-obviousness. (Ex. B (Plaintiff's Supplemental Objections and Responses to Defendant Groupon, Inc.'s First Set of Interrogatories to Plaintiff International Business Machines Corporation (Nos. 4, 8, and 12)) at 9.)

The Honorable Leonard P. Stark
July 11, 2018
Page 4

                      Respectfully,

                      */s/ John G. Day*

                      John G. Day (#2403)

JGD/nlm
Attachments

cc:    Counsel of Record (via electronic mail; w/attachments)

{01343109;v1 }

# EXHIBIT 1

# REDACTED IN ITS ENTIRETY

{00925327;v1 }

# EXHIBIT 2

# REDACTED IN ITS ENTIRETY