**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| INTERNATIONAL BUSINESS MACHINES CORPORATION, | ) ) ) | |
| Plaintiff, | ) ) | C.A. No. 16-122-LPS |
| v. | ) ) | **JURY TRIAL DEMANDED** |
| GROUPON, INC. | ) ) ) | |
| Defendant. | ) | |

## **PRELIMINARY JURY INSTRUCTIONS**

**INTRODUCTION**

Members of the jury: Now that you have been sworn in, I have the following preliminary instructions for guidance on your role as jurors in this case.

These instructions are intended to introduce you to the case and the law that you will apply to the evidence that you will hear. I will give you more detailed instructions on the law at the end of the trial. Also, because this is a patent trial which will deal with subject matter that is not within the everyday experience of most of us, I will additionally give you some preliminary instructions regarding patents to assist you in discharging your duties as jurors.

I expect that your commitment as jurors will last approximately ten business days, through July 27. This case involves multiple issues, and so we will break the trial into multiple phases.

You will hear the evidence, decide what the facts are, and then apply those facts to the law that I will give to you.

You and only you will be the judges of the facts. I play no part in judging the facts. You should not take anything I may say or do during the trial as indicating what I think of the evidence

1

or what your verdict should be. My role is to be the judge of the law. I make whatever legal decisions have to be made during the course of the trial, and I will explain to you the legal principles that must guide you in your decisions. You must follow that law whether you agree with it or not.

**PATENT VIDEO**

This case involves a dispute relating to United States patents. Before summarizing the positions of the parties and the issues involved in the dispute, I am are going to show a 17-minute video as an introduction to the patent system. It contains background information to help you understand what patents are, why we have them, the role of the Patent Office, and why disputes over patents arise. This was prepared by the government, not by the parties. The video references a sample patent that you will find in your Notebooks. Also, many of the terms that are used in the video are contained in a Glossary of Patent terms in your Notebooks. Please feel free to refer to this Glossary throughout the trial.

**THE PARTIES AND THEIR CONTENTIONS**

The plaintiff in this case is International Business Machines Corporation, or "IBM." The defendant in this case is Groupon, Inc. IBM contends that Groupon infringes four U.S. patents, and that Groupon's infringement is willful. Those patents are: No. 5,796,967, No. 7,072,849, No. 5,961,601, and No. 7,631,346. Copies of each of the patents have been given to you along with these preliminary instructions. Patents are usually referred to by their last three digits. Patent No. 5,796,967 can be referred to as "the '967 patent." Patent No. 7,072,849 can be referred to as "the '849 patent" and so forth. IBM contends that it is entitled to damages to compensate IBM for Groupon's infringement.

Groupon denies that it infringes the patents-in-suit and it denies that IBM is entitled to any damages in this action. Groupon also contends that the patents-in-suit are invalid, and that IBM is barred from asserting the '346 patent because IBM granted patent licenses to third parties.

**OVERVIEW OF APPLICABLE LAW**

In deciding the issues I just discussed, you will be asked to consider specific legal standards. I will give you an overview of those standards now and will review them in more detail before the case is submitted to you for your verdict.

You will be asked to decide whether Groupon has infringed the asserted claims of the patents-in-suit. Infringement is assessed on a claim-by-claim basis. Therefore, there may be infringement as to one claim but not infringement as to another. There are a few different ways that a patent may be infringed. I will explain the requirements for each of these types of infringement to you in detail at the conclusion of the case. In general, however, Groupon may infringe the patents-in-suit by making, using, selling, or offering for sale in the United States, or by importing into the United States, a product or by using a method meeting all the requirements, or steps, of a claim of the patents-in-suit.

If you determine that one or more of the asserted patents are infringed by Groupon, then you will need to determine if that infringement was willful. I will provide you more direct instructions on how to determine that at the end of trial.

You will be asked to decide whether IBM's infringement claims for the '346 patent are barred because IBM has granted licenses to its patents to third parties.

