# ASHBY & GEDDES

ATTORNEYS AND COUNSELLORS AT LAW

500 DELAWARE AVENUE

P. O. BOX 1150

WILMINGTON, DELAWARE 19899

TELEPHONE
302-654-1888

FACSIMILE
302-654-2067

July 24, 2018

The Honorable Leonard P. Stark  **VIA ELECTRONIC FILING**
United States District Court
J. Caleb Boggs Federal Building
844 N. King Street
Wilmington, DE 19801

    Re: *International Business Machines Corporation v. Groupon, Inc.,*
          C.A. No. 16-122-LPS

Dear Chief Judge Stark:

    At the Court's request, Groupon submits the following response to the issues on which Your Honor requested guidance during this afternoon's charge conference:

**Joint Infringement**

    Through its proposed instruction on joint infringement IBM invites the Court to commit error in several ways:[1]

    First, it asks the Court to recite an incorrect legal standard to the jury. *Akamai* affirmed the "single-actor rule," that direct infringement of a method claim occurs where all steps of the claimed method are "performed by or attributable to a single entity." *Akamai Techs., Inc. v. Limelight Networks, Inc.*, 797 F.3d 1020 at 1022 (Fed. Cir. 2015) (en banc) (citing *BMC Res., Inc. v. Paymentech, L.P.*, 498 F.3d 1373, 1379–81 (Fed. Cir. 2007). Where more than one actor is involved in practicing the steps, the court must determine whether the acts of one are "attributable to" the other such that one party is responsible for infringement. This happens in two circumstances: (1) where one entity directs or controls others' performance, and (2) where the actors form a joint enterprise. *Id.* at 1022. Direction or control, in turn, may be shown by proof that an actor conditions participation in an activity or receipt of a benefit upon performance of the claim steps by another. *Id.* at 1023.

    In other words, joint patent infringement still requires an agency relationship or joint enterprise. *Akamai*; *Aristocrat Technologies*. Here, IBM has improperly attempted to broaden the

---

[1] As an initial matter, IBM did not put forth any theories of indirect infringement or doctrine of equivalence. IBM does not dispute this. Accordingly, there is no need to refer to "infringement" in the jury instructions as "*direct*" infringement, because this jury need not know the distinction between direct, indirect, literal or DOE infringement.

{01347229;v1 }

standard to impose liability in circumstances the Federal Circuit does not recognize as infringement.  In its instruction, IBM has reworded the test from *Akamai* to eliminate the requirement that ***Groupon condition*** the third party's receipt of a benefit on performance of the method.  Instead, it would impose liability where a third party acts on its own, with a mere hope or expectation of a benefit from Groupon.  This would negate the need to show "control" by Groupon, *i.e.,* the key basis for imposing liability for an act of a third party.

IBM has also added its own vicarious liability test, borrowing from copyright, which would impose liability if "Groupon profits from the third parties direct infringement and Groupon has the right and ability to stop or limit the infringement."  The Federal Circuit has not adopted copyright's broader vicarious liability test.  *Akamai* expressly cited to it using a "*cf*" signal: in other words, it invited the reader to compare the *differences* between the copyright test and the one it actually adopted.  *Id.*  In *Travel Sentry, Inc. v. Tropp*, 877 F.3d 1370 (Fed. Cir. 2017), the court discusses the copyright standard in dicta, as an additional rationale that supports its holding. 877 F.3d at 1385.  IBM still needs to prove the two prongs of the *Akamai* test to prevail, and the Court should not instruct the jury otherwise.

Second, a party's request for a jury instruction must be supported by sufficient competent evidence in the record.  *Hill v. Reederei F. Laeisz G.M.B.H., Rostock*, 435 F.3d 404, 421 (3d Cir. 2006) (instruction should only be given if supported by adequate evidentiary basis).  This makes sense, as instructing the jury that they may make a finding for which no evidence has been presented is inherently misleading.  Here, IBM presented no evidence that performance of method steps is "attributable to" Groupon under the meaning of that term in controlling Federal Circuit law.  With respect to the '849 and '967 patents, Dr. Schmidt did not contend that user or customers perform any claim step, and identified almost no customer actions at all. *See e.g.* Trial Tr. at 469:16-17 ("...Groupon's website allows the users to access their goods and services.  By using a browser..."); 501:18-23 (few users know they can disable cache).  The evidence that IBM presented is directed solely to establishing that Groupon, not users or other third parties, infringe the '849 and '967 patents.  *See* Exhibit A.

