**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| INTERNATIONAL BUSINESS MACHINES CORPORATION,  ) ) ) Plaintiff, ) ) v. ) ) GROUPON, INC., ) ) Defendant. ) | C.A. No. 16-122-LPS  **JURY TRIAL DEMANDED** |

**LETTER TO THE HONORABLE LEONARD P. STARK**
**REGARDING ATTRIBUTED INFRINGEMENT**

OF COUNSEL:

John M. Desmarais
Karim Z. Oussayef
Laurie Stempler
Robert C. Harrits
Brian D. Matty
Michael Matulewicz-Crowley
DESMARAIS LLP
230 Park Avenue
New York, NY  10169
Tel:  (212) 351-3400

Dated: July 24, 2018
5876270 / 43155

David E. Moore (#3983)
Bindu A. Palapura (#5370)
Stephanie E. O'Byrne (#4446)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801
Tel: (302) 984-6000
dmoore@potteranderson.com
bpalapura@potteranderson.com
sobyrne@potteranderson.com

*Attorneys for Plaintiff*
*International Business Machines Corporation*



1313 North Market Street
P.O. Box 951
Wilmington, DE 19899-0951
302 984 6000
www.potteranderson.com

**David E. Moore**
Partner
Attorney at Law
dmoore@potteranderson.com
302 984-6147 Direct Phone
302 658-1192 Fax

July 24, 2018

**VIA ELECTRONIC-FILING**

The Honorable Leonard P. Stark
U.S. District Court for the District of Delaware
J. Caleb Boggs Federal Building
844 N. King Street
Wilmington, DE 19801-3556

      Re:   *International Business Machines Corporation v. Groupon, Inc.*
              C.A. No. 16-122-LPS

Dear Chief Judge Stark:

      Pursuant to the Court's order this evening, IBM hereby submits following on the issue of attributed infringement on an expedited schedule.

1. IBM has put forth sufficient evidence showing that Groupon infringes the '849 patent under a theory of attributed infringement.

      The Federal Circuit in *Akamai* explained that "[l]iability under § 271(a) can . . . be found when an alleged infringer conditions participation in an activity or receipt of a benefit upon performance of a step or steps of a patented method and establishes the manner or timing of that performance." *Akamai Techs., Inc. v. Limelight Networks, Inc.*, 797 F.3d 1020, 1022-23 (Fed. Cir. 2015). Alternatively, under common principles of attribution, "an actor 'infringes vicariously by profiting from direct infringement' if that actor has the right and ability to stop or limit the infringement." *Travel Sentry, Inc. v. Tropp*, 877 F.3d 1370, 1385 (Fed. Cir. 2017) (quoting *Akamai*, 797 F.3d at 1023 (citing *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930 (2005))).

      IBM alleges that Groupon directly infringes the '849 patent alone, which is supported by substantial evidence. *See, e.g.*, Trial Tr. 1089:19-1090:6. But in the alternative, IBM alleges that Groupon infringes the '849 patent under a theory of attributed infringement. That alternative theory is implicated by defenses Groupon has raised before the jury at trial, including allegations that users can disable caching and that system controls for user devices can set whether caching or pre-fetching occurs. There is substantial evidence in the record to support a finding of infringement under either theory, and both are at issue due to arguments Groupon has asserted at trial concerning users' actions.

> a. There is evidence that Groupon directs or controls the user's performance of the "storing" step by conditioning receipt of a benefit upon storing, and establishing the manner or timing of storing.

Groupon's expert has contended at trial that the user's computer caches Groupon's website. *See*, *e.g.*, Trial Tr. 1519:22-1520:5 (Dr. Weissman claiming his browser cached objects on his computer). Other evidence on the record similarly discusses local storage of objects. *E.g.*, Trial Tr. 526:10-18; 500:11-19; 502:7-15; 520:10-17, 1078:8-13, 1088:15-1089:1 (discussing whether images would be caches by a user if they enable caching), 1115:1-21 (Groupon's counsel arguing that "whatever caching headers [Groupon] sent will only be effective if the user is caching" and "the user decides that").

There is ample evidence, however, that to the extent that is true, Groupon directs or controls the user's performance of any implicated steps. For example, Dr. Schmidt testified that caching **benefits** the users of Groupon's website and mobile apps because "the users, their li[f]e is improved because things show up faster." Trial Tr. 462:1-9. Additionally, Groupon's Vice-President of Engineering, Aileen Sandridge, testified that reducing latency "improve[s] the experience for users." Trial Tr. at 697:16-23. And Groupon **conditions** the receipt of that benefit, faster access and an improved user experience, on users enabling caching. Dr. Schmidt testified that "caching headers . . . will only be effective if the user is caching." Trial Tr. 1115:8-21; *see also* PX-0180 at 74 (explaining that caching improves performance by "eliminate[ing] the need to send requests in many cases . . . ."). Mr. Carlisle further testified that "[Groupon] employs the cache to help its core products load faster." Trial Tr. at 952:10-158. The record contains still more evidence of that benefit. *See*, *e.g.*, PX-0120; Trial Tr. at 462:1-9, 1091:4-16, 1093:19-1094:2.

