**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

INTERNATIONAL BUSINESS MACHINES )
CORPORATION, )
                                )   C.A. No. 16-122-LPS
           Plaintiff, )
                                )   **JURY TRIAL DEMANDED**
      v. )
                                  )
GROUPON, INC. )
                                  )
           Defendant. )

## FINAL JURY INSTRUCTIONS

# TABLE OF CONTENTS

**Page**

1.   GENERAL INSTRUCTIONS ................................................................ 1

   1.1.   INTRODUCTION ................................................................ 1

   1.2.   JURORS' DUTIES ................................................................ 2

   1.3.   EVIDENCE DEFINED ................................................................ 3

   1.4.   DIRECT AND CIRCUMSTANTIAL EVIDENCE ................................. 4

   1.5.   CONSIDERATION OF EVIDENCE ................................................. 5

   1.6.   STATEMENTS OF COUNSEL ....................................................... 6

   1.7.   CREDIBILITY OF WITNESSES .................................................... 7

   1.8.   EXPERT WITNESSES ................................................................ 9

   1.9.   DEPOSITION TESTIMONY ....................................................... 10

   1.10.   RULE 30(b)(6) DEPOSITION TESTIMONY ................................. 11

   1.11.   DEMONSTRATIVE EXHIBITS ................................................... 12

   1.12.   USE OF NOTES ................................................................ 13

   1.13.   BURDENS OF PROOF ............................................................ 14

2.   THE PARTIES AND THEIR CONTENTIONS ................................. 15

   2.1.   THE PARTIES ................................................................ 15

   2.2.   THE PARTIES' CONTENTIONS ................................................. 16

   2.3.   SUMMARY OF THE PATENT ISSUES ....................................... 17

3.   THE PATENT CLAIMS ................................................................ 18

   3.1.   PATENT LAWS ................................................................ 18

   3.2.   PATENT CLAIMS GENERALLY ................................................ 19

   3.3.   CONSTRUCTION OF THE CLAIMS ........................................... 20

i

3.4.   OPEN ENDED OR "COMPRISING" CLAIMS..................................... 23

3.5.   INDEPENDENT AND DEPENDENT CLAIMS .................................. 24

4.   INFRINGEMENT........................................................................................ 25

4.1.   INFRINGEMENT GENERALLY..................................................... 25

4.2.   INFRINGEMENT............................................................................ 26

4.3.   INFRINGEMENT—KNOWLEDGE OF THE PATENT AND INTENT
TO INFRINGE ARE IMMATERIAL ............................................... 28

4.4.   INFRINGEMENT—ACTS OF MULTIPLE PARTIES MUST BE
COMBINED TO MEET ALL CLAIM LIMITATIONS..................... 29

4.5.   IMPLIED LICENSE ........................................................................ 30

4.6.   PATENT EXHAUSTION .................................................................. 31

4.7.   WILLFUL INFRINGEMENT ........................................................... 32

5.   INVALIDITY ............................................................................................. 33

5.1.   INVALIDITY GENERALLY ............................................................ 33

5.2.   LEVEL OF ORDINARY SKILL ....................................................... 35

5.3.   INVENTION DATE .......................................................................... 36

5.4.   CONCEPTION ................................................................................. 37

5.5.   REDUCTION TO PRACTICE........................................................... 38

5.6.   PRIOR ART ..................................................................................... 39

5.7.   ANTICIPATION ............................................................................... 41

5.8.   OBVIOUSNESS ............................................................................... 43

5.8.1.   OBVIOUSNESS—HINDSIGHT                NOT
PERMITTED .................................................................... 46

6.   PATENT DAMAGES ................................................................................. 47

6.1.   DAMAGES INTRODUCTION ......................................................... 47

6.2.   DATE DAMAGES BEGIN AND END............................................... 49

6.3.    REASONABLE ROYALTY—GENERALLY ..................................... 50

6.4.    REASONABLE ROYALTY—RELEVANT FACTORS ................................... 51

6.5.    REASONABLE ROYALTY—TIMING CONSIDERATIONS .......................... 54

7.    DELIBERATION AND VERDICT ............................................................... 55

7.1.    INTRODUCTION ............................................................................... 55

7.2.    UNANIMOUS VERDICT ................................................................... 56

7.3.    DUTY TO DELIBERATE ................................................................... 57

7.4.    SOCIAL MEDIA ............................................................................... 58

7.5.    COURT HAS NO OPINION ............................................................... 59

1.    **GENERAL INSTRUCTIONS**

   1.1.    **INTRODUCTION**

     Members of the jury, now it is time for me to instruct you about the law that you must follow in deciding this case. Each of you has been provided a copy of these instructions. You may read along as I deliver them if you prefer.

     I will start by explaining your duties and the general rules that apply in every civil case. Then I will explain some rules that you must use in evaluating particular testimony and evidence. Then I will explain the positions of the parties and the law you will apply in this case. And last, I will explain the rules that you must follow during your deliberations in the jury room, and the possible verdicts that you may return.

     Please listen very carefully to everything I say.

     You will have a written copy of these instructions with you in the jury room for your reference during your deliberations. You will also have a verdict form, which will list the questions that you must answer to decide this case.

### 1.2.   JURORS' DUTIES

You have two main duties as jurors.  The first is to decide what the facts are from the evidence that you saw and heard in court.  Deciding what the facts are is your job, not mine, and nothing that I have said or done during this trial was meant to influence your decision about the facts in any way.  You are the sole judges of the facts.

Your second duty is to take the law that I give you, apply it to the facts, and decide under the appropriate burden of proof which party should prevail on any given issue.  It is my job to instruct you about the law, and you are bound by the oath you took at the beginning of the trial to follow the instructions that I give you, even if you personally disagree with them.  This includes the instructions that I gave you before and during the trial, and these instructions.  All of the instructions are important, and you should consider them together as a whole.

Perform these duties fairly.  Do not guess or speculate, and do not let any bias, sympathy, or prejudice you may feel toward one side or the other influence your decision in any way.

2

### 1.3.   EVIDENCE DEFINED

You must make your decision based only on the evidence that you saw and heard here in court. Do not let rumors, suspicions, or anything else that you may have seen or heard outside of court influence your decision in any way.

The evidence in this case includes only what the witnesses said while they were testifying under oath (including deposition transcript testimony that has been played by video or read to you), the exhibits that I allowed into evidence, and the stipulations to which the lawyers agreed.

Certain charts and graphics have been used to illustrate testimony from witnesses. Unless I have specifically admitted them into evidence, these charts and graphics are not themselves evidence, even if they refer to, identify, or summarize evidence, and you will not have these demonstratives in the jury room.

Nothing else is evidence. The lawyers' statements and arguments are not evidence. The arguments of the lawyers are offered solely as an aid to help you in your determination of the facts. Their questions and objections are not evidence. My legal rulings are not evidence. You should not be influenced by a lawyer's objection or by my ruling on that objection. Any of my comments and questions are not evidence.

