## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| INTERNATIONAL BUSINESS MACHINES CORPORATION, | ) ) ) | |
| Plaintiff, | ) ) | C.A. No. 16-122-LPS |
| v. | ) ) ) | **JURY TRIAL DEMANDED** |
| GROUPON, INC. | ) ) ) | **PUBLIC VERSION** |
| Defendant. | ) | |

## IBM'S OPENING BRIEF IN SUPPORT OF ITS MOTION FOR ENHANCED DAMAGES, ATTORNEYS' FEES, PRE- AND POST-JUDGMENT INTEREST, <u>AND AN ONGOING ROYALTY</u>

OF COUNSEL:

John M. Desmarais
Karim Z. Oussayef
Laurie Stempler
Robert C. Harrits
Brian D. Matty
Michael Matulewicz-Crowley
Edward Geist
DESMARAIS LLP
230 Park Avenue
New York, NY 10169
Tel: (212) 351-3400

David E. Moore (#3983)
Bindu A. Palapura (#5370)
Stephanie E. O'Byrne (#4446)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801
Tel: (302) 984-6000
dmoore@potteranderson.com
bpalapura@potteranderson.com
sobyrne@potteranderson.com

*Attorneys for Plaintiff*
*International Business Machines Corporation*

Dated: September 19, 2018
Public Version Dated: September 26, 2018
5939355 / 43155

## **TABLE OF CONTENTS**

**Pages**

FACTUAL BACKGROUND ..................................................................................................1

ARGUMENT ....................................................................................................................4

I.  THE RECORD SUPPORTS AN AWARD OF ENHANCED DAMAGES. ......................4

    A.  Legal Standards For Enhanced Damages. ...............................................4

    B.  Enhanced Damages Are Warranted In This Case. ..................................5

        1.  Factor 1: Whether The Infringer Deliberately Copied. ...............5

        2.  Factor 2: Whether The Infringer Formed A Good Faith Belief Of Invalidity Or Non-Infringement. ...............................................6

        3.  Factor 3: The Infringer's Behavior During The Litigation. ..........8

        4.  Factor 4: The Infringer's Size And Financial Condition. ..........10

        5.  Factor 5: The Closeness Of The Case. ......................................10

        6.  Factor 6: The Duration Of The Infringer's Misconduct. ...........11

        7.  Factor 7: Remedial Action By The Infringer. ............................12

        8.  Factor 8: The Infringer's Motivation For Harm. .......................14

        9.  Factor 9: Whether The Infringer Concealed Its Misconduct. ....14

        10. Doubled Damages Are Appropriate In View Of The *Read* Factors. .........15

II.  THE COURT SHOULD AWARD IBM ITS ATTORNEYS' FEES. ..............................15

III.  THE COURT SHOULD AWARD PRE-JUDGMENT INTEREST. ...............................17

IV.  THE COURT SHOULD AWARD POST-JUDGMENT INTEREST. .............................17

V.  THE COURT SHOULD AWARD AN ONGOING ROYALTY. .....................................18

CONCLUSION ..............................................................................................................20

## TABLE OF AUTHORITIES

**Pages**

**Cases**

*ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*,
    694 F.3d 1312 (Fed. Cir. 2012) ........................................................ 19

*Advanced Cardiovascular Sys., Inc. v. Medtronic, Inc.*,
    265 F.3d 1294 (Fed. Cir. 2001) .......................................................... 6

*Amado v. Microsoft Corp.*,
    517 F.3d 1353 (Fed. Cir. 2008) .................................................... 18, 19

*Amgen Inc. v. Hospira, Inc.*,
    C.A. No. 15-839, 2018 WL 4080353 (D. Del. Aug. 27, 2018) ....................... 18

*Barry v. Medtronic, Inc.*,
    250 F. Supp. 3d 107 (E.D. Tex. 2017) ............................................... 5-6

*Boston Sci. Corp. v. Cordis Corp.*,
    838 F. Supp. 2d 259 (D. Del. 2012), *aff'd*, 497 F. App'x 69 (Fed. Cir. 2013) ................ 15

*Carl Zeiss Vision Int'l GmbH v. Signet Armorlite, Inc.*,
    No. 07CV0894 DMS (DHB), 2012 WL 12845892 (S.D. Cal. Aug. 6, 2012) ................ 15

*Crane Security Techs., Inc. v. Rolling Optics AB*,
    No. 14-12428, 2018 WL 4039355 (D. Mass. Aug. 23, 2018) ........................... 6

*Evonik Degussa GmbH v. Materia, Inc.*,
    305 F. Supp. 3d 563 (D. Del. 2018) ..................................................... 4

*General Motors Corp. v. Devex Corp.*,
    461 U.S. 648 (1983) ...................................................................... 17

*Golight, Inc. v. Wal-Mart Stores, Inc.*,
    355 F.3d 1327 (Fed. Cir. 2004) ......................................................... 16

*Greatbatch Ltd. v. AVX Corp.*,
    C.A. No. 13-723-LPS, 2018 WL 1568872 (D. Del. Mar. 30, 2018) ................... 10

*Halo Elecs., Inc. v. Pulse Elecs., Inc.*,
    136 S. Ct. 1923 (2016) ........................................................ 4, 5, 6, 10

*Idenix Pharm. LLC v. Gilead Scis., Inc.*,
    271 F. Supp. 3d 694 (D. Del. 2017) ........................................ 6, 10, 14, 17

## TABLE OF AUTHORITIES (cont'd)

**Pages**

*IMX, Inc. v. Lending Tree, LLC,*
    469 F. Supp. 2d 203 (D. Del. 2007)....................................................... 17

*nCUBE Corp. v. SeaChange Int'l, Inc.,*
    313 F. Supp. 2d 361 (D. Del. 2004), *aff'd,* 436 F.3d 1317 (Fed Cir. 2006) .............. 11, 15

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.,*
    134 S. Ct. 1749 (2014)....................................................... 16

*Paice LLC v. Toyota Motor Corp.,*
    504 F.3d 1293 (Fed. Cir. 2007)....................................................... 18

