# EXHIBIT A

| | |
|---|---|
| **From:** | Reines, Edward |
| **To:** | Laurie Stempler |
| **Cc:** | IBM Groupon Service; bpalapura@potteranderson.com; dmoore@potteranderson.com; Mayo, Andrew C. (AMayo@ashbygeddes.com); Perry, Mark A.; Chang, Brian; jday@ashby-geddes.com |
| **Subject:** | [Ext] RE: International Business Machines Corporation v. Groupon, Inc., C.A. No. 16-122-LPS |
| **Date:** | Monday, September 24, 2018 4:19:35 PM |

Laurie, I appreciate you getting back to me.   1pm ET works tomorrow.   I again encourage you to get dates from Mr. Hausman now.   And if you have any additional explanation for IBM's failure to include in the joint report its intent to rely on an expert beyond what you say below, please share it before the call.  Speak to you soon and I hope we can work it out amicably.   Best, Ed

Number:         1-888-235-7501
Code:              6508023022


**Edward Reines**
Weil, Gotshal & Manges LLP
201 Redwood Shores Parkway
Redwood Shores, CA 94065-1134
edward.reines@weil.com
+1 650 802 3022 Direct
+1 650 802 3100 Fax
+1 646 248 4331 Mobile


**From:** Laurie Stempler <LStempler@desmaraisllp.com>
**Sent:** Monday, September 24, 2018 1:01 PM
**To:** Reines, Edward <edward.reines@weil.com>
**Cc:** IBM Groupon Service <IBMGrouponService@desmaraisllp.com>; bpalapura@potteranderson.com; dmoore@potteranderson.com; Mayo, Andrew C. (AMayo@ashbygeddes.com) <AMayo@ashbygeddes.com>; Perry, Mark A. <MPerry@gibsondunn.com>; Chang, Brian <brian.chang@weil.com>; jday@ashby-geddes.com
**Subject:** RE: International Business Machines Corporation v. Groupon, Inc., C.A. No. 16-122-LPS


Ed,

Neither the parties' agreement on how to treat expert declarations submitted with motion papers nor the cases that you cite entitle Groupon to a deposition.  First, the Court's Order Governing Post-Trial Motions does not prohibit either side from submitting an expert declaration, nor does it provide that submitting such a declaration subjects the expert to a deposition.  D.I. 399.  Second, the parties agreed to permit such expert declarations, without requiring notice, as reflected in the Scheduling Order.  D.I. 17 ¶ 8(f)(ii) ("The parties agree they will permit expert declarations to be filed in connection with motions briefing (including case-dispositive motions).").   For at least those reasons, we are indeed surprised that this is an issue.  Moreover, the cases that you cite are not on point and

do not support Groupon getting a deposition of Professor Hausman during the post-trial period on a subject matter on which he has opined throughout the litigation.

That said, we are willing to meet-and-confer, and we're available tomorrow at 1 or after 4:30. Please circulate a dial-in. In addition, in advance of the call, it would be helpful if you could identify the information Groupon intends to elicit from Professor Hausman that is not already available in his declaration and why such information is necessary for the post-trial period.

Regards,
Laurie

**From:** Reines, Edward <edward.reines@weil.com>
**Sent:** Monday, September 24, 2018 1:28 PM
**To:** Laurie Stempler <LStempler@desmaraisllp.com>
**Cc:** IBM Groupon Service <IBMGrouponService@desmaraisllp.com>; bpalapura@potteranderson.com; dmoore@potteranderson.com; Mayo, Andrew C. (AMayo@ashbygeddes.com) <AMayo@ashbygeddes.com>; Perry, Mark A. <MPerry@gibsondunn.com>; Chang, Brian <brian.chang@weil.com>; jday@ashby-geddes.com
**Subject:** [Ext] RE: International Business Machines Corporation v. Groupon, Inc., C.A. No. 16-122-LPS