You will be asked to decide whether the patents-in-suit are invalid. A patent may be invalid for a number of reasons, including because it claims subject matter that is not new or is obvious. Like infringement, invalidity is assessed on a claim-by-claim basis. Therefore, there

may be invalidity as to one claim but not as to another. A claim is invalid if all of its requirements were present in a single previous device or method, or sufficiently described in a single previous printed publication or patent. In this situation, a claim is said to be anticipated by prior art. A claim is also invalid if it would have been obvious to a person of ordinary skill in the field of technology of the patent at the relevant time. You will need to consider a number of questions in deciding whether the invention(s) claimed in the patents-in-suit are obvious. I will provide you detailed instructions on these questions at the conclusion of the case.

If you decide that any claim of the patents-in-suit has been infringed, is not invalid, and IBM is not barred from asserting it against Groupon, you will then need to decide any money damages to be awarded to IBM to compensate it for the infringement. A damages award should put IBM in approximately the same financial position that it would have been in had the infringement not occurred. In this case, IBM seeks a reasonable royalty. A reasonable royalty is the amount of royalty payment that a patent holder and the alleged infringer would have agreed to in a hypothetical negotiation taking place at a time prior to when the infringement first began. Any damages you may award are not meant to punish Groupon. I will give you more detailed instructions on the calculation of damages at the conclusion of the case.

**GENERAL GUIDANCE REGARDING PATENTS**

Although you heard much of this in the video, I will now give you a general overview of what a patent is and how one is obtained.

A.   *Constitutional Basis for Patent Grant.*

The United States Constitution, Article I, Section 8 grants the Congress of the United States the power to enact laws "to promote the progress of science and useful arts, by securing for limited times to authors and inventors the exclusive right to their respective writings and discoveries."

B.   *Exclusionary Right and Term of a Patent*

The United States Patent and Trademark Office is responsible for reviewing patent applications and granting patents. Once the "Patent Office" or "USPTO" has issued a patent, the patent owner has the right to exclude others from making, using, selling, or offering for sale the invention throughout the United States, or from importing the invention into the United States, for the length of the patent term. A person who, without the patent owner's authority, makes, uses, sells, offers to sell, or imports a product that is covered by one or more claims of a valid patent infringes the patent.

C.   *The Parts of a Patent*

I will next briefly describe the parts of a patent and some of the procedures followed by those attempting to obtain patents. Many of the terms I will use in this description are contained in the "Glossary of Patent Terms" I have given you along with a copy of these preliminary instructions. Feel free to refer to the Glossary throughout the trial.

For an invention be patentable, it must be new, useful and, at the time the invention was made, must not have been obvious to a person having ordinary skill in the art to which the subject matter pertains.

Under the patent laws, the Patent Office examines patent applications and issues patents. A person applying for a patent must include a number of items in his or her application, including: (1) a detailed description of the inventions in terms sufficiently full, clear, concise, and exact to enable any person skilled in the art to which the invention pertains to make and use the invention; and (2) one or more claims.

The application includes a written description of the invention called a "specification" and may include drawings that illustrate the invention. The specification concludes with one or more

5

claims that particularly and distinctly define the subject matter that the inventor regards as his or her invention.

When a patent application is received at the Patent Office, it is assigned to an examiner, who examines the application, including the claims, to determine whether the application complies with the requirements of the U.S. patent laws. The examiner reviews the prior work of others in the form of files of patents and publications. This type of material is called "prior art." Prior art is generally technical information and knowledge that was known to the public either before the invention by the applicant or more than one year before the filing date of the application. Documents found in the search of prior art are called "references." In conducting the search of prior art, the examiner notes in writing on the file the classes or subclasses of art searched.

The compilation of the papers concerning the proceedings before the Patent Office is called the "prosecution history," "file wrapper," or "file history."

The examiner may "reject" the patent application claims if he or she believes that they are not patentable in light of the prior art or because the patent specification does not adequately describe the claimed inventions. The applicant may then amend the claims to respond to the examiner's rejections. If, after reviewing the prior art maintained at the Patent Office or provided by the application to the Patent Office during prosecution of the application, the examiner concludes that the claims presented by the applicant define the applicant's claimed invention over the most relevant known prior art in a manner that is patentable and that the patent meets the other requirements for patentability, the application is granted as a U.S. patent.