An instruction to the jury that they may nevertheless find for IBM on this issue would therefore be reversible error.  *Hill v. Reederei F. Laeisz G.M.B.H., Rostock*, 435 F3d 404, 422 (3rd Cir. 2006) (reversible error to instruct the jury on an issue without an evidentiary basis).  Specifically,

- IBM's instruction refers to "a joint enterprise." See D.I. at p.37.  There is no evidence in the record for the jury to find any joint enterprise.  No IBM witness, or Groupon witness, testified about any joint enterprise, or any third party that entered into a joint enterprise or another relationship with Groupon.

- IBM's instruction refers to "third parties" as "direct infringers"(id. at 40), as "perform[ing] the claimed steps," (id. at 39-40), or as being "direct[ed] or control[ed] by Groupon" (id. at XXX.) . IBM has offered no evidence in its case-in-chief, or

at any other point during trial, from which the jury can reasonably find that "third parties" are direct infringers. Before trial IBM's expert disclosed a generic joint infringement theory that Groupon performed the method(s) with third parties that "provide services, such as caching, content delivery network, advertising selection and provision services." He did not present this theory to the jury. At trial, IBM's expert, the only IBM's witness, who addressed the language of the asserted claims, did not identify any third parties as direct infringers. And of course, Groupon's expert, did not do so either. That is fatal to IBM's joint infringement case. *Centricut, LLC v. Esab Group, Inc.*, 390 F.3d 1361, 1370 (Fed. Cir. 2004) (where the accused infringer offers expert testimony negating infringement, the patentee cannot satisfy its burden of proof without expert testimony). IBM also offered no evidence of any "third party" performing the claimed steps or being directed or controlled by Groupon. *See* Ex. A. Accordingly, any instructions referring to third parties infringing the claims, performing the claimed methods or being direct infringers is not supported by any evidence.

**Direct Infringement**

IBM's instruction on single-party direct infringement misstates the law and would mislead the jury for similar reasons. IBM proposes the jury be instructed that Groupon may be found liable if all steps of the method are "performed, *dictated by*, or *attributable to* Groupon." But, as discussed above, "attributable to" refers to a specific test for determining joint infringement under Federal Circuit law, and IBM elicited no evidence at trial that the test is met. Instructing the jury that it may find Groupon liable for acts "attributable to" it, without record evidence of any such acts or an explanation that that "attributable to" has a specific meaning in the law would be highly prejudicial.

Similarly, IBM's proposed "dictated by" language should be omitted because it lacks any explanation of a specific meaning and is not supported by the law. Specifically, IBM relies on the *SiRF Tech., Inc. v. Int'l Trade Com'm*, 601 F. 3d 1319 at 1331 (Fed. Cir. 2010) for the proposition that a party can infringe a claim by simply "dictating" the performance of a claim. But that case did not hold so. There, the court found that the claim at issue, once properly construed, required steps to be performed by a single party. The word "dictate" is not a holding, but a description of the functionality of the accused product in that case. The holding in that case does not stand for a proposition that a party can infringe a method claim by "dictating" performance of its steps. And, in any event, IBM presented no evidence that would allow a reasonable jury to find that Groupon dictates performance of any claim element of the asserted claims of the '967 or '849 patents.

**Conception and Reduction to Practice**

Finally, IBM put forth a theory that inventor documents offered to show date of invention need not be corroborated. Although "[e]vidence in the form of independent documents does not

need to be corroborated," "[c]ase law clearly establishes that, to prove both conception and reduction to practice, an alleged prior inventor 'must provide independent corroborating evidence in addition to his own statements and documents.'" *Kenexa Brassring, Inc. v. Taleo Corp.*, 751 F. Supp. 2d 735, 753, 755 (D. Del. 2010) (quoting *Procter & Gamble Co. v. Teva Pharm. USA, Inc.*, 566 F.3d 989, 999 (Fed. Cir. 2009)) (emphases added). In *Brown v. Barbacid*, the court reasoned that "physical evidence . . . do[es] not require corroboration to demonstrate the content of the physical evidence itself." 276 F.3d 1327, 1335 (Fed. Cir. 2002); *see also Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572, 1577 (Fed. Cir. 1996). But that rule does not apply to an inventor's own, unwitnessed documents. *Id.*; *Procter*, 566 F.3d at 999.

Respectfully,

*/s/ John G. Day*

John G. Day (#2403)

JGD/nml
Attachment

cc:   Counsel of Record (via electronic mail; w/attachment)