There is also substantial evidence that Groupon establishes the **manner and timing** of the storing step by setting the cache-control header that controls whether and for how long the content is stored. *See, e.g.*, Trial Tr. 499:20-500:10 (explaining the Cache-Control max-age value is "the time in seconds from when the object is received in the store for how long that pizza image should be cached before it's considered stale."); Trial Tr. 504:22-505:8; PX-0180 at 111 (describing the max-age parameter), 113. Further, Dr. Schmidt explained that "the cache control header describes specific directive [sic] to cache" and that Groupon can set that header to "control how the advertising objects or whatever is cached will be stored at the store that's located on the user's computer." Trial Tr. 500:11-19.

The Federal Circuit has found that district courts should make sure not to take a narrow view as to what can satisfy the "activity," "benefit," and "conditions" requirements in considering "whether an alleged infringer conditions participation in an activity or receipt of a benefit upon performance of a step or steps of a patented method and establishes the manner or timing of that performance" under *Akamai V*. *See Travel Sentry*, 877 F.3d at 1381 (citing Akamai V, 797 F.3d at 1023). But under any view IBM has put forth substantial evidence such that a reasonable juror could find infringement.

The Honorable Leonard P. Stark
July 24, 2018
Page 3

   b. There is further evidence that Groupon vicariously infringes by profiting from the user storing and having the right and ability to stop or limit the infringement.

For example, in addition to the above, Groupon profits from users' storing. Mr. Carlisle testified that "[Groupon] get[s] a significant benefit from loading the stuff from the cache." Trial Tr. at 955:20-23; *see also* Trial Tr. at 953:5-10; 462:1-9; PX-0638 at 8; PX-0063 at GROUP068597; PX-0062 at GROUP0068006; PX-180 at 74. He also tied that benefit directly to profit. *See*, *e.g.*, Trial Tr. 1091:4-16 (testifying that there is a clear correlation between page performance and revenue). And evidence in the record indicates that Groupon can stop or limit caching by no longer using cache control parameters. *See*, *e.g.*, PX-180 at 113; Trial Tr. at 1077:17-1078:3, 1350:25-1352:2 (Dr. Weissman contending that caching occurs at a user's device), 1520:22-1521:9 (discussing cache control parameters).

 2. Attributed infringement has been part of this case all along.

IBM is not relying solely on expert opinion to support its theory of attributed infringement. Nonetheless, Dr. Schmidt repeatedly opined on attributed infringement in his expert reports. For example, in his opening expert report, Dr. Schmidt opined that "HTTP caching occurs when, at the direction of a website or mobile app provider, local copies of web resources are stored at a user's device for faster retrieval the next time the resource is required . . . [b]y caching these resources locally, a web browser or mobile application can simply return the resource directly from the local cache whenever an application in the browser requests it again, thereby alleviating unnecessary server-side workload and minimizing unnecessary utilization of the network." Schmidt Opening Report ¶ 65. Dr. Schmidt then went on to opine that "HTTP cache headers are often used to control this caching behavior." Schmidt Opening Report ¶ 66. Dr. Schmidt also opined about the benefits to the users and to Groupon from storing. Opening Schmidt Report ¶¶ 148-161. Dr. Schmidt opines in his opening report that Groupon "conditions their relationship with third parties who provide services, such as caching, content delivery network, advertising selection and provision upon the performance of one or more steps of the '967 and '849 patents and establishes the manner or timing of that performance." D.I. 429, Ex. 1 ¶ 231.

IBM also raised its theory of attributed infringement in opposition to Groupon's motion to dismiss for non-infringement. (D.I. 248 at 10-11, 13-14.) Additionally, **both** IBM's and Groupon's issues of law in the proposed Pretrial Order reference this issue. (D.I. 305, Exs. C and D at 6-7.) Finally, this issue was also included in the proposed final jury instructions submitted to the Court, as well as in previous drafts of the jury instructions exchanged between the parties. (D.I. 379 at 13, 37.)

                  Respectfully,

                   */s/ David E. Moore*

                   David E. Moore

DEM:nmt/5876270/43155

cc:   Clerk of the Court (via hand delivery)
      Counsel of Record (via electronic mail)