During the trial I may have not let you hear the answers to some of the questions that the lawyers asked. I also may have ruled that you could not see some of the exhibits that the lawyers wanted you to see. And, sometimes I may have ordered you to disregard things that you saw or heard, or that I struck from the record. You must completely ignore all of these things. Do not speculate about what a witness might have said or what an exhibit might have shown. These things are not evidence, and you are bound by your oath not to let them influence your decision in any way. Make your decision based only on the evidence, as I have defined it here, and nothing else.

3

### 1.4.    DIRECT AND CIRCUMSTANTIAL EVIDENCE

During the preliminary instructions, I told you about "direct evidence" and "circumstantial evidence." I will now remind you what each means.

Direct evidence is simply evidence like the testimony of an eyewitness which, if you believe it, directly proves a fact. If a witness testified that he saw it raining outside, and you believe him, that would be direct evidence that it was raining.

Circumstantial evidence is simply a chain of circumstances that indirectly proves a fact. If someone walked into the courtroom wearing a raincoat covered with drops of water and carrying a wet umbrella, that would be circumstantial evidence from which you could conclude that it was raining.

It is your job to decide how much weight to give the direct and circumstantial evidence. The law makes no distinction between the weight that you should give to either one, nor does it say that one is any better evidence than the other. You should consider all the evidence, both direct and circumstantial, and give it whatever weight you believe it deserves.

4

### 1.5.    CONSIDERATION OF EVIDENCE

You should use your common sense in weighing the evidence.  Consider it in light of your everyday experience with people and events, and give it whatever weight you believe it deserves. If your experience tells you that certain evidence reasonably leads to a conclusion, you are free to reach that conclusion.

### 1.6.    STATEMENTS OF COUNSEL

A further word about statements of counsel and arguments of counsel.  The attorneys' statements and arguments are not evidence.  Instead, their statements and arguments are intended to help you review the evidence presented.

If you remember the evidence differently from the way it was described by the attorneys, you should rely on your own recollection.

### 1.7.   CREDIBILITY OF WITNESSES

You are the sole judges of each witness's credibility. You may believe everything a witness says, or part of it, or none of it. You should consider each witness's means of knowledge; strength of memory; opportunity to observe; how reasonable or unreasonable the testimony is; whether it is consistent or inconsistent; whether it has been contradicted; the witness's biases, prejudices, or interests; the witnesses' manner or demeanor on the witness stand; and all circumstances that, according to the evidence, could affect the credibility of the testimony.

In determining the weight to give to the testimony of a witness, you should ask yourself whether there is evidence tending to prove that the witness testified falsely about some important fact or whether there was evidence that at some other time the witness said or did something, or failed to say or do something, that was different from the testimony he or she gave at the trial in person or by deposition testimony played by video or read to you. You have the right to distrust such witness's testimony and you may reject all or some of the testimony of that witness or give it such credibility as you may think it deserves.

You should remember that a simple mistake by a witness does not necessarily mean that the witness was not telling the truth. People may tend to forget some things or remember other things inaccurately. If a witness has made a misstatement, you must consider whether it was an innocent lapse of memory or an intentional falsehood, and that may depend upon whether it concerns an important fact or an unimportant detail.

One more point about the witnesses. Sometimes jurors wonder if the number of witnesses who testified makes any difference. Proof of a fact does not necessarily depend on the number of witnesses who testify about it. Unless I instruct you otherwise, the testimony of a single witness may be sufficient to prove any fact, even if a greater number of witnesses may have testified to the contrary if after all the other evidence you believe that single witness.

7

Do not make any decisions based only on the number of witnesses who testified. What is more important is how believable the witnesses were, and how much weight you think their testimony deserves. Concentrate on that, not the numbers.

### 1.8.   EXPERT WITNESSES

Expert testimony is testimony from a person who has a special skill or knowledge in some science, profession, or business.  This skill or knowledge is not common to the average person but has been acquired by the expert through special study or experience.

In weighing expert testimony, you may consider the expert's qualifications, the reasons for the expert's opinions, and the reliability of the information supporting the expert's opinions, as well as the factors I have previously mentioned for weighing testimony of any other witness. Expert testimony should receive whatever weight and credit you think appropriate, given all the other evidence in the case.  You are free to accept or reject the testimony of experts, just as with any other witness.

### 1.9.    DEPOSITION TESTIMONY

During the trial, certain testimony was presented to you by the playing of video excerpts from a deposition.  The deposition testimony may have been edited or cut to exclude irrelevant testimony as the parties have only a limited amount of time to present you with evidence.  You should not attribute any significance to the fact that the deposition videos may appear to have been edited.

Deposition testimony is out of court testimony given under oath and is entitled to the same consideration you would give it had the witnesses personally appeared in court.

### 1.10.   RULE 30(b)(6) DEPOSITION TESTIMONY

In this case, there were certain witnesses identified as "Rule 30(b)(6) witnesses" for the parties. They are: Robert Filepp, Heather Hinton, Thomas McBride, and Arun Iyengar for IBM; and Jason Carlisle, Phillip Dunham, Jim Breen, Damien Schmitz, and Jan Krems for Groupon. These Rule 30(b)(6) witnesses were designated to speak at their deposition on certain topics on behalf of the entities which designated them as Rule 30(b)(6) witnesses. Rule 30(b)(6) witnesses are required to testify about information known or reasonably available to the designating entity related to those particular topics. For answers within the designated topics, the entity is bound by the answers provided by its Rule 30(b)(6) witness.

If these witnesses also provided testimony outside of their designated topics based on their personal knowledge and/or provided their personal opinions in addition to testifying to factual information on behalf of the designating entities, the designating entities are not bound by answers that provide personal knowledge and/or personal opinions that are outside of the designated topics.

11

## 1.11.  DEMONSTRATIVE EXHIBITS

During the course of the trial, you have seen many exhibits.  Many of these exhibits were admitted as evidence.   You will have these admitted exhibits in the jury room for your deliberations.  The remainder of the exhibits (including charts, PowerPoint presentations, and animations) were offered to help illustrate the testimony of the various witnesses.   These illustrative exhibits, called "demonstrative exhibits," have not been admitted, are not evidence, and should not be considered as evidence.  Rather, it is the underlying testimony of the witness that you heard when you saw the demonstrative exhibits that is the evidence in this case.

### 1.12.   USE OF NOTES

You may have taken notes during trial to assist your memory.  As I instructed you at the beginning of the case, you should use caution in consulting your notes.  There is generally a tendency I think to attach undue importance to matters which one has written down.  Some testimony which is considered unimportant at the time presented, and thus not written down, takes on greater importance later in the trial in light of all the evidence presented.  Therefore, your notes are only a tool to aid your own individual memory, and you should not compare notes with other jurors in determining the content of any testimony or in evaluating the importance of any evidence.  Your notes are not evidence, and are by no means a complete outline of the proceedings or a list of the highlights of the trial.

Above all, your memory should be the greatest asset when it comes time to deliberate and render a decision in this case.