*Power Integrations, Inc. v. Fairchild Semiconductor Inter., Inc.,*
    762 F. Supp. 2d 710 (D. Del. 2011), *vacated on other grounds,*
    711 F.3d 1348 (Fed. Cir. 2013)....................................................... 7, 10

*Read Corp. v. Portec, Inc.,*
    970 F.2d 816 (Fed. Cir. 1992)....................................................... 5, 6, 15

*Roche Diagnostics Operations Inc. v. Abbott Diabetes Care, Inc.,*
    C.A. No. 07-753-RGA-MPT, 2017 WL 4391735 (D. Del. Oct. 3, 2017) ....................... 16

*Russell Box Co. v. Grant Paper Box Co.,*
    203 F.2d 177 (1st Cir. 1953)....................................................... 15

*SRI Int'l, Inc. v. Advanced Tech. Labs., Inc.,*
    127 F.3d 1462 (Fed. Cir. 1997)....................................................... 5

*SRI Int'l, Inc. v. Cisco Sys., Inc.,*
    254 F. Supp. 3d 680 (D. Del. 2017)....................................................... 9, 15, 16, 18

*Telcordia Techs., Inc. v. Cisco Sys., Inc.,*
    612 F.3d 1365 (Fed. Cir. 2010)....................................................... 18

*Valinge Innovation AB v. Halstead New England Corp.,*
    C.A. No. 16-1082-LPS-CJB, 2018 WL 2411218 (D. Del. May 29, 2018) ....................... 5

*WBIP, LLC v. Kohler Co.,*
    Civ. Action No. 11-10374-NMG, 2014 WL 585854 (D. Mass. Feb. 12, 2014),
    *aff'd,* 829 F.3d 1317 (Fed. Cir. 2016)....................................................... 6

*WCM Indus., Inc. v. IPS Corp.,*
    721 F. App'x 959 (Fed. Cir. 2018)....................................................... 5

*Wordtech Sys., Inc. v. Integrated Network Sold., Inc.,*
    No. CV-01971-MCE-EFB, 2009 WL 113771 (E.D. Cal. Jan. 15, 2009)....................... 15

## TABLE OF AUTHORITIES (cont'd)

**Pages**

*XY, LLC v. Trans Ova Genetics*,
    890 F.3d 1282 (Fed. Cir. 2018)............................................................................................ 19

**Statutes**

28 U.S.C. § 1961(a) ................................................................................................................... 17

35 U.S.C. § 284.............................................................................................................. 4, 17, 20

35 U.S.C. § 285.......................................................................................................................... 15

**Other Authorities**

Restatement (Second) of Contracts § 205................................................................................. 12

IBM respectfully moves for an award of enhanced damages, attorneys' fees, pre- and post-judgment interest, and an ongoing royalty. This case proceeded to trial because Groupon never took IBM's patent rights seriously. From the time Groupon received notice of the patents-in-suit and for the duration of this litigation, Groupon chose to ignore its use of IBM's technology rather than take the time to investigate IBM's patent rights. Moreover, Groupon never formulated a good faith belief in non-infringement or invalidity, mounting defenses at the last minute in the hopes of avoiding liability—a strategy that proved unsuccessful after a jury found for IBM on all issues. Groupon's lackadaisical attitude and continued refusal to take IBM's allegations seriously warrant enhanced damages and attorneys' fees. Accordingly, IBM respectfully requests that the Court enhance the jury's damages award, grant IBM its attorneys' fees, award IBM pre- and post-judgment interest, and order Groupon to pay an ongoing royalty to compensate IBM for Groupon's post-verdict infringement.

## FACTUAL BACKGROUND

IBM notified Groupon of its infringement of the asserted patents in November 2011 ('967 and '849 patents, the "Filepp patents"), April 2012 ('601 patent), and August 2014 ('346 patent). Ex. E; *see also* Trial Tr. at 866:5-11. Rather than engaging in a good faith investigation and negotiation, Groupon pursued a strategy of willful ignorance and delay. For example, years after negotiations began, Groupon insisted that the parties enter non-disclosure agreements to make their discussions more fruitful ███████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

██████████████████████████ Although Groupon has claimed that cheap and easy alternatives to IBM's patents exist, it never took action to alter the infringing features of its products. Trial Tr.

at 865:19-866:11, 1109:7-1110:3.  Groupon cannot excuse its lack of good faith or decision not to use alternatives by pointing to the NDAs that Groupon insisted on, as discussed further in Section I.B.7.  And while Groupon was ignoring IBM's patent rights, its competitors in the e-commerce space were negotiating with IBM and taking licenses to IBM's patents, including the patents-in-suit.  *Id.* at 962:20-963:17.

Groupon's refusal to take its use of IBM's patents seriously continued during litigation. Despite IBM notifying Groupon of its infringement of the Filepp patents in 2011, Groupon did not present substantive invalidity defenses for those patents until February 2017, when Groupon asserted twenty-eight prior art references against the '967 patent and twenty-six prior art references against the '849 patent in its preliminary invalidity contentions.  Ex. A at 4-6.  Groupon then discovered additional prior art references, asserting thirty prior art references against the '967 patent and twenty-seven prior art references against the '849 patent in its final invalidity contentions.  Ex. G at 4-7.  Despite the many prior art references that Groupon contended invalidated the Filepp patents, when it came time to select its best invalidity defense to present at trial, Groupon went with none.  Trial Tr. at 1891:4-25 (limiting Groupon's invalidity assertions to the '601 and '346 patents).