Laurie,

With the cumulative experience of your team, we are surprised you have never encountered a request for a deposition when a party attempts to submit unauthorized expert opinions. Here, IBM did ***not*** request an opportunity to submit an expert in the Joint Status Report as part of its post-trial plan. The Court's Scheduling Order for the post-trial phase, accordingly, did not authorize the filing of expert reports and included a compacted briefing schedule unaware that IBM would attempt to include an expert report. Indeed, the Court stated, based on IBM's failure to mention its need for an expert, that "nothing more is needed" than its 20 page brief. Courts commonly permit an expert deposition when a litigant attempts to rely on an unauthorized expert opinion to try to reduce the prejudice. *See, e.g.*, *Biovail Labs. Int'l SRL v. Cary Pharms., Inc., Civ. No. 09-605-JJF-LPS* (May 26, 2010), *Apple v. Samsung*, Case No.: C 11-1846 LHK (PSG) (October 29, 2012).

If you do not have a date for the Hausman depo today for him to appear this week, we would request a meet and confer this afternoon or tomorrow. Surely, it was foreseeable if you submitted an unauthorized expert opinion that we would seek a deposition, even if your team has never experienced that scenario before. Also, please be ready to provide whatever authority you had when you submitted new expert opinions in view of IBM's failure to include notice of intent to submit such opinions in its post-trial plan.

Best,

Ed

**From:** Laurie Stempler <LStempler@desmaraisllp.com>
**Sent:** Friday, September 21, 2018 11:24 AM
**To:** Reines, Edward <edward.reines@weil.com>
**Cc:** IBM Groupon Service <IBMGrouponService@desmaraisllp.com>; bpalapura@potteranderson.com; dmoore@potteranderson.com; Mayo, Andrew C. (AMayo@ashbygeddes.com) <AMayo@ashbygeddes.com>; Perry, Mark A. <MPerry@gibsondunn.com>; Chang, Brian <brian.chang@weil.com>; jday@ashby-geddes.com
**Subject:** RE: International Business Machines Corporation v. Groupon, Inc., C.A. No. 16-122-LPS

Hi Ed,

Do you have any legal authority for taking a deposition during post-trial briefing?  We have not encountered this request in the past, and this is also the first time our local counsel has seen it.  If you send us any authority you're relying on, we're happy to review and consider it before we schedule a formal meet-and-confer.

Thanks.

Laurie

**From:** Reines, Edward <edward.reines@weil.com>
**Sent:** Friday, September 21, 2018 11:42 AM
**To:** Laurie Stempler <LStempler@desmaraisllp.com>
**Cc:** IBM Groupon Service <IBMGrouponService@desmaraisllp.com>; Mayo, Andrew C. <AMayo@ashbygeddes.com>; Perry, Mark A. <MPerry@gibsondunn.com>; Chang, Brian <brian.chang@weil.com>; jday@ashby-geddes.com
**Subject:** [Ext] Re: International Business Machines Corporation v. Groupon, Inc., C.A. No. 16-122-LPS

Thanks for responding Laurie!  ==To address his opinions in his declaration seeking millions more from Groupon.==  If that is not self-evident, I'm at 646-248-4331.  Have you checked for availability yet?  I'm concerned that delay on this front could impose delay more broadly.  Best, Ed

On Sep 21, 2018, at 8:33 AM, Laurie Stempler <LStempler@desmaraisllp.com> wrote:

Good morning, Ed,

So that we're on the same page, can you please explain why Groupon needs a deposition of Professor Hausman?

Thank you,
Laurie


Laurie Stempler
Desmarais LLP
230 Park Avenue
New York, NY  10169
(212) 351-3423
lstempler@desmaraisllp.com

---

**From:** Reines, Edward <edward.reines@weil.com>
**Sent:** Friday, September 21, 2018 11:27 AM
**To:** IBM Groupon Service <IBMGrouponService@desmaraisllp.com>
**Cc:** Mayo, Andrew C. <AMayo@ashbygeddes.com>; Perry, Mark A. <MPerry@gibsondunn.com>; Chang, Brian <brian.chang@weil.com>; jday@ashby-geddes.com
**Subject:** [Ext] Re: International Business Machines Corporation v. Groupon, Inc., C.A. No. 16-122-LPS

Folks?