D.     *Infringement Disputes and Invalidity*

The Patent Office and its examiners do not decide infringement issues. If there is a dispute about infringement, it is brought to the Court to decide. Here, you also are asked to decide about

validity—that is, whether the patent should have been allowed by the Patent Office. A party accused of infringement is entitled to challenge whether the asserted patent claims are sufficiently new or nonobvious in light of the prior art or whether other requirements of patentability have been met. In other words, a defense to an infringement lawsuit is that the patent in question is invalid.

**DUTIES OF THE JURY**

Let me now turn to the general rules that will govern the discharge of your duties as jurors in this case.

It will be your duty to find what the facts are from the evidence as presented at the trial. You and you alone will be the judges of the facts. You will have to apply those facts to the law as I will instruct you at the close of the evidence. You must follow that law whether you agree with it or not.

In addition to instructing you about the law, at the close of the evidence, I will provide you with instructions as to what the claims of the patents mean. Again, of course, you are bound by your oath as jurors to follow these and all the instructions that I give you, even if you personally disagree with them. All the instructions are important, and you should consider them together as a whole.

You are the judges of the facts. I will decide which rules of law apply to this case.

Perform these duties fairly. Do not let any bias, sympathy, or prejudice that you may feel toward one side or the other influence your decision in any way. Also, do not let anything I say or do during the course of the trial influence you. Nothing I say or do is intended to indicate, or should be taken by you as indicating, what your verdict should be.

**EVIDENCE**

The evidence from which you will find the facts will consist of the testimony of witnesses and the documents and other things admitted into evidence. The evidence may also include certain facts agreed to by the parties or that I may instruct you to find.

Certain things are not evidence. I will list them for you now:

1. Statements, arguments, and questions by lawyers are not evidence.

2. Objections to questions are not evidence. Lawyers have an obligation to their clients to make an objection when they believe testimony or exhibits being offered are not admissible under the rules of evidence. You should not be influenced by a lawyer's objection or by my ruling on the objection. If I sustain or uphold the objection and find the matter is not admissible, you should ignore the question or document. If I overrule an objection and allow the matter in evidence, you should treat the testimony or document like any evidence. If I instruct you during the trial that some item of evidence is admitted for a limited purpose, you must follow that instruction and consider that evidence for that purpose only. If this occurs during the trial, I will try to clarify this for you at that time.

3. Testimony that the Court has excluded or told you to disregard is not evidence and must not be considered.

4. During trial you will be shown charts and animations to help illustrate the testimony of the witnesses. These illustrative exhibits, called "demonstrative exhibits," are not admitted into evidence and should not be considered as evidence.

5. Anything you see or hear outside the Courtroom is not evidence and must be disregarded. You are to decide this case solely on the evidence presented here in the Courtroom.

**DIRECT AND CIRCUMSTANTIAL EVIDENCE**

There are two kinds of evidence: direct and circumstantial. Direct evidence is direct proof of a fact, such as testimony of an eyewitness. If a witness testified that he saw it raining outside, and you believed him, that would be direct evidence that it was raining.

Circumstantial evidence is proof of facts from which you may infer or conclude that other facts exist. If someone walked into the Courtroom wearing a raincoat covered with drops of water, and carrying a wet umbrella, that would be circumstantial evidence from which you could conclude that it was raining outside.

As a general rule, the law makes no distinction between these two types of evidence but simply requires that you find facts from all the evidence in the case, whether direct or circumstantial or a combination of the two. In judging the facts, it will be up to you to decide which witnesses to believe, which witnesses not to believe, and how much of any witness's testimony to accept or reject.

**CREDIBILITY OF WITNESSES -WEIGHING CONFLICTING TESTIMONY**

You are the sole judges of each witness's credibility. You should consider each witness's means of knowledge; strength of memory; opportunity to observe; how reasonable or unreasonable the testimony is; whether it is consistent or inconsistent; whether it has been contradicted; the witness's biases, prejudices or interests; the witness's manner or demeanor on the witness stand; and all circumstances that, according to the evidence, could affect the credibility of the testimony.