### 1.13.   BURDENS OF PROOF

In any legal action, facts must be proven by a required standard of evidence, known as the "burden of proof." In a patent case such as this, there are two different burdens of proof that are used. The first is called "preponderance of the evidence." The second is called "clear and convincing evidence." I told you about these two standards of proof during my preliminary instructions to you and I will now remind you what they mean.

IBM contends that Groupon has infringed claims 1 and 2 of the '967 patent, claims 1 and 8 of the '849 patent, claims 51 and 54 of the '601 patent, and claims 1 and 5 of the '346 patent. A party asserting patent infringement has the burden of proving infringement by a preponderance of the evidence. A preponderance of the evidence is evidence that, when considered in light of all of the facts, leads you to believe that what that party claims is more likely true than not. To put it differently, if you were to put the parties' evidence on opposite sides of a scale, the evidence supporting IBM's claims must make the scales tip somewhat toward its side. If it does not, and the scale remains equal or tips the other way, then IBM failed to prove its infringement claims.

Groupon denies that it has infringed and contends that the asserted claims of the '601 and '346 patents are invalid. A party challenging the validity of a patent has the burden of proving that the patent is invalid by clear and convincing evidence. Clear and convincing evidence is evidence that produces an abiding conviction that the truth of a factual contention is highly probable. Proof by clear and convincing evidence is, thus, a higher burden than proof by a preponderance of the evidence.

Some of you may have heard the phrase "proof beyond a reasonable doubt." That burden of proof applies only in criminal cases and has nothing to do with a civil case like this one. You should therefore not consider it in this case.

## 2.    THE PARTIES AND THEIR CONTENTIONS

### 2.1.    THE PARTIES

I will now review for you the parties in this action, and the positions of the parties that you will have to consider in reaching your verdict.

As I have previously told you, the plaintiff in this case is International Business Machines Corporation.  I will refer to the plaintiff as "IBM" or "Plaintiff."  The defendant in this case is Groupon, Inc.  I will refer to the defendant as "Groupon" or "Defendant."

## 2.2.   THE PARTIES' CONTENTIONS

There are four patents at issue in this case: United States Patent Nos. 5,796,967, 7,072,849, 5,961,601, and 7,631,346. You may have heard the lawyers and witnesses in the case refer to IBM's patents as the '967 patent, the '849 patent, the '601 patent, the '346 patent, or collectively as the patents-in-suit. Copies of the '967, '849, '601, and '346 patents have been given to you.

IBM contends that Groupon's website and mobile website infringe claims 1 and 2 of the '967 patent. IBM also contends that Groupon's website, mobile website, and mobile applications infringe claims 1 and 8 of the '849 patent, claims 51 and 54 of the '601 patent, and claims 1 and 5 of the '346 patent. Specifically, IBM contends that Groupon directly infringes the asserted claims of the '967, '849, '601, and '346 patents. IBM also contends that Groupon's infringement was willful. IBM further contends that it is entitled to damages to compensate IBM for Groupon's infringement of the '967, '849, '601, and '346 patents.

Groupon denies that it infringes any asserted claim of the '967, '849, '601, and '346 patents, and that any infringement was willful. Groupon also contends that the asserted claims of the '601 and '346 patents are invalid for several independent reasons and that any alleged use of the '346 patent is licensed and IBM has exhausted its right to assert that patent. Groupon contends that IBM is not entitled to recover any damages in this case.

### 2.3.    SUMMARY OF THE PATENT ISSUES

I will now summarize the patent issues that you must decide and for which I will provide instructions to guide your deliberations. Here are the issues you must decide:

1.    Whether IBM has proven by a preponderance of the evidence that Groupon is liable for infringement of one or more of the asserted claims.

2.    Whether Groupon has proven by a preponderance of the evidence that it had an implied license to practice the '346 patent and/or that IBM's rights to assert the '346 patent against Groupon were exhausted by virtue of IBM's license to Facebook and/or Google.

3.    Whether IBM has proven by a preponderance of the evidence for each patent that the infringement, if any, was willful.

4.    Whether Groupon has proven by clear and convincing evidence that one or more asserted claims of the '601 and/or '346 patents are invalid.

5.    If applicable: What amount of damages, if any, IBM has proved by a preponderance of the evidence.  (I will explain later the circumstances under which you would need to decide damages.)

I will provide more detailed instructions on each of the issues you must decide elsewhere in these jury instructions.

17

## 3.    THE PATENT CLAIMS

### 3.1.    PATENT LAWS

At the beginning of the trial, I gave you some general information about patents and the patent system and a brief overview of the patent laws relevant to this case. I will now give you more detailed instruction about the patent laws that specifically relate to this case.

18

### 3.2.  PATENT CLAIMS GENERALLY

Throughout the trial, and in my instructions, you have heard much about patent "claims" and the "Asserted Claims." Before you can decide many of the issues in this case, you will need to understand the role of patent "claims." The patent claims are the numbered paragraphs at the end of each patent. The claims are important because the words of the claims define what a patent covers. Only the claims of a patent can be infringed. The claims are intended to define, in words, the bounds of the purported invention. Therefore, the description in a patent specification of a preferred embodiment does not necessarily define the full scope of the patent claim. The figures and text in the rest of the patent provide a description and/or examples of the invention and provide a context for the claims, but it is the claims that define the breadth of the patent's coverage. Each of the asserted claims must be considered individually.

Each claim is effectively treated as if it were a separate patent, and each claim may cover more or less than another claim. Therefore, what a patent covers depends, in turn, on what each of its claims covers. You will first need to understand what each claim covers in order to decide whether or not there is infringement of the claim and to decide whether or not the claim is invalid.

### 3.3.    CONSTRUCTION OF THE CLAIMS

It is the Court's duty under the law to define what the patent claims mean. As I instructed you at the beginning of the case, I have made my determinations, and I will now instruct you on the meaning of the claim terms. You must apply the meaning that I give in each patent claim to decide if the claim is infringed or invalid. You must accept my definitions of these words or groups of words in the claims as being correct. You must ignore any different definitions used by the witnesses, including expert witnesses, or the attorneys.