Groupon's non-infringement defenses against the Filepp patents were ultimately just as unfounded as its debunked invalidity defenses.  Groupon merely re-argued issues that the Court settled at claim construction and affirmed at summary judgment, long before trial.  For example, Groupon argued during claim construction that a "partition" or "portion" in the Filepp patents must be "fixed" and "non-overlapping."  D.I. 60 at 5-10.  The Court rejected Groupon's position.  D.I. 120 at 7-8 ("Contrary to Groupon's contention, the specification and prosecution history do not support construing partition as a fixed, non-overlapping portion of the screen display.").  Groupon

re-urged the rejected arguments at summary judgment, faulting IBM's expert for identifying non-fixed and overlapping partitions. D.I. 227 at 4-9. The Court again rejected Groupon's argument. D.I. 318 at 16. Groupon tried yet again at trial, first telling the jury in opening statements that the Filepp patents require "predefined" and "separate" areas. Trial Tr. at 241:24-242:7, 244:24-245:15. Groupon's counsel then cross-examined inventor Robert Filepp about "fixed" and "predefined" partitions. *Id.* at 346:18-21, 360:20-24. Groupon even told the jury in closing argument that the patents were about "predefined areas." *Id.* at 1989:4-19. Ultimately, Groupon's arguments did not work with the jury either, but that does not excuse Groupon's attempts to assert claim interpretations that the Court has rejected numerous times.

As was the case for the Filepp patents, Groupon did not identify any invalidity defenses for the '601 patent until it asserted twenty-five prior art references in its February 22, 2017 preliminary invalidity contentions—five years after IBM notified Groupon of the '601 patent. Ex. A at 6-7; Ex. E. Groupon then discovered two more prior art references and, on September 25, 2017, after fact discovery closed, asserted those additional prior art references against the '601 patent in its final invalidity contentions. Ex. G at 8-9. The late additions—Amazon and Spinning the Web—were the references Groupon presented in its invalidity defense at trial. Trial Tr. at 1891:4-15. Groupon cannot claim to have diligently developed its invalidity defense after receiving notice of the '601 patent in 2012, especially given that it represented to the Court that it did not discover Amazon and Spinning the Web until the very end of fact discovery. D.I. 176 at 2-3.

For the '346 patent, which IBM brought to Groupon's attention in 2014, Groupon advanced a weak non-infringement defense at trial based on the "triggering" step of claim 1. Trial Tr. at 1391:9-16. That defense was belied by its corporate representative's admission that Groupon "triggers" single-sign-on. *Id.* at 1099:10-18. As with the '601 patent, there is no evidence that

Groupon diligently formed a good faith belief in invalidity of the '346 patent based on the main references it asserted, Sunada and Mellmer, until February 2017, three years after IBM notified Groupon of the '346 patent.  Ex. A at 7-8; Ex. E at 9.  Additionally, Groupon's Google login, which infringes the '346 patent, was introduced in 2016, years after IBM notified Groupon of the '346 patent.  Trial Tr. at 945:9-25.

At trial, Groupon asked the jury to find all eight asserted claims from the four patents not infringed, to find four of those claims invalid, to find that Groupon was licensed to two of those claims or that IBM's rights to those claims were exhausted, and to award no more than $5,000,000 in damages.  The jury rejected every one of those defenses, along with Groupon's damages model, and instead found for IBM on all issues and awarded IBM $82,500,000 in damages.  D.I. 390.

## ARGUMENT

## I.   THE RECORD SUPPORTS AN AWARD OF ENHANCED DAMAGES.

IBM first notified Groupon of the patents-in-suit seven years ago.  Since that time, Groupon never formed a good faith basis for resisting IBM's attempts to reach a business resolution, instead engaging in dilatory gamesmanship throughout pre-suit licensing discussions and this litigation. In view of that behavior, the Court should exercise its discretion to enhance damages.

### A.   Legal Standards For Enhanced Damages.

"Enhanced damages are as old as U.S. patent law."  *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923, 1928 (2016).  District courts have discretion to increase damages up to three times the amount found by a jury. 35 U.S.C. § 284.  "A finding of willfulness is a prerequisite to awarding enhanced damages." *Evonik Degussa GmbH v. Materia, Inc.*, 305 F. Supp. 3d 563, 579 (D. Del. 2018).  When weighing enhancement after a finding of willful infringement, "Section 284 permits district courts to exercise their discretion in a manner free from [] inelastic constraints." *Halo*, 136 S. Ct. at 1933-34.

4

IBM must prove that enhanced damages are appropriate by a preponderance of the evidence. *Valinge Innovation AB v. Halstead New England Corp.*, C.A. No. 16-1082-LPS-CJB, 2018 WL 2411218, at *4 (D. Del. May 29, 2018) (citing *Halo*, 136 S. Ct. at 1934). While not mandated after *Halo*, this Court and others have used the factors identified in *Read Corp. v. Portec, Inc.*, 970 F.2d 816 (Fed. Cir. 1992), to analyze whether enhanced damages are warranted. *See Valinge*, 2018 WL 2411218, at *8; *see also WCM Indus., Inc. v. IPS Corp.*, 721 F. App'x 959, 972 (Fed. Cir. 2018) ("[T]he *Read* factors, although not mandatory, do assist the trial court in evaluating the degree of the infringer's culpability and in determining whether to exercise its discretion to award enhanced damages at all, and if so, by how much the damages should be increased."). The *Read* factors are:  (1) whether the infringer deliberately copied; (2) whether the infringer formed a good faith belief of invalidity or non-infringement; (3) the infringer's behavior during the litigation; (4) the infringer's size and financial condition; (5) the closeness of the case; (6) the duration of the infringer's misconduct; (7) remedial action by the infringer; (8) the infringer's motivation for harm; and (9) whether the infringer concealed its misconduct. *Read*, 970 F.2d at 827. The District Court has broad discretion in weighing and balancing the *Read* factors. *See SRI Int'l, Inc. v. Advanced Tech. Labs., Inc.*, 127 F.3d 1462, 1469 (Fed. Cir. 1997).

**B.    Enhanced Damages Are Warranted In This Case.**

The jury's verdict in this case, supported by the substantial evidence presented at trial, includes a finding of willful infringement, which satisfies the prerequisite for enhanced damages for all four patents-in-suit. D.I. 390 at 2. The *Read* factors, guideposts for enhanced damages analyses, also favor enhancement.