On Sep 20, 2018, at 2:15 PM, Reines, Edward <edward.reines@weil.com> wrote:

> Folks, a friendly follow-up just to ensure that

you received my email below and are checking on Hausman's dates. If there is a problem, the more time we have the more likely we can work it out amicably. Best, Ed

---

**From:** Reines, Edward
**Sent:** Thursday, September 20, 2018 10:32 AM
**To:** IBM Groupon Service <IBMGrouponService@desmaraisllp.com>
**Cc:** Mayo, Andrew C. <AMayo@ashbygeddes.com>; Perry, Mark A. <MPerry@gibsondunn.com>; Chang, Brian <brian.chang@weil.com>; John G. Day (jday@ashby-geddes.com) <jday@ashby-geddes.com>
**Subject:** International Business Machines Corporation v. Groupon, Inc., C.A. No. 16-122-LPS

We would like to take the deposition of Jerry Hausman next week. Will that work? Thanks so much. Best, Ed


**Edward Reines**
Weil, Gotshal & Manges LLP
201 Redwood Shores Parkway
Redwood Shores, CA 94065-1134
edward.reines@weil.com
+1 650 802 3022 Direct
+1 650 802 3100 Fax
+1 646 248 4331 Mobile

The information contained in this email message is intended only for use of the individual or entity named above. If the reader of this message is not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify us by email, postmaster@weil.com, and destroy the original message. Thank you.

This email may contain confidential and privileged material for the use of the intended recipient. Any review, use, or distribution by anyone other than the addressee is strictly prohibited. If you are not the intended recipient, please contact the sender by reply email and delete all copies of this message.

The information contained in this email message is intended only for use of the individual or entity named above. If the reader of this message is not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify us by email, postmaster@weil.com, and destroy the original message. Thank you.

This email may contain confidential and privileged material for the use of the intended recipient. Any review, use, or distribution by anyone other than the addressee is strictly prohibited. If you are not the intended recipient, please contact the sender by reply email and delete all copies of this message.

The information contained in this email message is intended only for use of the individual or entity named above. If the reader of this message is not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify us by email, postmaster@weil.com, and destroy the original message. Thank you.

This email may contain confidential and privileged material for the use of the intended recipient. Any review, use, or distribution by anyone other than the addressee is strictly prohibited. If you are not the intended recipient, please contact the sender by reply email and delete all copies of this message.

---

The information contained in this email message is intended only for use of the individual or entity named above. If the reader of this message is not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify us by email, postmaster@weil.com, and destroy the original message. Thank you.

# EXHIBIT B

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

|   |   |
|---|---|
| INTERNATIONAL BUSINESS MACHINES CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>GROUPON, INC.,<br><br>Defendant. | C.A. No. 16-122-LPS-CJB |

**EXPERT REPORT OF JERRY A. HAUSMAN
October 6, 2017**

fully below, I have determined that the appropriate measure of damages to compensate IBM for Groupon's infringement to date would be a reasonable royalty.

12. Based on my analysis, as described more fully below, I have concluded that:

- A reasonable royalty for Groupon's infringement of the '967 patent from March 2010 to August 18, 2015 (the date that the '967 patent expired) would be at least $23,546,921.[1]

- A reasonable royalty for Groupon's infringement of the '849 patent from March 2010 to July 2017 (the last date for which Groupon produced pertinent sales data) would be at least $63,276,535.[2]

- A reasonable royalty for Groupon's infringement of the '601 patent from March 2010 to June 7, 2016 (the date that the '601 patent expired) would be at least $40,691,044.[3]