If you find the testimony to be contradictory, you must try to reconcile it, if reasonably possible, so as to make one harmonious story of it all. But if you can't do this, then it is your duty and privilege to believe the testimony that, in your judgment, is most believable and disregard any

9

testimony that, in your judgment, is not believable. This instruction applies to the testimony of all witnesses, including expert witnesses.

**EXPERT TESTIMONY**

Expert testimony is testimony from a person who has a special skill or knowledge in some science, profession, or business. This skill or knowledge is not common to the average person but has been acquired by the expert through special study or experience. In weighing expert testimony, you may consider the expert's qualifications, the reasons for the expert's opinions, and the reliability of the information supporting the expert's opinions, as well as the factors I have previously mentioned for weighing testimony of any other witness. Expert testimony should receive whatever weight and credit you think appropriate, given all the other evidence in the case. You are free to accept or reject the testimony of experts, just as with any other witness.

**BURDEN OF PROOF**

In any legal action, facts must be proven by a required standard of evidence, known as the "burden of proof." In a patent case such as this, there are two different burdens of proof that are used. The first is called "preponderance of the evidence." The second is called "clear and convincing evidence."

A party asserting patent infringement has the burden of proving infringement by a preponderance of the evidence. That means the party asserting infringement has to produce evidence that, when considered in light of all of the facts, leads you to believe that what that party claims is more likely true than not. To put it differently, if you were to put the parties' evidence on opposite sides of a scale, the evidence supporting the claims of the party asserting infringement must make the scales tip somewhat on its side. If it does not, and the scale remains equal or tips the other way, then that party failed to prove its infringement claims. A party asserting willful infringement

also has the burden of proving that any infringement was willful by a preponderance of the evidence. And it has the burden to establish the amount of damages it seeks by a preponderance of the evidence.

A party challenging the validity of a patent has the burden of proving by clear and convincing evidence that the patent is invalid. Clear and convincing evidence is evidence that produces an abiding conviction that the truth of a factual contention is highly probable. Proof by clear and convincing evidence is, thus, a higher burden than proof by a preponderance of the evidence.

Some of you may have heard the phrase "proof beyond a reasonable doubt." That burden of proof applies only in criminal cases and has nothing to do with a civil case like this one. You should therefore not consider it in this case.

**SUMMARY OF THE PATENT ISSUES**

In this case, you must decide several things according to the instructions I will give you at the end of the trial. Those instructions will repeat this summary and will provide more detail. You must decide:

1. Whether IBM has proven by a preponderance of the evidence that Groupon infringes one or more of the asserted claims of the patents-in-suit and, if so, whether it does so willfully;

2. Whether Groupon has proven by clear and convincing evidence that one or more of the asserted claims of the patents-in-suit are invalid;

3. Whether Groupon has proven by a preponderance of the evidence that it had an implied license to practice the '346 patent and/or that IBM's rights to enforce the '346 patent against Groupon were exhausted and

4. If you find Groupon has infringed a valid patent, and it had no implied license to practice that patent and IBM's right to assert that patent has not been exhausted, the amount of damages that IBM has proven, by a preponderance of the evidence, that should be awarded to IBM as compensation for that infringement.

**CONDUCT OF THE JURY**

Now a few words about your conduct as jurors.

First, I instruct you that during the trial you are not to discuss the case with anyone or permit anyone to discuss it with you. Until you retire to the jury room at the end of the case to deliberate on your verdict, you simply are not to talk about this case. If any lawyer, party, or witness does not speak to you when you pass in the hall, ride the elevator, or the like, remember it is because they are not supposed to talk with you, nor you with them. In this way, any unwarranted and unnecessary suspicion about your fairness can be avoided. If anyone should try to talk to you about the case, bring it to the Court's attention promptly.

Second, do not read or listen to anything touching on this case in any way. By that I mean that if there is a newspaper or internet article or television or radio report relating to this case, do not read the article or watch or listen to the report.