You are advised that the following definitions for the following terms or groups of terms must be applied:

| Claim Term | Construction |
|---|---|
| '967 Patent | |
| "object(s)" | "data structure(s)" |
| "application(s)" | "information events composed of a sequence of one or more pages opened at a screen" |
| "the objects being retrieved from the objects stored at the respective reception system, or if unavailable from the objects stored at the respective reception system, then from the network" | "the objects being retrieved from the objects stored at the respective reception system, or, if the current versions of the objects are not present from the objects stored at the respective reception system, then from the network" |
| "permit random movement" | "allow navigation to other applications at the user's behest" |
| "at least one procedure for navigating to a new application / a plurality of different procedure [sic] for navigating to a new application" | "at least one procedure for moving to another application / a plurality of different procedures for moving to another application" |
| "computer network / the network" | "two or more interconnected computers" |
| "command function(s)" | "a function that enables the user to interact with the reception system and other elements of the network" |
| "a first partition for presenting applications" | "a first area for presenting applications" |
| "a second partition for presenting a plurality of command functions" | "a second area for presenting a plurality of command functions" |
| '849 Patent | |
| "object(s)" | "data structure(s)" |
| "application(s)" | "information events composed of a sequence of one or more pages opened at a screen" |

| | |
|---|---|
| "selectively storing advertising objects at a store established at the reception system" | "pre-fetching advertising objects and storing at a store established at the reception system in anticipation of display concurrently with the applications" |
| "structuring advertising in a manner compatible to that of the applications so that it may be presented" | "formatting advertising for potential use with a plurality of applications" |
| "computer network / the network" | "two or more interconnected computers" |
| "structuring applications so that they may be presented through the network at a first portion of one or more screens of display I structuring applications so that they may be presented at a first portion of one or more screens of display" | "formatting applications so that they may be presented through the network at a first area of one or more screens of display I formatting applications so that they may be presented at a first area of one or more screens of display" |
| "at a second portion of one or more screens of display concurrently with applications" | "at a second area of one or more screens of display concurrently with applications" |
| **'601 Patent** | |
| "recursively embedding the state information in all identified continuations" | "applying a process one or more times to each identified continuation to modify all identified continuations to include state information" |
| "continuation(s)" | "a new request which a client may send to a server, such as, for example a hyperlink" |
| "all continuations in an output from said service" | "all new requests which a client may send to a server, such as, for example, a hyperlink, in an output from said service" |
| "stateless protocol" | "a protocol where every request from a client to a server is treated independently of previous connections" |
| "client" | "a computer which issues commands to the server which performs the task associated with the command" |
| "conversation(s)" | "a sequence of communications between a client and server in which the server responds to each request with a set of continuations and the client always picks the next request from the set of continuations" |
| "state information" | "information about a conversation between a client and a server" |
| **'346 Patent** | |
| The preamble of claim 1 | the preamble limits the claim |
| "federated computing environment" | "a set of distinct entities, such as enterprises, organizations, institutions, etc., that cooperate to provide a single-sign-on, ease-of-use experience to a user, wherein the enterprises need not have a direct, preestablished, relationship defining how and what information to transfer about a user" |

21

| "single-sign-on-operation(s)" | "an authentication process whereby the user is subsequently not required to perform another authentication operation during a particular user session" |
| "user authentication" | "the process of validating a set of credentials that are provided by a user or on behalf of a user" |

For any words in the claims for which I have not provided you with a definition, you should apply the plain and ordinary meaning to a person of ordinary skill in the art.

22

### 3.4.    OPEN ENDED OR "COMPRISING" CLAIMS

The beginning portion, or preamble, of several of the Asserted Claims has the word "comprising."  The word "comprising" means "including the following but not excluding others." A claim that uses the word "comprising" or "including" is not limited to products or processes having only the elements that are recited in the claim, but also covers products or processes that have additional elements that are not recited in the claims.

### 3.5.    INDEPENDENT AND DEPENDENT CLAIMS

This case involves two types of patent claims: independent claims and dependent claims. An "independent claim" sets forth all of the requirements that must be met in order to be covered by that claim. Thus, it is not necessary to look at any other claim to determine what an independent claim covers. In this case, claim 1 of the '967 patent is an example of an independent claim. You know this because it mentions no other claims. Accordingly, the words of claim 1 of the '967 patent are read by themselves in order to determine what claim 1 covers. The remaining claim of the '967 patent is a dependent claim.

A dependent claim does not itself recite all of the requirements of the claim but refers to another claim for some of its requirements. In this way, the claim "depends" on another claim. A dependent claim incorporates all of the requirements of the claim or claims to which it refers. The dependent claim then adds its own additional requirements. To determine what a dependent claim covers, it is necessary to look at both the dependent claim and any other claims to which it refers. Here, for example, claim 2 of the '967 patent is a dependent claim. You know this because it refers to independent claim 1 by stating "The method of claim 1 further comprising . . . ." Accordingly, the words of claims 1 and 2 are read together in order to determine what claim 2 of the '967 patent covers.

4.    **INFRINGEMENT**

  **4.1.    INFRINGEMENT GENERALLY**

I will now instruct you on how to decide whether IBM has proven that Groupon has infringed the asserted claims of the patents-in-suit.

Infringement is assessed on a claim-by-claim and product-by-product basis. Therefore, there may be infringement as to one claim but no infringement as to another, or infringement by one product and not by another. If, as here, a patent owner asserts multiple patent claims against the same product or method, then you must compare each claim separately against the product or method to determine whether the product or method infringes that individual patent claim.

In this case, IBM asserts that Groupon directly infringes the patents-in-suit. In order to prove infringement, IBM must prove that the requirements for infringement are met by a preponderance of the evidence, i.e., that it is more likely than not that all of the requirements of infringement have been proved.

## 4.2.   INFRINGEMENT

To prove infringement by Groupon of a claim, IBM must prove by a preponderance of the evidence that all steps of a claimed method are performed by or attributable to Groupon.  The presence of other steps beyond those claimed does not avoid infringement, as long as each and every claimed step is performed.

You must determine, separately for each Asserted Claim, whether a claim is directly infringed. If you find that an asserted independent claim on which other claims depend is not infringed, there cannot be infringement of any dependent claim that refers directly or indirectly to that independent claim.  If you find that an independent claim has been infringed, then you must decide, separately, whether the accused technology performs the additional steps of the asserted dependent claims that depend from the independent claim to determine if the accused technology infringes the dependent claims.

All asserted claims in this case are method claims.  Method claims are said to "cover" a method or a process that includes each of the steps recited in the claim, which may be referred to as "claim steps."  Infringement of a method claim occurs only when each step of the method claim is actually performed.  Offering a system or service does not itself infringe a method claim.  In order for a method claim to be infringed, IBM must prove that each step of the claimed method is actually performed, not merely that a system or service has been offered that is capable of performing the claimed method.

IBM asserts the following claims and contends that the following infringes them.

| Patent | Asserted Claims | Accused Products |
|--------|-----------------|------------------|
| '967 patent | Claims 1 and 2 | Groupon's Website |
| '849 patent | Claims 1 and 8 | Groupon's Website<br>Groupon's Mobile Applications |

| '601 patent | Claims 51 and 54 | Groupon's Website<br>Groupon's Mobile Applications |
| --- | --- | --- |
| '346 patent | Claims 1 and 5 | Groupon's Website<br>Groupon's Mobile Applications |

### 4.3.    INFRINGEMENT—KNOWLEDGE OF THE PATENT AND INTENT TO INFRINGE ARE IMMATERIAL

Someone can directly infringe a patent without knowing of the patent or without knowing that what they are doing is an infringement of the patent.  They also may directly infringe a patent even though they believe in good faith that what they are doing is not an infringement of any patent.  A patentee need not always have direct evidence of infringement, as infringement may be established by circumstantial evidence.