**1.    Factor 1: Whether The Infringer Deliberately Copied.**

This *Read* factor does not mandate a "smoking gun," and an infringer's recklessness with respect to copying can support enhancement. *See Barry v. Medtronic, Inc.*, 250 F. Supp. 3d 107,

112 (E.D. Tex. 2017) (citing *WBIP, LLC v. Kohler Co.*, Civ. Action No. 11-10374-NMG, 2014 WL 585854, at *7 (D. Mass. Feb. 12, 2014), *aff'd*, 829 F.3d 1317 (Fed. Cir. 2016)).  Groupon implemented Google login, which is similar to its infringing Facebook login, years after receiving notice of the '346 patent.  Trial Tr. at 732:22-733:11, 945:9-25.  While the decision to implement the infringing Google login functionality might have been reckless, IBM has not alleged copying for other infringing functionalities, and on balance this factor weighs ***against*** enhancement.

### 2.   Factor 2: Whether The Infringer Formed A Good Faith Belief Of Invalidity Or Non-Infringement.

Groupon received notice of the '967 and '849 patents in November 2011, the '601 patent in April 2012, and the '346 patent in August 2014, each via communications with IBM.  Ex. E at 9.  Although Groupon presented invalidity and non-infringement defenses at trial, nothing suggests that Groupon investigated the patents-in-suit or developed a good faith belief in any of those defenses at any point before the late stages of this litigation.[1]

In assessing whether Groupon formed a good faith belief in its defenses, "timing does matter."  *WBIP, LLC v. Kohler Co.*, 829 F.3d 1317, 1340 (Fed. Cir. 2016).  Groupon "cannot insulate itself from liability for enhanced damages" by merely developing "litigation-inspired defenses" after years of willful infringement.  *Id.* at 1340-41 (citing *Halo*, 136 S. Ct. at 1933), *see also Crane Security Techs., Inc. v. Rolling Optics AB*, No. 14-12428, 2018 WL 4039355, at *6 (D. Mass. Aug. 23, 2018) (finding that "references could not have been a good faith belief in the invalidity of [plaintiff's] patents" where there was no evidence defendant "was aware of those

---

[1] The Court's rulings on motions *in limine* precluded evidence of the parties' extensive pre-suit communications at trial.  D.I. 314 at 2-3.  The Court may, however, consider the totality of circumstances in its analysis of the *Read* factors, including evidence outside of the trial record. *Idenix Pharm. LLC v. Gilead Scis., Inc.*, 271 F. Supp. 3d 694, 702 n.11 (D. Del. 2017); *see also Advanced Cardiovascular Sys., Inc. v. Medtronic, Inc.*, 265 F.3d 1294, 1311 (Fed. Cir. 2001) (noting that certain *Read* factors address issues "that a jury is not in the best position to assess").

references before this litigation"). The only evidence that Groupon even considered any defenses to the patents-in-suit before litigation is limited to ████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████ In addition, although consulting counsel and obtaining opinions regarding certain defenses may be "one meaningful way to demonstrate a good faith attempt to avoid infringement," *Power Integrations, Inc. v. Fairchild Semiconductor Inter., Inc.*, 762 F. Supp. 2d 710, 723 (D. Del. 2011), *vacated on other grounds*, 711 F.3d 1348 (Fed. Cir. 2013), Groupon chose not to produce or rely on such advice or opinions.

Even Groupon's litigation defenses do not demonstrate a good faith belief in non-infringement and invalidity. Groupon abandoned its invalidity defenses against the Filepp patents by the time of trial, despite having asserted that over twenty-five prior art references invalidated each of the Filepp patents. Trial Tr. at 1891:4-25. Groupon cannot demonstrate a good faith belief that the Filepp patents were invalid when, after blindly asserting dozens of references, Groupon did not even bother to challenge validity at trial. For the invalidity defenses Groupon did present at trial, any belief in invalidity is no more well founded than it was for the Filepp patents. Groupon first discovered prior art references for its trial presentation on the '601 patent at the very end of fact discovery. D.I. 176 at 2-3. And the earliest indication that Groupon had located its prior art references for the '346 patent was also not until 2017, three years after Groupon learned of the '346 patent from IBM. Ex. A at 7-8; Ex. E at 9. While Groupon presented a non-infringement defense for the asserted claims at trial, there is no evidence that Groupon ever formed a good faith belief in those defenses during the parties' pre-suit discussions.

In view of Groupon's lack of a good faith belief in its trial defenses, despite years of pre-suit knowledge and discussions of the patents-in-suit, this factor ***strongly favors*** enhancement.

### 3.      Factor 3: The Infringer's Behavior During The Litigation.

Groupon's behavior throughout this litigation follows a pattern of resisting basic discovery obligations, urging belated or rejected non-infringement positions, and engaging in gamesmanship.   Starting in the early stages of fact discovery, Groupon refused to meet its discovery obligations by withholding basic financial data produced in most, if not all, patent cases, leaving IBM with no choice but to seek the Court's assistance in compelling production of such data.  D.I. 86, 91.  In addition, Groupon repeatedly refused to designate witnesses in response to IBM's 30(b)(6) deposition notices.  Only after IBM raised the issue with the Court did Groupon finally comply with its obligations.  D.I. 125, 128.  Shortly before trial, Groupon once again refused to make a standard supplemental production of updated financial data so that IBM's damages expert, Professor Hausman, could update his opinion for trial.  Groupon's refusal to cooperate forced Professor Hausman to prepare a supplemental damages report based on his best estimates, which Groupon, dissatisfied with the outcome of those projections, then attempted to strike.  D.I. 301.  Only after losing its motion to strike did Groupon finally produce updated data.  When IBM informed Groupon that the updated financial data was inconsistent with previously produced data and requested a deposition to ask a Groupon witness about the discrepancies, Groupon again resisted, ignoring IBM's repeated explanations of the basis for the deposition and withholding its agreement until July 12, 2018, four days before trial.  Ex. H.  Groupon finally made a witness available for a brief deposition on July 13 in Chicago, three days before the trial started in Delaware.  IBM thus had to prepare for and take the additional deposition, and then Professor Hausman had to prepare yet another supplemental damages report mere days before trial.