- A reasonable royalty for Groupon's infringement of the '346 patent from mid-2011 to July 2017 (the last date for which Groupon produced pertinent sales data) would be at least $48,369,555.[4]

13. Groupon produced sales data through July 2017. Therefore, my report only accounts for Groupon's infringement during March 2010 through July 2017. I will account for Groupon's infringement of the '849 and '346 patents for any period after July

---

[1] Exhibit 4.
[2] Exhibit 5. Although I understand that damages begin earlier, should Groupon contend and should the jury find that damages begin in March 2016, a reasonable royalty for Groupon's infringement of the '849 patent until July 2017 would be $17,810,034. Exhibit 5.4.
[3] Exhibit 6. Although I understand that damages begin earlier, should Groupon contend and should the jury find that damages begin in March 2016, a reasonable royalty for Groupon's infringement of the '601 patent until June 7, 2016 would be $2,867,196. Exhibit 6.2.
[4] Exhibit 7. Although I understand that damages begin earlier, should Groupon contend and should the jury find that damages begin in March 2016, a reasonable royalty for Groupon's infringement of the '346 patent until July 2017 would be $14,336,587. Exhibit 7.3.

4

==2017 (the last date for which sales data has been made available) once Groupon produces sales data for that period and as periodically ordered by the Court.==

### III.   BACKGROUND

#### A.   The Parties

##### 1.   IBM

14.   Incorporated in 1911, IBM is a technology company that currently provides a wide range of hardware, software, and services.[5] IBM has been a global leader in the business of information handling for over a century.[6] IBM has made significant contributions to the field of information technology, including the IBM Personal Computer ("PC") in the 1980s,[7] Deep Blue in the 1990s, the first computer to beat a top chess player in a tournament,[8] and the eServer, which met demands from e-businesses in the 2000s.[9] IBM has since evolved from providing hardware and software to also providing additional innovations, such as cognitive solutions and cloud computing.[10]

15.   IBM generated $79.9 billion of revenue in 2016, nearly half of which came from the Americas.[11] IBM invests approximately 6 to 7 percent of its revenue in

---

[5] IBM Form 10-K for the year ended 12/31/16, p. 1 (IBM-GROUPON00119216-261).
[6] https://www-03.ibm.com/ibm/history/history/history_intro.html (last visited Sep. 3, 2017) (IBM-GROUPON00118963.
[7] https://www-03.ibm.com/ibm/history/history/decade_1980.html (last visited Sep. 3, 2017) (IBM-GROUPON00118956-957).
[8] https://www-03.ibm.com/ibm/history/history/decade_1990.html (last visited Sep. 3, 2017) (IBM-GROUPON00118958-960).
[9] https://www-03.ibm.com/ibm/history/history/decade_2000.html (last visited Sep. 3, 2016) (IBM-GROUPON00118961-962).
[10] IBM Form 10-K for the year ended 12/31/16, p. 1 (IBM-GROUPON00119216-261).
[11] IBM 2016 Annual Report, p. 41 (IBM-GROUPON00118697-860).

patent. To be conservative, I calculate damages based on the parties splitting the apportioned profit evenly.[391]

206. Applying a conservative, even split of Groupon's apportioned profits on the Groupon Accused Instrumentalities attributable to the '849 patent results in a reasonable royalty of $63,276,535.[392, 393]

---

[391] I note that in some situations gross profits are used in the determination of reasonable royalties. Because gross profits are approximately four times greater than Adjusted EBITDA (see Exhibit 10), if gross profits were used, the profit share for IBM would be approximately 4 times smaller (i.e., 12.5% of apportioned gross profits instead of 50% of apportioned Adjusted EBITDA) to account for the fact that gross profits rather than Adjusted EBITDA was being used. This profit share would result in the same reasonable royalty.