Third, do not try to do any research or investigate the case on your own. Let me elaborate. During the course of the trial, you must not conduct any independent research about the case, the matters in the case, and the individuals or entities involved in the case. In other words, you should not consult dictionaries or reference materials, search the internet, websites, blogs, or any other print, electronic, or any other means. In particular, you may not access or use Groupon, whether through Groupon's website or through Groupon's mobile apps. Also, again, should there happen to be a newspaper article or television or radio report relating to this case, do not read the article

or watch or listen to the report. It is important that you decide this case based solely on the evidence presented in the Courtroom. Please do not try to find out information from any other sources.

I know that many of you use cell phones, tablets, iPhones, the internet, and other tools of technology. You also must not talk to anyone about this case or use these tools to communicate electronically with anyone about the case. This includes your family and friends. You may not communicate with anyone about the case on your cell phone, through e-mail, your tablet or iPhone, text messaging, on Twitter, through any blog or website, through any internet chat room, or by way of any other social networking web sites, including Facebook, Twitter, LinkedIn, and YouTube.

During the trial, you may, but are not required to, take notes regarding testimony; for example, exhibit numbers, impressions of witnesses, or other things related to the proceedings. A word of caution is in order. There is generally I think a tendency to attach undue importance to matters which one has written down. Some testimony which is considered unimportant at the time presented, and thus not written down, takes on greater importance later in the trial in light of all the evidence presented. Therefore, you are instructed that your notes are only a tool to aid your own individual memory and you should not compare your notes with other jurors in determining the content of any testimony or in evaluating the importance of any evidence. Your notes are not evidence and are by no means a complete outline of the proceedings or a list of the highlights of the trial. Also, keep in mind that you will not have a transcript of the testimony to review. So, above all, your memory will be your greatest asset when it comes time to deliberate and render a decision in this case.

If you do take notes, you must leave them in the jury deliberation room which is secured at the end of each day.  And, remember that they are for your own personal use.

Finally, do not form any opinion until all the evidence is in.  Keep an open mind until you start your deliberations at the end of the case.  I will give you detailed instructions on the law at the end of the case, and those instructions will control your deliberations and decision.

**JUROR NOTEBOOK**

As I mentioned, to assist in your deliberations, you have been provided with a notebook that contains the following:

- Glossary of patent terms
- Sample patent
- The Court's claim constructions
- Copies of the patents-in-suit
- Pictures of witnesses

These materials have been jointly submitted by the parties.  Please refer to these materials to assist you during the trial.

**SIDEBARS**

During the trial it may be necessary for me to talk with the lawyers out of your hearing by having a bench conference, which is also called a sidebar.  If that happens, please be patient.

We are not trying to keep important information from you.  These conferences are necessary for me to fulfill my responsibility to be sure that evidence is presented to you correctly under the law.

We will, of course, do what we can to keep the number and length of these conferences to a minimum. If you would like to stand or stretch or walk around the jury box while we are at sidebar, you should feel free to do so.

I may not always grant an attorney's request for a sidebar. Do not consider my granting or denying a request for a conference as an indication of my opinion of the case or of what your verdict should be.

**COURSE OF THE TRIAL**

The case will now begin.

First, IBM may make an opening statement outlining its case. Then Groupon may make an opening statement outlining its case. Opening statements are not evidence; their only purpose is to help you understand what the evidence will be.

Next, the parties will present their evidence. IBM will first introduce its evidence that it believes supports its claim that Groupon infringes the patents-in-suit and the damages that it is entitled to. When IBM is finished, Groupon will introduce evidence to defend against IBM's infringement and damages claims and will introduce evidence that it believes supports its claims that the patents-in-suit are invalid and that it was licensed to practice one of the patents and IBM has exhausted its rights to assert that patent against Groupon. IBM will then have the opportunity to introduce evidence to defend against Groupon's claims of invalidity, and Groupon's claims that it was licensed to practice one of the patents and that IBM has exhausted its rights to assert that patent against Groupon.