### 4.4.   INFRINGEMENT—ACTS OF MULTIPLE PARTIES MUST BE COMBINED TO MEET ALL CLAIM LIMITATIONS

Infringement occurs where all steps of a claimed method are performed by, or are attributable to, a single party.  Where more than one party is involved in practicing the steps, you must determine whether the acts of one are attributable to the other such that a single party is responsible for the infringement.  There are two situations where there may be infringement if no single party performs all of the steps of a claimed process but more than one party performs every step of the process: (1) the parties have formed a joint enterprise or (2) one party directs or controls the other party's performance of the claim steps.

In this case, IBM alleges that if Groupon does not perform all steps of the claimed methods of the '849 patent and '967 patent, Groupon is still liable for infringement of those patents because any steps that it does not itself perform are attributable to Groupon, even if they are performed by another party.  IBM alleges that Groupon and third parties collectively infringe claims 1 and 8 of the '849 patent and claims 1 and 2 of the '967 patent.  IBM does not allege that Groupon infringes any of the '346 and '601 patents through any actions taken by a third party.

For infringement through combined acts of multiple parties to be proved, IBM must prove by a preponderance of the evidence (1) that all the steps of the claimed process were performed in the United States and (2) that the acts of third parties are attributable to Groupon either because Groupon and the third parties have formed a joint enterprise or because Groupon directs or controls the acts of the third parties.

To prove that Groupon directed or controlled the acts of third parties, IBM must prove (1) that Groupon conditions participation in an activity or receipt of a benefit upon performance of a claim step or steps by third parties and (2) that Groupon established how or when the claim step or steps were performed.

29

### 4.5.    IMPLIED LICENSE

I will now instruct you on determining whether Groupon has an implied license to practice the '346 patent.  You must determine whether IBM's licenses with Facebook and Google grant to Groupon an implied license to use and provide access to Facebook's and Google's sign-on/sign-up technologies.

To prevail on the defense of implied license, Groupon must prove by a preponderance of the evidence that IBM's licenses to Facebook and Google authorize Facebook and/or Google to distribute their sign-on/sign-up technologies to third parties, such as Groupon, and allow those third parties to use those sign-on/sign-up technologies in a manner that may practice the '346 patent.  If you find that IBM's licenses to Facebook and Google authorize such conduct, then you must find for Groupon on this issue.

### 4.6.    PATENT EXHAUSTION

I will now instruct you on determining whether IBM's rights to assert the '346 patent against Groupon are "exhausted," and thus barred under the doctrine of patent exhaustion. If IBM's rights are exhausted, then Groupon cannot be found to infringe the '346 patent. You must determine whether IBM's rights are exhausted as a result of its licenses with Facebook and Google.

To prevail on the defense of patent exhaustion, Groupon must prove that the following by a preponderance of the evidence:

First, that IBM's licenses to Facebook and/or Google authorized Facebook and/or Google to provide their sign-on/sign-up technology to third parties; and

Second, that Facebook's and/or Google's sign-on/sign-up technologies substantially embody the '346 patent by including all the inventive aspects of the method patented in the '346 patent. To "substantially embody" the '346 patent, the sign-on/sign-up technologies need not include all requirements of the patented method, so long as it includes all inventive aspects.

Groupon must prove both of these elements to prevail on this defense of patent exhaustion. If Groupon does not prove any one of these elements, you must reject Groupon's affirmative defense and find for IBM on this issue. If you find that Groupon has proven both of these elements, you must find for Groupon on this issue.

### 4.7.   WILLFUL INFRINGEMENT

If you have decided that Groupon has infringed any claim of the patents-in-suit you must go on and address the additional issue of whether or not this infringement was willful.

To prove willful infringement of a patent, IBM must prove by a preponderance of the evidence that Groupon had knowledge of the patent and that Groupon's conduct was at least reckless, that is, that Groupon knew, or should have known, that its conduct amounted to infringement of the patent.   An accused infringer's knowledge of a patent, without more, is insufficient to establish willfulness.   To determine whether Groupon acted willfully, consider all of the facts.   In determining whether IBM has proven that Groupon's infringement was willful, you must consider all of the circumstances and assess Groupon's knowledge at the time the challenged conduct occurred.

However, just because you may have found that Groupon infringes does not mean that Groupon willfully infringes.

If you do decide that there was willful infringement, that decision should not affect any damage award you give in this case.

## 5.    INVALIDITY

### 5.1.    INVALIDITY GENERALLY

The law presumes that the Patent and Trademark Office acted correctly in issuing the patent.  This presumption puts the burden on Groupon of proving invalidity by clear and convincing evidence on a claim-by-claim basis; that is, you must be left with an abiding conviction that the asserted claims of the patents-in-suit are invalid.  This burden may be more difficult to meet when the accused infringer attempts to rely on prior art that was before the patent examiner during prosecution.

Patent invalidity is a defense to patent infringement. Even though the Patent Office examiner allowed the claims of a patent, you have the ultimate responsibility for deciding whether the claims of the patent are proven to be invalid. I will now instruct you on the rules you must follow in deciding whether or not any asserted claim is invalid.

A patent may be invalid if the claims were not new and or were obvious at the time when the patent was filed.  A patent cannot take away from the public what was already known or used by others, or what would have been obvious to those of skill in the art at the time the invention was made.

Groupon asserts that claims 51 and/or 54 of the '601 patent are invalid because

1.  claim 51 is anticipated by a book called "Spinning the Web";

2.  claim 54 is obvious in light of Spinning the Web;

3.  claim 51 is anticipated by Amazon.com's website as launched in 1995, which I will refer to as "Amazon"; and

4.  claim 54 is obvious in light of Amazon and U.S. Patent No. 6,016,484 to Humphrey Williams, which I will call "Williams".

Groupon asserts that claims 1 and 5 of the '346 patent are invalid because:

1.  they are obvious in light of the specifications published by the Liberty Alliance
    Project, which I will refer to as "Liberty Alliance," and Japanese Patent Application
    by Akira Sunada, which I will call "Sunada"; and

2.  they are obvious in light of Liberty Alliance and U.S. Patent No. 7,680,819 to
    Joseph Mellmer, which I will call "Mellmer".

## 5.2.    LEVEL OF ORDINARY SKILL

Patent invalidity defenses are evaluated from the perspective of a hypothetical "person of ordinary skill in the art." The hypothetical person of ordinary skill in the art is presumed to be aware of all the prior art at the time of the invention. You are to determine the level of ordinary skill in the art to which the claimed invention pertains at the time the claimed invention was made. In deciding what the level of ordinary skill in the relevant field is, you should consider all the evidence introduced at trial, including but not limited to the (1) levels of education and experience of other persons actively working in the field; (2) the types of problems encountered in the field; (3) prior art solutions to those problems; (4) rapidity with which innovations are made; and (5) the sophistication of the technology.

### 5.3.   INVENTION DATE

The date of an invention is presumed to be the filing date of the patent application. In this case, however, IBM contends that the inventions claimed in each of the '601 patent and '346 patent is entitled to an earlier invention date.  In particular, IBM contends that claims 51 and 54 of the '601 patent (with a filing date of June 7, 1996) are entitled to an invention date before February 23, 1996, and claims 1 and 5 of the '346 patent (with a filing date of April 1, 2005) are entitled to an invention date of April 2004.