Groupon's pattern of delay and neglect also permeated through its work with its technical expert, who testified that Groupon did not even contact him until less than two months before the deadline to exchange opening expert reports. Trial Tr. at 1492:11-1494:8.  Perhaps unsurprising given his late start, Dr. Weissman spent only three weeks forming his non-infringement positions. He did not consult any Groupon employees, access Groupon's source code repository for the accused products, or analyze any historical Groupon source code to reach his opinions.  *Id.* at 1495:17-1498:15.  As further evidence that Groupon refused to take this case seriously, portions of Dr. Weissman's opinions were copied wholesale from a different expert in a prior case—an approach Dr. Weissman incredibly dismissed as "a typo." *Id.* at 1499:8-1502:14.

Groupon's resistant behavior was also reflected in its claim construction and summary judgment arguments, where Groupon repeatedly tried to advance positions that the Court had rejected.  As discussed in the Factual Background, Groupon insisted on maintaining non-infringement arguments for the Filepp patents that the Court had repeatedly rejected.  *Id.* at 145:8-17 , 241:24-242:7, 244:24-245:15, 346:18-21, 360:20-24, 1989:4-19, 1993:16-21.  When an infringer repeatedly advances non-infringement theories that are contrary to the Court's claim constructions, as Groupon has done here, enhanced damages are warranted.  *See SRI Int'l, Inc. v. Cisco Sys., Inc.*, 254 F. Supp. 3d 680, 722 (D. Del. 2017).

Groupon's misconduct extended to its presentations in Court, including its misrepresentations of material facts.  For example, when IBM objected during trial to witness demonstratives that appeared to have been created by manipulating a source code file, Groupon's counsel insisted that no such manipulation occurred.  Trial Tr. at 1004:7-8 ("Literally, the file that they have just opens with the web browser.  That's all it is."), 1004:23-25 ("I didn't—there is no manipulation done whatsoever to the actual file.  Just opened it.").  IBM was forced to inspect the

file in question between the two weeks of trial, only to discover that Groupon's representations were not true:  the file in question did not even exist as an HTML file on the source code computer. *Id.* at 1149:10-1150:23.   Groupon's counsel had changed the file's extension from ".cpp" to ".html" to create a new image.  *Id.* at 1155:4-1156:24.   Groupon's counsel refused to own up to the misleading statements, despite having overhauled the challenged slides, offering only that they changed the demonstratives because the Court had suggested "a really good idea how to tweak the demonstratives." *Id.* at 1151:10-1154:11.    Such conduct is at best careless and at worst intentionally deceitful, and the Court should enhance damages to deter such conduct in the future. *Idenix*, 271 F. Supp. 3d at 703 (citing *Halo*, 136 S. Ct. at 1929).

In view of Groupon's continuously resistant and dilatory misbehavior, extending through discovery, expert reports, summary judgment, and trial, this factor ***strongly favors*** enhancement.

### 4.    Factor 4: The Infringer's Size And Financial Condition.

Groupon's size and financial condition deserve no weight in the enhancement analysis. While this factor may weigh against enhancement when the alleged infringer is in perilous financial condition, it is given little weight where an infringer is large and healthy.  *Greatbatch Ltd. v. AVX Corp.*, C.A. No. 13-723-LPS, 2018 WL 1568872, at *7 (D. Del. Mar. 30, 2018); *see also Power Integrations*, 762 F. Supp. 2d at 722 (finding that a company with annual revenues over $1 billion favored enhancing damages).   Groupon is a large company, with over 6,000 employees worldwide and billions of dollars in revenue.  Trial Tr. at 929:22-930:1, Ex. F at 4. This factor is ***neutral*** in view of Groupon's size and financial condition.

### 5.    Factor 5: The Closeness Of The Case.

This case was not close.  At summary judgment, Groupon moved for non-infringement of every asserted claim and moved to exclude IBM's damages expert.  D.I. 218, 227.  The Court denied each of those motions. D.I. 304, 319.  Groupon asserted non-infringement defenses against

all eight claims that IBM asserted at trial, invalidity defenses against four claims, and licensing defenses against two claims. *Id.* at 1873:23-1874:5. Groupon abandoned its invalidity defenses altogether for the Filepp patents. At the end of the two-week trial, the jury returned a unanimous verdict for IBM and against Groupon on every issue and found Groupon's infringement to be willful. D.I. 390 at 1-4. The jury also awarded damages that were over sixteen times the top end of the damages range that Groupon's damages expert presented. D.I. 390 at 5; *see also* Trial Tr. at 1593:7-11. The jury's finding of literal infringement of every asserted claim and outright rejection of Groupon's damages model supports enhancement. *nCUBE Corp. v. SeaChange Int'l, Inc.*, 313 F. Supp. 2d 361, 390 (D. Del. 2004), *aff'd*, 436 F.3d 1317 (Fed Cir. 2006) (finding "the case for literal infringement was not a close one where the jury found literal infringement on each of the asserted claims of the [patent]").

In view of the repeated rejections of every one of Groupon's positions in this case and Groupon's own decision to abandon some of its defenses, this factor *favors* enhancement.

### 6. Factor 6: The Duration Of The Infringer's Misconduct.

Groupon has been infringing IBM's patents for years, despite having received notice of the patents as early as seven years ago. As discussed above for the second *Read* factor, IBM notified Groupon of its infringement of the various asserted patents in 2011, 2012, and 2014. Ex. E; *see also* Trial Tr. at 866:5-11. While Groupon turned a blind eye to its infringement, many of Groupon's competitors in the e-commerce space took IBM's patent rights seriously and entered into licenses. Trial Tr. at 962:20-963:17. Groupon's refusal to engage in substantive negotiations and present a meaningful non-infringement or invalidity response demonstrates a lack of good faith investigation into IBM's patents and Groupon's use of those patents, as explained above in the analysis of the second *Read* factor.

In view of Groupon's continuous infringement, spanning from 2011 and extending through nearly two and a half years of litigation and beyond, this factor *favors* enhancement.