[392] Exhibit 5. This total represents a reasonable royalty of $41,363,906 for the Groupon Accused Website and a reasonable royalty of $21,912,628 for the Groupon Accused Mobile Applications. Should the finder-of-fact determine that a different split of Groupon's apportioned profits is appropriate, damages can still be calculated using my model by applying the percentage of the apportioned profits the finder-of-fact determines to be appropriate instead of 50%. Should damages be awarded only from the filing date of the complaint, damages can still be calculated using my model and the attached schedule and exhibits, and the reasonable royalty for the '849 patent would be $17,810,034, which represents a reasonable royalty of $9,705,414 for the Groupon Accused Website and a reasonable royalty of $8,104,620 for the Groupon Accused Mobile Applications. Exhibit 5.4.

[393] In the alternative, Groupon infringes the '849 patent by testing the Groupon Accused Instrumentalities. For example, Groupon runs performance tests (i.e., load testing). Sandridge 30(b)(6) Dep., pp.181-182. Such testing is valuable to Groupon, at least because without the ability to test the Accused Instrumentalities, Groupon risks costly downtime, user dissatisfaction, and abandonment. Although Groupon does not directly earn revenues from testing the Accused Instrumentalities, such testing allows it to avoid instances of malfunction and poor performance, which would ultimately lead to reduced revenues. *See, e.g.*, GROUP119023; GROUP068554; GROUP256099; GROUP067975; GROUP021753; GROUP147402; GROUP080496; GROUP112343. If Groupon is found to infringe only by testing the Accused Instrumentalities, my analysis of the Georgia-Pacific factors would change as follows: Factors 6, 8, and 13 would be neutral, since testing does not directly generate revenue. However, because testing is important to the successful functionality of the Groupon Accused Instrumentalities, factors 9, 10, and 11 would continue to have upward impacts on the reasonable royalty,

250. Applying a conservative 1/3 split of Groupon's apportioned profits on the Groupon Accused Instrumentalities attributable to the '346 patent results in a reasonable royalty of $48,369,555.[440]

## V. RESERVATION OF RIGHTS

251. This report is based on information currently known and available to me and my analyses completed to date. To the extent new and/or additional information becomes available in the course of the litigation, I reserve the right to review such information to determine whether it impacts the opinions and conclusions set forth above. I further reserve the right to rely upon such information and, if necessary, to supplement or amend my report to reflect such information and its impact, if any, on my opinions and/or conclusions in this case. I further reserve the right to create or modify exhibits or other materials, such as demonstratives, to aid my testimony in this case. I further reserve the right to supplement or amend my opinions and testify in rebuttal to any issues raised by Groupon's fact and expert witnesses, including in my reply report and at trial.

*[signature]*
Jerry A. Hausman
October 6, 2017

---

[440] Exhibit 7. Should the finder-of-fact determine that a different split of Groupon's apportioned profits is appropriate, damages can still be calculated using my model by applying the percentage of the apportioned profits the finder-of-fact determines to be appropriate instead of 33.3%. Should damages be awarded only from the filing date of the complaint, March 2016, damages can still be calculated using my model and the attached schedule and exhibits, and the reasonable royalty for the '346 patent would be $14,336,587. Ex. 7.3.

# EXHIBIT C

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| INTERNATIONAL BUSINESS MACHINES CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>GROUPON, INC.,<br><br>Defendant. | C.A. No. 16-122-LPS-CJB |

THIRD SUPPLEMENTAL EXPERT REPORT OF JERRY A. HAUSMAN
July 14, 2018

1. I submitted an expert report in this matter on October 6, 2017 (the "Hausman Report"), a reply report on November 22, 2017, a supplemental expert report on January 8, 2018 (the "Supplemental Hausman Report"), and a second supplemental expert report on June 4, 2018 (the "Second Supplemental Hausman Report"). In this supplemental report, I update my reasonable royalty calculations based on updated financial data that has been produced by Groupon.

2. Groupon has produced financial data through the end of May 2018. As shown in Second Supplemental Exhibit 10, over the March 2010 through May 2018 period Groupon has over $21 billion in gross billings, over $11 billion in revenue, over $5 billion in gross profit, and approximately $1 billion in Adjusted EBITDA.