After all of the evidence is in, the lawyers will offer closing arguments. The closing arguments are not evidence. Their purpose is to summarize and interpret the evidence for you, and

to tie the evidence to their story. I will give you instructions on the law and describe for you the matters you must resolve. You will then retire to the jury room to deliberate on your verdict.

**TRIAL SCHEDULE**

Though you have heard me say this during the jury selection process, I want to again outline the schedule I expect to maintain during the course of this trial.

As I mentioned previously, once trial begins, this case is expected to take up to eight business days to try, between now and Friday, July 27.

We will normally begin the day at 9:00 A.M. We will go until around 12:30 P.M. and, after about a half hour break for lunch, continue until 4:30 P.M. There will be a fifteen minute break in the morning and another fifteen minute break in the afternoon.

What I have just outlines is the general schedule. It is possible there will be some interruptions as I have to attend to other matters. I already know of some other commitments I have and so I can tell you now that some of our days together will be shorter than what I have just described. I'll list these specifics for you now:

Monday, July 16: 9:30 a.m. to 4:30 p.m.

Tuesday, July 17: 9:00 a.m. to 4:30 p.m.

Wednesday, July 18: 9:00 a.m. to 1:00 p.m.

Thursday, July 19: 9:00 a.m. to 4:30 p.m.

Friday, July 20: 9:00 a.m. to 1:00 p.m.

Monday, July 23: 9:00 a.m. to 4:30 p.m.

Tuesday, July 24: 9:00 a.m. to 4:30 p.m.

Wednesday, July 25: 9:00 a.m. to 1:00 p.m.

Thursday, July 26: 9:00 a.m. to 3:30 p.m.

16

Friday, July 27: 9:00 a.m. to 4:30 p.m.

The only significant exception to this schedule may occur when the case is submitted to you for your deliberations.  At that point, you will be permitted to deliberate as late as you wish.

Please keep in mind that this is a timed trial.  That means I have allocated each party a maximum number of hours in which to present all portions of its case.  This allows me to assure you that we expect to be completed with this case by next Friday, July 27.  Of course, you can help me keep us on schedule by being here promptly each morning and being ready to proceed at the end of each break.

## GLOSSARY OF PATENT TERMS

*Assignment*:   Transfer of ownership rights in a patent or patent application from one person or company to another.

*Claims*:   That part of a patent which defines the metes and bounds of the invention. These are found at the end of the patent specification in the form of numbered paragraphs.

*Claim Construction:*   The process by which the Court construes (defines) the terms of a patent claim to give them meaning.

*File Wrapper/File History/Prosecution History*:   The written record of proceedings in the Patent Office, including the original patent application and subsequent communications between the Patent Office and applicant.

*Element/Limitation/Requirement/Step*:   A required part of an invention set forth in a patent claim.  The phrase "limitation" is often used interchangeably with the phrases "element" and "requirement."   For method claims, "limitation" is also used interchangeably with "step."

*License*:   Permission to make, use, or sell a patented invention, which may be granted by a patent owner (or a prior licensee) in exchange for a fee called a "royalty" or other compensation.

17

*Patent Application*: The initial papers filed in the United States Patent and Trademark Office (Patent Office or USPTO) by an applicant. These typically include a specification, drawings and the oath (Declaration) of the applicant.

*Patent Examiners*: Personnel employed by the Patent Office having expertise in various technical areas who review (examine) patent applications to determine whether the claims of a patent application are patentable and whether the disclosure adequately describes the invention.

***Person Having Ordinary Skill in the Art/Person of Ordinary Skill in the Art/Person Skilled in the Art:*** A hypothetical person presumed to have knowledge of the relevant art (field of technology) at the time of the invention by the applicant.

*Prior Art*: Any information that is used to describe public, technical knowledge prior to the invention by the applicant or more than a year prior to his/her application.

*Reference*: Any item of prior art (publication or patent) used to determine patentability.

*Specification*: That part of the patent application or patent that describes the invention and concludes with one or more claims.

*Written Description*: That part of the patent specification that explains how the invention works and usually includes a drawing.

18