For IBM to be entitled to an earlier invention date for the '601 patent and '346 patent, it must prove, by a preponderance of the evidence, on a claim-by-claim basis, that the invention was conceived as of the earlier date it seeks and that the inventors were diligent in reducing the invention to practice.  IBM must not only put forward evidence from the inventor, but must independently corroborate it, as I will explain to you in the following sections. It remains Groupon's ultimate burden to prove, by clear and convincing evidence, that the prior art reference predates IBM's invention date.

## 5.4.    CONCEPTION

IBM bears the burden of producing evidence supporting an earlier invention date by a preponderance of the evidence.  Groupon must prove, by clear and convincing evidence, that any prior art predates the invention date of the '346 and '601 patents.  "Conception" means the formation in the mind of an inventor of a definite and permanent idea of the complete and operative invention, such that, if the idea were communicated to a person of ordinary skill in the art, he or she would be able to make the invention without undue research or experimentation or the exercise of inventive skill.  This requirement does not mean that the inventor has to have a prototype built or have actually explained the invention to another person.  But there must be some evidence beyond the inventor's own testimony that confirms the date on which the inventor had the complete and operative idea.  In other words, the testimony of an inventor is not sufficient, standing alone, to prove a conception date.  An inventor must provide independent, corroborating evidence in addition to his own oral testimony.  For example, conception may be proven when the claimed invention is shown in its complete form by drawings, a written description or other document, disclosure to another person, or other forms of evidence presented at trial.  But an inventor's own unwitnessed documentation does not corroborate an inventor's testimony about inventive facts. Conception must include every feature or limitation of the claimed invention.

.

.

37

### 5.5.    REDUCTION TO PRACTICE

IBM must prove the reduction to practice date by a preponderance of the evidence. Groupon must prove, by clear and convincing evidence, that any prior art predates the invention date of the '346 and '601 patents. "Reduction to practice" means an invention is sufficiently developed to show that it would work for its intended purpose. To demonstrate a reduction to practice of a method claim, IBM must demonstrate that the method was actually performed. An inventor can show he was diligent in reducing an invention to practice if he or others acting at his direction engaged in reasonably continuous activity to reduce the invention to practice. As with proof of the conception date, that diligence must be proven by evidence in addition to the inventor's testimony.

## 5.6.    PRIOR ART

Prior art is the legal term used to describe what others had done in the field before the invention was made. Prior art is the general body of knowledge in the public domain, such as articles, products, or other patents, before the invention was made.  The prior art need not have been available to every member of the public, but it must have been available, without restriction, to that segment of the public most likely to avail itself of the prior art's contents.  Prior art includes any of the following items received into evidence during trial:

1.    Any product that was publicly known or used by others in the United States before an invention was made;

1.    Patents that issued more than one year before the filing date of the patent, or before the invention was made;

2.    Publications having a date more than one year before the filing date of the patent, or publicly accessible in the United States before the invention was made;

3.    Any product that was in public use or on sale in the United States more than one year before the patent was filed;

4.    United States patents that were filed by another before the invention was made, or U.S. patent applications that were filed by another before the invention was made and were subsequently published; and

A printed publication must have been maintained in some tangible form, such as printed pages or internet publications, and must have been sufficiently accessible to persons interested in the subject matter of its contents.  Information is publicly accessible if it was distributed or otherwise made available to the extent that persons interested and ordinarily skilled in the subject matter exercising reasonable diligence can locate it.  If the information was accessible, there is no requirement to show that particular members of the public actually received it.  The disclosure of

the claimed invention in the printed publication must be complete enough to enable one of ordinary skill in the art to use the invention without undue experimentation.

To show that the use of the system was "public," the use must have been accessible to the public prior to the filing date of the patents. For the system to be publically known, the knowledge must be publicly accessible and it must be sufficient to enable one with ordinary skill in the art to practice the invention.

## 5.7.   ANTICIPATION

In order for someone to be entitled to a patent, the invention must actually be new.  In general, an invention is new when the identical invention as claimed has not been used or disclosed before.  If the claim is not new, we say that it was "anticipated" by prior art.  Prior art is the general body of knowledge in the public domain, such as articles or other patents before the claim was made.  A claim that is "anticipated" by the prior art is not entitled to patent protection.  Anticipation must be proved on a claim-by-claim basis.

Groupon contends that some of the asserted claims of the patents-in-suit are invalid for anticipation.  Groupon must convince you of this by clear and convincing evidence.  Groupon contends that it has presented in this trial prior art that was not considered by the Patent Office during the prosecution of the patents-in-suit.  In deciding the issue of invalidity, you may take into account whether the prior art was not considered by the Patent Office when it issued the patents-in-suit.  Prior art that differs from the prior art considered by the Patent Office may carry more weight than the prior art that was considered and may make Groupon's burden of showing that it is highly probable that a patent claim is invalid easier to meet. However, Groupon always retains the burden of establishing invalidity by clear and convincing evidence.

To anticipate a claim, each and every element in the claim must be present in a single item of prior art, and arranged or combined in the same way as recited in the claim.  You may not combine two or more items of prior art to find anticipation.  In determining whether every one of the elements of the claimed invention is found in the prior art, you should take into account what a person of ordinary skill in the art would have understood from his or her review of the particular item of prior art.

To anticipate the invention, the disclosure in the prior art reference does not have to use the same words as the claim, but all of the requirements of the claim must be there, either stated

expressly or inherently, so that someone of ordinary skill in the art to which the claimed invention pertains, looking at that one reference, could make and use the claimed invention. Thus, for purposes of anticipation, you should consider that which is expressly stated or present in the item of prior art and also that which is inherently present. Anticipation by inherent disclosure is appropriate only when the reference discloses prior art that must necessarily include the unstated limitation. Inherency may not be established by probabilities or possibilities. The mere fact that a certain thing may result from a given set of circumstances is not sufficient.

In addition, in order for a prior art reference to anticipate a claim, it must enable a person of ordinary skill in the art to make and use the invention without undue experimentation. The prior art reference must be sufficiently described to place the public in possession of the invention such that persons of skill would know how to practice or carry out the claimed method in light of the reference. For purposes of anticipation, a prior art printed publication is presumed to be enabling. IBM bears the burden of proving non-enablement of prior art by a preponderance of the evidence. Groupon bears the ultimate burden to show anticipation by clear and convincing evidence.

## 5.8.   OBVIOUSNESS

Even though an invention may not have been identically disclosed or described before it was made by an inventor, in order to be patentable, the invention must also not have been obvious to a person of ordinary skill in the field of technology of the patent at the time the invention was made.

Groupon may establish that a patent claim is invalid by showing, by clear and convincing evidence, that the claimed invention would have been obvious to persons having ordinary skill in the art at the time it was made.

In determining whether a claimed invention is obvious, you must consider the level of ordinary skill in the field of the asserted patents that someone would have had at the time the invention was made, the scope and content of the prior art, and any differences between the prior art and the claimed invention.