### 7.     Factor 7: Remedial Action By The Infringer.

Despite Groupon's years of knowledge of the patents-in-suit, and despite Groupon's claims that cheap and easy alternatives exist, Groupon has not altered the infringing features of its products or designed around the patents-in-suit.   Trial Tr. at 865:19-866:11, 1109:7-1110:3.   In fact, as discussed in the analysis of the first *Read* factor, Groupon chose to implement its infringing Google login years after receiving notice of the '346 patent.

Groupon will likely argue, as it attempted midway through trial, that NDAs justify its inaction.  Trial Tr. at 800:1-2, 867:14-17.  But the NDAs are unenforceable and do not apply.  IBM entered NDAs and supplements thereto ████████████████████████████████████
████████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████████
████████████████████████████   The NDAs are unenforceable at least because Groupon neglected to engage in good faith discussions with IBM, the very reason IBM agreed to have an NDA govern those discussions.   *See*, *e.g.*, Restatement (Second) of Contracts § 205 ("Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement.").   Moreover, IBM never had the opportunity to prepare and present witness testimony that the NDAs were unenforceable based on Groupon's misrepresentations (including oral misrepresentation not reflected in the written correspondence) because Groupon never advanced a defense based on the NDAs before trial.

Groupon's delay in asserting the NDAs until midway through the trial suggests that Groupon knew that they do not apply. Groupon could have cited the NDAs in response to IBM's interrogatories but never did so. Ex. J (seeking "Your contentions regarding the amount of damages that IBM is entitled to recover"); *id.* (for each of the patents-in-suit, seeking "all actions You took as a result of becoming aware of that patent"); *see also* Ex. I (seeking Groupon's financial data "from March 2010 to the present"); *id.* (seeking "each and every modification to each Accused Instrumentality that You have made since 2010 that You contend impacts the issue of infringement"). Groupon could have prepared its witnesses to explain that Groupon was relying on the NDA. Instead, the witness designated on the topic of Groupon's knowledge of the patents-in-suit was unaware of any action Groupon took in response to becoming aware of IBM's patents:

> Q. And you're not aware of any actions that Groupon took in response to becoming aware of the patents-in-suit, right?
>
> A. Correct.

Ex. K at 253:24-254:3; *see also id.* at 227:9-23, 234:10-25, 238:15-18, 242:19-243:2, 244:18-245:9, 246:5-23, 253:24-254:3, 258:14-18, 265:15-266:6. Groupon could have asked IBM's witnesses about the NDAs. But Groupon chose not to. Groupon's damages expert could have responded to Professor Hausman's opinion by contending that Groupon did not owe damages for the full six years preceding suit. Instead, ***both*** parties' damages experts used the full six-year damages window to which IBM is entitled under 35 U.S.C. § 286 in their calculations. *See, e.g.*, Ex. L ¶ 12); Ex. M at 6, n.12; *id.* App'x 14.0 (calculating implicated and total U.S. revenue starting in 2010). If Groupon genuinely believed that its agreements with IBM were enforceable and wished to rely on those agreements to explain its lack of action in response to learning of IBM's patents, Groupon could have and should have taken that position during the litigation.

Lastly, even if the NDAs were enforceable, Groupon never asserted a counterclaim for breach of contract, which is, at best, now a separate cause of action that is too late for Groupon to raise during the post-trial period as a shield against enhanced damages.

Groupon cannot point to any remedial action, which is not surprising given that it has no policies governing its approach to investigating or licensing patents held by other parties. Trial Tr. at 738:22-739:2, 810:2-4, 916:21-917:5. This factor *favors* enhancement.

### 8. Factor 8: The Infringer's Motivation For Harm.

While Groupon has a financial motivation to rebuff IBM's licensing efforts, this Court has indicated that financial motives alone may not weigh in favor of enhancing damages. *Idenix*, 271 F. Supp. 3d at 701 ("The fact that the infringer acted pursuant to a financial motive does not distinguish this case from the garden-variety infringement case."). Groupon's presentation at trial, however, indicated that its motivations go beyond mere financial aims, extending to an unwarranted attack on IBM's licensing business that went as far as accusing IBM of extortion. Trial Tr. at 1982:21-1983:5, 1984:7-25. Such "apparent disdain for [IBM] and its business model" can support enhanced damages. *SRI*, 254 F. Supp. 3d at 723.

Notwithstanding that Groupon's financial motivation does not justify enhancement, when weighed against Groupon's attack on IBM's licensing business, this factor is ***neutral***.

### 9. Factor 9: Whether The Infringer Concealed Its Misconduct.

Groupon's infringing products in this case are publicly available websites and mobile applications. IBM has not alleged that Groupon blocked public access to those products or otherwise concealed its infringement. However, as described in the analysis of Factor 3, Groupon repeatedly delayed production of updated financial data associated with the accused products and further delayed providing a witness to explain discrepancies between the updated data and financial information produced earlier in the case. That lack of cooperation weighs in favor of

14

enhancement. *Read*, 970 F.2d at 827 (citing *Russell Box Co. v. Grant Paper Box Co.*, 203 F.2d 177, 183 (1st Cir. 1953)). Thus, this factor is ***neutral***.

**10.     Doubled Damages Are Appropriate In View Of The *Read* Factors.**

Five *Read* factors favor enhancement, one factor weighs against enhancement, and three factors are neutral. This Court and others regularly award double, and even triple, damages in cases where fewer than all *Read* factors point to enhancement. *See, e.g.*, *SRI*, 254 F. Supp. 3d at 721-24 (doubling damages where factors 2, 3, 4, 5, and 7 favor enhancement); *Boston Sci. Corp. v. Cordis Corp.*, 838 F. Supp. 2d 259, 281 (D. Del. 2012), *aff'd*, 497 F. App'x 69 (Fed. Cir. 2013) (doubling damages where factors 2, 3, 4, 5, 7, and 8 favor enhancement); *nCUBE*, 313 F. Supp. 2d at 387-91 (doubling damages where factors 1, 2, 4, 5, 7, and 8 favor enhancement).[2]   Given Groupon's continual refusal to take its use of IBM's patents seriously, and given that five *Read* factors either favor or strongly favor enhancement, an award of treble damages would be appropriate. However, because much of Groupon's egregious behavior relates to its baseless defenses against the Filepp patents and the nearly seven years that Groupon has known about its use of the Filepp patents, which are two of the four patents-in-suit, IBM respectfully requests that the Court double the jury's $82,500,000 award to a total of $165,000,000.