3. Using the updated revenue and profit figures along with the apportionment and bargaining share factors used in the Hausman Report results in a reasonable royalty for the '849 patent of $58,188,332 for the period through May 31, 2018.[1,2] For the period from

---

[1] Second Supplemental Exhibit 5. This total represents a reasonable royalty of $37,237,135 for the Groupon Accused Website and a reasonable royalty of $20,951,196 for the Groupon Accused Mobile Applications. Should the finder-of-fact determine that a different split of Groupon's apportioned profits is appropriate, damages can still be calculated using my model by applying the percentage of the apportioned profits the finder-of-fact determines to be appropriate instead of 50%. Should damages be awarded only from the filing date of the complaint, damages can still be calculated using my model and the attached schedule and exhibits, and the reasonable royalty for the '849 patent would be $20,485,470, which represents a reasonable royalty of $10,984,493 for the Groupon Accused Website and a reasonable royalty of $9,500,977 for the Groupon Accused Mobile Applications. Second Supplemental Exhibit 5.4

[2] In the alternative discussed in footnote 393 of the Hausman Report, applying a 5% split to the apportioned profits attributable to the '849 patent for Groupon's infringement through testing would result in a reasonable royalty of $5,818,33, representing $3,723,714 for the Groupon Accused Website and $2,095,120 for the Groupon Accused Mobile Applications.

June 1, 2018 through the end of trial (July 24, 2018), I estimate the reasonable royalty for the '849 patent to be $978,237.[3]

4.  Using the updated revenue and profit figures along with the apportionment and bargaining share factors used in the Hausman Report results in a reasonable royalty for the '346 patent of $42,274,398.[4] For the period from June 1, 2018 through July 24, 2018, I estimate the reasonable royalty for the '346 patent to be $789,891.[5]

*Jerry Allen Hausman*
July 14, 2018

---

[3] This total represents a reasonable royalty of $487,212 for the Groupon Accused Website and a reasonable royalty of $491,025 for the Groupon Accused Mobile Applications. I estimate revenue for the June 1, 2018 to July 24, 2018 period by assuming that average daily revenue is constant throughout 2018. Thus, estimated revenue for the June 1, 2018 to July 24, 2018 period is equal to revenue for the January 1, 2018 to May 31, 2018 period (shown in Second Supplemental Exhibits 5.1 and 5.2) multiplied by the number of days in the June 1, 2018 to July 24, 2018 period (54) divided by the number of days in the January 1, 2018 to May 31, 2018 period (151). I calculate the reasonable royalty by applying the apportionment factors, profit margin, and bargaining share shown in Second Supplemental Exhibit 5 to this estimated revenue.

[4] Second Supplemental Exhibit 7. Should the finder-of-fact determine that a different split of Groupon's apportioned profits is appropriate, damages can still be calculated using my model by applying the percentage of the apportioned profits the finder-of-fact determines to be appropriate instead of 33.3%. Should damages be awarded only from the filing date of the complaint, March 2016, damages can still be calculated using my model and the attached schedule and exhibits, and the reasonable royalty for the '346 patent would be $16,486,432. Second Supplemental Exhibit 7.3.

[5] I estimate revenue for the June 1, 2018 to July 24, 2018 period by assuming that average daily revenue is constant throughout 2018. Thus, estimated revenue for the June 1, 2018 to July 24, 2018 period is equal to revenue for the January 1, 2018 to May 31, 2018 period (shown in Second Supplemental Exhibit 7.1) multiplied by the number of days in the June 1, 2018 to July 24, 2018 period (54) divided by the number of days in the January 1, 2018 to May 31, 2018 period (151). I calculate the reasonable royalty by applying the apportionment factor, profit margin, and bargaining share shown in Second Supplemental Exhibit 7 to this estimated revenue.

2