Keep in mind that the existence of each and every element of the claimed invention in the prior art does not necessarily prove obviousness. Most, if not all, inventions rely on building blocks of prior art. In considering whether a claimed invention is obvious, you may but are not required to find obviousness if you find that at the time of the claimed invention there was a reason that would have prompted a person having ordinary skill in the art to combine the known elements in a way the claimed invention does, taking into account such factors as

1.   Whether the claimed invention was merely the predictable result of using prior art elements according to their known function(s);

2.   Whether the claimed invention provides an obvious solution to a known problem in the relevant field;

3.   Whether the prior art teaches or suggests the desirability of combining elements claimed in the invention;

43

4. Whether the prior art teaches away from combining elements in the claimed invention;

5. Whether it would have been obvious to try the combinations of elements, such as when there is a design need or market pressure to solve a problem and there are a finite number of identified, predictable solutions; and

6. Whether the change resulted more from design incentives or other market forces.

To find it rendered the invention obvious, you must find that the prior art provided a reasonable expectation of success. Obvious to try is not sufficient in unpredictable technologies.

In determining whether the claimed invention was obvious, consider each claim separately. Do not use hindsight, i.e., consider only what was known at the time of the invention.

In making these assessments, you should take into account any objective evidence (sometimes called "secondary considerations") that may shed light on the obviousness or not of the claimed invention, such as:

a. Whether the invention was commercially successful as a result of the merits of the claimed invention (rather than the result of design needs or market-pressure advertising or similar activities);

b. Whether the invention satisfied a long-felt need;

c. Whether others had tried and failed to make the invention;

d. Whether others invented the invention at roughly the same time;

e. Whether others copied the invention;

f. Whether there were changes or related technologies or market needs contemporaneous with the invention;

g. Whether the invention achieved unexpected results;

h. Whether others in the field praised the invention;

44

    i.   Whether persons having ordinary skill in the art of the invention expressed surprise or disbelief regarding the invention;

    j.   Whether others sought or obtained rights to the patent from the patent holder; and

    k.  Whether the inventor proceeded contrary to accepted wisdom in the field.

In considering whether the claimed invention was obvious, you must first determine the scope and content of the prior art. The scope and content of prior art for deciding whether the invention was obvious includes at least prior art in the same field as the claimed invention. It also includes prior art from different fields that a person of ordinary skill in the art would have considered when trying to solve the problem that is addressed by the invention.

Where the party challenging the validity of the patent is relying on prior art that was not considered by the PTO during examination, you may consider whether that prior art is significantly different and more relevant than the prior art that the PTO did consider. If you decide it was different and more relevant, you may weigh that prior art more heavily when considering whether the challenger has carried its clear-and-convincing burden of proving invalidity.

### 5.8.1.  OBVIOUSNESS—HINDSIGHT NOT PERMITTED

The question of obviousness is simple to ask but difficult to answer. A person of ordinary skill in the art is presumed to have knowledge of the relevant prior art at the time of the patentee's invention. If you find the available prior art shows each of the elements of the claims in suit, you must determine whether it would then have been obvious to a person of ordinary skill in the art to combine or modify these elements in the same manner as the claims in suit.  The difficulty that attaches to all honest attempts to answer this question can be attributed to the strong temptation to rely on hindsight while undertaking this evaluation. It is wrong to use the patents-in-suit as a guide through the maze of prior art references, combining the right references in the right way so as to achieve the result of the claims in suit. Rather, you must cast your mind back to the time of the invention and consider only the thinking of one of ordinary skill in the art, guided only by the prior art and what was known in the field.

## 6.    PATENT DAMAGES

### 6.1.    DAMAGES INTRODUCTION

If you find that Groupon has infringed any valid claim of the patents-in-suit and, if applicable, that Groupon does not have an implied license to that claim or that IBM's rights to assert that claim against Groupon have not been exhausted, you must then consider what amount of damages to award to IBM. I will now instruct you about the measure of damages. By instructing you on damages, I am not suggesting which party should win this case, on any issue.

On the other hand, if you find that all of the asserted patent claims in each patent are either invalid or not infringed, then you should not consider damages in your deliberations. For the '346 patent, you should also not consider damages in your deliberations if you find that Groupon had an implied license to practice that patent or IBM has exhausted its rights to assert it against Groupon.

The damages award must be adequate to compensate IBM for the infringement. Your damages award, if you reach this issue, should put IBM in approximately the same financial position that it would have been in had the infringement not occurred. It is not meant to punish Groupon.

IBM has the burden to establish the amount of its damages by a preponderance of the evidence. In other words, you should award only those damages that IBM establishes that it more likely than not suffered. While IBM is not required to prove the amount of its damages with mathematical precision, it must prove them with reasonable certainty. You may not award

47

damages that are speculative, damages that are only possible, or damages that are based on guesswork.  The damages award should be based on sound economic proof.

In this case, IBM seeks a reasonable royalty.  A reasonable royalty is defined as the money amount IBM and Groupon would have agreed upon as a fee for use of the invention, not now, but at the time prior to when infringement began.

I will now give you more detailed instructions regarding damages.

## 6.2.  DATE DAMAGES BEGIN AND END

The damages period may or may not coincide with the date of the first infringement.  That is so because patent law limits damages to a six-year period before the filing of the complaint for infringement.  IBM filed this lawsuit on March 2, 2016.  The '967 patent expired on August 18, 2015, the '601 patent expired on June 7, 2016, and the '849 and '346 patents have not expired. Therefore, the maximum periods over which IBM may recover damages are as follows:

- For the '967 patent: from March 2010 through August 18, 2015;

- For the '601 patent: from March 2010 through June 7, 2016;

- For the '849 patent: from March 2010 through trial; and

- For the '346 patent: from July 2011 through trial.

49

### 6.3.    REASONABLE ROYALTY—GENERALLY

A royalty is a payment made to a patent holder in exchange for the right to make, use, or sell the claimed invention.  A reasonable royalty is the amount of royalty payment that a patent holder and the alleged infringer would have agreed to in a hypothetical negotiation taking place at a time prior to when the infringement first began.  In considering this hypothetical negotiation, you should focus on what the expectations of the patent holder and the infringer would have been if they had entered into an agreement at that time, and if they had acted reasonably in the negotiations.  You should assume that both parties to the hypothetical negotiation believed the patent to be valid and infringed and that both parties are willing to enter into a license.  You should also assume that the patent holder and the infringer would have acted reasonably and would have entered into a license agreement.

Having that in mind, you may consider any relevant fact in determining the reasonable royalty for the use of a patented invention.  The reasonable royalty you determine must be a royalty that would have resulted from the hypothetical negotiation, and not simply a royalty either party would have preferred.

The reasonable royalty award must be based on the incremental value that the patented invention adds to the end methods. When the infringing products have both patented and unpatented features, measuring this value requires a determination of the value added by the patented features.