**II.     THE COURT SHOULD AWARD IBM ITS ATTORNEYS' FEES.**

Courts "in exceptional cases may award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285.  The Supreme Court has explained that "[a]n 'exceptional' case is simply one that stands out from others with respect to the substantive strength of party's litigation position

---

[2] *See also, e.g.*, *Wordtech Sys., Inc. v. Integrated Network Sold., Inc.*, No. CV-01971-MCE-EFB, 2009 WL 113771, at *2 (E.D. Cal. Jan. 15, 2009) (tripling damages where factors 1, 2, 3, 5, 6, 7, and 9 favor enhancement); *Carl Zeiss Vision Int'l GmbH v. Signet Armorlite, Inc.*, No. 07CV0894 DMS (DHB), 2012 WL 12845892, at *3 (S.D. Cal. Aug. 6, 2012) (tripling damages where factors 2, 4, 5, 6, and 7 favor enhancement).

(considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749, 1756 (2014). A district court "determine[s] whether a case is 'exceptional' in the case-by-case exercise of their discretion considering the totality of the circumstances." *Id.* Cases of willful infringement may be exceptional on that basis alone. *Golight, Inc. v. Wal-Mart Stores, Inc.*, 355 F.3d 1327, 1340 (Fed. Cir. 2004).

In view of the overlap between Sections 284 and 285, courts regularly take into account similar factors for both analyses. *See, e.g.*, *SRI*, 254 F. Supp. 3d at 722. "Courts may use such nonexclusive factors as frivolousness, motivation, and objective unreasonableness in analyzing the factual or legal components, and the need in particular circumstances to advance considerations of compensation and deterrence." *Roche Diagnostics Operations Inc. v. Abbott Diabetes Care, Inc.*, C.A. No. 07-753-RGA-MPT, 2017 WL 4391735, at *2 (D. Del. Oct. 3, 2017).

For the reasons explained in Section I, particularly relating to the second, third, and sixth *Read* factors, this is an exceptional case warranting an award of attorneys' fees. Groupon's neglect for IBM's patent rights has permeated this case. *See, e.g.*, Trial Tr. at 1982:10-1985:5. Despite prior notice of the patents-in-suit, Groupon did not take IBM's patent rights seriously until the late stages of this litigation, as explained in the analysis of the second *Read* factor, and even then continued to litigate this case in an unreasonable manner, as explained for the third *Read* factor. In the meantime, Groupon's unchecked infringement has continued for years, dating back to Groupon's first notice of the patents, without any significant remedial action, as explained above with respect to the sixth and seventh *Read* factors. And, as became clear at trial, Groupon's decision to ignore both its infringement and IBM's repeated attempt to reach a business resolution was driven not by substantive defenses but rather by a disdain for IBM's patent licensing program.

Thus, for all the reasons described above, and considering the totality of the circumstances, this is an exceptional case, and IBM respectfully requests that the Court award attorneys' fees.[3]

## III.   THE COURT SHOULD AWARD PRE-JUDGMENT INTEREST.

Section 284 entitles patent owners to no less than a reasonable royalty "together with interest and costs fixed by the Court."[4] 35 U.S.C. § 284.  Courts regularly award prejudgment interest to fully compensate patent owners for infringement.  *Idenix*, 271 F. Supp. 3d at 705; *see also IMX, Inc. v. Lending Tree, LLC*, 469 F. Supp. 2d 203, 227 (D. Del. 2007) ("Prejudgment interest should ordinarily be awarded absent some justification for withholding such an award." (citing *General Motors Corp. v. Devex Corp.*, 461 U.S. 648, 657 (1983))).  Courts in this District typically award prejudgment interest at the prime rate.  *Idenix*, 271 F. Supp. 3d at 705; *see also IMX*, 469 F. Supp. 2d at 227.  Accordingly, IBM respectfully requests that the Court award pre-judgment interest on the jury's $82,500,000 verdict at the prime rate, compounded quarterly, which amounts to $13,623,523.  Hausman Decl. ¶¶ 12-14; Hausman Decl. Ex. 2.

## IV.   THE COURT SHOULD AWARD POST-JUDGMENT INTEREST.

In addition to pre-judgment interest, IBM is entitled to post-judgment interest.  28 U.S.C. § 1961(a).  Section 1961 sets forth the method for calculating post-judgment interest.  *Id.*  ("Such interest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of judgment.").  Here, the post-judgment interest rate is 2.44%.  Hausman Decl. ¶ 16; Hausman Decl. Ex. 3.  Post-judgment interest should be awarded on the jury's damages award and on any prejudgment interest ordered

---

[3] Should the Court rule in IBM's favor, IBM proposes that the parties meet-and-confer regarding the fee award and submit a joint proposed order within 30 days of the Court's order.
[4] IBM will submit its bill of costs to the Clerk of Court consistent with the required contents and the timing set forth in Local Rule 54.1.

by the Court. *Amgen Inc. v. Hospira, Inc.*, C.A. No. 15-839, 2018 WL 4080353, at *21 (D. Del. Aug. 27, 2018). The calculation of post-judgment interest, compounded annually and through the expiration of the '346 patent (the last expiring patent), is set forth in Exhibit 3 of the accompanying Hausman Declaration.

## V.      THE COURT SHOULD AWARD AN ONGOING ROYALTY.

A patent owner is entitled to "damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer." 35 U.S.C. § 284. "When the damages are not found by a jury, the court shall assess them." *Id.* The District Court has discretion to determine the amount of an ongoing royalty. *Paice LLC v. Toyota Motor Corp.*, 504 F.3d 1293, 1315 (Fed. Cir. 2007); *Amado v. Microsoft Corp.*, 517 F.3d 1353, 1362 n.2 (Fed. Cir. 2008). "The court may receive expert testimony as an aid to the determination of damages or of what royalty would be reasonable under the circumstances." 35 U.S.C. § 284.