### 6.4.    REASONABLE ROYALTY—RELEVANT FACTORS

In determining the reasonable royalty, you should consider all the facts known and available to the parties at the time the infringement began. Some of the kinds of factors that you may consider in making your determination are:

1. The royalties received by IBM for the licensing of the patent in suit, proving or tending to prove an established royalty.

2. The rates paid by Groupon for the use of other patents comparable to the patents-in-suit.

3. The value that the claimed invention contributes to Groupon's website or mobile applications.

4. The value that factors other than the claimed invention contribute to Groupon's website or mobile applications.

5. Comparable license agreements, such as those covering the use of the claimed inventions or similar technology.

You may also consider evidence on any of the following factors, which you may have heard referred to as "Georgia-Pacific" factors:

1. The royalties received by IBM for the licensing of the patent in suit, proving or tending to prove an established royalty.

2. The rates paid by Groupon for the use of other patents comparable to the patents-in-suit.

3. The nature and scope of the license, as exclusive or nonexclusive, or as restricted or non-restricted in terms of territory or with respect to whom the manufactured product may be sold.

4.  IBM's established policy and marketing program to maintain its right to exclude others from using the patented invention by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that monopoly.

5.  The commercial relationship between IBM and Groupon, such as whether they are competitors in the same territory in the same line of business; or whether they are inventor and promoter.

6.  The effect of selling the patented product in promoting sales of other products of Groupon; the existing value of the inventions to IBM as a generator of sales of its non-patented items; and the extent of such derivative or convoyed sales.

7.  The duration of the patent and the term of the license.

8.  The established profitability of the product made under the patents-in-suit, its commercial success, and its current popularity.

9.  The utility and advantages of the patented property over the old modes or devices, if any, that had been used for working out similar results.

10. The nature of the patented invention; the character of the commercial embodiment of it as owned and produced by IBM; and the benefits to those who have used the invention.

11. The extent to which Groupon has made use of the invention; and any evidence probative of the value of that use.

12. The portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions.

13. The portion of the realizable profit that should be credited to the invention as distinguished from non-patented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer.

14. The opinion testimony of qualified experts.

15. The amount that IBM and Groupon would have agreed upon (at the time the infringement began) if both had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee—who desired, as a business proposition, to obtain a license to manufacture and sell a particular product embodying the patented invention—would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a prudent patentee who was willing to grant a license.

No one factor is dispositive and you can and should consider the evidence that has been presented to you in this case on each of these factors. You may also consider any other factors which in your mind would have increased or decreased the royalty the infringer would have been willing to pay and the patent holder would have been willing to accept, acting as normally prudent business people.

### 6.5.    REASONABLE ROYALTY—TIMING CONSIDERATIONS

Damages are not based on a hindsight evaluation of what happened, but on what the parties to the hypothetical license negotiation would have agreed upon. Nevertheless, evidence relevant to the negotiation is not necessarily limited to facts that occurred on or before the date of the hypothetical negotiation. You may also consider information the parties would have foreseen or estimated during the hypothetical negotiation, which may under certain circumstances include evidence of usage after infringement started, license agreements entered into by the parties shortly after the date of the hypothetical negotiation, profits earned by the infringer, and non-infringing alternatives.

## 7.    DELIBERATION AND VERDICT

### 7.1.    INTRODUCTION

I have concluded the part of my instructions explaining the rules for considering some of the testimony and evidence.  Now let me finish up by explaining some things about your deliberations in the jury room, and your possible verdicts.

Once you start deliberating, do not talk to the jury officer, or to me, or to anyone else except each other about the case.  If you have any questions or messages, you must write them down on a piece of paper, sign them, and then give them to the jury officer.  The officer will give them to me, and I will respond as soon as I can.  I may have to talk to the lawyers about what you have asked, so it may take some time to get back to you.  Any questions or messages normally should be sent to me through your foreperson, who by custom of this Court is Juror No. 1.

One more thing about messages.  Do not ever write down or tell anyone how you stand on your votes.  For example, do not write down or tell anyone that you are split 4-4, or 6-2, or whatever your vote happens to be.  That should stay secret until you are finished.

### 7.2.   UNANIMOUS VERDICT

Your verdict must represent the considered judgment of each juror.  In order for you as a jury to return a verdict, it is necessary that each juror agree to the verdict.  Your verdict must be unanimous.

It is your duty, as jurors, to consult with one another and to deliberate with a view towards reaching an agreement, if you can do so without violence to your individual judgment.  Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence with your fellow jurors.  In the course of your deliberations, do not hesitate to reexamine your own views and change your opinion, if convinced it is erroneous.  But do not surrender your honest conviction as to the weight or effect of evidence solely because of the opinion of your fellow jurors, or for the purpose of returning a verdict.  Remember at all times that you are not partisans.  You are judges – judges of the facts.  Your sole interest is to seek the truth from the evidence in the case.

A form of verdict has been prepared for you.  I will review it with you in a moment.  You will take this form to the jury room and when you have reached unanimous agreement as to your verdict, you will have your foreperson fill in, date and sign the form.  You will then return to the courtroom and my deputy will read aloud your verdict.

It is proper to add the caution that nothing said in these instructions, and nothing in the form of a verdict, is meant to suggest or convey in any way or manner any intimation as to what verdict I think you should find.  What the verdict shall be is your sole and exclusive duty and responsibility.

### 7.3.   DUTY TO DELIBERATE

Now that all the evidence is in and the arguments are completed, you are free to talk about the case in the jury room.  In fact, it is your duty to talk with each other about the evidence, and to make every reasonable effort you can to reach unanimous agreement.  Talk with each other, listen carefully and respectfully to each other's views, and keep an open mind as you listen to what your fellow jurors have to say.  Try your best to work out your differences.  Do not hesitate to change your mind if you are convinced that other jurors are right and that your original position was wrong.  But do not ever change your mind just because other jurors see things differently, or just to get the case over with.  In the end, your vote must be exactly that, your own vote.  It is important for you to reach unanimous agreement, but only if you can do so honestly and in good conscience.

No one will be allowed to hear your discussions in the jury room, and no record will be made of what you say.  So you should all feel free to speak your minds.  Listen carefully to what the other jurors have to say, and then decide for yourself.

### 7.4.   SOCIAL MEDIA

During your deliberations, you must not communicate with or provide any information to anyone by any means about this case. You may not use any electronic device or media, such as the telephone, a cell phone, smartphone, iPhone, blackberry, tablet or computer, the Internet, any Internet service, any text or instant messaging service, any Internet chat room, blog or website such as Facebook, LinkedIn, YouTube, Instagram, Snapchat or Twitter to communicate to anyone any information about this case or to conduct any research about this case until I accept your verdict. In other words, you cannot talk to anyone on the phone, correspond with anyone, or electronically communicate with anyone about this case. You can only discuss the case in the jury room with your fellow jurors during deliberations.

### 7.5.    COURT HAS NO OPINION

Let me finish by repeating something I said to you earlier.  Nothing that I have said or done during this trial was meant to influence your decision in any way.  You must decide the case yourselves based on the evidence presented.