The jury's award of $82,500,000 compensated IBM for Groupon's infringement through trial. Trial Tr. at 816:5-11, 1563:8-13, 1578:8-11, 1906:3-20 (instructing the jury to consider damages through trial). But the '849 and '346 patents do not expire until July 2023 and July 2028, respectively. To compensate IBM for Groupon's post-judgment use of IBM's technology, the Court should award IBM an ongoing royalty. *See Telcordia Techs., Inc. v. Cisco Sys., Inc.*, 612 F.3d 1365, 1379 (Fed. Cir. 2010); *see also Paice*, 504 F.3d at 1314.

IBM respectfully submits that the Court should calculate an ongoing royalty based on the jury's damages award. The ratio of the jury's damages award to the reasonable royalty damages number IBM presented at trial can be used to determine the portion of Groupon's apportioned profits that the jury found would compensate IBM for Groupon's infringement. Hausman Decl. ¶¶ 23, 36. Based on that ratio, the jury found that IBM would have accepted, and Groupon would have agreed to pay, 24.8% of the apportioned profits associated with Groupon's infringement of

18

the '849 patent.  Hausman Decl. ¶¶ 23-24, 26.  Based on the share of apportioned profits the jury awarded IBM for Groupon's infringement of the '849 patent, IBM requests that the Court award IBM an ongoing royalty of at least **3.08% x accused website revenue x adjusted EBITDA margin** and at least **2.80% x accused app revenue x adjusted EBITDA margin** for Groupon's post-verdict infringement of the '849 patent.  Hausman Decl. ¶¶ 29-32.

Similarly, the jury found that IBM would have accepted, and Groupon would have agreed to pay, 16.5% of the apportioned profits associated with Groupon's infringement of the '346 patent.  Hausman Decl. ¶¶ 23-24, 28.  Based on the share of apportioned profits that the jury awarded IBM for Groupon's infringement of the '346 patent, IBM requests that he Court award IBM an ongoing royalty of at least **2.31% x accused revenue x adjusted EBITDA margin** for Groupon's post-verdict infringement of the '346 patent.  Hausman Decl. ¶¶ 33-34.[5]

Those rates represent the minimum ongoing royalty that the Court should award.  Indeed, the Federal Circuit has noted that "[t]here is a fundamental difference . . . between a reasonable royalty for pre-verdict infringement and damages for post-verdict infringement." *Amado*, 517 F.3d at 1361 Fed. Cir. 2008.  In particular, there is a "substantial shift in the bargaining position of the parties" post-verdict. *ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*, 694 F.3d 1312, 1342 (Fed. Cir. 2012); *see also XY, LLC v. Trans Ova Genetics*, 890 F.3d 1282, 1297 (Fed. Cir. 2018) ("[W]hen calculating an ongoing royalty rate, the district court should consider the change in the parties' bargaining positions, and the resulting change in economic circumstances, resulting from the determination of liability.") (citation and quotation marks omitted); *Amado*, 517 F.3d at 1362.

---

[5] While IBM submits that an ongoing royalty should be awarded based on share of apportioned profits, as set forth above, the accompanying Hausman Declaration sets forth an alternative method of calculating an ongoing royalty based on time.  The time-based ongoing royalty award is $47,258,949.  Hausman Decl. ¶¶ 11, 36-39; Hausman Decl. Ex. 4.

Now that a jury has found that Groupon willfully infringed the patents-in-suit and that the patents are not invalid, IBM is in a stronger bargaining position.  Moreover, an enhanced royalty for the post-judgment period is appropriate for the same reasons that IBM has requested enhanced damages in Section I.  Therefore, IBM requests that the Court double the ongoing royalty that it awards.  In particular, IBM requests that the Court award an ongoing royalty of **6.16% x accused website revenue x adjusted EBITDA margin** for Groupon's website's post-judgment infringement of the '849 patent, **5.6% x accused app revenue x adjusted EBITDA margin** for Groupon's mobile apps' post-judgment infringement of the '849 patent, and **4.62% x accused revenue x adjusted EBITDA margin** for Groupon's post-judgment infringement of the '346 patent.[6]

To permit calculation of the ongoing royalty, IBM respectfully requests that the Court order Groupon to provide (1) a quarterly report of the U.S. revenues of the infringing websites and mobile apps; (2) a quarterly report of Groupon's adjusted EBITDA for the accused websites and mobile apps; and (3) an ongoing royalty payment within 60 days of the date each quarterly report issues.  IBM further requests that the Court order that Groupon's obligation to pay an ongoing royalty extend to Groupon's successors and assigns.

## CONCLUSION

For the foregoing reasons, IBM respectfully requests that this Court grant IBM enhanced damages, attorneys' fees, $13,623,523 in pre-judgment interest, post-judgment interest at a rate of 2.44% per day, and an ongoing royalty consistent with the analysis herein and in the accompanying Hausman Declaration.

---

[6] Alternatively, should the Court elect to calculate an ongoing royalty based on time, IBM requests that the Court award IBM an ongoing royalty of $94,517,898.  Hausman Decl. Ex. 4.

Respectfully submitted,

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

John M. Desmarais
Karim Z. Oussayef
Laurie Stempler
Robert C. Harrits
Brian D. Matty
Michael Matulewicz-Crowley
Edward Geist
DESMARAIS LLP
230 Park Avenue
New York, NY  10169
Tel:  (212) 351-3400

By:   */s/ Bindu A. Palapura*
 David E. Moore (#3983)
 Bindu A. Palapura (#5370)
 Stephanie E. O'Byrne (#4446)
 Hercules Plaza, 6th Floor
 1313 N. Market Street
 Wilmington, DE 19801
 Tel: (302) 984-6000
 dmoore@potteranderson.com
 bpalapura@potteranderson.com
 sobyrne@potteranderson.com

*Attorneys for Plaintiff*
*International Business Machines Corporation*

Dated: September 19, 2018
Public Version Dated: September 26, 2018
5939355 / 43155